**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FAIR FIGHT ACTION, *et al.*,

      Plaintiffs,

vs.

BRAD RAFFENSPERGER, in his
official capacity as the Secretary of
State of Georgia; *et al.*,

      Defendants.

Civil Action No.: 1:18-cv-05391-SCJ

**STATE DEFENDANTS' BRIEF IN SUPPORT OF THEIR**
**MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Defendants Brad Raffensperger, in his official capacity as Secretary of State

of the State of Georgia and Chairman of the State Election Board of Georgia

("Secretary Raffensperger"),[1] and Rebecca N. Sullivan, David J. Worley, Ralph F.

"Rusty" Simpson,[2] and Seth Harp, in their official capacities as members of the

State Election Board (collectively, "State Election Board Members"), and the State

---

[1] Plaintiffs misidentified the former Secretary of State as "interim."  To be clear,
Secretary Crittenden was appointed Secretary of State by Governor Nathan Deal
on November 8, 2018 pursuant to his authority under Article V Section II
Paragraph VIII of the Georgia Constitution.  Georgia has no provision analogous to
the Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq.*

[2] Simpson has resigned and will be substituted pursuant to Fed. R. Civ. P. 25(d).

Election Board (collectively "Defendants"), hereby submit this Brief in Support of Their Motion to Dismiss Plaintiffs' Complaint.

## INTRODUCTION

Plaintiffs' suit is ripe for dismissal.  The Complaint combines a variety of claims in an attempt to cobble together a new theory—that a variety of independent and unrelated actions by mostly local officials somehow resulted in a series of constitutional violations that require massive judicial intervention.  Indeed, Plaintiffs claim that Georgia's election system is so flawed that the only solution is to place the entire state in a federal receivership, with this Court as the new source of "uniform standards and processes" for governing all Georgia elections.  [Doc. 1, pp. 61-64].

Though filled with strident rhetoric, the shotgun pleading does not sufficiently allege standing or make allegations sufficient to place any claims properly before this Court.  Specifically, Plaintiffs have not (1) alleged sufficient facts to confer standing; (2) joined all proper parties; (3) avoided the preclusive effect of the Eleventh Amendment to the United States Constitution; (4) overcome legislative immunity (as to the State Election Board Members); or (5) pled prima facie cases of violations of the 14th and 15th Amendments to the United States Constitution.

For these reasons, Plaintiffs' policy critique is more appropriately reviewed by the Georgia General Assembly, which is already considering changes to Georgia's election system.  It is not properly before this Court and should be dismissed.

## STATEMENT OF FACTS

The 2018 Election in Georgia produced "historic voter registration and turnout," turnout that was greater than any previous midterm election in Georgia history.  [Doc. 1, ¶ 20].  Plaintiffs[3] allege, generally, that this record turnout and vote total (and electoral loss of their preferred candidate) can be attributed to "time-tested voter suppression tactics."  *Id.* at ¶ 21-22.  Their candidate having lost the election, Plaintiffs now seek to litigate the consequences of the 2018 election not in the elected branches of state government, but in this federal court.  Put simply, Plaintiffs seek to enact their preferred policies not through state government or the legislature, but through the federal judiciary.  *See generally* [Doc. 1].

To achieve these goals, the Complaint raises six counts that allege a wide array of unconstitutional or otherwise illegal acts under the First, Fourteenth, and

---

[3] Plaintiffs Fair Fight Action and Care in Action are purportedly Internal Revenue Code § 501(c)(4) non-profit entities organized under the laws of Georgia and Delaware, respectively.  *Id.* at ¶¶ 9, 11.

Fifteenth Amendments to the United State Constitution, Section Two of the Voting

Rights Act, and Sections 301 and 302 of the Help America Vote Act. *Id.*

## ARGUMENT AND CITATION OF AUTHORITY

To survive a motion to dismiss, a complaint must "state a claim to relief that

is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The complaint must demonstrate "more than a sheer possibility that a defendant

has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 677 (2009).  While this

Court must assume the veracity of well-pleaded factual allegations, it is not

required to accept as true legal conclusions when they are "couched as [] factual

allegation[s]." *Iqbal,* 556 U.S. at 678-79.

## I.   Plaintiffs' Complaint Should Be Dismissed for Lack of Standing.

A party invoking federal jurisdiction bears the burden of establishing standing

at the commencement of the lawsuit.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

561, 570 n.5 (1992); *see also Johnson v. Bd. of Regents*, 263 F.3d 1234, 1267 (11th

Cir. 2001) ("A party's standing to sue is generally measured at the time of the

complaint . . . ").  "No principle is more fundamental to the judiciary's proper role

in our system of government than the constitutional limitation of federal-court

jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818

(1997).

Article III standing requires that each claim "clearly" establish standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (quoting *Warth v. Seldin*, 422 U.S. 490, 519 (1975)).  To do so, Plaintiffs must allege sufficient facts to demonstrate a "[1] concrete, particularized, and actual or imminent [harm]; [2] fairly traceable to the challenged action; and [3] redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149, 130 S. Ct. 2743, 2752 (2010).  Plaintiffs have not satisfied any of these requirements.

   A.   *Plaintiffs' Have Not Alleged A Concrete And Particularized Injury.*

Plaintiffs, two organizations, have alleged no harm other than fulfilling their corporate missions.  Such generalized grievances do not establish standing in federal courts.  *United States v. Hays*, 515 U.S. 737, 743 (1995).  Instead, an injury must actually "affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560.  "An injury in fact must also be concrete … that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548. *Id.*

As held by the Supreme Court of the United States, an organization's diversion of resources can establish a cognizable "injury in fact" only when allegations set forth "concrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources." *Havens Realty v. Coleman*, 455 U.S. 363, 379 (1982).  "[A] setback to the organization's

abstract social interests" does not demonstrate a sufficient injury in fact.  *Id.* at 37.

The Eleventh Circuit has made clear that plaintiffs must plead more than just that

they will continue their organizations' existing mission.  Specifically, to establish a

concrete and particularized injury under a diversion-of-resources theory, Plaintiffs

must show the defendant's allegedly "illegal acts *impaired* the organization's

ability to engage in its own projects by forcing the organization to *divert resources*

*in response*."  *Arcia v. Sec'y of Florida*, 772 F.3d 1335, 1341-1342 (11th Cir.

2014) (emphasis added).  Other courts have done the same.  *Food & Water Watch,*

*Inc. v. Vilsack*, 808 F.3d 905, 919 (D.C. Cir. 2015) (injury must inhibit

"organization's daily operations"); *Nat'l Treasury Employees Union v. United*

*States*, 101 F.3d 1423, 1429 (D.C. Cir. 1996) (conflict between policy and

organizational mission not enough for Article III standing).

Both Plaintiffs' sole claim to standing is that, as corporations, they are

required to spend additional resources fulfilling their corporate missions, namely

registering and educating voters.  [Doc. 1, ¶¶ 9-12].  Plaintiff Fair Fight Action

makes no allegations that it will have to change its mission or divert any resources

from achieving its goals as a result of the alleged violations.  Unlike Fair Fight

Action, Plaintiff Care in Action, which engages in direct candidate support [Doc.

1, ¶ 11], does allege that its mission was "thwarted."  [*Id.* ¶ 12].  It then

acknowledges, however, the alleged injury resulted only in the corporation doing what it was already: educating citizens and engaging in advocacy.  [Doc. 1, ¶ 12].

Plaintiffs are not saved by alleging that they must prepare for and challenge alleged illegal activity: "[P]laintiffs cannot bootstrap the cost of detecting and challenging the illegal practices into injury for standing purposes." *Florida State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1166 (11th Cir. 2008).  This includes spending funds on litigation.  *Id; see also Food & Water Watch*, 808 F.3d at 919 (use of "resources for litigation, investigation in anticipation of litigation, or advocacy is not sufficient to give rise to an Article III injury").

Some federal courts have correctly held that indirect impacts to an organizations' advocacy efforts do not establish standing either; direct and non-advocacy services must be curtailed as a result of alleged illegal activity.  *Int'l Acad. of Oral Medicine & Toxicology v. Food & Drug Admin.*, 195 F. Supp. 3d 243, 256 (D. D.C. 2016).  And the Fifth Circuit has required plaintiffs alleging organizational standing to identify specific projects that were either put on hold or curtailed as a result of the change necessitated by the defendant's conduct. *NAACP v. City of Kyle*, 626 F.3d 233 (5th Cir. 2010); *see also ACORN v. Fowler*, 178 F.3d 350 (5th Cir. 1999) (concluding no injury where there was no evidence

that the group had "spent any discrete, particularized, or concrete amount of money or time counteracting Louisiana's [alleged violations]").[4]

Here too, the Complaint falls short. It does not identify any diversion of resources or lost programs that Plaintiffs undertook because of the claimed harms. *Arcia*, 772 F.3d at 1341-1342. Plaintiffs have not identified any projects that they were unable to advance. *City of Kyle*, 626 F.3d at 238. They have not even identified a change in the law that allegedly spurred them to action—in fact, they claim that Georgia engaged in "time-tested" tactics in the 2018 election [Doc. 1, ¶ 21].

Plaintiffs have only alleged that they will possibly incur the costs they would normally expend. [Doc. 1, ¶¶ 9-12]. Like the Plaintiffs in *International Academy of Oral Medicine & Toxicology*, 195 F. Supp. 3d at 256, Plaintiffs have clear advocacy positions. But the only allegations they make about resources is that they will have to continue spending what they were already going to spend. Having to do the job one sets out to do is not an injury—it is a purpose, and it does not establish standing.

---

[4] Identified harms should not include "operational costs beyond those normally expended." *Food & Water Watch*, 808 F.3d at 920. Nor should standing be predicated on "routine lobbying activities." *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir. 2010).

B.    *Plaintiffs' Alleged Injury Is Not Traceable To The Defendants.*

The "causation piece of Article III standing is vital." *Samuels v. Fed. Hous. Fin. Agency*, 54 F. Supp. 3d 1328, 1334 (S. D. Fla. 2014) (declining to find standing based on diversion of resources because it was not "fairly traceable to the defendant's allegedly unlawful conduct"). Even if Plaintiffs established a concrete and particularized injury, none of the alleged diversions of resources are traceable to any action of Defendants.

1.    The Defendants Do Not Implement The Challenged Statutes.

The essence of Plaintiffs' Complaint is that Defendants "grossly mismanaged an election" that prevented Georgians from having their votes counted. [Doc. 1, ¶ 2]. The problem with that theory is that the Defendants neither manage nor administer Georgia elections.

Plaintiffs' first error is alleging that the Georgia Secretary of State "oversees and administers elections." [Doc. 1, ¶¶ 13, 22]. *See Iqbal*, 556 U.S. at 678 ("tenet that a court must accept as true all of the allegations in a complaint is inapplicable to legal conclusions"). Georgia Code Section 21-2-50 enumerates the statutory authority of the Secretary of State, and none of the 15 enumerated duties give the Secretary of State control over counties and election superintendents. The Secretary must provide training to county elections officials (O.C.G.A. § 21-2-

50(11)), but he does not watch them process voter registration applications, count ballots, administer provisional ballots, or control how local officials undertake those activities.  Plaintiffs' allegations regarding the State Election Board fare no better.  The statutory duties of the State Election Board are set forth in O.C.G.A. § 21-2-31, and they do not give the State Election Board control over county officials.[5]

The Georgia Election Code is clear that the duties of administration and conduction of the election are left to local superintendents who "instruct poll officers and others in their duties … select and equip polling places," and a host of other acts complained of by Plaintiffs.  O.C.G.A. § 21-2-70.  As such, any alleged defects in the administration of the election which violate the myriad federal constitutional and statutory provisions Plaintiffs reference must fall on those local officials.  Here, the Complaint cites issues at the polls – including the counting of votes, handing out of provisional ballots and supplies, decisions regarding precinct locations, informing voters where to vote, and administering absentee ballots – which are under local control.  [Doc. 1, ¶¶ 25-28, 70-72, 75-77, 80-81, 107-113].

---

[5] Plaintiffs correctly identify that the State Election Board has the authority to investigate violations of election laws and bring enforcement actions (O.C.G.A. § 21-2-31), but Plaintiffs are not alleging that Defendants are violating the Election Code—instead they are challenging the constitutionality of a variety of election laws that county officials are implementing as written.

In addition, and as also discussed below, Plaintiffs allege that these purported injuries took place in at least Randolph, Gwinnett, Cherokee, DeKalb, Early, Fulton, Henry, Muscogee, Dougherty, and Chatham counties. [Doc. 1, ¶¶ 35, 41, 66-67, 76-77, 79, 81, 85-87, 96, 98-99, 102, 111]. No one from those counties is named in the Complaint or under the control of the Defendants.

Thus, as a matter of law, Defendants do not control and cannot directly prevent a local official(s) from (1) closing polling places [Doc. 1, ¶¶ 25, 70-72]; (2) not distributing provisional ballots [Doc. 1, ¶¶ 26-27, 89-91]; (3) not allocating sufficient resources to polling places [Doc. 1, ¶¶ 83-88]; or (4) processing absentee ballots [Doc. 1, ¶ 28]. All of these are county functions as a matter of law—not the responsibility of Defendants. O.C.G.A. §§ 21-2-31, 21-2-50.[6] This Court is not required to accept those statements as true, because they are legally incorrect. *Iqbal*, 556 U.S. at 678.

It may have been logistically easier to name and serve only the Defendants, as Plaintiffs have done here, but that does not satisfy the law's requirements. Plaintiffs allegations involve issues that are traceable to local officials and not

---

[6] Perhaps in recognition of this reality, Plaintiffs retreat to broad claims about the Defendants' purported responsibility "for the election system as a whole," including a responsibility to promote and support a variety of specific policies. [Doc. 1, ¶ 31]. Plaintiffs are again mistaken, because Defendants do not implement elections as a matter of law.

Secretary Raffensperger, the State Election Board, or the Members of the State

Election Board, and Plaintiffs cannot satisfy their legal burden simply by having

the State Defendants serve as a collective proxy for the unnamed local officials.

<div align="center">

2.   <u>Plaintiffs' Self-Inflicted Injuries Are Not Traceable To The Defendants' Acts.</u>

</div>

As part of their allegation that their injury is traceable, Plaintiffs must also

allege that the specific injury they allege is "*certainly* impending" and traceable to

the challenged action. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S. Ct.

1138 (2013) (emphasis in original).  Put differently, Plaintiffs' alleged injury—the

expenditure of resources—must actually relate to the challenged conduct, as

"'allegations of a *possible* future injury' are not sufficient." *Id.* (citing *Whitmore v.*

*Arkansas*, 495 U.S. 149, 158 (1999).  In *Clapper*, the Supreme Court found that,

the plaintiffs had a good-faith, non-paranoid belief that they would be surveilled by

the challenged government program.  495 U.S. at 415-16.  They made financial

decisions based on those fears.  *Id.*  Nevertheless, the Court decided that standing

did not exist, because the plaintiffs alleged injury was not traceable to the

government but instead to their own decision to expend funds in a certain manner.

*Id.*  "In other words, [Plaintiffs] cannot manufacture standing merely by inflicting

<div align="center">

- 12 -

</div>

harm on themselves [by expending resources] based on their fears of hypothetical future harm that is not certainly impending." *Id.* at 416.[7]

That is exactly what Plaintiffs here have done.  They allege little more than (1) state officials will implement existing laws using existing voting systems, and (2) they will spend resources on its already-existing programs to advance their already-existing organizational mission.  [Doc. 1, ¶¶ 9-12].  They have not sufficiently alleged that the injury they claim to suffer (spending money on their existing mission) was traceable or caused by the alleged conduct of the Defendants.  Because they have not shown the second element of standing, Plaintiffs' Complaint should be dismissed.

    C.    *Plaintiffs Alleged Injuries Are Not Redressable By The Defendants.*

The final element of standing, redressability, requires a court to consider whether deciding in the plaintiff's favor would increase the likelihood "that the plaintiff would obtain relief that directly redresses the injury suffered." *Mulhall v.*

---

[7] Most of the Eleventh Circuit's decision on organizational standing came before *Clapper*, but each of those cases identified a traceable harm back to the actions of the named defendant.  In *Common Cause/Georgia*, it was an action challenging the state's new photo identification law. *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1353-55 (11th Cir. 2009).  In *Arcia*, it was a new list maintenance program from the state. *Arcia v. Fla. Sec. of State*, 772 F.3d 1335, 1340 (11th Cir. 2014).  In *Browning*, it was a new voter verification requirement that had not yet been used in an election. *Fla. State Conf. of NAACP v. Browning*, 522 F.3d 1153, 1157-58 (11th Cir. 2008).

*UNITE HERE Local 355*, 618 F.3d 1279, 1290 (11th Cir. 2010). This is obviously connected with the traceability analysis, because the relief must directly address the injury suffered.

Plaintiffs cannot show redressability because, even if the Court grants every remedy sought by Plaintiffs, they would not obtain any relief from the sole injury they allege. Plaintiffs would still be spending resources on their primary mission—educating voters. In fact, a wholesale change to the voting system in Georgia would likely require Plaintiffs to spend even *more* resources on their lobbying and education missions.

This is in sharp contrast to the remedies for other organizations in Eleventh Circuit cases involving organizational standing. In *Ga. Latino Alliance for Human Rights v. Governor of Ga.*, the plaintiffs would no longer have to cancel citizenship classes if the allegedly unconstitutional law was overturned. 691 F. 3d 1250, 1260 (11th Cir. 2012). Similarly, in *Browning*, the plaintiffs would be able to begin "specific projects during a specific time" if a challenged Florida law was overturned. 522 F.3d at 1166. In *Common Cause*, the plaintiffs would be able to again conduct its 15-20 voter registration drives if it no longer had to help individuals obtain photo identification. 554 F.3d at 1350. In this case—in sharp

contrast—Plaintiffs would merely continue spending funds on the same projects they did before the change.

Plaintiffs also cannot obtain the relief they seek because, as explained above, Defendants are not responsible for the implementation of the laws they challenge. The implementation of voting laws happens at the county level and Plaintiffs have not alleged any claims against county officials.  These Defendants cannot provide the remedies sought by Plaintiffs.

Because they have not shown any of the required elements of standing, Plaintiffs' Complaint should be dismissed.

## II.     Plaintiffs' Failed To Join Necessary Parties and Inadequately Pled A Failure-To-Train Theory.

Either Plaintiffs failed to join necessary parties, or their claims are limited to a failure-to-train theory.  If the former, the case should be dismissed for failure to join all necessary parties.  If the latter is true, Plaintiffs' failure-to-train claims should be dismissed for failure to state a claim for which relief can be granted.

### A.     *Plaintiffs Failed To Join Necessary Parties.*

As a consequence of Plaintiffs' erroneous contention that state (and not local) government officials administer elections, the Complaint is also subject to dismissal under Federal Rules of Civil Procedure 12(b)(7) and 19.  Those rules require plaintiffs in federal court to join all necessary parties.  *Id.*  A party is

necessary if, "in that person's absence, the court cannot afford complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). Plaintiffs did not comply with this mandate. Their claims generally focus on the alleged improper administration of Georgia's 2018 general election. But, they failed to name one government entity that actually carried out the election: county election boards and officials. In fact, Plaintiffs cited circumstances in at least ten Georgia counties but failed to name one election official from any of them. *See supra* at 11. This error is dispositive and warrants a dismissal of Counts One through Five, and parts of Count Six, including the HAVA claims against the State Election board and its Members.

> B.    *Plaintiffs' Failure-To-Train Theory Fails To State A Claim.*

Plaintiffs' artful attempt to plead around the true issue they seek to address, administration of the 2018 election, does not save the Complaint. For example, instead of directly addressing local election administrators' alleged failure to "provide absentee ballots requested by voters," Plaintiffs attempt to place the blame on "training and oversight" provided by the Defendants. [Doc. 1, ¶ 121]. This is repeated in Counts One, Two, Three, and Six. *See* [Doc. 1, ¶¶ 133, 157; *see also* ¶ 172 (alleging that Defendants "fail[ed] to ensure that elections officials provided accurate information about provisional ballots . . . [and] permitted people

to cast provisional ballots" (emphasis added))].  Counts Four and Five allege errors in administration of the election—in this instance omitting the workaround of "oversight and training."  *See* [Doc. 1, ¶ 157 ("Defendants . . . are administering an election process . . .")]; *see also* [Doc. 1, ¶ 164 ("Defendants' administration of the election denied voters . . .")].

Even if limited to training and oversight, Plaintiffs' allegations still fail to state a claim for which relief can be granted.  They have not alleged any specific deficiencies in any training.  Nor have Plaintiffs distinguished between the subject of the training (*e.g.*, rules, manuals, etc.) and the execution of the training.  As the Supreme Court has said: "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the [government], for the officer's shortcomings may have resulted from factors other than a faulty training program." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390–91 (1989).  Liability is also not established by allegations that claim "an injury or accident could have been avoided if an officer had had better or more training."  *Id.*  This is for good reason. Without such limitations, federal plaintiffs could always "point to something the [government] 'could have done' to prevent the unfortunate incident," which opens the floodgates to state liability and raises serious concerns of federalism.  *Id.*  Here,

Plaintiffs have neither alleged intent nor deliberate indifference.  Consequently,

and to the extent their claims rely on a failure-to-train theory, the claims fail.

## III.   Plaintiffs' Claims Are Barred By The Eleventh Amendment.

Plaintiffs' federal claims are asserted against Secretary of State Robyn A.

Crittenden (who has since been succeeded in that office by Brad Raffensperger) in

her official capacity, Rebecca N. Sullivan, David J. Worley, Ralph F. "Rusty"

Simpson, and Seth Harp, in their official capacities as members of the State

Election Board, and the State Election Board.  *See* [Doc. 1, ¶¶ 13-15].  The

Eleventh Amendment bars these claims against the Secretary and Members of the

State Election Board in their official capacities.

The Eleventh Amendment to the United States Constitution provides that

"[t]he judicial power of the United States shall not be construed to extend to any

suit in law or equity, commenced or prosecuted against one of the United States by

Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S.

Const. amend. XI.  By its own terms, the amendment affords states immunity from

suits, both legal and equitable.  *Id*.  "[D]espite the limited terms of the Eleventh

Amendment, a federal court [cannot] entertain a suit brought by a citizen against

his own State." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98

(1984).  Because claims against public officials in their official capacities are

merely another way of pleading an action against the entity of which the officer is an agent, "official capacity" claims against a state officer are included in the Eleventh Amendment's bar. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985).[8]

While an exception to Eleventh Amendment immunity exists under *Ex parte Young*, 209 U.S. 123 (1908), it is limited to suits against state officers for prospective injunctive relief. *Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 n. 24 (1997). "A federal court cannot award retrospective relief, designed to remedy past violations of federal law." *Idaho v. Coeur d' Alene Tribe*, 521 U.S. 261, 288 (1997) (O'Connor, J., concurring) (emphasis added).

The gravamen of Plaintiffs' Complaint is a challenge to the allegedly unconstitutional manner in which the November 6, 2018 general election was conducted, with only passing reference to the mere possibility of prospective harm in an attempt to plead around this reality. With the exception of a single boilerplate paragraph in each count, [Doc. 1, ¶¶ 124, 136, 151, 159, 165, 175], Plaintiffs have alleged in no portion of the Complaint that such conduct is ongoing.

---

[8] There is no question that Plaintiffs' constitutional claims, necessarily brought pursuant to 42 U.S.C. § 1983, do *not* abrogate the Eleventh Amendment. The Supreme Court has repeatedly held that "§ 1983 does not override a State's Eleventh Amendment immunity." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 63 (1989); *Quern v. Jordan*, 440 U.S. 332, 342 (1979); *Kentucky*, 473 U.S. at 169 n.17.

Such relief is retrospective and therefore not within the *Ex Parte Young* exception.[9]

Accordingly, Plaintiffs' federal claims are barred by the Eleventh Amendment.

## IV. Plaintiffs' Claims Against State Election Board Members Should Be Dismissed.

Independent of Plaintiffs' lack of standing, the claims against the State

Election Board and its Members should be dismissed for two additional reasons:

(1) Plaintiffs have not pled any causal link between their alleged injury and the

State Election Board or the State Election Board Members; and (2) the doctrine of

legislative immunity provides an absolute defense.

### A. *Plaintiffs Have Not Pled Causation By The State Election Board Members*.

In their Complaint, Plaintiffs make no allegations that any of the members of

the State Election Board caused a legally cognizable injury.  The only allegations

---

[9] Additionally, "[i]n making an officer of the State a party defendant in a suit to enjoin the enforcement of an act alleged to be unconstitutional it is plain that *such officer must have some connection with the enforcement of the act*, or else it is merely making him a party as a representative of the State, and thereby attempting to make the State a party."  *Summit Med. Assocs., P.C. v. Pryor*, 180 F.3d 1326, 1341 (11th Cir. 1999), *cert. denied*, 529 U.S. 1012 (2000) (quoting *Ex parte Young*, 209 U.S. at 157 and declining to apply the exception where Defendants had no authority to enforce the challenged statutory provision) (emphasis added).  Based on what has been pled, at the time of many of the alleged wrongs, Defendants lacked enforcement authority. For others, that authority may exist in the context of post-election review, but that review does not provide Plaintiffs with their requested remedy.  Consequently, the Eleventh Amendment immunity applies, which extends to immunity from participation in litigation and discovery. *Howe v. City of Enter.*, 861 F.3d 1300, 1302 (11th Cir. 2017).

about the State Election Board are (1) that the State Election Board had notice of the "these problems" and did not fix them [Doc. 1, ¶ 57], (2) that the State Election Board "grossly mismanaged" the election [Doc. 1, ¶ 2], and (3) that the State Election Board "rejected and rebuffed" attempts to improve database security [Doc. 1, ¶ 29].

Plaintiffs' Complaint is a shotgun pleading, where each Count of the Claim for Relief section incorporates every preceding paragraph as relevant. *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015) (collecting cases on why these pleadings violate Fed. R. Civ. P. 8). The State Election Board members have no way of knowing which allegations are against them, and they therefore have not been given adequate notice of the grounds for each claim. *Id*. Plaintiffs' allegations against the State Election Board should be dismissed on this basis alone.

But Plaintiffs also have not alleged any conduct by members of the State Election Board within their statutory authority that led to any supposed injury. The statutory duties of the State Election Board are outlined in O.C.G.A. § 21-2-31, as recognized by Plaintiffs in their Complaint. [Doc. 1, ¶ 15]. Plaintiffs only allege that those members are responsible for:

> (1) promulgating rules and regulations to "obtain uniformity" in the practices and proceedings of elections officials, "as well as

> the legality and purity in all . . . elections"; (2) formulating, adopting, and promulgating rules and regulations "conducive to the fair, legal, and orderly conduct of primaries and elections"; (3) promulgating rules and regulations to "define uniform and nondiscriminatory standards concerning what constitutes a vote and what will be counted as vote"; and (4) investigating frauds and irregularities in elections.

[Doc. 1, ¶ 15]. The only allegations in each Count even remotely related to the

State Election Board members is that the "Defendants" must "protect the integrity

of elections," *see* [Doc. 1, ¶¶ 119, 129, 141, 156, 163, 168], and an identical list of

things that the State Election Board is not required to do by statute, *see* [Doc. 1, ¶¶

120, 121, 132, 133, 145, 146, 157, 170, 171, 172].[10]  No actual rule of the State

Election Board is challenged.  This is fatal to the claims against the State Election

Board and its Members.

  B.  *Legislative Immunity Bars The Claims Against the State Election Board Members.*

  In the alternative, to the extent that Plaintiffs allege that the State Election

Board's Members are liable for the promulgation of rules (or promulgation of rules

that differ from those Plaintiffs would prefer), the doctrine of legislative immunity

precludes any relief.  The legislative immunity doctrine "emanates from the well-

spring of the federal common law . . . [and it] is designed to reinforce the

independence of the legislative branch and ensure that it will be able to perform the

_____

[10] This causation argument also applies to the Eleventh Amendment analysis.

whole of the legislative function ceded to it by the Constitution free of undue interference." *Bryant v. Jones*, 575 F.3d 1281, 1304 (11th Cir. 2009).  The defense applies not only to legislators and legislative bodies, but also to government officials' decisions regarding "'prospective, legislative-type rules' that have general application." *Id.* at 1306.

Here, the allegations against the State Election Board Members may be grounded solely in promulgation of or purported failure to promulgate rules and regulations.  [Doc. 1, ¶¶ 120, 121, 132, 133, 145, 146, 157, 170, 171, 172].  As a result, Plaintiffs' claims against the State Election Board members are barred by legislative immunity, regardless of the relief sought.  *Scott v. Taylor*, 405 F.3d 1251, 1254 (11th Cir. 2005) (explaining that the immunity "applies with equal force to suits seeking damages and those seeking declaratory or injunctive relief."). The Supreme Court has extended legislative immunity to state officials "acting in their legislative capacity." *Consumers Union v. Supreme Court of Virginia*, 446 U.S. 719, 734 (1980) (extending immunity to state supreme court justices in challenge to attorney disciplinary rules).  This binding precedent applies here and bars Plaintiffs' claims.

**V.   Plaintiffs' Fifteenth Amendment Claim Should Be Dismissed for Failure to State a Claim.**

Case 1:18-cv-05391-SCJ   Document 35-1   Filed 01/28/19   Page 24 of 28

Plaintiffs allege the Defendants violated the Fifteenth Amendment to the United States Constitution by various actions of misconduct or irregularities which "disproportionately affected voters of color." [Doc. 1, ¶¶ 127, 132-33]. This claim fails, because liability under the Fifteenth Amendment requires intentional conduct and not only disparate impact. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1189 (11th Cir. 1999); *U.S. v. Marengo Cnty. Comm'n*, 731 F. 2d 1546, 1562 (11th Cir. 1984) ("direct violations of the substantive provisions of the . . . Fifteenth Amendment[] . . . are established only when discriminatory purpose is shown") (citing *City of Mobile v. Bolden*, 446 U.S. 55 (1980)).

Here, Plaintiffs only point to alleged disproportionate effects and make no reference whatsoever to discriminatory intent or purpose at any point in the Complaint, a necessary element in Fifteenth Amendment claims. This omission necessitates dismissal.

**VI.    Plaintiffs' Fourteenth Amendment Equal Protection Claim Should Be Dismissed for Failure to State a Claim.**

Plaintiffs allege the Defendants violated the equal protection clause of the Fourteenth Amendment to the United States Constitution by various actions of misconduct or irregularities which "disproportionately affected voters of color." [Doc. 1, ¶¶ 139, 145-46]. This claim fails, because liability under the Fourteenth Amendment's equal protection clause requires intentional conduct and not only

- 24 -

disparate impact. *Corey Airport Servs., Inc. v. Clear Channel Outdoor, Inc.*, 682 F.3d 1293, 1297 (11th Cir. 2012) ("[P]roof of discriminatory intent or purpose is a necessary prerequisite to any Equal Protection Clause claim . . . and the Supreme Court has said that the idea of intention or purpose means that 'the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group.'") (quoting *Pers. Adm'r of Mass. Feeney*, 442 U.S. 256, 258 (1979)).

Here, Plaintiffs only point to alleged disproportionate effects and make no reference whatsoever to discriminatory intent or purpose at any point in the Complaint, a necessary element in Fourteenth Amendment equal protection claims. This omission necessitates dismissal.[11]

## CONCLUSION

Plaintiffs announced their lawsuit with great fanfare and have utilized its existence as a way to advance their organizational interests in the press. Now, however, the Complaint must survive judicial scrutiny. It cannot. For these reasons, Defendants request that the Complaint be dismissed with prejudice.

---

[11] To the extent Plaintiffs' contend that different voters in different areas of the state were subject to different voting rules, they have failed to identify what rules or practices were in violation of the equal protection clause.

## **CERTIFICATION**

I certify that this brief has been prepared in a Times New Roman 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(C).


Respectfully submitted this 28th day of January, 2019.

<div style="margin-left: 3em;">

STATE LAW DEPARTMENT
Christopher M. Carr
Attorney General
GA Bar No. 112505
ANNETTE M. COWART
Deputy Attorney General
GA Bar No. 191199
Russell D. Willard
Senior Assistant Attorney General
GA Bar No. 760280
40 Capitol Square, S.W.
Atlanta, Georgia 30334

ROBBINS ROSS ALLOY BELINFANTE
LITTLEFIELD LLC

*/s/ Josh B. Belinfante*
Josh B. Belinfante
GA Bar No. 047399
Ryan Teague
GA Bar No. 701321
Kimberly Anderson
GA Bar No. 602807
500 14th Street NW
Atlanta, GA 30318
Telephone:  (678) 701-9381

</div>

Facsimile:    (404) 856-3250
jbelinfante@robbinsfirm.com
rteague@robbinsfirm.com
kanderson@robbinsfirm.com

STRICKLAND BROCKINGTON LEWIS LLP
Bryan P. Tyson
Special Assistant Attorney General
GA Bar No. 515411
Midtown Proscenium Suite 2200
1170 Peachtree Street N.E.
Atlanta, GA 30309
(678) 347-2200
bpt@sbllaw.net

*Attorneys for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

FAIR FIGHT ACTION, *et al*.,

     Plaintiffs,

vs.

BRAD RAFFENSPERGER, in his
official capacity as the Secretary of
State of Georgia; *et al.*,

     Defendants.

Civil Action No.: 1:18-cv-05391-SCJ

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this date electronically filed the foregoing

**STATE DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO**

**DISMISS PLAINTIFFS' COMPLAINT** with the Clerk of the Court using the

CM/ECF system which will automatically send email notification of such filing to

the attorneys of record listed on the case.

This 28th day of January, 2019.

                           */s/ Josh B. Belinfante*
                           Josh B. Belinfante
                           GA Bar No. 047399