# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

FAIR FIGHT ACTION and
CARE IN ACTION,

    *Plaintiffs*,

    v.

BRAD RAFFENSPERGER, et al.,

    *Defendants*.

Civ. Act. No. 18-cv-5391 (SCJ)
Jury Trial Demanded

## PLAINTIFFS' RESPONSE TO
## DEFENDANTS' MOTION TO DISMISS

Plaintiffs seek to end the unconstitutional and unlawful suppression of voter rights that permeates Georgia's elections system. Plaintiffs detail in their Complaint the serious and pervasive problems in Georgia's elections system, from unconstitutional purging of voters from the voter registration rolls, (Compl. ¶¶ 23, 39-44), to discriminatory restrictions on voter registration, (Compl. ¶¶ 23-24, 39-56), to insecure election technology, (*id.* ¶¶ 57-69), to insufficient polling locations and voting materials, (*id*. ¶¶ 70-113), to inadequately trained elections officials throughout the state, (*id*. ¶¶ 73-113), all of which severely burden, and in some cases disenfranchise, Georgia's voters.

Defendants try to defend Georgia's discriminatory elections system—and dodge their incontestable responsibility for its pervasive failings—with worn out arguments about standing, immunity, and failure to state a claim. Defendants employ a playbook so tired that four days ago the Eleventh Circuit rejected identical arguments relating to sovereign and legislative immunity. This Court should likewise reject Defendants' motion to dismiss.[1]

## I.   ARGUMENT

This Court should deny Defendants' motion to dismiss: (1) Plaintiffs have standing; (2) Defendants do not have immunity, sovereign or legislative; and (3) the Complaint more than meets the pleading requirements of Fed. R. Civ. P. 8(a).

### A. THE COURT MUST GENERALLY ACCEPT AS TRUE THE FACTS ALLEGED IN THE COMPLAINT.

"To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Under Federal Rule of Civil Procedure 8(a), "the complaint need only give the

---

[1] Plaintiffs intend to file an Amended Complaint within 21 days of Defendants' filing of this motion to dismiss, as permitted under Fed. R. Civ. P. 15(a)(1)(B). Because Local Rule 7.1(B) requires a response to a motion to dismiss within 14 days, Plaintiffs also file this response to Defendants' motion.

defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015) (citations omitted). According to this "simplified standard for pleading, a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Id.* (citations omitted).[2]

### B. NO IMMUNITY DOCTRINE ALLOWS DEFENDANTS TO AVOID THEIR CONSTITUTIONAL DUTIES (DEF. BR. §§ III AND IV.B).

Defendants assert two immunity (and therefore jurisdictional) claims— sovereign and legislative—to avoid responding to Plaintiffs' serious allegations. That Defendants have not yet withdrawn those defenses is surprising.

Last Thursday, the Eleventh Circuit issued an opinion that decided the sovereign and legislative immunity questions squarely against Defendants. *Curling v. Sec'y of State*, ___ F. App'x ___, 2019 WL 480034 (11th Cir. Feb. 8, 2019). *Curling* involved constitutional claims, brought pursuant to 42 U.S.C. § 1983, that

---

[2] Civil rights claims, including those alleged here, are subject to Fed. R. Civ. Proc. 8(a), not the Rule 9 heightened pleading standard. *Randall v. Scott*, 610 F.3d 701, 709–10 (11th Cir. 2010) (referencing *Iqbal*, 556 U.S. 662 (2009) for the proposition that there is no "heightened pleading standard" as it relates to Rule 8(a)(2) cases, including civil rights cases.)

Georgia's use of Direct Record Electronic ("DRE") machines violates due process and equal protection.

In its opinion, the Court wrote "under *Ex parte Young*, 209 U.S. 123 (1908), plaintiffs may sue state officials in their official capacities when they seek '*prospective* equitable relief to end *continuing* violations of federal law.'" *Id.* at *2. Just as the *Curling* plaintiffs "comfortably satisfy" the *Ex parte Young* requirement, so do Plaintiffs here. *Id.*

Defendants ask this Court to believe Plaintiffs simply seek retrospective relief for a botched election, but, as the Complaint's allegations make clear, Plaintiffs seek fundamental changes in the way Georgia conducts elections to ensure that the electors never again face such unlawful and unconstitutional barriers when they attempt to exercise their right to participate in this democracy. (*See* Compl. ¶ 114; Prayer for Relief.) Although Plaintiffs detail the legislation, policies, mismanagement, and, in fact, evils that sullied the 2018 election, Plaintiffs, just as the *Curling* Plaintiffs did, "use these allegations only to show that past is prologue to their future injuries caused by the same election system." *Curling*, 2019 WL 480034, at *4. Besides those allegations, Plaintiffs assert continuing violations. (*See* Compl. ¶ 2 ("[t]his Complaint describes the serious and unconstitutional flaws in Georgia's elections process—flaws that persist today"); *id*. ¶ 44 ("[t]he 'use it or lose it' policy . . . will continue to disenfranchise voters in

the future"); *id*. ¶ 56 ("The Secretary of State's adoption and application of the 'exact match' policy . . . will continue to disenfranchise, thousands of voters . . . ."); *id*. ¶ 114 ("[a]bsent judicial intervention, future elections in Georgia will be no different").) As the Court noted in *Curling*, "any number of binding precedents demonstrate why it is irrefragable that these allegations satisfy *Ex parte Young*." *Curling*, 2019 WL 480034, at *3. That this Court has jurisdiction is undeniable: "[u]ndoubtedly, *Ex parte Young* suits are permitted when the plaintiff alleges that state election officials are conducting elections in a manner that does not comport with the Constitution." *Id.* at *5.

*Curling* also addresses (and resoundingly rejects) Defendants' legislative immunity argument. *Curling* instructs that "[l]egislative immunity applies when a plaintiff challenges an official's act that is legislative." *Id.* As did the *Curling* plaintiffs, Plaintiffs here challenge—not the enactment—but the execution of state law.[3] There being no challenge to a legislative act, the immunity doctrine has no application. *See, e.g., Yeldell v. Cooper Green Hosp., Inc.*, 956 F.2d 1056, 1062

---

[3] The State Election Board's ("SEB") actions and omissions that Plaintiffs complain of include failing to adequately train, failing to provide counties with sufficient tools for voting, and abdicating its statutory oversight duties. These actions and omissions led to unconstitutional inconsistencies in applying election laws across Georgia's counties. (*See, e.g.*, Compl. ¶¶ 31, 34, 93, 94-114, 119-21, 132-33, 145-46, 150, 157.) These actions are not legislative rulemaking that would be protected by legislative immunity; they are administrative or enforcement activities.

(11th Cir. 1992) (quoting *United States v. Brewster*, 408 U.S. 501, 517, 92 S.Ct. 2531, 2540, 33 L.Ed.2d 507 (1972)) ("Only those acts which are 'necessary to preserve the integrity of the legislative process' are protected.").[4]

## C. PLAINTIFFS HAVE STANDING (DEF. BR. § I).

An organization can sue based on injuries to itself. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975). Like any other plaintiff, it must demonstrate injury, causation, and redressability. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

At the pleading stage, general factual allegations of injury suffice. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012); *see also Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1349 (11th Cir. 2009) (stating the degree

---

[4] The claims in the present case rest on 42 U.S.C. § 1983 and on violations of the Voting Rights Act of 1965. The presence of the Voting Rights Act claims militates in favor of exercising jurisdiction because numerous courts have ruled that, in enacting the Voting Rights Act, Congress validly and intentionally abrogated states' Eleventh Amendment immunity from suit. That abrogation of sovereign immunity makes the "SEB" a proper defendant in this case. *See OCA-Greater Houston v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017); *Mixon v. State of Ohio*, 193 F.3d 389, 398–99 (6th Cir. 1999); *see also Ga. State Conf. of NAACP v. State*, 269 F. Supp. 3d 1266, 1274 (N.D. Ga. 2017) (three-judge district court); *Ala State Conf. of NAACP v. State,* 264 F. Supp. 3d 1280, 1291–92 (M.D. Ala. 2017); *Hall v. Louisiana,* 974 F. Supp. 2d 944, 953 (M.D. La. 2013); *Reaves v. U.S. D.O.J.*, 355 F. Supp. 2d 510, 515–16 (D.D.C. 2005) (three-judge district court). The Eleventh Circuit ruled similarly in *Lewis v. Governor of Alabama*, 896 F.3d 1282, 1292-93 (11th Cir. 2018), *reh'g granted*, No. 17-11009, 2019 WL 364173, at *1 (11th Cir. Jan. 30, 2019), but the Court recently granted a rehearing en banc and vacated the panel opinion.

of support required for standing is linked to the stage of litigation in which it is being addressed)*; Jones v. Family First Credit Union*, 340 F. Supp. 3d 1356, 1360 (N.D. Ga. 2018) (citations omitted); *DeKalb Cty. V. HSBC N. Amer. Holdings, Inc.*, No. 1:12-CV-03640, 2013 WL 7874104, at *3 (N.D. Ga. Sept. 25, 2013). Plaintiffs' standing allegations are more than adequate.

### 1. Plaintiffs have adequately pleaded an injury in fact.

Standing is "undemanding," requiring "only a minimal showing of injury." *Fla. State Conference of NAACP v. Browning*, 522 F.3d 1153, 1163, 1165 (11th Cir. 2008). The injury necessary for standing need not have already occurred; injury that is imminent is sufficient. *Id.* at 1160-61.

Plaintiff Fair Fight Action alleges that it is an organization that "advocates for election reform," "engages in voter education," and "strives to increase voter turnout." (Compl. ¶ 9.) After describing specific efforts it has made in these areas in the past, Fair Fight Action alleges that "[t]he violations of law described in this Complaint will require Fair Fight Action "to spend additional resources educating voters about their rights, registering voters, and ensuring voters know the process for casting a ballot that will actually be counted." (*Id.* ¶ 10.)

Plaintiff Care in Action alleges that its mission is to "fight[ ] for dignity and fairness for the millions of domestic workers in the United States—most of whom are women" by "educating voters about voting procedures and advocating for

candidates who support domestic worker concerns." (*Id.* ¶ 11.) Care in Action alleges that Defendants' voter suppression tactics thwarted its mission because its advocacy and education programs focused on enabling voter participation in the 2018 election. (*Id.* ¶ 12.) Care in Action describes how, after the 2018 election, it tracked provisional ballot voters to ensure their votes were counted and further alleges it will have "to spend additional resources educating voters about their rights and ensuring that voters know the process for casting a ballot that will actually count." (*Id.* ¶¶ 11-12.)

These allegations adequately plead injury-in-fact standing under United States Supreme Court and Eleventh Circuit precedent. In *Havens Realty*, the seminal case for organizational standing, the plaintiff organization provided counseling services to people seeking equal access to housing and investigated complaints about racial discrimination in housing. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 368 (1982). The plaintiff organization sued the defendants for "racial steering," a violation of the Fair Housing Act of 1968. For standing, the plaintiff organization alleged that the defendants' wrongdoing had frustrated the plaintiff organization's effort to provide equal access to housing through counseling and that the plaintiff organization "had to devote significant resources to identify and counteract the defendants' racially discriminatory steering practices." *Id.* at 379 (alteration omitted). The Court held those allegations showed

that the plaintiff organization's ability to provide counseling services was impaired, constituting a "concrete and demonstrable injury to the organization's activities" that, "with the consequent drain on the organization's resources," was sufficient to ward off the defendants' motion to dismiss. *Id.* at 379.

Relying on *Havens Realty*, the Eleventh Circuit held that the NAACP and other organizations had standing to challenge a Florida voter registration law. The court stated the challenged law would require the plaintiffs to divert resources—personnel and time to educate voters on complying with the challenged law and resolving problems the law created—that otherwise could have been spent on other kinds of voter education and on voter registration. *Florida State Conf. of the Nat'l Ass'n of Colored People (NAACP) v. Browning*, 522 F.3d 1153, 1165-66 (11th Cir. 2008). The court explained that the net effect of expending resources to counteract the challenged law would be to increase the average cost of registering each voter and that, because the plaintiffs did not have unlimited resources, the plaintiffs' goals would suffer. *Id.* at 1166. That injury gave the plaintiffs standing. *Id.*

In two subsequent cases in which plaintiff organizations also challenged impediments to voter registration, the Eleventh Circuit relied on *Browning* and found standing because the plaintiff organizations showed they would have to divert personnel and time to educate and assist voters with respect to the alleged

wrongdoing. *See Arcia v. Florida Sec'y of State*, 772 F.3d 1335, 1341-42 (11th Cir. 2014); *Common Cause/Georgia*, 554 F.3d at 1350.

As in those cases, Plaintiffs here allege that the wrongdoing alleged in their Complaint will require them to spend additional resources on educating voters, registering voters and ensuring voters know how to cast a ballot that will actually be counted. (Compl. ¶¶ 10, 12.) These allegations satisfy the pleading requirements for injury in fact. *See AvMed, Inc.,* 693 F.3d at 1223 ("general factual allegations of injury" suffice).[5]

Defendants' challenges to Plaintiffs' injury-in-fact allegations demand a specificity in pleading that is not required. Defendants first argue that because Plaintiffs allege they will spend "additional" resources instead of alleging they will "divert" resources from other activities, Plaintiffs do not have standing. (Def. Br. at 6.) That is a meaningless distinction. No logical or legal basis exists for concluding that an organization that has to spend *additional* resources to counteract the defendant's wrongdoing has not been injured, but an organization that has to *divert* resources to counteract a defendant's wrongdoing has been injured. The key question, as *Havens Realty* makes clear, is whether the alleged injury consists of a

---

[5] *Browning*, *Billups*, and *Arcia* were all decided at a later stage in the proceedings, after discovery and after evidence of injury-in-fact was submitted to the court. Those cases in no way suggest that a complaint must contain all the facts the court found persuasive in finding injury-in-fact.

"drain on the organization's resources," *Havens Realty,* 455 U.S. at 379, not

whether plaintiffs have articulated that injury as spending "additional" resources

versus "diverting" resources. As the Eleventh Circuit explained in *Browning*,

organizations do not have unlimited resources. *Browning,* 522 F.3d at 1166. Thus,

an allegation that an organization will spend additional resources to counteract the

defendant's wrongdoing is tantamount to an allegation that the organization will be

diverting resources from its other activities.[6] Plaintiffs have alleged all that is

required at this early stage in the litigation.

Nor must Plaintiffs, as Defendants argue, allege "specific projects that were

either put on hold or curtailed as a result of the change necessitated by the

defendant's conduct." (Def. Br. at 7-8.) When then-Secretary of State ("SOS")

Brian Kemp made this same argument in *Martin v. Kemp*, 341 F. Supp. 3d 1326

---

[6] Showing just how indistinguishable the concepts of "diverted" and "additional" resources are, the court in *Browning* found that a particular plaintiff there had standing because that plaintiff anticipated it would have to spend many "more" (*i.e.*, additional) hours than it otherwise would have to follow up with voter registration applications. *Browning*, 522 F.3d at 1166; *see also Martin v. Kemp*, 341 F. Supp. 3d 1326, 1334 (N.D. Ga. 2018) (discussing the *Browning* court's approval of language in a Seventh Circuit case that seemingly referred to "added" cost as "diverted" resources); *Georgia State Conf. of the Nat'l Ass'n for the Advancement of Colored People (NAACP) v. Kemp*, 841 F. Supp. 2d 1320, 1336 (N.D. Ga. 2012) (quoting complaint allegations that described the plaintiff organization's injuries both as an expenditure of "additional resources" and as a "diversion of resources" and finding those allegations "plainly" sufficient for pleading standing).

(N.D. Ga. 2018), the court soundly rejected it.[7] The court observed that, contrary to the SOS's argument that an organizational plaintiff must explain exactly how its resources will be diverted from one endeavor to another, the Eleventh Circuit in *Browning* found that a plaintiff organization had sufficiently shown injury based only on its "anticipat[ion] that it will expend many more hours *than it otherwise would have* conducting follow-up work with registration applicants" because of the statute plaintiffs there were challenging. *Id.* at 1334 (quoting *Browning*, 522 F.3d at 1166 (emphasis added)).

Here, both Plaintiffs allege they will expend additional resources to counteract Defendants' wrongdoing alleged in the Complaint, including to ensure voters know how to cast ballots that will actually be counted—a specific reference to counteracting Defendants' alleged wrongdoing with respect to rejecting absentee and provisional ballots. (Compl. ¶¶ 10, 12.) Plaintiffs have thus alleged that Defendants' wrongdoing will cause Plaintiffs to expend more resources than they otherwise would have. Plaintiffs' allegations are adequate at this stage of the litigation.[8]

---

[7] And the court did so even though the plaintiffs were past the pleading stage and had submitted evidence to support their request for a preliminary injunction.

[8] Defendants cite no Eleventh Circuit authority for their argument and the cases Defendants do cite were not decided at the pleading stage. *See NAACP v. City of Kyle*, 626 F.3d 233 (5th Cir. 2010) (appeal of a bench trial); *ACORN v. Fowler*, 178 F.3d 350, 353, 362 (5th Cir. 1999) (appeal of a summary judgment decision

Plaintiffs need not allege "a change in the law that allegedly spurred them to action." (*See* Def. Br. at 8.) This Court rejected this argument in another case against the SOS. In *Democratic Party of Ga. v. Crittenden*, Case No. 1:18-CV-5181-SCJ, 2018 WL 5986537, at *7 (N.D. Ga. Nov. 14, 2018), this Court observed that, during the 2018 "election circumstances," problems emerged and plaintiffs diverted resources to address those problems. The Court found this gave the plaintiffs a "direct stake" in the litigation and stated, "[i]t is immaterial whether the organizational injury resulted from a change in the law or a change in election-year conditions and circumstances that bring into focus potential problems with the state's statutory framework." *Id.* Similarly, the Complaint here alleges numerous 2018 "election circumstances" that, using this Court's words, "brought into focus" potential and actual problems that Plaintiffs allege will cause them (and already caused Care in Action) to spend resources to counteract. *Id.*; (*see, e.g.*, Compl. ¶¶ 23-28, 35, 41, 43, 45, 49-55, 65-67, 72, 75-92, 95-114.) Plaintiffs have alleged all that is required to support their injury-in-fact allegations.[9]

_____

and noting the difference between assessing standing at the pleading stage as opposed to the summary judgment stage, where evidence is required).

[9] Defendants also argue Plaintiffs' "advocacy efforts do not establish standing" but cite as support only cases outside the Eleventh Circuit. (Def. Br. at 7). Even were those cases binding, they would not apply here. Those cases at most say resources spent on advocacy do not qualify as injury for standing purposes. Plaintiffs do not allege their injury consists of spending resources on advocacy; they allege their injury is having to spend resources on registering voters and educating them on

## 2.  Plaintiffs have adequately pleaded traceability.

Once a plaintiff satisfies the injury element of standing, courts often find the traceability and redressability prongs "easily satisfied." *See, e.g.*, *Ga. Latino Alliance for Human Rights v. Governor of Ga.*, 691 F.3d 1250, 1260 (11th Cir. 2012).

Defendants argue that Plaintiffs' injuries are not traceable to any of Defendants' actions (or inactions) because Defendants do not manage or administer elections. (Def. Br. at 9.)[10] This is yet another argument the SOS has already lost—just three months ago—this time in *Common Cause v. Kemp*, ___ F. Supp. 3d ___, 2018 WL 5915657, at * 15 (N.D. Ga. Nov. 12, 2018). There, as here, the SOS tried to downplay his responsibilities in order to challenge the plaintiffs' standing. But Judge Totenberg, echoing what Judge Murphy and the Eleventh Circuit ruled in *Grizzle v. Kemp*, held, in the context of whether the SOS could redress the plaintiffs' injury stemming from counting provisional ballots, that

---

how to cast a ballot. (Compl. ¶¶ 10-12.) Even the case law Defendants cite recognizes that a standing injury exists when the defendants have "undermine[d] the organization[s'] direct, non-advocacy services," *Int'l Acad. of Oral Med. & Toxicology v. Food & Drug Admin.*, 195 F. Supp. 3d 243, 256 (D.D.C. 2016).

[10] Defendants ignore the many Complaint allegations in addition to those of "gross mismanagement," including, for example, the allegations about enforcement of the unconstitutional "use it or lose it" law, the creation and enforcement of the "exact match" policy, and knowingly maintaining an insecure voting infrastructure susceptible to hacking. (*See, e.g.*, Compl. ¶¶ 23, 24, 29, 39-69.)

"the Secretary of State is the state official in charge of enforcing Georgia's election laws." *Id.* (*citing Grizzle v. Kemp*, 634 F.3d 1314, 1316 (11th Cir. 2011) ("the State Election Board is charged with enforcing Georgia's election code" and the SOS has "both the power and the duty to ensure that" local officials "comply with Georgia's election code[.]"); *see also Grizzle v. Kemp*, No. 4:10-CV-0007-HLM, 2010 WL 11519159 *8 (N.D. Ga. Mar. 15, 2010) (the SOS's argument "failed" "because Defendant [SOS] is the state official in charge of interpreting and enforcing Georgia's election law.").

Next, relying exclusively on *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), Defendants argue that Plaintiffs' injuries are "self-inflicted" because they are based on "fears of hypothetical future harm that is not certainly impending."[11] (Def. Br. at 12-13 (quoting *Clapper*, 568 U.S. at 416).) *Clapper* is inapposite. The plaintiffs in *Clapper* claimed standing because they had bought technology to prevent possible government interceptions of their phone calls. The Court described the plaintiffs' fear of intercepted calls as "highly speculative" and based on a "highly attenuated chain of possibilities." *Clapper*, 568 U.S. at 410. The Court thus rejected the plaintiffs' claim of standing. *Id.* at 418.

---

[11] Although Defendants make this argument with respect to traceability (Def. Br. at 12-13), "the analysis of the threat of future harm speaks to the question of an injury-in-fact." *Kennedy v. Beachside Commercial Props., LLC*, 732 F. App'x. 817, 820, n.2 (11th Cir. 2018).

No such speculation is required here. Plaintiffs allege that the flaws in Georgia's elections process have already harmed Georgia voters and Care in Action has already taken action to counteract Defendants' conduct. (*See, e.g.*, Compl. ¶¶ 11, 12, 49-55, 65-67, 75-92, 95-114.)[12] These allegations alone differentiate this case from *Clapper*. *See Arcia*, 772 F.3d at 1342, n.2 (distinguishing *Clapper* because a plaintiff-organization in *Arcia* had spent resources in the past to counter the defendants' actions whereas, in *Clapper*, "the Court found the plaintiffs' theory of standing 'relie[d] on a highly attenuated chain of possibilities'");[13] *see also Curling*, 334 F. Supp. at 1317 (explaining that the plaintiffs' allegation that Georgia's voting system might be susceptible to hacking is not "premised on a theoretical notion or 'unfounded fear' of the hypothetical 'possibility'" because the plaintiffs "allege that harm has in fact occurred").

### 3. Plaintiffs have adequately pleaded redressability.

Defendants argue that Plaintiffs' injuries are not redressable because Plaintiffs would continue to spend resources on voter education even if the Court

---

[12] Plaintiffs also allege that these problems will reoccur unless Defendants are enjoined from engaging in the same conduct during the next election. (*See, e.g.*, Compl. ¶¶ 44, 56, 114, 124, 136, 159, 165, and 175.)

[13] Defendants are incorrect that "[m]ost of the Eleventh Circuit's decision [sic] on organizational standing came before *Clapper*," including *Arcia* (Def. Br. at 13 n.7.) The Eleventh Circuit decided *Arcia* after the Supreme Court decided *Clapper*.

grants their requests for relief. (Def. Br. at 14.)[14] Nothing in the Complaint alleges this, however, and Defendants' speculation provides no basis for dismissal.

Further, whether Plaintiffs would continue to spend resources on voter education in general is not the issue because those expenditures are not the injury Plaintiffs are alleging for standing. Plaintiffs' expenditures constituting injury for standing are the additional expenditures for voter education (and other activities) specifically aimed at counteracting Defendants' misconduct alleged in the Complaint. (Compl. ¶ 10 (alleging "The violations of law described in this Complaint will require Fair Fight Action to spend additional resources educating voters about their rights, registering voters, and ensuring voters know the process for casting a ballot that will actually be counted."); *id.* ¶ 12 (alleging "The violations of law described in this Complaint have required, and will continue to require, Care in Action to spend additional resources educating voters about their rights and ensuring that voters know the process for casting a ballot that will actually count.").) Common sense, which this Court should apply to Plaintiffs' allegations, prevents an assumption that Plaintiffs would continue spending resources to counteract Defendants' wrongdoing even after that wrongdoing has stopped because Plaintiffs' requested relief was granted. *See Iqbal*, 556 U.S. at

---

[14] Defendants also state that voter education is Plaintiffs' "primary mission," (Def. Br. at 14), but there is no such allegation in the Complaint.

678, 679 (on a motion to dismiss, courts draw reasonable inferences from the facts alleged and draw on their judicial experience and common sense when construing complaint allegations).

Eleventh Circuit precedent is clear that just because a plaintiff routinely engages in some education activities does not mean that other education activities aimed at a defendant's wrongdoing will not be redressed by the relief requested in the lawsuit. The court found standing in *Browning*, where the NAACP's regular activities included "election-day education" and the injury alleged included "educating volunteers and voters on [the challenged statute]." 522 F.3d at 1165-66. The court found standing in *Common Cause/Georgia*, where the NAACP's regular activities included "voter . . . education" and the injury it alleged was that it would have to "'educat[e] volunteers and voters on compliance' with . . . new voting requirements." 554 F.3d at 1350. And the court found standing in *Arcia*, where the plaintiff organizations' "missions . . . includ[ed] voter . . . education" and the plaintiffs' alleged injuries included "educat[ing] its members about Defendant's unlawful practices." 772 F.3d at 1341.

Moreover, Defendants' argument ignores the Complaint allegations saying Plaintiffs will be required to expend resources on items other than education, too, such as voter registration and ensuring that voters understand the process for casting a ballot that actually gets counted. (Compl. ¶¶ 10, 12.)

- 18 -

## D. BECAUSE DEFENDANTS CAN REDRESS THE ALLEGED HARMS, ALL NECESSARY PARTIES ARE PRESENT (DEF. BR. § II.A).

Defendants cite no cases to support their claim that county election boards are necessary parties under Fed. R. Civ. P. 19(a)(1)(A). (Def. Br. at 16.) Those boards are not necessary parties because Defendants can provide complete relief.

As explained above, Defendants oversee and supervise local elections officials. Courts have held that when state officials with the power to supervise and direct localities or counties are named defendants, the local registrars or board of elections are not necessary parties. *See, e.g.*, *State Comm. of the Indep. Party v. Berman*, 294 F. Supp. 2d 518, 520 (S.D.N.Y. 2003) (county boards of elections not necessary parties where defendant State Board of Elections had the power and responsibility to oversee the county boards). Election law cases against state-wide officials are routinely found to be properly brought without including any local county officials as defendants. *See U.S. v. Cunningham*, No. 3:08cv709, 2009 WL 3350028, at *8 (E.D. Va. Oct. 15, 2009) (rejecting defendants' argument that local officials are necessary parties in an Uniformed And Overseas Citizens Absentee Voting Act claim); *see also Nat'l Coalition for Students with Disabilities v. Bush*, 170 F. Supp. 2d 1205, 1210-11 (N.D. Fla. 2001) (citing *Harman v. Forssenius*, 380 U.S. 528, 537, n.14 (1965) as "holding that where the basic aim of the lawsuit challenging Virginia's voting qualification requirements was to secure relief which

defendant state board of elections was clearly capable of effecting, local registrars were not indispensable parties.").

County elections officials are also unnecessary parties because Plaintiffs are seeking a state-wide remedy for state-wide constitutional wrongs. In *League of Women Voters of Ohio v. Blackwell*, plaintiffs sued Ohio state-wide officials, alleging an unconstitutional elections process. *See League of Women Voters of Ohio v. Blackwell*, 432 F. Supp. 2d 723 (N.D. Ohio 2005), *aff'd in part, rev'd in part sub nom. League of Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008). The court held that because the plaintiffs "s[ought] a state-level remedy for alleged state-wide constitutional wrongs," the "presence or absence of the local [Boards of Elections] ha[d] no bearing on whether complete relief c[ould] be granted." *Id.* at 733.[15]

### E. PLAINTIFFS HAVE STATED A FAILURE-TO-TRAIN CLAIM (DEF. BR. § II.B).

Defendants also cite no cases for their argument that, to plead a failure-to-train case, Plaintiffs must allege "specific deficiencies" in training and "distinguish[] between the subject of the training (*e.g.*, rules, manuals, etc.) and the execution of the training." (Def. Br. at 17.) No such requirement exists.

---

[15] Even if the county election boards and officials were necessary parties, the counts should not be dismissed; instead, under Fed. R. Civ. P. 19(a)(2), the Court "must order that the [county election boards and officials] be made [] part[ies]."

Nonetheless, Plaintiffs have alleged specific errors attributable to inadequate training regarding provisional ballots, (Compl. ¶¶ 27, 94-99), and absentee ballots, (Compl. ¶¶ 28, 100-113).

Defendants next selectively cite *City of Canton, Ohio v. Harris,* 489 U.S. 378 (1989), discussing that "the government" is not liable for "a particular officer" who "may be unsatisfactorily trained[.]" (Def. Br. at 17.) Where the alleged shortcoming is with one officer, as it was in *Harris*, it makes sense that the "the officer's shortcomings may have resulted from factors other than a fault training program." *Id.* at 390-91.

But here Plaintiffs do not allege that one "unfortunate incident" occurred because of one "particular officer." (*See* Def. Br. at 17 (*citing Harris*, 489 U.S. at 390-91).) Plaintiffs allege Defendants "grossly mismanaged an election." (Compl. ¶ 2.) Plaintiffs allege "many poll workers," not just one, either "refused to comply with th[e] legal obligation" "to provide a provisional ballot to any voter who registration c[ould not] be confirmed" "or simply did not understand" that legal obligation. (*Id.* ¶¶ 26-27.) Because of Defendants' failure to train and oversee elections officials, "voters were misinformed about how [their provisional] ballots would be handled," (*id.* ¶¶ 95-96), "[e]lections officials [] gave the wrong instructions to voters who showed up at the wrong polling place," (*id.* ¶ 97), and "[e]lections officials failed to offer provisional ballots" to people "who show[ed]

- 21 -

up to vote and whose name [were] not on the voter registration rolls," (*id.* ¶ 98). Plaintiffs similarly allege Defendants' failure to train election officials on absentee ballots was widespread. (*Id.* ¶¶ 28, 102-09.) These are not isolated incidents attributable to one rogue poll worker.

Defendants are also incorrect that Plaintiffs have not pleaded intent or deliberate indifference. (Def. Br at 17-18.) In the Complaint allegations cited above, Plaintiffs have alleged widespread deprivations of constitutional rights of which Defendants were aware and on which Defendants deliberately chose not to train local officials. *See Williams v. Limestone County, Ala.*, 198 F. App'x. 893, 896 (11th Cir. 2006) (finding deliberate indifference where the "need for more or different training" was "obvious" and the failure to train was "likely to result in the violation of a constitutional right") (*citing Belcher v. City of Foley*, 30 F.3d 1390, 1397-98 (11th Cir. 1994)). Indeed, Plaintiffs allege that Defendants' wrongdoing was motivated by a desire to suppress votes. (Compl. ¶¶ 21, 25.)

Further, a policy of inaction when on notice that a program will violate the Constitution is equivalent to a decision to violate the Constitution. *Connick v. Thompson*, 563 U.S. 51, 61–62 (2001). Here, Defendants were on such notice. Besides "decades-long neglect of [an] elections infrastructure," Defendants knew that additional training was necessary because of "clos[ing] or mov[ing] approximately 305 [polling] locations," (Compl. ¶¶ 21, 25), "inoperable machines,

the inaccurate voter registration list, [] the 'exact match' and 'use it or lose it' policies," (*id.* ¶ 90), "high voter turnout during early voting," (*id.* ¶ 91), and the warning "by the Democratic Party that voter turnout would be high," (*id.*).

## F. PLAINTIFFS HAVE ADEQUATELY PLEADED CAUSATION FOR THE BOARD AND BOARD MEMBERS (DEF. BR. § IV.A).

Defendants argue that the SEB and its members should be dismissed because Plaintiffs have not pleaded a causal link between their alleged in jury and these Defendants. (Def. Br. at 20.) Defendants are incorrect.

In addition to the allegations Defendants themselves point out as specifically referring to the SEB, (*see id.* at 21), Plaintiffs allege that all Defendants, a term that includes the SEB and its members, caused a legally cognizable injury, and further allege the duties that all Defendants willfully disregarded, thereby causing Plaintiffs' injuries. (*See, e.g.*, Compl. ¶¶ 13, 22, 30-32, 34, 93 123, 134-35, 147-49, 158, 164, 173-74.) Plaintiffs then allege facts showing how Defendants failed to perform their duties, and allege that those failures injured Plaintiffs. (*See, e.g.*, *id.* ¶¶ 29, 34-114.) Plaintiffs have adequately pleaded causation with respect to all Defendants, including the SEB and its members.[16]

---

[16] Equally unavailing is Defendants' argument that Plaintiffs' Complaint is a shotgun pleading. (Def. Br. at 21). Defendants rely exclusively on *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1324 (11th Cir. 2015), but *Weiland* directly contradicts Defendants' argument. *Weiland* makes clear that incorporating by reference all fact allegations is appropriate; what is not appropriate is incorporating by reference in every count all previous counts. *Weiland*, 792 at

## G. PLAINTIFFS HAVE ADEQUATELY PLEADED DEFENDANTS' DISCRIMINATORY INTENT (DEF. BR. §§ V AND VI).

Defendants urge dismissal of Plaintiffs' Equal Protection and Fifteenth Amendment claims because "Plaintiffs only point to alleged disproportionate effects and make no reference whatsoever to discriminatory intent or purpose." (Def. Br. at 24, 25.) They say "the omission" of that "reference" "necessitates dismissal." *Id.*

Defendants' argument ignores that the Complaint puts intentional discrimination front and center: the challenged practices include "discriminatory voting barriers reminiscent of the Jim Crow era," "time-tested voter suppression tactics," and "a known strategy of voter suppression." (Compl. ¶¶ 17, 21, 25 (incorporated by reference into all counts).) For another, Rule 8(a)(2) "requires only a short and plain statement . . . to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Defendants obviously have "fair notice" that Plaintiffs claim intentional race discrimination: their brief identifies the claims as raising that issue. (Def. Br. at 24-25.) And Defendants acknowledge that the claims are grounded upon the extensive discriminatory effects pleadings, (*id.*),which are "circumstantial . . . evidence of intent" that courts have repeatedly found sufficient to state a

---

1324. The counts in Plaintiffs' Complaint incorporate by reference only fact allegations, not prior counts.

discrimination claim. *See Rogers v. Lodge*, 458 U.S. 613, 618 (1982); *Lee v. Virginia State Bd. of Elections*, No. 3:15cv357, 2016 WL 6921611 (E.D. Va. Feb. 2, 2016); *Veasey v. Perry*, 29 F. Supp. 3d 896 (S.D. Tex. 2014); *see also* Fed. R. Civ. P. 9(b) (even in fraud claim, "intent . . . may be alleged generally"). Defendants do not dispute any of this yet cry foul because of the "omission" of particular conclusory words. Defendants offer no authority for their counterintuitive position that magic words are necessary and dispositive.

Also, Defendants ignore Plaintiffs' alternative Equal Protection theory. (*See* Compl. ¶ 150.) In addition to pleading intentional discrimination, Plaintiffs allege the Equal Protection Clause is violated by "arbitrary and disparate treatment," a liability theory that does not require intent. *Bush v. Gore*, 531 U.S. 98, 104 (2000); *League of Women Voters of Ohio v. Brunner*, 548 F.3d 463, 477 (6th Cir. 2008).

## II.    CONCLUSION

For the reasons stated herein, Plaintiffs request that the Court deny the Motion to Dismiss.

Respectfully submitted this the 11th day of February, 2019.

**CERTIFICATION**

I certify that this brief has been prepared in a Times New Roman 14 point font, one of the font and point selections that this Court has approved. *See* LR 5.1(C)(3).

/s/ *Allegra J. Lawrence*
Allegra J. Lawrence (GA Bar No. 439797)
Leslie J. Bryan (GA Bar No. 091175)
Maia Cogen (GA Bar No. 832438)
**LAWRENCE & BUNDY LLC**
1180 West Peachtree Street
Suite 1650
Atlanta, GA 30309
Telephone: (404) 400-3350
Fax: (404) 609-2504
allegra.lawrence-hardy@lawrencebundy.com
leslie.bryan@lawrencebundy.com
maia.cogen@lawrencebundy.com

Thomas R. Bundy (Admitted *pro hac vice*)
**LAWRENCE & BUNDY LLC**
8115 Maple Lawn Blvd.
Suite 350
Fulton, MD 20789
Telephone: 240-786-4998
Fax: (240) 786-4501
thomas.bundy@lawrencebundy.com

Lovita Tandy (GA Bar No. 697242)
**TANDY LEGAL**
4480 South Cobb Drive
Suite H-315
Smyrna, GA 30080
Telephone: (770) 274-6179
lovita@tandylegal.com

- 26 -

Dara Lindenbaum (Admitted *pro hac vice*)
**SANDLER REIFF LAMB ROSENSTEIN &**
**BIRKENSTOCK, P.C.**
1090 Vermont Avenue, NW
Suite 750
Washington, DC 20005
Telephone: (202) 479-1111
lindenbaum@sandlerreiff.com

Elizabeth Tanis (GA Bar No. 697415)
John Chandler (GA Bar No. 120600)
957 Springdale Road, N.E.
Atlanta, GA 30306
Telephone: (404) 771-2275
beth.tanis@gmail.com
jachandler@gmail.com

Kurt G. Kastorf (GA Bar No. 315315)
**THE SUMMERVILLE FIRM, LLC**
1226 Ponce de Leon Avenue, NE
Atlanta, GA 30306
Telephone: (770) 635-0030
kurt@summervillefirm.com

Matthew G. Kaiser (Admitted *pro hac vice*)
Sarah R. Fink (Admitted *pro hac vice*)
Scott S. Bernstein (Admitted *pro hac vice*)
**KAISERDILLON PLLC**
1099 14th Street, NW
8th Floor West
Washington, DC 20005
Telephone: (202) 640-2850
Fax: (202) 280-1034
mkaiser@kaiserdillon.com
sfink@kaiserdillon.com

Andrew D. Herman (Admitted *pro hac vice*)
Sarah Dowd (Admitted *pro hac vice*)
**MILLER & CHEVALIER CHARTERED**

- 27 -

900 16th St. NW
Washington, DC 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
aherman@milchev.com
sdowd@milchev.com

Kali Bracey (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Fax: (202) 639-6066
kbracey@jenner.com

Jeremy H. Ershow (*pro hac vice pending)*
**JENNER & BLOCK LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 891-1600
Fax: (212) 891-1699
jershow@jenner.com

*Counsel for Fair Fight Action and Care in Action*