## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

FAIR FIGHT ACTION, INC, *et al.*,

    *Plaintiffs*,

    v.

BRAD RAFFENSPERGER, *et al.*,

    *Defendants*.

Civ. Act. No. 18-cv-5391 (SCJ)

## PLAINTIFFS' RESPONSE TO
## DEFENDANTS' RENEWED MOTION TO DISMISS

Defendants are charged with making Georgia's elections fair, uniform, and reliable. Rather than carrying out their charge, however, Defendants engage in tactics that privilege certain voters over others, echoing Georgia's Jim Crow past. Their misconduct undermines the core promise of a democratic election, violating numerous constitutional and statutory rights.

Rather than answer these charges on the merits, Defendants insist they are not accountable in a federal court for Georgia's unconstitutional elections. They say Plaintiffs have no right to sue; must sue, if anyone, the local officials who act at Defendants' bidding; or should direct their complaints to the Georgia Legislature and Governor rather than this Court. Defendants are wrong. Plaintiffs ask this Court to do precisely what federal courts are empowered and entrusted to do: ensure that elections comply with the United States Constitution and federal law.

**ARGUMENT**

This Court should deny Defendants' motion to dismiss. ("Def. Br." (ECF No. 48).) Plaintiffs have standing; all necessary parties are joined as Defendants; Defendants are responsible for Georgia's elections system and the misconduct detailed in the complaint; sovereign immunity does not bar Voting Rights Act claims against state entities; and no court has held that the "use it or lose it" statute is constitutional or complies with the Voting Rights Act.

## I.   THE COURT MUST GENERALLY ACCEPT AS TRUE THE FACTS ALLEGED IN THE AMENDED COMPLAINT.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Under Federal Rule of Civil Procedure 8(a), "the complaint need only give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015) (quotation marks and citations omitted). According to this "simplified standard for pleading, a court may dismiss a complaint only if it is clear that no relief could be granted under any set

2

of facts that could be proved consistent with the allegations." *Id*. (quotation marks and citations omitted).

## II.    PLAINTIFFS HAVE STANDING. (DEF. BR. § I.)

An organization can sue based on injuries to itself. *See Warth v. Seldin*, 422 U.S. 490, 511 (1975). Like any other plaintiff, it must demonstrate injury, causation, and redressability. *See, e.g.*, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Plaintiffs' standing allegations here are more than adequate.

### A.    *Plaintiffs adequately plead an injury in fact.*

Standing is "undemanding," requiring "only a minimal showing of injury." *Fla. State Conf. of NAACP v. Browning* ("*Browning*"), 522 F.3d 1153, 1163, 1165 (11th Cir. 2008) (quotation marks and citations omitted). At the pleading stage, general factual allegations of injury suffice. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1323 (11th Cir. 2012); *see also Common Cause/Ga. v. Billups* ("*Billups*"), 554 F.3d 1340, 1349 (11th Cir. 2009) (stating the degree of support required for standing is linked to the stage of litigation in which it is being addressed). Imminent injury is sufficient because the injury required for standing need not have already occurred. *Browning*, 522 F.3d at 1160-61.

Here, all Plaintiffs share the goal of protecting Georgians' right to vote. (Am. Compl. ¶¶ 10 (Fair Fight Action); 15 (Care in Action); 22 (Ebenezer); 25 (BMBC); 28 (Virginia-Highland); 32 (Sixth District A.M.E.) (ECF No. 41).) After

3

describing the specific efforts each has made in the area of voting rights in the past, Plaintiffs allege—in detail—that, as a result of the unconstitutional and otherwise unlawful legislation, policies, and actions alleged in the Amended Complaint, they have had to (in the case of Care in Action, Ebenezer, and BMBC) and will have to (in the case of all Plaintiffs) divert resources from their normal activities to counteract Defendants' misconduct. (Am. Compl. ¶¶ 12-13 (Fair Fight Action); 18 (Care in Action); 23 (Ebenezer); 26 (BMBC); 29-30 (Virginia-Highland); 34-35 (Sixth District A.M.E.).) Plaintiffs' allegations adequately plead injury-in-fact standing under United States Supreme Court and Eleventh Circuit precedent.

In *Havens Realty*, the seminal Supreme Court case for organizational standing, the plaintiff organization counseled people seeking equal access to housing and investigated complaints about racial discrimination in housing. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 368 (1982). The plaintiff organization sued the defendants for "racial steering," a violation of the Fair Housing Act of 1968. *Id.* at 366-67. Plaintiffs alleged that the defendants' wrongdoing had frustrated the plaintiff organization's effort to provide equal access to housing through counseling and that the plaintiff organization "had to devote significant resources to identify and counteract the defendants' racially discriminatory steering practices." *Id.* at 379 (alteration and citation omitted). The Court found those allegations sufficient to defeat the defendants' motion to dismiss

4

because they showed that the plaintiff organization's ability to provide counseling services was impaired, constituting a "concrete and demonstrable injury to the organization's activities" with a "consequent drain on the organization's resources." *Id.*

Relying on *Havens Realty*, the Eleventh Circuit held that the NAACP and other organizations had standing to challenge a Florida voter registration law. The court stated the challenged law would require the plaintiffs to divert resources—personnel and time to educate voters on complying with the challenged law and resolving problems the law created—that otherwise could have been spent on other kinds of voter education and on voter registration. *Browning*, 522 F.3d at 1165-66.

In two later cases in which plaintiff organizations also challenged impediments to voter registration, the Eleventh Circuit relied on *Browning* and found standing because the plaintiff organizations showed they would have to divert personnel and time to educate and assist voters about the alleged wrongdoing. *See Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341-42 (11th Cir. 2014); *Billups*, 554 F.3d at 1350.

As in those cases, Plaintiffs here allege that Defendants' wrongdoing will require them to spend additional resources on activities such as educating and assisting voters to avoid the voter suppression and disenfranchisement detailed in the Amended Complaint. (Am. Compl. ¶¶ 12, 18, 23, 26, 29, 34.) These allegations

more than satisfy the pleading requirements for injury in fact. *See AvMed, Inc.,* 693 F.3d at 1223 ("general factual allegations of injury" suffice) (quotation marks and citation omitted).

Defendants make two challenges to Plaintiffs' injury-in-fact allegations. Both are contrary to binding precedent.

Defendants first argue that Plaintiffs do not have standing because any additional resources they divert to counteract Defendants' misconduct will relate to their "existing mission[s]." (Def. Br. at 6, 8, 9.) According to Defendants, because each Plaintiff's mission includes the right to vote, Plaintiffs cannot sue Defendants for forcing them to spend additional resources—diverted from their normal activities—to securing the right to vote. This argument could not be more at odds with Eleventh Circuit precedent.

"[T]he Eleventh Circuit has held" that where "organizations [are] compelled to divert more resources *to accomplishing their goals*," that is "enough to confer standing even where the added cost has not been estimated and may be slight." *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1335 (N.D. Ga. 2018) (quoting *Browning*, 522 F.3d at 1165) (alterations and quotation marks omitted; emphasis added).

In *Browning*, the plaintiffs' goals were to "register[ ] voters in their respective communities." 522 F.3d at 1164. The organizations normally did so through "registration drives and election-day education and monitoring." *Id.* at

6

1166. The plaintiffs claimed that if the court did not enjoin the defendants from enforcing a voter registration statute, the organizations would have to dedicate additional resources to educating voters about the statute's requirements and helping voters kicked off the registration rolls. *Id.* at 1165-66. Directly contrary to the Defendants' argument here, the Eleventh Circuit held that "Plaintiffs . . . made a sufficient showing that they will suffer a concrete injury." *Id.* at 1165; *see also Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) (finding that organizations—whose missions included "voter registration and education" and "encouraging and safeguarding voter rights"—had been injured because they "had diverted resources to address" a program aimed at identifying non-citizens and removing them from voting rolls); *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1350-51 (11th Cir. 2009) (holding that the NAACP—which was "actively involved in voting activities" such as "voter registration, mobilization, and education"—had an injury sufficient to confer standing to challenge Georgia's voter ID law because it diverted resources to educate and assist voters in complying with the law's photo ID requirement).

Here, just as in *Browning*, *Arcia*, and *Billups*, each Plaintiff alleges that voting rights are part of its mission; that it engaged in general voter education and registration efforts in the past; and that Defendants' misconduct will require it to spend additional resources, diverted from its normal activities (which include non-

voter religious activities), to engage in activities specifically geared to counteracting Defendants' wrongdoing alleged in the Amended Complaint. (Am. Compl. ¶¶ 10-35.)

Defendants next argue that Plaintiffs' allegations of "future harm" "depend on conjecture" and are thus not sufficiently "imminent" to establish injury. (Def. Br. at 7-9.) This argument fares no better under Eleventh Circuit precedent.

Here, each Plaintiff alleges that, in connection with the 2020 elections, it will divert resources from its other activities to counteract Defendants' wrongdoing. (Am. Compl. ¶¶ 12-13 (Fair Fight Action), 17-19 (Care in Action), 23-24 (Ebenezer), 26-27 (BMBC), 29-30 (Virginia-Highland), 34-35 (Sixth District A.M.E.).) That is sufficient to establish standing. For harm to be "imminent," "the anticipated injury [must] occur with some fixed period of time in the future;" but it is not necessary that the injury "happen in the colloquial sense of soon or precisely within a certain number of days, weeks, or months." *Browning*, 522 at 1161. Thus, in *Browning*, the court held that the plaintiffs' claim that "they intend to increase voter registration efforts and anticipate increased registration applications ahead of the upcoming presidential election" was "sufficient to meet the immediacy requirement." *Id.* Like the organizations in *Browning*, Plaintiffs

identify a "fixed period of time in the future" when injury is anticipated: the next election. That allegation satisfies the imminence requirement. *See id.*[1]

Defendants also argue that Plaintiffs' alleged injury is conjectural because Georgia's election laws are "likely" to change, making "Plaintiffs' future education efforts . . . unnecessary." (Def. Br. at 7, 9.) Whether Georgia changes its laws has no bearing on whether Plaintiffs have standing to bring this case. "Article III standing is determined as of the commencement of the lawsuit and is not affected by subsequent events." *Trust One Payment Servs. Inc. v. Global Sales Sols., LLC*, Case No. 11 Civ. 1186, 2012 WL 13009204, at *4 (N.D. Ga. March 14, 2012) (citing *Charles H. Wesley Educ. Found., Inc. v. Cox*, 408 F.3d 1349, 1352 n.3 (11th Cir. 2005)).

Even if new legislation could affect Plaintiffs' standing—and, under the law, it cannot—the legislation Defendants are referencing would not, if signed into law, prevent Defendants' misconduct from injuring Plaintiffs. That legislation does not repeal the "use it or lose it" statute or repudiate the "exact match" policy; Defendants would still be able to close or move polling places and provide

---

[1] *Browning* also distinguished *Los Angeles v. Lyons*, 461 U.S. 95 (1983), a case Defendants cite (Def. Br. at 7), as a case involving a sequence of individually improbable events, including the plaintiff engaging in illegal behavior. The Eleventh Circuit concluded that, "[u]npacking the Court's basis for denying standing in *Lyons* reveals that there is no per se rule denying standing to prevent probabilistic injuries." *Browning*, 522 F.3d at 1162.

insufficient resources to local officials;[2] registration rolls would still be inaccurate; voting machines would still be unreliable; and local officials would still be poorly trained to deal with provisional and absentee ballots. Thus, that legislation would not obviate the need for Plaintiffs to educate and assist voters to protect against Defendants unlawfully stripping them of their right to vote using the tactics described in the Amended Complaint.[3] In short, Plaintiffs would still have far more than the "minimal showing of injury" (*see supra* at 3) required for standing.

B.    *Plaintiffs adequately plead traceability.*

Once a plaintiff satisfies the injury element of standing, courts often find the traceability and redressability prongs "easily satisfied." *See, e.g.*, *Ga. Latino Alliance for Human Rights v. Governor of Ga.*, 691 F.3d 1250, 1260 (11th Cir. 2012).

Relying exclusively on *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), Defendants argue that Plaintiffs "'manufactur[ed] standing'" by "'inflicting harm

---

[2] Indeed, the proposed legislation might add to the length of the lines by lowering the number of voting machines per voter.  *See* H.B. 316 at 411-13, 155th Gen. Assemb., Reg. Sess. (Ga. 2019) (H.B. 316 as of Mar. 14, 2019, as passed by the Georgia House and Senate), http://www.legis.ga.gov/legislation/en-US/Display/20192020/HB/316.

[3] *See, e.g.*, *id.* at 262-64, 277-80 (amendments related to "use it or lose it" statute); 118-25 (amendments related to "exact match" policy); 292-93, 305-11 (amendments related to polling place closures); 368-92, 411-13, 535-36, 538, 565-69, 1247-55 (amendments related to voting machines).

on themselves . . . based on their fears of hypothetical future harm that is not certainly impending.'"[4] (Def. Br. at 10 (quoting *Clapper*, 568 U.S. at 416).) *Clapper* is inapposite. The *Clapper* plaintiffs' claimed injury was acquiring technology to prevent possible government interceptions of their phone calls. The Court described the risk of plaintiffs' calls being intercepted as "highly speculative" and based on a "highly attenuated chain of possibilities," including that a court would rule that the interception was warranted. *Clapper*, 568 U.S. at 410, 414. The Court thus rejected the plaintiffs' claim of standing. *Id.* at 418.

No such speculation is required here. Plaintiffs allege the flaws in Georgia's elections process have already harmed Georgia voters, and Plaintiffs Care in Action, Ebenezer, and BMBC have already acted to counteract Defendants' conduct. (*See, e.g.*, Am. Compl. ¶¶ 17-18 (Care in Action); 23 (Ebenezer); 26 (BMBC).) Plaintiffs also allege these problems will reoccur unless this Court enjoins that same conduct in the next election. (*See, e.g.*, Am. Compl. ¶¶ 19, 52, 163-64, 167, 175-76, 180, 189-90, 199, 207, 229, 239.) These allegations differentiate this case from *Clapper*. *See Arcia*, 772 F.3d at 1342 n.2 (distinguishing *Clapper* because a plaintiff-organization in *Arcia* had spent

---

[4] Although Defendants make this argument with respect to traceability (Def. Br. at 9-11), "the analysis of the threat of future harm speaks to the question of an injury-in-fact." *Kennedy v. Beachside Commercial Props., LLC*, 732 F. App'x 817, 820, n.2 (11th Cir. 2018).

resources in the past to counter the defendants' actions whereas, in *Clapper*, "the

Court found the plaintiffs' theory of standing 'relie[d] on a highly attenuated chain

of possibilities'");[5] *see also Curling v. Kemp*, 334 F. Supp. 1303, 1315 (N.D. Ga.

2018) (explaining that plaintiffs' allegation that Georgia's voting system might be

susceptible to hacking is not "premised on a theoretical notion or 'unfounded fear'

of the hypothetical 'possibility'" because the plaintiffs "allege that harm has in fact

occurred").

C.    *Plaintiffs adequately plead redressability.*

Defendants argue that Plaintiffs' injuries are not redressable because

Plaintiffs would continue to spend resources on "voter education and assisting

voter turnout operations" even if the Court grants their requests for relief. (Def. Br.

at 11.)  Whether Plaintiffs would continue to spend resources on voter education

and turnout in general is not the issue because those expenditures are not the injury

Plaintiffs allege create standing. The injury is Plaintiffs' additional expenditures

for voter education and other activities specifically aimed at counteracting

Defendants' misconduct alleged in the Amended Complaint. (Am. Compl. ¶¶ 12-

13 (Fair Fight Action); 17-18 (Care in Action); 23 (Ebenezer); 26 (BMBC); 29

---

[5] As Plaintiffs pointed out when responding to Defendants' first motion to dismiss, Defendants are incorrect that "[m]any of the Eleventh Circuit's decision[s] on organizational standing came before *Clapper*," including *Arcia*. (Def. Br. at 10 n.6.) The Eleventh Circuit decided *Arcia* after *Clapper*.

(Virginia-Highland); 34 (Sixth District A.M.E.).) Common sense, which this Court must apply to Plaintiffs' allegations, defeats the assumption that Plaintiffs would continue spending resources to counteract Defendants' wrongdoing once this Court grants Plaintiffs' requested relief halting the misconduct. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009) (on a motion to dismiss, courts draw reasonable inferences from the facts alleged and draw on their judicial experience and common sense when construing complaint allegations).

Eleventh Circuit precedent establishes that just because a plaintiff routinely engages in some education activities does not mean other education activities aimed at a defendant's wrongdoing will not be redressed by the relief requested. And the court found standing in *Browning*, where the NAACP's regular activities included "election-day education" and the injury alleged included "educating volunteers and voters on [the challenged statute]." 522 F.3d at 1165-66. The court found standing in *Billups*, where the NAACP's regular activities included "voter education" and the injury it alleged was that it would have to "'educat[e] volunteers and voters on compliance' with . . . new voting requirements." 554 F.3d at 1350 (quoting *Browning*, 522 F.3d at 1165-66).

Defendants' argument also ignores the Amended Complaint's allegations that Plaintiffs will be required to expend resources on actions in addition to voter education and turnout, such as engaging in extensive vote-by-mail campaigns and

assisting voters to determine whether they have been purged from the voter rolls.

(*See, e.g.*, Am. Compl. ¶¶ 12, 18, 23, 26, 29.)

## III. DEFENDANTS ARE RESPONSIBLE FOR GEORGIA'S ELECTIONS SYSTEM AND THE MISCONDUCT DETAILED IN THE AMENDED COMPLAINT.

Defendants make several arguments—failure to join necessary parties, failure to state a failure-to-train theory, and failure to plead causation regarding the Board and its members—based on the incorrect premise that Defendants are not responsible for Georgia's elections system, despite being the state officials and agencies with statutory authority over all elections in Georgia. Defendants oversee and administer elections across Georgia's 159 counties, in compliance with many intersecting state and federal laws. While counties undeniably have a role in Georgia's elections system, they perform their duties at Defendants' direction. The Secretary of State puts it best:  "'[t]he Elections Division of the Secretary of State's Office organizes and oversees all election activity, including voter registration, municipal, state, county, and federal elections.'" (Am. Compl ¶ 55 (quoting Ga. Sec'y of State, *Elections*, http://sos.ga.gov/index.php/elections (last visited February 4, 2019)).)

### A.  *Because Defendants can redress the alleged harms, all necessary parties are present. (Def. Br. § II.A.)*

Defendants cite no joinder cases to support their claim that county election boards are necessary parties under Fed. R. Civ. P. 19(a)(1)(A). (Def. Br. at 12-15.)

County boards are not necessary parties because Defendants, who oversee and administer Georgia's elections, can provide complete relief.

When state officials with the power to supervise and direct localities or counties are named defendants, the local registrars or board of elections are not necessary parties. *See, e.g.*, *State Comm. of Indep. Party v. Berman*, 294 F. Supp. 2d 518, 520 (S.D.N.Y. 2003) (county boards of elections not necessary parties where defendant State Board of Elections had the power and responsibility to oversee the county boards). Election law suits against state-wide officials are routinely brought properly without naming county officials. *See United States v. Cunningham*, No. 3:08-cv-709, 2009 WL 3350028, at *8 (E.D. Va. Oct. 15, 2009) (rejecting argument that local officials are necessary parties in an Uniformed And Overseas Citizens Absentee Voting Act claim); *see also Nat'l Coalition for Students with Disabilities v. Bush*, 170 F. Supp. 2d 1205, 1210-11 (N.D. Fla. 2001) (citing *Harman v. Forssenius*, 380 U.S. 528, n.14 (1965) for the "holding that where the basic aim of the lawsuit challenging Virginia's voting qualification requirements was to secure relief which defendant state board of elections was clearly capable of effecting, local registrars were not indispensable parties").

Defendants argue that because they do not "control" county officials, they do not oversee Georgia's elections system. (Def. Br. at 13, 15.) This argument ignores the numerous allegations that illustrate Defendants exercising their

15

complete control—the removal of voters from the rolls under the "use it or lose it" statute (Am. Compl. ¶¶ 45, 69-81); the creation and implementation of the "exact match" policy (*id.* ¶¶ 44, 82-93); the insecurity and unreliability of Georgia's voting machines (*id.* ¶¶ 51, 94-107); and the failure to provide adequate resources to counties (*id.* ¶¶ 47, 121-31).

In any event, control is not the proper test; oversight is. *See, e.g.*, *Berman*, 294 F. Supp. 2d at 520. Georgia law grants Defendants oversight authority to set uniform standards across the state, to train, and to investigate failures of local elections officials. O.C.G.A. § 21-2-31; O.C.G.A. § 21-2-50(a)(11); *see also* (Am. Compl. ¶¶ 53-67.). As the Eleventh Circuit has explained, the Secretary of State and State Election Board are the entities responsible for Georgia's elections system because they are offices that are imbued "with the responsibility to enforce the . . . laws at issue in the suit." *See, e.g.*, *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011).

County elections officials also are not necessary parties because they cannot implement the state-wide remedies Plaintiffs seek for state-wide constitutional wrongs. In *League of Women Voters of Ohio v. Blackwell*, 432 F. Supp. 2d 723 (N.D. Ohio 2005), *aff'd in part, rev'd in part sub nom. League of Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008), plaintiffs sued Ohio state-wide officials, alleging an unconstitutional elections process. The court held that since

16

the plaintiffs "s[ought] a state-level remedy for alleged state-wide constitutional wrongs," the "presence or absence of the local [Boards of Elections] ha[d] no bearing on whether complete relief c[ould] be granted." *Id.* at 733.[6]

B.   *Plaintiffs adequately plead claims under 42 U.S.C. § 1983. (Def. Br. § II.B.)*

Defendants next try to avoid their responsibilities by arguing that if counties are not necessary parties to the suit, then all of Plaintiffs' claims are based on a failure-to-train theory that Defendants say is inadequately pleaded. This either/or premise is incorrect; as Plaintiffs point out above, much of the unlawful behavior alleged in the Amended Complaint relates to conduct unrelated to training or to county elections officials at all. In addition, the allegations about county elections officials' misconduct do not relate just to Defendants' violations of their failure to train obligations; they also relate to Defendants' additional duties to oversee, investigate, and bring enforcement actions against counties and their elections officials.  O.C.G.A. § 21-2-31(1), (2), (5), (10). Further, failure to train is one of several types of misconduct by an official that can cause a constitutional deprivation and violate 42 U.S.C. § 1983. *See Williams v. Limestone Cty.*, 198 F. App'x 893, 896 (11th Cir. 2006).

---

[6] Even if the county election boards and officials were necessary parties, the counts should not be dismissed; instead, under Fed. R. Civ. P. 19(a)(2), the Court "must order that the [county election boards and officials] be made [] part[ies]."

To the extent allegations do pertain to Defendants' failure to train, they are adequate to put Defendants on notice of the 42 U.S.C. § 1983 claims and the grounds on which they are based. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A failure-to-train theory under 42 U.S.C. § 1983 does not, as Defendants claim, "require greater specificity" in pleading. (Def. Br. at 16.) *See Leatherman v. Tarrant Cty. Narcotics Intelligence & Coord. Unit*, 507 U.S. 163, 168-69 (1993) (rejecting heightened pleading standard in cases arising under 42 U.S.C. § 1983); *Hoefling v. Miami*, 811 F.3d 1271, 1276 (11th Cir. 2016) (same).

As Defendants acknowledge (Def. Br. at 16), the key element of a failure-to-train theory is "deliberate indifference to the rights of the persons with whom the [subordinates] come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Here, Plaintiffs allege that Defendants acted with "deliberate indifference . . . to the constitutional rights of Georgians." (Am. Compl. ¶¶ 139, 155.) Plaintiffs allege that Defendants have the authority and a duty to train county elections officials. (*Id.* ¶¶ 57, 65, 131.) Plaintiffs then detail Georgia's "history of neglecting its elections infrastructure and suppressing votes," (*id.* ¶ 39), and Defendants' "fail[ure] to train county elections officials adequately on the use of provisional

ballots and absentee ballots, despite knowing that this training is necessary," (*id.* ¶ 139; *see also id.* at 155).[7]

Plaintiffs also "link[] the alleged actionable conduct to constitutionally insufficient training by Defendants" (Def. Br. 19): Plaintiffs allege that "poll workers" and "county officials," (Am. Compl. ¶¶ 49, 131), were not properly trained; that because of Defendants' failure to train and oversee elections officials, those officials "misinformed voters about whether absentee ballots had been accepted," (*id.* ¶ 50), and about how provisional ballots would be handled, (*id.* ¶ 134), "g[a]ve the wrong instructions to voters who show up at the wrong polling place," (*id.* ¶ 135), "fail[ed] to offer provisional ballots" to people "who show[ed] up to vote and whose names are not on the voter registration rolls," (*id.* ¶ 136), "fail[ed] to mail absentee ballots to voters in a timely manner," (*id.* ¶ 142), "reject[ed] absentee ballots for improper reasons," (*id.* ¶ 143); and counties "under

---

[7] Defendants make much of Plaintiffs' citation to *Democratic Party of Ga. v. Burkes*, No. 1:18-cv-00212 (M.D. Ga. Nov. 8, 2018). (Def. Br. at 19.) Plaintiffs cite that case as an example of elections officials failing to mail absentee ballots to voters in a timely fashion. As the Amended Complaint acknowledges, the United States District Court for the Middle District of Georgia remedied this issue in Dougherty County, (Am. Compl. ¶152), but the relief provided only applied to the 2018 Election. Future voters remain vulnerable to the same or similar misconduct.

the supervision of Defendants . . . commit[ted] errors in counting absentee votes,"

(*id.* ¶ 153).[8]

Plaintiffs' allegations are similar to those found adequate in *League of Women Voters of Ohio*, 432 F. Supp. 2d 723. There, the court held plaintiffs sufficiently pleaded failure to train by alleging defendants, the Secretary of State and Governor of Ohio, acted with "deliberate indifference" to voters' constitutional rights as shown by a "history of election problems in Ohio that should have put defendants on notice of the need for better training;" "election problems stem[ming] from a statewide failure to ensure adequately trained poll workers;" and "problems with provisional balloting" "occur[ing] on a broad basis." *Id.* at 729-30.

---

[8] Defendants also argue that the conduct at issue must be "the responsibility of an employee or agent of Defendants." (Def. Br. at 17 citing *Monell v. Dep't of Social Servs. of New York*, 436 U.S. 658, 692-95 (1978).) But *Monell* does not impose such a requirement. Indeed, § 1983 permits suits against high-level officials for others' conduct without requiring an employee or agent relationship if plaintiffs meet § 1983 fault and causation requirements. *See, e.g.*, *Taylor v. Ledbetter*, 818 F.2d 791 (11th Cir. 1987) (holding that children can bring § 1983 suits against state officials for abuse committed by foster parents). Because Defendants have statutory duties and authorities to train, oversee, investigate, and bring enforcement actions against counties and their elections officials, Defendants are subject to suit under § 1983 for constitutional deprivations caused by failing to exercise these duties. *See* O.C.G.A. § 21-2-31(1), (2), (5), (10); O.C.G.A. § 21-2-50(a)(11); *see also* (Am. Compl. ¶¶ 53-67.)

Defendants next argue that they are not liable for unsatisfactory training of "a particular officer." (Def. Br. at 16 citing *City of Canton v. Harris,* 489 U.S. 378 (1989).) Here, Plaintiffs allege Defendants "engaged in gross mismanagement" of an election. (Am. Compl. ¶ 2.) Plaintiffs allege "many poll workers," not just one, "either did not understand the requirement" to provide provisional ballots to voters whose registration could not be confirmed, "or simply refused to comply." (*Id.* ¶ 49.) Because of Defendants' failure to train and oversee elections officials, they misinformed voters and, in some cases, improperly prohibited voters from casting provisional and absentee ballots. (*Id.* ¶¶ 49, 50, 134-139, 142-149.) These are not isolated incidents attributable to one rogue poll worker; these are systemic, state-wide problems.

At this early point in the litigation, Plaintiffs have pleaded all that is required for a failure-to-train theory.

C.   *The Board and its members are responsible for the harms pleaded. (Def. Br. § V.)*

The Board and its members argue they should be dismissed because the "duties of the Board are limited" and the Amended Complaint "failed to allege the Board's performance or non-performance of any of its statutory duties caused any of Plaintiffs' alleged harms." (Def. Br. at 24-25.)

Defendants' argument ignores Plaintiffs' lengthy allegations that the Board has central responsibility for administering Georgia elections and ensuring their

21

fairness, and that Georgia elections were unfair on the Board's watch. (Am.

Compl. ¶¶ 1-4, 37-54, 61-157.) Further, Plaintiffs did plead causation: Each count

claims constitutional and federal statutory harms resulting from the Board and its

members breaching their duties. (*Id.* ¶¶ 162-65, 172-79, 185-98, 204-06, 211-14,

228, 232, 236, 238.)

## IV.    THE BOARD IS SUBJECT TO SUIT UNDER THE VOTING RIGHTS ACT. (DEF. BR. § IV.)

Defendants argue that because the Board is a government agency, the

Eleventh Amendment bars all claims against it.[9] (Def. Br. at 23-24.) The Eleventh

Amendment, however, does not immunize Plaintiffs' claim (Count V) under

Section 2 of the Voting Rights Act, which was promulgated under the Fourteenth

and Fifteenth Amendments and abrogates sovereign immunity. *See Ga. State Conf.*

*of NAACP v. State*, 269 F. Supp. 3d 1266, 1275 (N.D. Ga. 2017) (three-judge

district court); *OCA-Greater Houston v. Texas*, 867 F.3d 604, 614 (5th Cir. 2017);

*Mixon v. Ohio*, 193 F.3d 389, 398 (6th Cir. 1999); *see also Lewis v. Governor of*

*Ala.*, 896 F.3d 1282, 1293 (11th Cir. 2018), *vacated and reh'g en banc granted on*

---

[9] Defendants do not dispute that, under the *Ex Parte Young* exception to the
Eleventh Amendment, the individual defendants, including the Board's members,
are properly subject to suit for acts taken within their official capacities. *See, e.g.*,
*Curling v. Sec'y of State*, ___ F. App'x ___, 2019 WL 480034 (11th Cir. Feb. 7,
2019) (holding Eleventh Amendment did not bar claims against Secretary of State
and members of State Election Board).

*other grounds*, 914 F.3d 1291.[10] The Board is subject to suit under Section 2, and

Defendants' overbroad argument to the contrary should be rejected.[11]

## V.   PLAINTIFFS ADEQUATELY PLEAD A CONSTITUTIONAL CHALLENGE TO "USE IT OR LOSE IT." (DEF. BR. § III.)

Plaintiffs challenge Georgia's "use it or lose it" statute under the First,

Fourteenth and Fifteenth Amendments, and the Voting Rights Act. Defendants

argue that last year's Supreme Court decision in *Husted v. A. Phillip Randolph*

*Inst.*, 584 U.S. ___, 138 S. Ct. 1833 (2018), forecloses Plaintiffs' challenges

because the Court held that Ohio's version complied with the National Voter

Registration Act of 1993 ("NVRA"). (Def. Br. at 23.) Defendants misstate the

Supreme Court's holding.

*Husted* decided only whether the NVRA authorized the Ohio law, not

whether the Ohio law was constitutional. The Court acknowledges this limit on its

---

[10] In *Lewis*, an Eleventh Circuit panel held that § 2 of the Voting Rights Act "did abrogate state sovereign immunity, and thus [the Court had] jurisdiction to hear the plaintiffs' claim against Alabama." 896 F.3d at 1292-93. In January 2019, the Eleventh Circuit voted to rehear the case *en banc*. No. 17-11009 (11th Cir. Jan. 30, 2019). The petition for rehearing did not challenge the panel's holding that the Voting Rights Act abrogates sovereign immunity, *State Appellees' Petition for Rehearing En Banc* at 1-2, No. 17-11009 (11th Cir. Aug. 29, 2018), and the *en banc* briefing notice likewise asked counsel to focus on unrelated issues in their *en banc* briefs. *Memorandum to Counsel,* No. 17-11009 (11th Cir. Feb. 12, 2019).

[11] Plaintiffs agree the Board has sovereign immunity with respect to the Section 1983 claims (Counts I to IV) and the Help America Vote Act claim (Count VI). Plaintiffs withdraw those claims against the Board entity only.

analysis: "[w]e assume for the sake of argument that Congress has the constitutional authority to limit voting eligibility requirements in the way respondents suggest." *Husted*, 138 S. Ct. at 1846 n.5; *see also id.* at 1848 ("The NVRA prohibits state programs that are discriminatory, *see* § 20507(b)(1), but respondents did not assert a claim under that provision."). As the Court states in its conclusion, "this case presents a question of statutory interpretation . . . [t]he only question before us is whether it violates federal law." *Id.* at 1848.

Defendants also mischaracterize the fate of a previous constitutional challenge to the "use it or lose it" statute in this Court, stating that this Court dismissed the claim. (Def. Br. at 4 and 20 n.12.) While this Court did initially dismiss a First Amendment challenge to Georgia's "use it or lose it" law, the Eleventh Circuit vacated and remanded that dismissal, instructing this Court to "conduct a more detailed analysis of the First Amendment question." *Common Cause v. Kemp*, 714 F. App'x 990, 991 (11th Cir. 2018). In so ruling, the Eleventh Circuit made clear that *Husted* does not foreclose constitutional challenges to the "use it or lose it" statute and that, to the contrary, this Court must consider such constitutional challenges.

Defendants also argue that Georgia's regulatory interests in maintaining its voter rolls through the "use it or lose it" law satisfy the *Anderson/Burdick* test and, thus, should be dismissed. This argument is inappropriate for a motion to dismiss.

24

Defendants' citations address the merits of claims under *Anderson/Burdick*, not the sufficiency of pleadings. *See Friedman v. Snipes*, 345 F. Supp. 2d 1356, 1378-79 (S.D. Fla. 2004) (denying motion for preliminary injunction relating to absentee voting rule); *Fulani v. Krivanek*, 973 F.2d 1539, 1543, 1548 (11th Cir. 1992) (reversing and remanding district court's judgment that Florida law discriminated against minor political parties and candidates).

## CONCLUSION

For the foregoing reasons, this Court should dismiss Defendants' motion and this matter should proceed.

Respectfully submitted this the 19th day of March, 2019.

## **CERTIFICATION**

I certify that this brief has been prepared in a Times New Roman 14-point font, one of the font and point selections that this Court has approved. *See* LR 5.1(C)(3).

*/s/Allegra J. Lawrence*
Allegra J. Lawrence (GA Bar No. 439797)
Leslie J. Bryan (GA Bar No. 091175)
Maia Cogen (GA Bar No. 832438)
**LAWRENCE & BUNDY LLC**
1180 West Peachtree Street
Suite 1650
Atlanta, GA 30309
Telephone: (404) 400-3350
Fax: (404) 609-2504
allegra.lawrence-hardy@lawrencebundy.com
leslie.bryan@lawrencebundy.com
maia.cogen@lawrencebundy.com

Thomas R. Bundy (Admitted *pro hac vice*)
**LAWRENCE & BUNDY LLC**
8115 Maple Lawn Boulevard
Suite 350
Fulton, MD 20789
Telephone: 240-786-4998
Fax: (240) 786-4501
thomas.bundy@lawrencebundy.com

Dara Lindenbaum (Admitted *pro hac vice*)
**SANDLER REIFF LAMB ROSENSTEIN &**
**BIRKENSTOCK, P.C.**
1090 Vermont Avenue, NW
Suite 750
Washington, DC 20005
Telephone: (202) 479-1111
lindenbaum@sandlerreiff.com

Elizabeth Tanis (GA Bar No. 697415)
John Chandler (GA Bar No. 120600)
957 Springdale Road, NE
Atlanta, GA 30306
Telephone: (404) 771-2275
beth.tanis@gmail.com
jachandler@gmail.com

Kurt G. Kastorf (GA Bar No. 315315)
**THE SUMMERVILLE FIRM, LLC**
1226 Ponce de Leon Avenue, NE
Atlanta, GA 30306
Telephone: (770) 635-0030
kurt@summervillefirm.com

Matthew G. Kaiser (Admitted *pro hac vice*)
Sarah R. Fink (Admitted *pro hac vice*)
Scott S. Bernstein (Admitted *pro hac vice*)
**KAISERDILLON PLLC**
1099 Fourteenth Street, NW
Eighth Floor West
Washington, DC 20005
Telephone: (202) 640-2850
Fax: (202) 280-1034
mkaiser@kaiserdillon.com
sfink@kaiserdillon.com
sbernstein@kaiserdillon.com

Andrew D. Herman (Admitted *pro hac vice*)
Sarah Dowd (Admitted *pro hac vice*)
**MILLER & CHEVALIER CHARTERED**
900 Sixteenth Street, NW
Washington, DC 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
aherman@milchev.com
sdowd@milchev.com

Kali Bracey (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Fax: (202) 639-6066
kbracey@jenner.com

Jeremy H. Ershow (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 891-1600
Fax: (212) 891-1699
jershow@jenner.com

*Counsel for Fair Fight Action, Inc.; Care in
Action, Inc.; Ebenezer Baptist Church of Atlanta,
Georgia, Inc.; Baconton Missionary Baptist
Church, Inc.; Virginia-Highland Church, Inc.; and
The Sixth Episcopal District, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 19th day of March, 2019, I caused to be electronically filed the foregoing **PLAINTIFFS' RESPONSE TO DEFENDANTS' RENEWED MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing upon Counsel of Record:

**Chris Carr**
Attorney General
**Dennis Dunn**
Deputy Attorney General
**Russell Willard**
Senior Assistant Attorney General
**Georgia Office of the Attorney General**
40 Capitol Square
Atlanta, GA 30334
Email: ccarr@law.ga.gov
Email: ddunn@law.ga.gov
Email: rwillard@law.ga.gov

**Brian Edward Lake**
Robbins Ross Alloy Belinfante Littlefield, LLC -Atl
500 Fourteenth Street, NW
Atlanta, GA 30318
678-701-9381
Fax: 404-856-3250
Email: blake@robbinsfirm.com

**Bryan P. Tyson**
Special Assistant Attorney General
Taylor English Duma LLP
1600 Parkwood Circle
Suite 200
Atlanta, GA 30339

Telephone: (678) 336-7249
Email: btyson@taylorenglish.com

**Carey Allen Miller**
Robbins Ross Alloy Belinfante Littlefield, LLC
500 Fourteenth Street, NW
Atlanta, GA 30318
678-701-9381
Fax: 404-856-3250
Email: cmiller@robbinsfirm.com

**Joshua Barrett Belinfante**
Robbins Ross Alloy Belinfante Littlefield, LLC -Atl
500 Fourteenth Street, NW
Atlanta, GA 30318
678-701-9381
Fax: 404-856-3250
Email: jbelinfante@robbinsfirm.com

**Vincent Robert Russo, Jr.**
Robbins Ross Alloy Belinfante Littlefield, LLC -Atl
500 Fourteenth Street, NW
Atlanta, GA 30318
404-856-3260
Fax: 404-856-3250
Email: vrusso@robbinsfirm.com

*/s/Allegra J. Lawrence*
Allegra J. Lawrence
Georgia Bar No. 439797

ii