IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FAIR FIGHT ACTION, *et al.*,<br><br>    Plaintiffs,<br><br>vs.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Secretary of State of Georgia; *et al.*,<br><br>    Defendants. | Civil Action No.: 1:18-cv-05391-SCJ |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR RENEWED MOTION
TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

Defendants Brad Raffensperger, in his official capacity as Secretary of State of the State of Georgia and Chairman of the State Election Board of Georgia, Rebecca N. Sullivan, David J. Worley, Anh Lee, and Seth Harp, in their official capacities as members of the State Election Board (collectively, "Members"), and the State Election Board ("Board") (collectively "Defendants"), submit this Reply in Support of Their Renewed Motion to Dismiss Plaintiffs' Amended Complaint.

**INTRODUCTION**

Plaintiffs' Response attempts to make headlines while almost completely ignoring the reality that the laws challenged by the Amended Complaint are on the

verge of changing in significant ways that Plaintiffs should favor. Plaintiffs, especially Fair Fight Action, still have not shown they have pleaded standing to pursue this action and remain confused about which entities in the state carry out the administration of elections. This Court should dismiss Plaintiffs' Complaint.

## ARGUMENT AND CITATION OF AUTHORITY

### I.     Plaintiffs have not pleaded standing.

Plaintiffs continue to rely solely on organizational standing to assert federal-court jurisdiction in this case. [Doc. 52, p. 3]. No individual voters assert any harms in this action and Plaintiffs do not assert associational standing. *Id.*

####    A.     Plaintiffs still cannot identify an injury-in-fact.

Plaintiffs have doubled down on an "injury" based on their *existing* efforts to fulfill their *existing* missions—identified as "protecting Georgians' right to vote." [Doc. 52, p. 3]. In their effort to turn this purpose into an injury, Plaintiffs attempt to distinguish Eleventh Circuit cases about standing, but fail to do so. In *Browning*, the plaintiffs had to divert efforts from existing voter registration efforts to counter new requirements that would remove voters from the voter rolls. *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1165-66 (11th Cir. 2008). Similarly, *Arcia* and *Common Cause/Georgia* both involved plaintiffs that had to change their efforts in light of a change in law. *Arcia v. Sec'y of Florida*, 772 F.3d 1335, 1341-

1342 (11th Cir. 2014); *Common Cause/Georgia v. Billups*, 554 F.3d 1340, 1353-55 (11th Cir. 2009). While Plaintiffs correctly identify that the purposes for which funds were diverted in *Arcia* and *Common Cause/Georgia* were consistent with those plaintiffs' organizational missions, Plaintiffs have taken a different approach in their Amended Complaint. Plaintiffs have only alleged that they will have to continue educating Georgia voters about *existing* statutory requirements in ways that most of them have not yet undertaken; especially Fair Fight Action.[1] *See* [Doc. 48-1, pp. at 8-9].

   B.   <u>Plaintiffs' claimed injuries are speculative.</u>

Even if the diversion of funds alleged were a sufficient injury, Plaintiffs freely admit that almost all of them have not yet done anything that would constitute an injury. Plaintiffs' Response acknowledges that Fair Fight Action[2] has

---

[1] Indeed, if Plaintiffs have an injury-in-fact based on the allegations in their Amended Complaint, then every organization focused on the "right to vote" will always have standing to challenge every provision of any state's election laws. That is a massive intervention of limited-jurisdiction federal courts into the internal operations of states. *See, e.g.*, *Bond v. United States*, 564 U.S. 211, 222, 131 S. Ct. 2355, 2364 (2011) ("By denying any one government complete jurisdiction over all the concerns of public life, federalism protects the liberty of the individual from arbitrary power").

[2] Fair Fight Action's only apparent organizational purposes are supporting Stacey Abrams' political activities and funding this lawsuit. The Foundation for Accountability and Civic Trust (FACT) recently filed an IRS complaint against Fair Fight Action with the Internal Revenue Service, alleging that Fair Fight

not yet incurred an injury, identifying only "Plaintiffs Care in Action, Ebenezer, and BMBC" as having "acted to counteract Defendants' conduct." [Doc. 52, p. 11]. At the very least, this Court should dismiss all Plaintiffs who have not already taken some action.

Plaintiffs claim that their alleged injuries are still "imminent" despite most having undertaken no action and failing to account for pending legislation that will significantly alter their efforts. Except for two paragraphs and a footnote [Doc. 52, pp. 9-10], Plaintiffs' response completely ignores HB 316, which now sits on the Governor's desk. *See* http://www.legis.ga.gov/legislation/en-US/Display/20192020/HB/316. As noted previously, this legislation will significantly change Georgia election laws related to claims raised by Plaintiffs in this action—including lengthening the time periods after which inactive voters are removed from voter rolls and protecting absentee-ballot voters who fail to include information currently required. *See* [Doc. 48-1, pp. 2-4].

---

Action is "currently being used by Abrams and her political supporters to continue her gubernatorial campaign's lawsuit and to continue funding her personal political activities" in violation of the Internal Revenue Code. *See* FACT Complaint (March 20, 2019), available at https://docs.wixstatic.com/ugd/65db76_2a68697ee1a04fc08868cc188d0a100f.pdf

- 4 -

The Eleventh Amendment limits Plaintiffs to *prospective relief* against a state. *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002); *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). At this point, Plaintiffs still have to decide how to spend their resources, which places their claims of injury squarely into the realm of *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S. Ct. 1138 (2013). The claimed injuries are only possible future injuries because most of the Plaintiffs have not yet spent money and all of them will have to determine how they will educate voters in response to the new legislation. Plaintiffs are left with several steps to reach anything more than a speculative injury—their sole alleged injury is that they *may* spend money to educate voters in ways that are *possibly* different than what they originally planned *if* they believe the new election laws will infringe on constitutional rights. Making financial decisions based on "hypothetical future harm" is not sufficient to plead standing in federal court. *Id.* at 416.

C.   Plaintiffs have not pleaded redressability.

Plaintiffs try to have it both ways on the question of redressability. They claim their injury-in-fact is the diversion of funds because they will have to spend money to educate voters about existing Georgia laws. [Doc. 52, pp. 3-4]. But then they claim that a change in the law that "common sense" tells the Court would

require *more* education of voters redresses their diversion-of-funds injury—apparently because they would now include different content. [Doc. 52, pp. 12-13].

As discussed above, Plaintiffs' sole alleged injury is the diversion of funds to educate voters consistent with their organizational purposes.[3] This is unlike the plaintiffs in *Browning* and *Common Cause/Georgia*, which did more than just educate voters about new requirements. The injuries suffered in *Browning* were redressable because the plaintiffs would once again be able to work on specific projects instead of educating voters. 522 F.3d at 1166. The injuries suffered in *Common Cause/Georgia* would be redressed because the plaintiffs would be able to again conduct 15-20 voter registration drives if it no longer had to help individuals obtain photo identification. 554 F.3d at 1350.

In this case, Plaintiffs allege only they will continue to do what they were doing before, whether this Court grants them relief or not. While the reason for taking that action may change, the "injury" cannot be redressed because Plaintiffs have not alleged their actions will change if this Court grants them relief.

---

[3] Efforts to engage in vote-by-mail campaigns and assist voters also align with existing organizational interests and do not show any additional basis for standing. [Doc. 52, p. 13-14].

**II.   Plaintiffs have failed to join necessary parties; inadequately pleaded a failure-to-train theory for § 1983 liability; and have inadequately pleaded causation for their alleged constitutional injuries.**

In their Response, Plaintiffs continue to ignore that: (1) local officials—not the Secretary nor State Election Board Members, individually[4]—have the statutory authority and duty to administer elections in Georgia; (2) Defendants do not have training or oversight authority over such local officials sufficient to impose § 1983 liability for failure to train; and (3) the named Defendants are not responsible for Plaintiffs' alleged harms. As such, Plaintiffs have failed to demonstrate how their constitutional claims and Defendants' alleged liability under 42 U.S.C. § 1983 are adequately pleaded "to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

   A.   <u>Plaintiffs fail to recognize statutory authority that responsibility for administration of Georgia's elections lies with local entities.</u>

The duties and authority of the Secretary and Board are defined by statute; none of which give them control over counties and election superintendents. *See* O.C.G.A. §§ 21-2-50; 21-2-31. In support of their refusal to acknowledge Georgia law, Plaintiffs cite a bevy of caselaw, all of which is inapposite to this case.

---

[4] Acknowledging the State Election Board's sovereign immunity (Def. Br. [Doc 48-1] at 23–24), Plaintiffs have withdrawn their § 1983 claims against the Board. (Pls.' Br. at 23, n. 11).

Plaintiffs rely heavily on *State Comm. of Indep. Party v. Berman*, 294 F. Supp. 2d 518, 520 (S.D. N.Y. 2003) for their contention that local registrars and boards of election are not necessary parties where state officials have "the power to supervise and direct [them]." [Doc. 52 at 15]. Even assuming this is true, it is immaterial to this case. Unlike the New York statute at issue in *Berman*, Georgia's election code does not authorize the Secretary or Board to "direct" local officials. *Id.* at 520 (citing N.Y. Elec Law § 3–102 (state board has power to "direct" the action of various local officials)). Rather, *local superintendents* are tasked with "instruct[ing] poll officers and others in their duties," selecting polling places, and other acts complained of by Plaintiffs. O.C.G.A. § 21-2-70. Defendants simply do not have the duty, or authority, to undertake such actions.[5]

Plaintiffs also analogize their claims to those in *League of Women Voters of Ohio v. Blackwell*, an action against Ohio state officials to enjoin allegedly unconstitutional election laws. 432 F. Supp. 2d 723 (N.D. Ohio 2005). But in that case, state officials also had a far greater role in the actual administration of the election. Ohio state officials appoint local boards of elections, issue instructions,

---

[5] While Plaintiffs are correct that the Board is authorized to investigate violations of election laws and bring enforcement actions, these duties pertain only to violations of the Election Code. O.C.G.A §§ 21-2-31; 21-2-33.1. Plaintiffs have not alleged any violation of the Election Code in this case.

and compel observance of election laws by all election officers—including more than just local board members. *Id.* (citing OHIO REV. CODE ANN. § 3501.05). Plaintiffs fail to recognize that Georgia law is completely different: the Secretary and Board have far more limited roles. *Compare* OHIO REV. CODE ANN. § 3501.05 *and* N.Y. Elec Law §3–102 *with* O.C.G.A. § 21-2-50 *and* O.C.G.A. § 21-2-70; *see also* [Doc 48-1 at 13–14] (describing statutory duties of Board and Secretary).

Ultimately, the cases cited by Plaintiffs are irrelevant because Defendants do not administer or conduct elections. Plaintiffs have failed to join the local entities and officials with whose actions Plaintiffs take issue.

B. <u>Section 1983 liability may only attach under a failure-to-train theory, which Plaintiffs have failed to adequately plead.</u>

Defendants do not suggest—as Plaintiffs appear to believe—that failure-to-train liability under 42 U.S.C. §1983 is subject to a heightened pleading standard. [Doc. 52 at 18]. Plaintiffs' claims must, however, provide greater specificity than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (quotation marks omitted). While Defendants are also well aware that multiple theories may support § 1983 liability, [Doc. 52 at 17] (citing *Williams v. Limestone Cnty.*, 198 F. App'x 893, 896 (11th Cir. 2006)),

there is no direct link between Defendants and the harms alleged in this case. As such, Plaintiffs' claims must be rooted in an alleged failure to train.[6]

Plaintiffs have recited at least one key element of a failure-to-train theory in their Amended Complaint—deliberate indifference—but they have not adequately pleaded the relation of this alleged indifference to any resultant unsatisfactory training to the remaining Defendants. Plaintiffs offer only general and conclusory allegations of Defendants' failure to train, [Doc. 41 ¶¶ 139, 163–64, 175, 189–90, 197], and this Court is not required to accept as true Plaintiffs' "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

Contrary to Plaintiffs' contention, *Monell v. Dep't of Social Services of New York* and its progeny *do* require some relationship between a defendant and the alleged bad actor for liability to attach, otherwise there would be no link between the actor and the alleged policy that motivated him or her. 436 U.S. 658, 693–94 (1978) (requiring *more* than an employee or agent relationship). In fact, the

---

[6] As stated in Defendants' Renewed Motion, Plaintiffs' Amended Complaint is a shotgun pleading, where every "Count" incorporates by reference each of the 157 paragraphs of factual allegations. *See Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1359 n. 9 (11th Cir. 1997). Defendants have no way of knowing which allegations are against them, and "must speculate as to which factual allegations pertain to which count." *Id.* Perhaps a properly pleaded complaint would elucidate other theories of liability, but such is not the case as Plaintiffs' Amended Complaint currently stands.

Supreme Court has previously declined to hold a county liable for the actions of a Sheriff where, due to the state's statutory scheme, the county had no "direct control" over how the Sheriff fulfilled his law enforcement duty. *McMillian v. Monroe Cnty., Al.*, 520 U.S. 781, 791 (1997). Like *McMillian*, Defendants have no control over the training of the poll workers whose actions Plaintiffs claim violated the Constitution; local superintendents and registrars have that authority under Georgia law. O.C.G.A. §§ 21-2-40; 21-2-70.

Plaintiffs cite *Taylor v. Lebetter* in support of their contention that failure-to-train liability applies here, but that case held simply that an affirmative duty of the state may apply with the existence of a "special relationship" between the abused child and her foster parents akin to that of a penal institution. 818 F.2d 791, 797 (11th Cir. 1987) ("We hold that a child involuntarily placed in a foster home is in a situation so analogous to a prisoner in a penal institution . . . that the foster child may bring a [§ 1983] action."). Again, Defendants have *no* control over the local poll workers, much less a custodial relationship. Because Plaintiffs have not pleaded a training relationship, their constitutional claims must be dismissed.

    C.    <u>Since Defendants do not administer Georgia's elections and Plaintiffs' failure-to-train theory fails to state a claim, Plaintiffs' pleading fails to show causation.</u>

Plaintiffs also insist that their broad and conclusory allegations are sufficient to show causation against the Board and its members because they have "central responsibility for administering Georgia elections." [Doc. 52 at 21]. As discussed above, this is simply incorrect. Plaintiffs have not—and cannot—allege that the Board's performance or non-performance of any of its statutory duties caused any of Plaintiffs' alleged harms, nor have they challenged any rule promulgated by the Board. Plaintiffs' claims against the Board and its members should be dismissed.

**III.** **The State Election Board is not subject to suit under § 2 of the Voting Rights Act.**

Plaintiffs apparently concede that the Eleventh Amendment bars all of their claims against the Board with the exception of Count V, which they bring under Section 2 of the Voting Rights Act. [Doc. 52 at 22-23]. The Eleventh Circuit has not decided whether Congress abrogated states' Eleventh Amendment sovereign immunity in Section 2 of the VRA. In 1999, the Sixth Circuit determined that Congress had done so. *Mixon v. Ohio*, 193 F.3d 389 (6th Cir. 1999). Last year, a panel of the Eleventh Circuit appeared to adopt the same position, *Lewis v. Governor of Ala.*, 896 F.3d 1282 (11th Cir. 2018) (relying on *Mixon*), but the en banc Court vacated that opinion this year, *Lewis v. Governor of Ala.*, 914 F.3d

1291 (11th Cir. 2019) (ordering en banc rehearing). Plaintiffs suggest that the vacated panel opinion nevertheless should control with respect to the question of Eleventh Amendment immunity and Section 2 of the VRA because the petition for rehearing did not challenge that portion of the opinion. [Doc. 52 at 23 n.10]. But the panel decision in *Lewis* involved competing minimum-wage legislation in Alabama and "ha[d] nothing to do with voting," which is why the panel affirmed the trial court's dismissal of the VRA claims. *Lewis*, 896 F.3d at 1298 ("The plaintiffs' voting claims fall short for the simple reason that their allegations have nothing to do with voting."). Whether those issues are considered by the en banc review in *Lewis*, the panel decision was vacated in full and is not controlling. *But see Ga. State Conference of the NAACP v. Georgia*, 269 F.Supp.3d 1266, 1274 (N.D. Ga. 2017) (three-judge panel, relying on *Mixon*, deciding Congress abrogated states' Eleventh Amendment sovereign immunity in Section 2 of the VRA.).

 As with Plaintiffs' other claims against the Board, Count V is not cognizable against the Board before this Court due to the Eleventh Amendment's provision of sovereign immunity against such a claim. Further, the plain text of the VRA does not include "unequivocal[] express[ion of congressional] intent to abrogate" state

sovereign immunity. *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55 (1996). This Court should dismiss all claims against the Board, including Count V.

**IV. Plaintiffs' claim about voter list maintenance should be dismissed.**

Plaintiffs continue to hammer the political catchphrase "use it or lose it" despite the U.S. Supreme Court precedent establishing that name as completely incorrect. [Doc. 52, p. 23]. But Plaintiffs do not contest that Georgia's voter-list-maintenance process matches the process reviewed by the Supreme Court in *Husted v. A. Philip Randolph Inst.*, 584 U.S. ___, 138 S. Ct. 1833 (2018), because they cannot. Instead, they only focus on the fact that the Supreme Court did not consider the constitutionality of the voter-list-maintenance process—a fact Defendants specifically explained in their motion. [Doc. 48-1, pp. 21-22].

Plaintiffs' primary factual contention in their constitutional challenge matches the argument made by the plaintiffs in *Husted*. The plaintiffs in that case argued that a non-returned notice effectively removed someone from the rolls for failing to vote. *Husted*, 138 S. Ct. at 1845-46. Plaintiffs make the same argument here, claiming that voters were improperly removed from the voter rolls for choosing not to vote in certain elections. [Doc. 41, ¶¶ 71-72, 205]. The Supreme Court found that a process like the one used in Georgia was part of the state's regulatory interests and upheld the Ohio process. *Id.* at 1845-46.

Plaintiffs also claim that the Eleventh Circuit's order issued *before* the U.S. Supreme Court decision in *Husted* requires this Court to consider constitutional challenges to the voter-list-maintenance statute. [Doc. 52, p. 24], *Common Cause v. Kemp*, 714 F. App'x 990, 991 (11th Cir. 2018). Not only was the Eleventh Circuit order issued before the Supreme Court ruled in *Husted*, the plaintiffs in *Common Cause* apparently did not think a constitutional claim remained after the ruling. They dismissed their constitutional challenge only one day after the Supreme Court's ruling. *Compare Husted*, 138 S. Ct. 1833 (decided June 11, 2018) with Voluntary Dismissal, *Common Cause v. Kemp*, Case No. 1:16-cv-00452-TCB (Document 47) (filed June 12, 2018).

As previously discussed, Plaintiffs have not challenged the relevant federal laws requiring voter list maintenance nor have they pleaded any facts different from those raised in *Husted*. This Court should dismiss those portions of Plaintiffs' Amended Complaint that challenge O.C.G.A. § 21-2-234.

## CONCLUSION

For the reasons stated above as well as those stated in Defendants' Renewed Motion to Dismiss Plaintiffs' Complaint, Defendants request that the Amended Complaint be dismissed with prejudice.

## **CERTIFICATION**

I certify that this brief has been prepared in a Times New Roman 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

Respectfully submitted this 2nd day of April, 2019.

    STATE LAW DEPARTMENT
    Christopher M. Carr
        Attorney General
        GA Bar No. 112505
    Annette M. Cowart
        Deputy Attorney General
        GA Bar No. 191199
    Russell D. Willard
        Senior Assistant Attorney General
        GA Bar No. 760280
    40 Capitol Square, S.W.
    Atlanta, Georgia 30334

    ROBBINS ROSS ALLOY BELINFANTE LITTLEFIELD LLC

    */s/ Josh Belinfante*
    Josh Belinfante
        GA Bar No. 047399
    Vincent R. Russo
        GA Bar No. 242648
    Brian E. Lake
        GA Bar No. 575966
    Carey A. Miller
        GA Bar No. 976420
    500 14th Street NW
    Atlanta, GA 30318

Telephone:   (678) 701-9381
Facsimile:    (404) 856-3250
jbelinfante@robbinsfirm.com
vrusso@robbinsfirm.com
blake@robbinsfirm.com
cmiller@robbinsfirm.com

TAYLOR ENGLISH DUMA LLP
Bryan P. Tyson
Special Assistant Attorney General
GA Bar No. 515411
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678.336.7249
btyson@taylorenglish.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FAIR FIGHT ACTION, *et al.*,<br><br>Plaintiffs,<br><br>vs.<br><br>BRAD RAFFENSPERGER, in his official capacity as the Secretary of State of Georgia; *et al.*,<br><br>Defendants. | Civil Action No.: 1:18-cv-05391-SCJ |

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this date electronically filed the foregoing **DEFENDANTS' REPLY IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will automatically send email notification of such filing to the attorneys of record listed on the case.

This 2nd day of April, 2019.

*/s/ Josh Belinfante*
Josh Belinfante
GA Bar No. 047399