```
 1                      UNITED STATES DISTRICT COURT
                        NORTHERN DISTRICT OF GEORGIA
 2                           ATLANTA DIVISION

 3

 4  FAIR FIGHT ACTION, ET AL.,    ) CIVIL ACTION FILE
                                  ) NO. 1:18-CV-5391-SCJ
 5           PLAINTIFFS,          ) ATLANTA, GEORGIA
                                  ) APRIL 29, 2019
 6           V.                   )
                                  )
 7  BRAD RAFFENSPERGER, IN HIS    )
    OFFICIAL CAPACITY AS THE      )
 8  SECRETARY OF STATE OF         )
    GEORGIA; ET AL.,              )
 9                                )
             DEFENDANTS.          )
10

11                  TRANSCRIPT OF MOTIONS HEARING
                 BEFORE THE HONORABLE STEVE C. JONES
12                   UNITED STATES DISTRICT JUDGE

13

14  APPEARANCES OF COUNSEL:

15  FOR THE PLAINTIFFS:            ALLEGRA J. LAWRENCE
                                   ELIZABETH V. TANIS
16                                 MAIA J. COGEN

17
    FOR THE DEFENDANTS:            BRYAN P. TYSON
18                                 JOSHUA B. BELIFANTE

19

20  COURT REPORTER:                ANDY ASHLEY
                                   1949 U. S. COURTHOUSE
21                                 75 TED TURNER DRIVE
                                   ATLANTA, GEORGIA  30303-3361
22                                 (404) 215-1478

23

24  PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY, TRANSCRIPT
    PRODUCED BY COMPUTER.
25
```

1                    P R O C E E D I N G S

2   (ATLANTA, FULTON COUNTY, GEORGIA; APRIL 29, 2019

3   IN OPEN COURT.)

4             THE COURT:  GOOD AFTERNOON TO EVERYONE.  MS. WRIGHT

5   WILL CALL THE CASE FOR TODAY.

6             THE CLERK:  YES, SIR, THE COURT CALLS THE MATTER OF

7   FAIR FIGHT ACTION, INCORPORATED AND OTHERS VERSUS BRAD

8   RAFFENSPERGER AS SECRETARY OF STATE AND OTHERS, CIVIL ACTION

9   NUMBER 1:18-CV-5391.

10            THE COURT:  I'M GOING TO ASK PLAINTIFFS' ATTORNEYS

11  FOR THE RECORD TO STAND UP AND INTRODUCE THEMSELVES STARTING

12  WITH MS. LAWRENCE.

13            MS. LAWRENCE:  GOOD AFTERNOON, YOUR HONOR.  I'M

14  ALLEGRA LAWRENCE, COUNSEL FOR PLAINTIFFS.

15            THE COURT:  GOOD AFTERNOON.

16            MS. COGEN:  GOOD AFTERNOON, YOUR HONOR.  MAIA COGEN

17  FOR THE PLAINTIFFS.

18            THE COURT:  GOOD AFTERNOON.

19            MS. TANIS:  GOOD AFTERNOON, YOUR HONOR.  BETH TANIS

20  FOR THE PLAINTIFFS.

21            THE COURT:  GOOD AFTERNOON.

22            MS. BRYAN:  GOOD AFTERNOON, YOUR HONOR.  LESLIE BRYAN

23  FROM LAWRENCE & BUNDY FOR THE PLAINTIFFS.

24            THE COURT:  GOOD AFTERNOON.

25            MS. DOWD:  GOOD AFTERNOON, YOUR HONOR.  SARAH DOWD

1  FOR THE PLAINTIFFS.

2            THE COURT:  GOOD AFTERNOON.  FOR THE DEFENSE?

3            MR. TYSON:  GOOD AFTERNOON.  BRYAN TYSON FOR THE

4  DEFENDANTS.

5            THE COURT:  GOOD AFTERNOON.

6            MR. BELINFANTE:  GOOD AFTERNOON, JUDGE.  JOSHUA

7  BELINFANTE ALSO FOR THE DEFENDANTS.

8            THE COURT:  GOOD AFTERNOON.

9            MR. RUSSO:  GOOD AFTERNOON, YOUR HONOR.  VINCENT

10  RUSSO FOR THE DEFENDANTS.

11            MR. TYSON:  WE HAVE RYAN GERMANY, THE GENERAL COUNSEL

12  FOR THE SECRETARY OF STATE'S OFFICE.

13            THE COURT:  GOOD AFTERNOON.

14            MR. WILLARD:  GOOD AFTERNOON, YOUR HONOR.  RUSSELL

15  WILLARD WITH THE ATTORNEY GENERAL'S OFFICE HERE FOR THE

16  DEFENDANTS.

17            THE COURT:  GOOD AFTERNOON.

18            MS. ANDERSON:  GOOD AFTERNOON.  KIMBERLY ANDERSON FOR

19  THE DEFENDANTS.

20            THE COURT:  GOOD AFTERNOON.

21            MR. MILLER:  GOOD AFTERNOON, YOUR HONOR.  CAREY

22  MILLER HERE FOR THE DEFENDANTS.

23            THE COURT:  ANYONE ELSE?  THE LAST TIME I HAD THIS

24  MANY LAWYERS, I CAN'T REMEMBER.  WE'RE HERE ON A MOTION TO

25  DISMISS.  I'VE READ YOUR BRIEFS, AND I COMPLIMENT YOU ON YOUR

1  BRIEFS.  YOUR BRIEFS ARE EXCELLENT, BUT AS I INDICATED I MAY

2  HAVE A FEW QUESTIONS FOR YOU.  SO HERE'S HOW I WOULD LIKE TO DO

3  IT TODAY, THE DEFENDANT IS THE MOVANT, AND SO YOU ALL WILL GO

4  FIRST.  YOU'LL HAVE ONE HOUR.  YOU CAN USE YOUR WHOLE HOUR, OR

5  YOU CAN USE AS MUCH AS YOU WANT, AND THEN YOU CAN RESERVE

6  REBUTTAL TIME.  I SAY THIS TO BOTH SIDES, DON'T FEEL OBLIGATED

7  TO USE ALL YOUR TIME.  THEN THE PLAINTIFFS WILL GO IN THE

8  MIDDLE.  YOU CAN USE ALL YOUR HOUR OR AS MUCH AS YOU WANT.

9            I HAVE A FEW QUESTIONS.  IF YOU ADDRESS THE

10  QUESTIONS, I'LL PROBABLY BE QUIET.  IF YOU DON'T ADDRESS THE

11  QUESTIONS I HAVE IN MIND, I WILL NOT INTERRUPT YOU MID

12  SENTENCE, BUT THERE ARE CERTAIN THINGS I WANT IN MY MIND

13  RESOLVED, AND I KIND OF GAVE YOU ALL A HINT WHAT I'M THINKING

14  ABOUT.

15            SO WITH THAT STATED, YOU MAY PROCEED.

16            MR. TYSON:  THANK YOU.  GOOD AFTERNOON.  BRYAN TYSON

17  FOR THE STATE DEFENDANTS.  I WANT TO DIG IN ON THE QUESTIONS

18  YOU ASKED PARTICULARLY.  I'M GOING TO BE COVERING STANDING,

19  SOME OF THE 11TH AMENDMENT ISSUES AND ISSUES RELATED TO THE

20  HUSTED CASE, THE HAVA AND NATIONAL VOTER REGISTRATION ACT

21  CASE.  MR. BELINFANTE WILL TAKE THE KIND OF INTERACTIONS OF

22  HOUSE BILL 316 WITH THE MOOTNESS QUESTIONS THAT ARE AT ISSUE

23  HERE ALONG WITH THE ISSUES RELATED TO COUNTY AND LOCAL

24  OFFICIALS AND THEM BEING NECESSARY PARTIES TO THE CASE.

25            THE COURT:  SOUNDS GOOD.

1            MR. TYSON:  SO I'LL BEGIN WITH STANDING.  STANDING

2   OBVIOUSLY AS WE KNOW IS MEASURED AT THE TIME OF THE FILING OF

3   THE LAWSUIT.

4            THE COURT:  CORRECT.

5            MR. TYSON:  AND SO I WANT TO WALK THROUGH THE THREE

6   ELEMENTS IN TERMS OF HOW THE PLAINTIFFS HAVE DEALT WITH THIS.

7   YOU'VE READ OUR BRIEF, AND YOU'VE SEEN THAT WE DO NOT BELIEVE

8   THE PLAINTIFFS HAVE SUFFICIENTLY ALLEGED STANDING AT THE

9   INITIAL PART OF THEIR COMPLAINT, THAT HOUSE BILL 316 KIND OF

10  ADDS TO A NUMBER OF THE PROBLEMS THE PLAINTIFFS HAVE WITH

11  STANDING, AND AS WE'LL DISCUSS THIS, I THINK YOU'LL SEE THAT

12  STANDING AND MOOTNESS AND THE ELEVENTH AMENDMENT ACTUALLY KIND

13  OF FOLD IN ON EACH OTHER A LITTLE BIT AS WE TRY TO FIGURE OUT

14  WHERE WE ARE.

15            AS IT RELATES TO A CONCRETE INJURY, THAT FIRST

16  ELEMENT OF STANDING, THE PLAINTIFFS HAVEN'T SUFFICIENTLY

17  ALLEGED THEY HAVE THAT CONCRETE AND PARTICULARIZED INJURY, AND

18  I THINK IT'S IMPORTANT FOR US TO REMEMBER THAT THE ONLY BASIS

19  THEY'RE ADVOCATING STANDING ON IS ORGANIZATIONAL STANDING BASED

20  ON A DIVERSION OF FUNDS.

21            THERE ARE NO INDIVIDUAL VOTERS.  THERE'S NO

22  ASSOCIATIONAL STANDING, AND SO FIRST LET'S KIND OF TALK ABOUT

23  THE PEOPLE, THE GROUPS THAT HAVE POSSIBLE FUTURE INJURIES,

24  BECAUSE AT THAT POINT WE HAVE THIS GROUP THAT THE PLAINTIFFS

25  ACKNOWLEDGE HAVE NOT YET DONE ANYTHING RELATED TO THE ELECTION

1  LAWS, AND WITH THAT GROUP WE'RE ALREADY KIND OF AT ALMOST THE

2  OUTER LIMITS OF ARTICLE 3 STANDING TO START WITH BECAUSE THE

3  SUPREME COURT AND THE ELEVENTH CIRCUIT ARE CLEAR THAT YOU HAVE

4  TO ALLEGE EACH PART OF THE CAUSAL CHAIN TO BE ABLE TO SHOW YOU

5  HAVE STANDING FOR A FUTURE INJURY.

6        AND SO FOR PLAINTIFFS LIKE FAIR FIGHT ACTION AND

7  OTHERS, THEY'RE ONLY ALLEGING THEY'RE GOING TO IMPLEMENT NEW

8  EDUCATION PROGRAMS IN RESPONSE TO THE 2018 ELECTION LAWS THAT

9  WERE IN PLACE.  WITH THE PASSAGE OF HOUSE BILL 316, THE

10  ELECTIONS ARE NOT GOING TO BE RUN ON THOSE LAWS GOING FORWARD.

11  THERE WILL BE A NEW SYSTEM IN PLACE --

12        THE COURT:  316 THOUGH, HOUSE BILL 316 AS I LOOK AT,

13  IT HAS NINE ISSUES THAT THE PLAINTIFFS HAVE BROUGHT FORTH.  IT

14  LOOKS LIKE HOUSE BILL 316 ADDRESSES TWO OF THEM DEFINITELY,

15  MAYBE TWO MORE, SO THAT'S NINE.  SO THEN WHAT ABOUT THE OTHER

16  FIVE?

17        MR. TYSON:  SO THERE ARE CHANGES TO -- WE CAN WALK

18  THROUGH SOME OF THOSE SPECIFICS.  THERE ARE SIGNIFICANT CHANGES

19  TO A NUMBER OF AREAS.  I THINK INITIALLY AS TO ABSENTEE

20  BALLOTS, CLEARLY AND KIND OF MOVING TO THE MOOTNESS PART OF THE

21  EQUATION HERE, WHEN WE'RE TALKING ABOUT MOOTNESS, IT'S CAN YOU

22  FASHION EFFECTIVE RELIEF AT THIS POINT, AND U.S. VERSUS GEORGIA

23  GETS INTO THAT QUESTION OF WHEN THE LEGISLATURE, FOR EXAMPLE,

24  WITH THE UOCAVA VOTERS TOOK THE EXACT SAME TIME PERIOD WITH THE

25  45 DAYS THAT THIS COURT HAD ORDERED.  IN THAT CASE THERE WAS NO

1  MORE RELIEF THAT COULD BE ORDERED.

2          SO THERE ARE SEVERAL AREAS AND MR. BELINFANTE WILL

3  GET INTO SOME OF THE SPECIFICS ON THIS WHERE THERE IS NO

4  FURTHER RELIEF THAT CAN BE ORDERED.  WE'RE TALKING ABOUT

5  ABSENTEE BALLOTS.  THE LEGISLATURE INCLUDED EVERY BIT OF RELIEF

6  ORDERED BY THIS COURT AND JUDGE MAY AND THEN SOME --

7          THE COURT:  WHAT ABOUT INADEQUATE VOTER REGISTRATION

8  ROLLS, INADEQUATE RESOURCES AT POLLING PLACES, OVERSIGHT AND

9  TRAINING.  HOUSE BILL 316 TALKS A LITTLE BIT ABOUT THAT ONE BUT

10  NOT COMPLETELY, AND THEN YOU ALSO HAVE POLLING PLACES, AND I

11  RECOGNIZE WHEN MR. BELINFANTE GETS UP HERE, HE'S GOING TO SAY

12  THAT'S SOMETHING THAT FALLS TO THE COUNTIES; HOWEVER, WE'RE

13  TALKING ABOUT STANDING, AND THAT'S ISSUES THAT COULD NOT BE

14  FAIR FIGHT AND THE OTHER FIVE SAY WE STILL HAVE TO ADDRESS THAT

15  AND HOUSE BILL 316 DOESN'T TAKE CARE OF ALL OF THAT.

16          MR. TYSON:  YES, YOUR HONOR, THEY COULD STILL SAY

17  THAT, BUT THE CHALLENGE IS SINCE THEIR COMPLAINT IS CHALLENGING

18  THE LAW AS IT WAS IN 2018, WE'RE IN A SCENARIO WHERE THAT LAW

19  IS NOT GOING TO BE USED AGAIN, AND THEIR COMPLAINT, AT LEAST

20  RIGHT NOW, IS NOT MAKING ALLEGATIONS REGARDING HOW THE LAW WILL

21  BE GOING FORWARD.

22          I CAN UNDERSTAND THEM SAYING WE'RE GOING TO HAVE

23  DISAGREEMENTS WITH THE LAW AS IT WILL BE IMPLEMENTED, BUT THAT

24  ALONE IS NOT GOING TO BE ENOUGH TO GET THEM STANDING,

25  ESPECIALLY WHEN YOU HAVE THIS WHOLE NEW STRUCTURE IN PLACE.

1        I THINK ONE OF THE PIECES THAT WE'RE KIND OF REALLY

2   TALKING AROUND IS WHEN YOU GET DOWN TO WHAT KIND OF DIVERSION

3   OF RESOURCES IS THIS, THAT EVEN ASSUMING THERE'S A BASIS IN THE

4   LAW THAT SAYS OKAY, THERE'S SOMETHING THEY CAN CHALLENGE HERE,

5   THEY STILL -- THE ALLEGATIONS OF DIVERSION OF FUNDS ARE

6   PRIMARILY WELL WE WERE GOING TO EDUCATE VOTERS ABOUT ONE TOPIC,

7   NOW WE'RE GOING TO EDUCATE VOTERS WITH A SLIGHTLY DIFFERENT

8   MESSAGE IN LIGHT OF THE WAY THE LAWS HAVE BEEN PUT FORWARD AND

9   SO --

10        THE COURT:  IN THE CASE OF THE NAACP I THINK IT'S

11   VERSUS ARCIA, A R C I A, DON'T THEY ADDRESS THAT?  TELL ME WHY

12   THAT DOESN'T APPLY, WHY CASE DOESN'T APPLY?

13        MR. TYSON:  YES, YOUR HONOR.  ARCIA WAS A SITUATION

14   AND IN THE ALL THE ELEVENTH CIRCUIT CASES, IN BROWNING AND

15   COMMON CAUSE, YOU ALWAYS SEE A DIFFERENCE HAPPENING HERE, YES,

16   WE'RE GOING TO DO A LITTLE MORE, BUT WE'RE DOING SOMETHING

17   CATEGORICALLY DIFFERENT THAT WE'RE SPENDING MONEY ON.

18        HERE WE HAVE ORGANIZATIONS THAT ARE ABOUT VOTER

19   EDUCATION, THEY'RE ABOUT VOTER TURNOUT, AND THEY'RE SAYING

20   WELL, WE'RE GOING TO DO MORE OF THAT ACTIVITY, THAT'S STILL THE

21   PURPOSE OF THE ORGANIZATION, AND IF WE'RE GOING TO BE IN A

22   SITUATION WHERE ARTICLE 3 STANDING EXTENDS THAT FAR OUT TO THAT

23   KIND OF INJURY, THEN WE'RE NOW AT A POINT WHERE PRETTY MUCH ANY

24   ORGANIZATION THAT ALLEGES SOMETHING TO DO WITH VOTING RIGHTS IS

25   GOING TO HAVE STANDING TO BRING CASES IN THE FEDERAL COURT,

1  WHICH IS A COURT OF LIMITED JURISDICTION.

2       THERE'S GOT TO BE MORE THAN JUST A SETBACK TO THEIR

3  ABSTRACT SOCIAL INTEREST WHICH I BELIEVE IS ALSO IN ARCIA FROM

4  THE ELEVENTH CIRCUIT.

5       THE COURT:  IN THAT CASE, AND I KNOW I HAVE THIS

6  WRITTEN OUT, THE COURT READS THAT ORGANIZATIONS CAN ESTABLISH

7  STANDING TO CHALLENGE THE ELECTION LAWS BY SHOWING THAT THEY

8  WILL HAVE TO DIVERT PERSONNEL AND TIME TO EDUCATE POTENTIAL

9  VOTERS IN COMPLIANCE WITH THE LAWS TO ASSIST THE VOTERS WHO

10  MIGHT BE LEFT OFF THE REGISTRATION ROLLS ON ELECTION DAY.

11  YOU'RE SAYING THAT HOUSE BILL 316 TAKES CARE OF ALL OF THAT?

12       MR. TYSON:  I'M SAYING THAT IN TERMS OF THE

13  PLAINTIFFS WHO HAVE A POSSIBLE FUTURE INJURY, THEY ARE NOW NOT

14  GOING TO HAVE TO SPEND THE MONEY THEY WERE OTHERWISE GOING TO

15  HAVE TO SPEND.  THEY'RE CHOOSING NOW -- AS FAR AS THE CAUSAL

16  CHAIN GOES, THE ALLEGATIONS ARE NOT THERE TO SUPPORT EVERY LINK

17  OF THE CAUSAL CHAIN IN THE COMPLAINT.  SO EITHER THEY NEED TO

18  CLARIFY WHAT'S GOING ON WITH THAT, OR THERE NEEDS TO BE -- THIS

19  IS A BASIS TO DISMISS BECAUSE THEY HAVE NOT ALLEGED A CONCRETE

20  INJURY.

21       THAT LEADS US, THOUGH, TO THE TRACEABILITY AND

22  REDRESSABILITY PROBLEMS WHEN YOU'RE LOOKING AT THE QUESTION OF

23  STANDING, AS WELL.  WE HAVE PLAINTIFFS WHO HAVE CHOSEN TO SPEND

24  MONEY.  THEY HAVE BASED THAT ON THEIR BELIEF THAT THE LAWS ARE

25  PROBLEMATIC.  THAT'S A LOT LIKE THE SITUATION IN CLAPPER WHERE

1  YOU HAD PLAINTIFFS WHO CHOSE TO SPEND MONEY.  THEY

2  SELF-INFLICTED BASICALLY THE HARM ON THEMSELVES, AND THE

3  SUPREME COURT SAID THAT WASN'T ENOUGH TO GET YOU ACROSS

4  STANDING.

5          THE CONCERN HERE IS SINCE WE'RE HAVING SUCH A

6  SIGNIFICANT CHANGE IN ELECTION LAW, WE'RE NOW IN A SITUATION

7  WHERE WE'RE GOING TO HAVE A NEW SET OF LAWS APPLYING WHERE YOU

8  CAN NO LONGER TRACE DIRECTLY THE EXPENDITURE OF FUNDS BACK TO

9  THE LAWS THAT ARE BEING CHALLENGED BECAUSE THESE LAWS AGAIN ARE

10  CHANGING, AND THIS IS WHERE THE MOOTNESS AND THE STANDING

11  QUESTION COME TOGETHER, THAT THERE'S THIS DIFFERENCE HAPPENING

12  BETWEEN WHAT THE LAW WAS IN 2018 AND WHAT THE LAW WILL BE IN

13  2020.

14          SO OUR CONCERN IS -- OUR POSITION IS THAT BECAUSE

15  WE'RE STILL IN THIS KIND OF HIGHLY ATTENUATED CHAIN OF

16  CAUSATION TO GET THERE, IF THE LAW IS IMPLEMENTED IN A WAY

17  PLAINTIFFS DISAGREE WITH, THEY MIGHT SPEND FUNDS ONE DAY OR

18  LOOKING AT A CAUSAL CHAIN THAT'S NOT SUFFICIENTLY ALLEGED GIVEN

19  THE CHANGE IN LAW THAT'S HAPPENED.

20          THE COURT:  LET'S SAY HYPOTHETICALLY, VERY

21  HYPOTHETICALLY I AGREE WITH YOU ON THE ONES THAT HOUSE BILL 316

22  MIGHT APPLY TO.  I'M STILL NOT HEARING HOW THE REMAINING ONES

23  THAT HOUSE BILL 316 DOES NOT APPLY TO WILL NOT CAUSE THE

24  PLAINTIFFS TO STILL HAVE TO DIVERT FUNDS.

25          MR. TYSON:  YES, YOUR HONOR, SO WHAT I'M SAYING IS

1  THAT FOR THE GROUPS OF PLAINTIFFS THAT ALLEGE ONLY POSSIBLE

2  FUTURE INJURY, THERE'S A PROBLEM WITH THE CAUSAL CHAIN TO GET

3  THERE.

4         FOR THE PLAINTIFFS THAT HAVE ALLEGED THAT THEY'VE

5  ALREADY DONE SOMETHING WHICH IS CARE IN ACTION, EBENEZER

6  BAPTIST CHURCH AND BACONTON MISSIONARY BAPTIST CHURCH, FOR

7  THOSE THREE WE STILL DON'T -- WOULD SAY THAT THAT'S NOT A

8  CONCRETE ENOUGH INJURY, BUT IN THAT CASE HOUSE BILL 316 REALLY

9  DOESN'T IMPLICATE THEIR STANDING BECAUSE THEY'VE ALREADY TAKEN

10  STEPS.  SO I THINK WE HAVE TO SEPARATE THE TWO GROUPS OF

11  PLAINTIFFS HERE IN TERMS OF THE ONES WHO HAVE ALREADY

12  DONE SOMETHING AND THE ONES WHO HAVE NOT YET TAKEN ANY ACTION.

13         AND, OF COURSE, THE ELEVENTH CIRCUIT RECOGNIZES AN

14  IMMINENT HARM CAN GET YOU ACROSS THAT STANDING LINE, BUT WE

15  STILL HAVE THE CLAPPER PIECE OF THE EQUATION THAT SAYS WE CAN'T

16  HAVE THIS HIGHLY ATTENUATED CHAIN OF POSSIBILITIES.  SO THAT'S

17  OUR ISSUES IN TERMS OF STANDING.

18         THE OTHER PIECE THAT HOUSE BILL 316 LEADS US TO IS

19  THE ELEVENTH AMENDMENT PROBLEMS THAT ALSO KIND OF GET WRAPPED

20  UP IN THIS QUESTION OF STANDING.  WE DISCUSS THE INITIAL BAR

21  AND SUITS AGAINST STATES IN FEDERAL COURT, AND THE PLAINTIFFS

22  OBVIOUSLY HAVE WITHDRAWN SOME OF THEIR CLAIMS RELATED TO THE

23  STATE ELECTION BOARD ON ELEVENTH AMENDMENT --

24         THE COURT:  LET ME JUST MAKE SURE WE'RE ALL ON THE

25  SAME PAGE WITH THAT ONE.  MY UNDERSTANDING IS THE PLAINTIFFS

1  ARE AGREEING WITH DEFENDANTS THAT COUNTS 1 THROUGH 4 AND COUNT

2  6 SHOULD BE DISMISSED AGAINST THE BOARD MEMBERS, AND COUNT 5

3  WOULD REMAIN; IS THAT CORRECT?

4          MS. TANIS:  YES, YOUR HONOR, THAT IS CORRECT.

5          THE COURT:  ALL RIGHT.

6          MR. TYSON:  SO, YOUR HONOR, OUR CONCERN WITH THE EX

7  PARTE YOUNG EXCEPTION THAT WE HAVE, YOU CAN PURSUE AGAINST

8  STATE OFFICIALS FOR CONTINUING PROSPECTIVE EQUITABLE RELIEF TO

9  END CONTINUING VIOLATIONS OF FEDERAL LAW.  SO AT LEAST IN TERMS

10 OF THE AREAS THAT ARE MODIFIED BY HOUSE BILL 316, THERE'S NO

11 CONTINUING VIOLATIONS HAPPENING.  WE HAVE A NEW SET OF LAWS,

12 AND THE PLAINTIFFS' CLAIMS ARE NOW NOT SUBJECT TO EX PARTE

13 YOUNG RELATED TO THOSE ISSUES BECAUSE THERE'S BEEN A CHANGE IN

14 THE LAW, AND THOSE ONGOING VIOLATIONS DON'T EXIST.

15         THE OTHER CHALLENGE IS IN THE CONTEXT OF ELECTIONS,

16 THE ELEVENTH CIRCUIT RECOGNIZES THERE ARE SPECIAL SOVEREIGNTY

17 INTERESTS GIVEN FOR STATES.  STATES HAVE THE POWER UNDER THE

18 CONSTITUTION TO SET THE TIME, PLACES AND MANNERS OF THEIR

19 ELECTIONS, AND WHILE AN INJUNCTION AGAINST A PARTICULAR

20 UNCONSTITUTIONAL STATUTE OR ONE THAT IS ALLEGED TO BE

21 UNCONSTITUTIONAL WOULD FALL UNDER THE EX PARTE YOUNG

22 EXCEPTION.

23         THE ELEVENTH CIRCUIT HAS SPECIFICALLY FOUND THAT IN

24 CASES WHERE A PLAINTIFF -- IT WAS APPROPRIATE IN CASES WHERE

25 THE PLAINTIFFS WERE NOT SEEKING AN ORDER DIRECTING THE PRECISE

1  WAY IN WHICH GEORGIA SHOULD CONDUCT VOTING, AND THAT WAS THE

2  ELEVENTH CIRCUIT'S RULING IN THE CURLING APPEAL A COUPLE OF

3  MONTHS AGO.

4        THAT'S EXACTLY WHAT THE PLAINTIFFS ARE DOING HERE,

5  THEY'RE ASKING FOR THIS COURT TO TAKE THE ENTIRETY OF TITLE 21

6  AND FASHION A NEW SET OF RULES RELATED TO ELECTIONS IN THE

7  STATE OF GEORGIA.  SO THEY ARE DEFINITELY ASKING FOR DIRECTION

8  FOR THE PRECISE WAY THAT VOTING IS BEING CONDUCTED, AND SO

9  ANOTHER ISSUE RELATED TO MOOTNESS IN HOUSE BILL 316 WILL BE THE

10 IMPACT ON THE ELEVENTH AMENDMENT ISSUES, AS WELL.

11       LET ME TALK NEXT ABOUT THE VOTING RIGHTS ACT CLAIM

12 AND THE NATIONAL VOTER REGISTRATION ACT LIST MAINTENANCE CLAIMS

13 THAT ARE ALSO IMPACTED.  SO IN TERMS OF THE VOTING RIGHTS ACT

14 CLAIM THERE IS GOING TO BE A SIGNIFICANT LIMITING FOR THE

15 PLAINTIFFS OF HOUSE BILL 316 ON THEIR INTENTIONAL

16 DISCRIMINATION COUNT.

17       SO UNDER SECTION 3(C) OF THE VOTING RIGHTS ACT, A

18 JUDGE HAS THE POWER TO BAIL IN A STATE UNDER THE PRECLEARANCE

19 FORMULA UNDER THE VOTING RIGHTS ACT FOR APPROVAL OF ELECTION

20 LAWS WHEN THERE'S BEEN A FINDING OF INTENTIONAL DISCRIMINATION,

21 AND ALTHOUGH NOT MANY COURTS HAVE LOOKED AT THIS QUESTION GIVEN

22 THE RECENTNESS OF SHELBY COUNTY, THE FIFTH CIRCUIT IN LOOKING

23 AT THE TEXAS PHOTO I.D. LAW FOUND THAT WHEN THERE WAS A CHANGE

24 IN THE LAW ABOUT AN ALLEGEDLY INTENTIONALLY DISCRIMINATORY LAW

25 THAT CUT OFF THE POTENTIAL LIABILITY IN TERMS OF THE VOTING

1  RIGHTS ACT GOING FORWARD BECAUSE THE COURT WAS REQUIRED TO NOT

2  ONLY LOOK BACK AT THE INTENTIONAL BASIS INITIALLY BUT TO

3  RECOGNIZE THAT MEANINGFUL ALTERATIONS IN A CHALLENGED STATUTE

4  CAN MAKE A STATUTE VALID, AND SO THAT CUTS OFF BASICALLY YOUR

5  CONCERNS ABOUT INTENTIONAL DISCRIMINATION THAT WOULD GIVE RISE

6  TO LIABILITY UNDER SECTION 3(C) OF THE VOTING RIGHTS ACT FOR

7  BAIL IN PURPOSES.

8          AND THEN THE LAST PIECE I'LL TALK ABOUT IS THE NVRA

9  MANDATED LIST MAINTENANCE.  THE PLAINTIFFS OBVIOUSLY CONTINUE

10 TO CALL THIS THE USE IT OR LOSS IT STATUTE, WHICH IS NOT

11 ACCURATE.

12         THE COURT:  ONE OF MY LAW CLERKS SPECIFICALLY TOLD ME

13 WHEN YOU TALK TO THE DEFENDANTS, IT'S MAINTENANCE, AND WHEN

14 YOU'RE TALKING TO THE PLAINTIFFS, IT'S USE IT OR LOSE IT.

15         MR. TYSON:  AS LONG AS WE'RE ALL TALKING ABOUT THE

16 SAME STATUTE.  WELL, WE HAVE -- WE'RE REQUIRED, THE STATE OF

17 GEORGIA IS REQUIRED BY THE NATIONAL VOTER REGISTRATION ACT TO

18 CONDUCT LIST MAINTENANCE, AND SO UNDER 52 USC 20507(A)(4)(B),

19 WE'VE GOT TO REMOVE PEOPLE FROM THE ROLLS WHO MOVE AND ARE

20 REQUIRED TO DO SO.

21         THE COURT:  MR. TYSON, AND AGAIN, FORGIVE ME FOR

22 CUTTING YOU OFF.  MY MOM TAUGHT ME BETTER MANNERS, BUT JUDGING

23 KIND OF JUST MESSES YOU UP IN LIFE.

24         THEY'RE SAYING IT'S NOT A CONSTITUTIONAL CHALLENGE.

25 IN OTHER WORDS THIS CASE WENT I THINK IN FRONT OF THE ELEVENTH

1   CIRCUIT.  I HAD A CASE HERE.  I THINK THE BONDURANT LAW FIRM

2   WAS ON ONE SIDE.  THE ELEVENTH CIRCUIT SENDS IT BACK, AND THEN

3   YOU HAVE HUSTED V. A. PHILIP RANDOLPH CASE COMES OUT.  THE

4   SUPREME COURT RULES.  THE ARGUMENT FROM THE PLAINTIFFS AND THE

5   ARGUMENT FROM OTHER PEOPLE AROUND THE COUNTRY IS THEY DIDN'T

6   TALK ABOUT THE CONSTITUTIONALITY.  LET'S TALK ABOUT THAT.

7           MR. TYSON:  YES, YOUR HONOR, THEY DID NOT TALK ABOUT

8   THE CONSTITUTIONALITY.  THE KEY ISSUE HERE IS UNDER THE

9   NATIONAL VOTER REGISTRATION ACT THERE'S A SPECIFIC PROVISION

10  THAT SAYS YOU CANNOT REMOVE SOMEONE FROM THE ROLLS FOR FAILING

11  TO VOTE, AND SO THAT WAS THE QUESTION IN THOSE CASES.

12          WHEN WE LOOK AT THE CONSTITUTIONAL CHALLENGE HERE,

13  THAT'S THE BASIS OF THE PLAINTIFFS' CONSTITUTIONAL CHALLENGE,

14  AS WELL.  THEY'RE SAYING YOU'RE REMOVING PEOPLE FROM THE ROLLS

15  FOR FAILING TO VOTE.  THE SUPREME COURT HAS ALREADY REVIEWED

16  THE SPECIFIC LEGAL STRUCTURE THAT'S IN PLACE UNDER THE NVRA AND

17  CONCLUDED THAT'S NOT THE CASE.  IN FACT, THIS IS VALID LIST

18  MAINTENANCE AS REQUIRED BY THE NVRA.

19          THE COURT:  THE PLAINTIFFS' ARGUMENT IS THAT YOU ONLY

20  SENT OUT THE POSTCARDS IF ONE OR TWO THINGS HAPPENED.  THE POST

21  OFFICE NOTIFIES YOU THE PERSON HAS MOVED, OR IF THE PERSON HAS

22  NOT VOTED OVER A PERIOD OF TIME.

23          SO THEIR ARGUMENT IS THAT YOU ARE REMOVING THEM

24  BECAUSE THEY'RE NOT VOTING.  I UNDERSTAND YOUR ARGUMENT.  I

25  READ THE CASE.  IN A SENSE ISN'T THAT -- AND I'M NOT ARGUING

1  WITH THE SUPREME COURT.  THEY'RE NINE GENIUSES, AS FAR AS I'M

2  CONCERNED, BUT IN A SENSE, IF YOU'RE NOT CONTACTING THEM

3  UNTIL THEY FAIL TO VOTE, IS THAT NOT TRIGGERING THE WHOLE

4  PROCESS?

5          MR. TYSON:  I THINK THE CONCERN IS AS TO THE PEOPLE

6  WHO HAVE A NATIONAL CHANGE OF ADDRESS INDICATED ADDRESS

7  CHANGE.  THAT'S ONE CATEGORY.  I THINK WE CAN SET THAT TO THE

8  SIDE.

9          THE COURT:  THAT'S NOT HERE.

10          MR. TYSON:  FOR PEOPLE WHO ARE NOT CONTACTING OR

11  HAVING NO CONTACT WITH THE ELECTION OFFICIALS, THE CONCERN IS

12  THEY MAY HAVE MOVED OR TAKEN SOME ACTION, AND THEY HAVEN'T

13  SHOWED UP ON ANYTHING THAT HAS LED TO THEIR INELIGIBILITY, AND

14  THE ONLY WAY WE KNOW IS IF WE ASK THEM.

15          NOW, THIS IS ALSO AN AREA WHERE HOUSE BILL 316 MAKES

16  SIGNIFICANT POSITIVE CHANGES IN TERMS OF LINING UP THE

17  REGISTRATION WITH THE DEPARTMENT OF DRIVER SERVICES.

18          THE COURT:  LET ME ASK YOU A QUESTION.  I'M KIND OF

19  JUMPING AHEAD OF MR. BELINFANTE -- I'LL SAVE IT FOR HIM.

20          MR. TYSON:  AND, YOUR HONOR, JUST ALONG THAT LINE,

21  TOO, I THINK ONE OF THE IMPORTANT THINGS TO REMEMBER IS THERE

22  WAS A STORY THIS MORNING THE BRENNAN CENTER HAS DONE A STUDY

23  RECENTLY THAT SHOWS THAT GEORGIA NOW IS ONE OF THE NATIONAL

24  LEADERS IN AUTOMATIC VOTER REGISTRATION THAT'S LED TO AN

25  EXTREMELY HIGH RATE OF PEOPLE REGISTERING AT THE DEPARTMENT OF

1   DRIVER SERVICES.

2          SO HAVING THE LIST MATCHING PROCESS AND THE DATABASE

3   MATCHING HAPPENING SIMULTANEOUSLY WHEN SOMEONE GOES TO GET A

4   DRIVER'S LICENSE, UNDER HOUSE BILL 316 THAT TIMELINE, THAT LACK

5   OF CONTACT WOULD BE LINED UP WITH THE TIME WHICH YOU HAVE TO

6   RENEW YOUR DRIVER'S LICENSE.  SO IF YOU GO NINE YEARS WITHOUT

7   VOTING, IN THAT 10TH YEAR WHEN YOU'RE RENEWING YOUR DRIVER'S

8   LICENSE THAT WILL CONSTITUTE A CONTACT.  WE CAN VERIFY YOU'RE

9   STILL AN ELIGIBLE VOTER AT A LOCATION AND CAN PROCEED FROM

10  THERE.  SO THAT'S ANOTHER AREA WHERE WE HAVE A SIGNIFICANT

11  MOOTNESS QUESTION RELATED TO THOSE ISSUES IN THE CASE.

12          THE COURT:  IS IT YOUR ARGUMENT THEN THAT HOUSE BILL

13  316 WITH THE CHANGES HAS MADE THAT PART MOOT?

14          MR. TYSON:  YES, YOUR HONOR, IT DOES MAKE THAT PART

15  OF THE CHALLENGE MOOT, AND MR. BELINFANTE WILL GET INTO SOME OF

16  THOSE DETAILS ON HERE, AND I KEEP ADVANCING MR. BELINFANTE'S

17  SLIDES ACCIDENTALLY.  SO WITH THAT, THAT'S THE ISSUES I HAVE TO

18  COVER, YOUR HONOR, SO I'LL HAND IT OFF TO MR. BELINFANTE.

19          THE COURT:  THANK YOU, MR. TYSON.

20          MR. BELINFANTE:  GOOD AFTERNOON, JUDGE.  I'VE GOT A

21  NOTEBOOK WITH SOME DOCUMENTS I'LL BE REFERRING TO.  MAY I

22  APPROACH?

23          THE COURT:  YES.  THANK YOU.

24          MR. BELINFANTE:  YOUR HONOR, I'LL BE ADDRESSING THE

25  CONSTITUTIONAL CLAIMS 1 TO 4 AND ONLY ONE PART OF THE VOTING

1   RIGHTS ACT, WHICH IS THE MOVING OR CLOSING OF PRECINCTS, AND AS

2   YOU KNOW FROM THE MOTION TO DISMISS, THE STATE SUBMITS THOSE

3   CLAIMS SHOULD BE DISMISSED FOR AT LEAST THREE REASONS, AND

4   WHILE WE'LL REST ON OUR BRIEF IN THEIR ENTIRETY, I'M GOING TO

5   TRY TO FOCUS MY ARGUMENT ON THE QUESTIONS YOU'VE RAISED.

6           FIRST, THE CLAIMS ARE MOOT.  HOUSE BILL 316, WE'VE

7   GOT CERTIFIED COPIES OF THE LEGISLATION, IF NEEDED, AND ALSO

8   ANOTHER BILL SIGNED TODAY, HOUSE BILL 392 ADDRESSES SOME OF

9   THOSE ISSUES AS WELL.

10          THE SECOND IS THAT THE PLAINTIFFS HAVE FAILED TO JOIN

11  NECESSARY PARTIES, SPECIFICALLY COUNTY BOARDS OF REGISTRARS AND

12  COUNTY SUPERINTENDENTS.  I KNOW YOU'VE ASKED A QUESTION ABOUT

13  THAT; AND, THIRD, JUST SIMPLY ON THE MERITS THE PLAINTIFFS HAVE

14  FAILED TO STATE A CLAIM, BUT I THINK IT'S IMPORTANT TO PUT ALL

15  OF THIS IN THE CONTEXT OF AGAIN THE FOUR CORNERS OF THE

16  PLAINTIFFS' COMPLAINT.

17          PARAGRAPH 43 OF THE FIRST AMENDED COMPLAINT

18  ACKNOWLEDGES THAT THE 2018 ELECTION WAS SOMETHING UNIQUE.  THAT

19  AS THEY ALLEGE IN THE PARAGRAPH, IT DREW HISTORIC VOTER

20  REGISTRATION AND TURNOUT PARTICULARLY AMONG VOTERS OF COLOR.

21  THE COMPLAINT GOES ON TO SAY THAT VOTER TURNOUT WAS MORE THAN

22  FOR ANY PREVIOUS MIDTERM ELECTION IN GEORGIA HISTORY, AND THAT

23  MATTERS PARTICULARLY WHEN YOU GET TO QUESTIONS OF FAILURE TO

24  TRAIN AND FAILURE TO SUPERVISE.

25          AND THE FIRST -- AND ALSO IN ADDITIONAL CONTEXT,

1  THERE'S A SIGNIFICANT DISAGREEMENT BETWEEN THE SIDES ON WHAT IS

2  THE STATE'S ROLE IN SEEING ELECTIONS VERSUS THAT OF THE LOCAL

3  GOVERNMENTS, AND I KNOW THAT DREW A QUESTION FOR THE COURT, AS

4  WELL.

5           IN YOUR NOTEBOOK THERE'S A STATUTE 21-2-50 WHICH IS

6  CITED IN THE COMPLAINT.  YOU DON'T NEED TO TURN TO IT, BUT IT'S

7  THERE IF YOU WANT.  PARAGRAPH 53, 55 AND 56 ALL TALK ABOUT THE

8  ROLE OF THE SECRETARY OF STATE AS OVERSEEING ELECTIONS, BUT IF

9  YOU READ THAT STATUTE, THE ONE CITED IN THE COMPLAINT, WHAT IT

10 SAYS IS SOMETHING A BIT MORE LIMITED.

11          IT SAYS THAT THE SECRETARY SHALL EXERCISE ALL POWERS

12 GRANTED TO THE SECRETARY OF STATE BY THIS CHAPTER AND SHALL

13 PERFORM DUTIES IMPOSED BY THIS CHAPTER WHICH SHALL INCLUDE THE

14 FOLLOWING AND THEN LISTS A SERIES OF POWERS.  IT IS NOT A

15 GENERALIZED GRANT OF AUTHORITY.

16          IT IS NOT AS WE'VE SEEN FROM CASES CITED BY THE

17 PLAINTIFFS, THE BURMAN CASE FROM NEW YORK AND THE BLACKWELL

18 CASE IN OHIO, WHERE THE STATE TAKES A MUCH MORE HEAVY AND

19 INVOLVED ROLE IN ELECTIONS.  HERE IN GEORGIA THEY ARE LARGELY

20 ADMINISTERED BY COUNTIES.

21          IN LOOKING AT THE QUESTION OF TRAINING, THE SAME CODE

22 SECTION AT SUBSECTION (A)(11) SAYS THAT THE SECRETARY IS

23 REQUIRED TO CONDUCT TRAINING SESSIONS AT SUCH PLACES THE

24 SECRETARY OF STATE DEEMS APPROPRIATE IN EACH YEAR FOR THE

25 TRAINING OF REGISTRARS AND SUPERINTENDENTS OF ELECTIONS.  THE

1  SECRETARY DOES NOT TRAIN POLL WORKERS.  THE SECRETARY DOES NOT

2  TRAIN EVERYONE THAT'S SITTING AT A POLL SPACE, AND THERE'S NO

3  ALLEGATION IN THE COMPLAINT THAT THESE STATUTORILY MANDATED

4  TRAINING DID NOT OCCUR.  THE QUESTION IS TO THE QUALITY OF THE

5  TRAINING, BUT NOT WHETHER IT WAS IN FACT DONE.

6          SO THEN WE TURN TO SOME EXTENT TO THE STATE ELECTION

7  BOARD, AND I REALIZE THAT THEY'VE BEEN DISMISSED AS TO THOSE

8  CONSTITUTIONAL --

9          THE COURT:  RIGHT.

10          MR. BELINFANTE:  BUT TO SOME EXTENT, IF I GO BACK AND

11  FORTH, IT'S BECAUSE THE NATURE OF HOW THAT WAS DONE IN THE

12  BRIEF AS OPPOSED TO THE COMPLAINT, SO I WILL GO AHEAD AND GET

13  THAT OUT.

14          THE STATE ELECTION BOARD PROMULGATES RULES AND

15  REGULATIONS.  THAT'S ACKNOWLEDGED IN PARAGRAPH 61 OF THE

16  COMPLAINT, BUT THEY DON'T ENGAGE IN TRAINING UNLESS -- AND THIS

17  IS IN CODE SECTION 21-2-31(9) -- THEIR OBLIGATION FOR TRAINING

18  IS, QUOTE, SUBJECT TO FUNDS SPECIFICALLY APPROPRIATED BY THE

19  GENERAL ASSEMBLY.

20          THE COURT:  HOW MUCH OVERSIGHT, ACCORDING TO THE

21  PLAINTIFFS, THE TEST HERE IS OVERSIGHT.  HOW MUCH OVERSIGHT

22  DOES THE SECRETARY OF STATE HAVE OVER WHERE POLLING PLACES ARE

23  GOING TO BE AND THINGS LIKE THAT?

24          MR. BELINFANTE:  WHERE THE POLLING PLACE IS GOING TO

25  BE?

1        THE COURT:  YES.

2        MR. BELINFANTE:  THAT IS A PURELY COUNTY DECISION.

3  THE STATUTES AND I'LL GET TO IT, BUT EFFECTIVELY THEY WERE SET

4  IN 1982.  THAT'S WHEN THE BASELINE WAS SET, SINCE THEN CITIES

5  AND/OR COUNTIES MAY CHANGE THEM, AND THEY SIMPLY PROVIDE NOTICE

6  TO THE SECRETARY OF STATE THAT THEY HAVE IN FACT DONE SO.

7  PRIOR TO SHELBY COUNTY IT HAD TO GO THROUGH THE JUSTICE

8  DEPARTMENT, AND SINCE THEN IT DOES NOT.

9        HOUSE BILL 316 ADDRESSES THIS.  I DON'T KNOW THAT IT

10  DOES IN A MANNER THAT CANDIDLY AFFECTS PLAINTIFFS' CLAIMS IN

11  THAT COUNTIES CAN NO LONGER MOVE POLLING PLACES 60 DAYS BEFORE

12  A GENERAL AND 30 DAYS BEFORE A SPECIAL.

13        THE COURT:  HYPOTHETICALLY, I WON'T PICK ON ANY

14  COUNTY, BUT LET'S SAY COUNTY "A" DECIDES 45 DAYS BEFORE AN

15  ELECTION TO CHANGE A POLLING PLACE, WHAT, IF ANYTHING, CAN THE

16  SECRETARY OF STATE DO?

17        MR. BELINFANTE:  IT'S UNCLEAR WHAT THE SECRETARY OF

18  STATE COULD DO AT THAT POINT.  AT BEST PERHAPS THE STATE

19  ELECTION BOARD COULD FINE, OR SOMEONE COULD BRING A CHALLENGE

20  TO THE COUNTY TO DO IT.  THEY COULD CERTAINLY DO IT IN A

21  FEDERAL OR STATE COURT FOR VIOLATIONS OF STATE LAW, BUT THE

22  SECRETARY OF STATE HIMSELF, EXCEPT PERHAPS IN HIS CAPACITY AS

23  CHAIR OF THE STATE ELECTION BOARD, COULD NOT INDEPENDENTLY STOP

24  A CITY OR COUNTY FROM DOING THAT UNDER EXISTING STATUTORY LAW.

25        AND SO THE QUESTION GENERALLY THEN GETS BROKEN IN THE

1  PLAINTIFFS' COMPLAINT DOWN TO REALLY TWO TYPES OF CLAIMS.

2  FIRST ARE CLAIMS ABOUT WHAT IS TRULY STATE ACTION, SUPPLYING

3  VOTING MACHINES, DOING THINGS LIKE MAINTAINING VOTER DATABASES,

4  THINGS LIKE THAT, THAT IS UNQUESTIONABLY A STATE

5  RESPONSIBILITY.

6          HOWEVER, MOST OF THAT WE ARGUE HAS BEEN MOOTED BY 316

7  AND HOUSE BILL 392, AND TO THE EXTENT IT HAS NOT BEEN OR IN

8  SOME WAYS BECAUSE IT HAS, THE ELEVENTH AMENDMENT KICKS IN

9  BECAUSE THE PLAINTIFFS ARE LIMITED TO SEEKING PROSPECTIVE

10 INJUNCTIVE RELIEF FOR A CONTINUING VIOLATION.  THERE CAN'T BE A

11 CONTINUING VIOLATION OF A LAW THAT IN THE CASE OF 316 WAS

12 SIGNED JUST THIS MONTH, AND IN THE CASE OF 392 WAS SIGNED

13 TODAY.

14          THE SECOND TYPE OF CLAIM ARE THE FAILURE TO TRAIN OR

15 FAILURE TO SUPERVISE, AND IN THE CITY OF MIAMI VERSUS GOLD

16 DECISION THE ELEVENTH CIRCUIT SAID THAT THE ELEMENTS BETWEEN

17 FAILURE TO MANAGE OR SUPERVISE AND FAILURE TO TRAIN ARE

18 EFFECTIVELY THE SAME, AND AT LEAST FOR THE PURPOSES WE'LL BE

19 TALKING ABOUT TODAY, THE ARGUMENT THERE IS THEY'VE FOCUSED

20 THEIR ENTIRE CASE ON THE 2018 ELECTION.

21          FAILURE TO TRAIN AND FAILURE TO MANAGE CASES TEND TO

22 TAKE SOME TYPE OF HISTORICAL RECORD, NOT ONE EVENT.  EVEN IF

23 IT'S HAPPENED IN DOZENS OF POLLING PLACES, YOU NEED SOMETHING

24 MORE TO PUT THE GOVERNMENT ON NOTICE.

25          THE COURT:  WHY?  WHY, WHY DO YOU NEED MORE YEARS IF

1  YOU HAVE I THINK THEY ALLEGE LIKE TEN COUNTIES IN A -- I

2  REMEMBER ONE OF THEM WAS COBB COUNTY AND FULTON.  WHY DO YOU

3  NEED MORE THAN THAT?

4         MR. BELINFANTE:  WELL, YOUR HONOR, BECAUSE THERE'S

5  BEEN ONE ELECTION, AND IF YOU LOOK AT THE THING HOLISTICALLY,

6  THIS IS HOW IT'S SUPPOSED TO WORK.  THERE WAS ONE ELECTION.

7  THERE WERE CONCERNS RAISED AND VARIOUS LAWSUITS, SOME BEFORE

8  THIS COURT, MANY WRITTEN ABOUT IN THE PAPER, AND THE GENERAL

9  ASSEMBLY REACTED.  IT CHANGED THE LAW.  IT CHANGED THE POLICY,

10  AND ACCORDING TO THOSE NEW STATUTES AND TO THE EXTENT THAT THE

11  SECRETARY HIMSELF AS OPPOSED TO THE STATE ELECTION BOARD HAS AN

12  OBLIGATION TO TRAIN LOCAL OFFICIALS, THEIRS ARE GOING TO BE

13  BASED ON NEW RULES FROM THE SEB AND A NEW STATUTE.  SO THERE

14  CAN'T BE A FAILURE TO TRAIN ON SOMETHING THAT HAS JUST BEEN

15  SIGNED EITHER EARLIER THIS MONTH OR TODAY BECAUSE THE TRAINING

16  HASN'T EVEN COMMENCED.

17         YOU NEED THAT HISTORICAL BASIS, AND THE ELEVENTH

18  CIRCUIT AND THE SUPREME COURT HAVE SAID YOU NEED TO PROVIDE

19  NOTICE SO THAT YOU KNOW WHAT TO TRAIN ON; OTHERWISE, YOU

20  DEVOLVE 42 USC 1983 CLAIMS INTO EFFECTIVELY RESPONDEAT

21  SUPERIOR.

22         THE COURT:  THAT'S A GOOD POINT.

23         MR. BELINFANTE:  AND YOU MAKE IT -- AND IN THIS CASE

24  I WOULD ARGUE IT'S MORE OF A RES IPSA ARGUMENT.  IT'S WELL,

25  SOMETHING BAD HAPPENED AT THE POLLS.  THEREFORE, IT MUST HAVE

1    BEEN THE TRAINING THAT CAUSED SOMETHING BAD TO HAPPEN, AND THE

2    COURTS HAVE SAID THERE'S A HIGHER BAR THAN THAT.

3            FOCUSING ON THOSE ISSUES THAT ARE STATE CLAIMS, AND

4    I'LL GET TO THOSE, THE FIRST ARGUMENT RAISED AND THAT I THINK

5    YOU'RE FOCUSED US ON IS THE MOOTNESS ARGUMENT, AND IF YOU NEED

6    ANY FURTHER QUESTION OF WHY THE CASE IS MOOT, I URGE YOU SIMPLY

7    TO LOOK AT THE PRAYER FOR RELIEF FOR THE ADDENDUM CLAUSE WHICH

8    IS IN YOUR NOTEBOOK I BELIEVE IT'S THE LAST TAB.

9            PARAGRAPHS 1, 2, 3 AND 5 ALL SEEK TO DECLARATORY

10   RELIEF ON GEORGIA'S, QUOTE, CURRENT ELECTION SYSTEM.  WHEN THE

11   FIRST AMENDED COMPLAINT WAS FILED IN FEBRUARY OF THIS YEAR, THE

12   CURRENT ELECTION SYSTEM IS NOT WHAT IT IS TODAY AND NOT WHAT

13   WILL BE ON JULY 1 WHEN HOUSE BILL 392 BECOMES EFFECTIVE.

14           THE COURT:  WELL, LET ME ASK YOU A QUESTION I WAS

15   GOING TO ASK MR. TYSON.  ARE YOU ARGUING THAT THIS ENTIRE

16   LAWSUIT SHOULD BE DISMISSED BECAUSE IT'S NOW MOOT BECAUSE OF A

17   REPEAL OF A STATUTE OR AN ENACTMENT OF A LAW?

18           MR. BELINFANTE:  I WOULD ARGUE THAT THE

19   INDIVIDUALIZED CLAIMS, AND I'LL WALK THROUGH THEM, HAVE BEEN

20   MOOTED, NOT THE LAWSUIT ITSELF.  JUST MERELY PASSING A LAW IS

21   NOT GOING TO MOOT THE WHOLE LAWSUIT, BUT IF YOU LOOK AT WHAT IS

22   ALLEGED, THEY'RE EITHER ADDRESSED IN HOUSE BILL 316 AND 392, OR

23   THE STATE IS NOT -- THERE ARE OTHER PARTIES THAT NEED TO BE

24   HERE FOR THAT, BUT, NO, THE PASSAGE OF THE LAW DOES NOT MOOT

25   THE LAWSUIT JUST ON ITS FACE.

1           PARAGRAPHS 4, 7 AND 9 ADDRESS THE MAINTENANCE ISSUE
2   OR THE USE IT OR LOSE IT ISSUE, THAT LAW HAS NOW CHANGED, AND
3   PARAGRAPH 7 ADDRESSES VOTER MACHINES ALL OF WHICH IS CHANGING,
4   AS WELL, AND UNDER THESE FACTS THE SUPREME COURT -- THE
5   ELEVENTH CIRCUIT SAID IN THE UNITED STATES VERSUS GEORGIA
6   DECISION THAT THE SUPREME COURT HAS RULED IN A NUMBER OF CASES
7   THAT THE ENACTMENT OF NEW LEGISLATION WHICH REPEALS OR
8   MATERIALLY AMENDS THE LAW BEING CHALLENGED RENDERS THE CASE
9   MOOT.
10          THERE'S IS NO QUESTION THAT A 39-PAGE BILL ADDRESSING
11  VARIOUS SECTIONS OF CHAPTER 2 OF TITLE 21, THE ELECTION CODE,
12  IS A SIGNIFICANT PIECE OF LEGISLATION THAT ADDRESSES A LARGE
13  SWATCH OF GEORGIA ELECTION LAW.  THE COURT IN THAT CASE, AS I
14  KNOW YOU KNOW, WENT ON TO SAY THAT WHEN YOU LOOK AT WHETHER
15  THERE'S BEEN A VOLUNTARY CESSATION BY A GOVERNMENT ACTOR THAT
16  GIVES RISE TO A REBUTTABLE PRESUMPTION THAT THE OBJECTIONABLE
17  BEHAVIOR WILL NOT REOCCUR.  THAT'S WHAT HAPPENED HERE.
18          NOW, THE PLAINTIFFS HAVE CITED FOR YOU THE TRUST ONE
19  PAYMENT DECISION, AND REALLY THAT CITES THE CHARLES WESLEY
20  EDUCATION FOUNDATION DECISION.  TRUST ONE INVOLVED CONTRACTS.
21  IT DIDN'T INVOLVE A GOVERNMENT ACTION.  CHARLES WESLEY WOOD
22  WHERE THE STATE CAME THERE AND SAID IT'S ALL BEEN RESOLVED, IT
23  WAS RESOLVED BECAUSE THE COURT ISSUED A PERMANENT INJUNCTION.
24  IT WAS NOT THE TYPE OF VOLUNTARY CESSATION THAT UNITED STATES
25  VERSUS GEORGIA TALKS ABOUT.  THAT'S WHY IT PROVIDES THE

1  MOOTNESS TO THE EXTENT THAT 316 OR 392 TOUCH ON THE

2  ALLEGATIONS.

3          THE SECOND DEFENSE THAT I'LL BE FOCUSING ON IS THE

4  FAILURE TO JOIN NECESSARY PARTIES --

5          THE COURT:  BEFORE WE MOVE ON FROM THE MOOTNESS, I'D

6  LIKE TO JUST KIND OF WALK THROUGH ALL NINE OF THEM AGAIN.  YOU

7  TALKED ABOUT THEM.  LET'S KIND OF WALK THROUGH ALL NINE OF THEM

8  AGAIN.

9          MR. BELINFANTE:  SURE.  WERE YOU GOING TO WALK ME

10 THROUGH?

11         THE COURT:  NO, YOU CAN DO IT.  I'LL JUST FOLLOW YOUR

12 WALK.

13         MR. BELINFANTE:  I'M NOT GOING TO ARGUE WITH YOU,

14 SIR, BUT I'LL DO IT HOWEVER YOU WANT TO DO IT.  I'LL ADDRESS IT

15 THIS WAY.  THESE ARE THE CLAIMS AGAINST THE STATE, AND IF YOU

16 LOOK AT THE COMPLAINT, IN THE FIRST AMENDED COMPLAINT, WHAT YOU

17 TEND TO SEE IN THE COUNTS ARE YOU'LL HAVE A PARAGRAPH THAT

18 ALLEGES ACTIONS AGAINST THE STATE, FOLLOWED BY A PARAGRAPH THAT

19 ALLEGES FAILURE TO TRAIN OR FAILURE TO SUPERVISE, BUT THE

20 ELEMENTS OF THOSE CLAIMS I'VE SPELLED OUT HERE, AND THEY'RE THE

21 SAME IN EACH ONE.

22         SO WALKING THROUGH THE ISSUES THAT ARE PART OF THE

23 COMPLAINT, THE FIRST IS, AND THIS IS SECTION 2G, THAT THERE IS

24 AN INSUFFICIENT NUMBER OF DRE MACHINES IN THE ACTUAL

25 PRECINCTS.  THAT'S PARAGRAPHS 121 AND 122.  THE STATE

1   OBLIGATION IN 2018 WAS TO PROVIDE THE COUNTY SUPERINTENDENTS

2   WITH SOME MACHINES, AND THAT GOES ALL THE WAY BACK TO 2004, AND

3   THEN IF COUNTIES WANTED MORE MACHINES, THE CODE SAID IN THESE

4   SECTION CITED HERE THEY COULD GET THEM.  THEY COULD BUY THEM

5   FROM THE STATE, AND THEY WOULD BE PROVIDED TO THEM.

6          SO IF THERE'S A SHORTAGE OF MACHINES, YOU SHOULD LOOK

7   TO THE COUNTIES AND HAVE THEM PURCHASE THE MACHINES, BUT WHAT

8   WE'VE SEEN WITH HOUSE BILL 316 AND THE BUDGET IS 150 MILLION

9   DOLLAR APPROPRIATION FOR NEW MACHINES THAT ARE COMING ON, AND

10  TO THE MOOTNESS QUESTION, WE HAVE IN YOUR NOTEBOOK, AND IT'S

11  PART OF THE STATUTE IS AN RFP ISSUED BY THE SECRETARY OF

12  STATE'S OFFICE, AND THAT RFP PROVIDES A TIMELINE THAT FURTHER

13  MOOTS THE CASE.  BECAUSE ON PAGE 8 OF THE PLAINTIFFS' BRIEF,

14  THEY ACKNOWLEDGE THAT THEIR STANDING IS BASED, QUOTE, IN

15  CONNECTION WITH THE 2020 ELECTION AND HAVING TO DIVERT

16  RESOURCES REGARDING THE 2020 ELECTION.

17         SO IF YOU LOOK AT THE RFP AND THE TIMELINE FOR THE

18  MACHINES, THE RESPONSES TO THE PROPOSALS WERE DUE APRIL 23RD.

19  THEY'VE BEEN SUBMITTED.  THAT'S CLOSED.  THE SECRETARY'S OFFICE

20  IS NOW EVALUATING THEM.  THEY INTEND TO ISSUE WHAT'S CALLED A

21  NOTICE OF INTENT TO AWARD ON JULY 9TH, AND THEN PHASE 1, THERE

22  WILL BE TEN COUNTIES IN NOVEMBER OF 2019 WHERE THEY WILL PUT

23  OUT THESE NEW MACHINES.  THEY'RE CALLED BALLOT MARKING DEVICE

24  MACHINES OR BMD'S.

25         THE COURT:  LET'S SAY HOUSE BILL 316 DOES ADDRESS THE

1  VOTER MACHINE AS FAR AS THE PAPER BALLOT PART, BUT THERE'S AN

2  ARGUMENT DEALING WITH THE ELECTION TECHNOLOGY PART WHERE

3  THEY'RE ARGUING THAT THE DATA IS NOT AS SECURE.

4          NOW, HERE'S THE QUESTION IN FRONT OF THIS COURT THAT

5  I'LL ASK YOU:  HAS THE GEORGIA GENERAL ASSEMBLY AND THE

6  GOVERNOR MADE A DECISION THAT THIS TYPE OF MACHINE IS

7  MORE SECURE THAN THE OTHER ONES BEING ARGUED FOR?  IS THAT

8  THEIR DECISION ALONE, OR IS THAT A DECISION THAT COMES TO THE

9  COURT?

10         MR. BELINFANTE:  I THINK THE DECISION HAS FIRST BEEN

11 MADE BY THE GEORGIA GENERAL ASSEMBLY AND THE GOVERNOR.  THE

12 QUESTION OF WHEN IT COMES BEFORE THE COURT, I DON'T THINK IS

13 RIPE BECAUSE THE NEW MACHINES HAVE NOT EVEN BEEN PROCURED IN

14 THE SENSE THAT THEY HAVE NOT BEEN PURCHASED.

15         THE COURT:  GOOD POINT.

16         MR. BELINFANTE:  SO WE DON'T KNOW WHAT THOSE MACHINES

17 ARE EXCEPT WHAT IS SET FORTH IN HOUSE BILL 316.

18         BUT TO ADDRESS YOUR HONOR'S SECOND POINT, WHICH IS

19 THE DATA BEHIND THOSE MACHINES, AND THAT WAS ONE OF THE ISSUES

20 AND STILL AN ISSUE IN THE COMMON CAUSE LITIGATION WHICH IS

21 STAYED IN FRONT OF JUDGE TOTENBERG RIGHT NOW BECAUSE OF HOUSE

22 BILL 392.

23         HOUSE BILL 392 IS A SEPARATE PIECE OF LEGISLATION.

24 IT CONTAINED -- IT WAS ORIGINALLY DEALING WITH PUBLIC SAFETY'S

25 BOARD.  THERE WAS A BIPARTISAN AMENDMENT PUT ON IN THE SENATE

1  TO ADDRESS THE SECRETARY OF STATE'S AUTHORITY IN PARTICULAR,

2  AND IT ADDS A NEW PARAGRAPH 14.1 TO CODE SECTION 45-13-20

3  DEALING WITH THE SECRETARY'S AUTHORITY GENERALLY.  IT'S NOT IN

4  THE ELECTION CODE.

5          AND WHAT THAT CODE SECTION SAYS IS THAT THE SECRETARY

6  SHALL PROMULGATE A REGULATION SUBJECT TO THE ADMINISTRATIVE

7  PROCEDURES ACT, AND THAT REGULATION WILL SET FORTH INDUSTRY

8  LEADING STANDARDS FOR DATA SECURITY, AND IT HAS TO TAKE INTO

9  CONSIDERATION THINGS LIKE THE NATIONAL INSTITUTE OF STANDARDS

10 AND TECHNOLOGY OR NIST, THE CENTER FOR INTERNET SECURITY,

11 THE FEDERAL ELECTION ASSISTANCE COMMISSION WHEN PROMULGATING

12 THAT.

13         NOT ONLY DOES THE RULE HAVE TO BE PROMULGATED, BUT ON

14 AN ANNUAL BASIS, THE SECRETARY IS REQUIRED TO STATE OR CERTIFY

15 THAT GEORGIA HAS SUBSTANTIALLY COMPLIED WITH ITS OWN SECURITY

16 GUIDELINES, AND SO THAT IS SOMETHING NEW IN THE LAW THAT ALSO

17 ADDRESSES THE VOTER SECURITY.

18         BUT, YOUR HONOR, EVEN IF YOU GET TO THE QUESTION OF

19 MOOTNESS ON VOTER SECURITY, THE COMPLAINT ITSELF REALLY DOES

20 NOT ALLEGE THAT THERE HAS BEEN ANY PARTICULAR INCIDENT WHERE

21 SOMEONE HAS -- THAT THERE HAS BEEN A HACKING OF THE ACTUAL

22 VOTER REGISTRARS.  THERE'S REFERENCE TO A GEORGIA TECH

23 MATTER -- EXCUSE ME, KENNESAW STATE ISSUE, BUT THAT WAS

24 DEALING WITH A SEPARATE DATABASE, NOT ANYTHING ANY VOTER THAT

25 WAS ACTUALLY PREVENTED FROM GOING TO THE POLLS BECAUSE OF

1   THAT.

2           GETTING BACK I THINK TO WHAT DOES HOUSE BILL 316 DO,

3   SO WE'VE ADDRESSED THE VOTING MACHINES.  WE'VE ADDRESSED THE

4   DATA.  ONE OF THE OTHER ALLEGATIONS IS IN PARAGRAPHS 122 AND

5   127 THAT THERE WAS AN INSUFFICIENT NUMBER OF PROVISIONAL

6   BALLOTS AT THE POLLING PLACES.

7           ANDY THE STATE'S OBLIGATION, AND THIS SPEAKS I GUESS

8   MORE TO THE NECESSARY PARTY ANALYSIS, BUT THE STATE'S

9   OBLIGATION IS TO PROVIDE WHAT THE PROVISIONAL BALLOT LOOKS

10  LIKE.  THE COUNTY'S OBLIGATION, AND THIS IS SET FORTH IN

11  STATUTORY LAW AND IN A REGULATION BY THE SEB, IT'S THE COUNTY'S

12  OBLIGATION SPECIFICALLY THE ELECTION SUPERINTENDENT TO PROVIDE

13  SUFFICIENT SUPPLIES AND PROVISIONAL BALLOTS.

14          NOW IF THE COURT WERE TO ORDER SOME TYPE OF REMEDY

15  THAT REQUIRES SUFFICIENT NUMBER, AND I DON'T KNOW -- I MEAN

16  IT'S EFFECTIVELY AN OBEY THE LAW ORDER, BUT IF THE COURT WERE

17  TO ORDER SOMETHING THAT SAYS PROVIDE SUFFICIENT NUMBER OF

18  PROVISIONAL BALLOTS, THAT'S A COST THAT IS COMING OUT OF THOSE

19  COUNTY BUDGETS, AND THE REMEDY CAN'T BE COMPELLED FROM THE

20  STATE.  THAT'S WHAT MAKES THEM A NECESSARY PARTY BECAUSE THEY

21  NEED TO BE BROUGHT IN TO BE SUBJECT TO THAT ORDER.

22          NOW FOR THE COUNTIES WITHIN THE NORTHERN DISTRICT,

23  THAT'S FEASIBLE.  FOR THE COUNTIES OUTSIDE THE NORTHERN

24  DISTRICT SPECIFICALLY THOSE THAT ARE MENTIONED IN THE COMPLAINT

25  LIKE HENRY AND MUSCOGEE, THAT MAKES THEM NOT FEASIBLE, AND THE

1  QUESTION THEN BECOMES CAN RELIEF BE GRANTED THAT IS NARROWLY

2  TAILORED.  WE WOULD SUGGEST TO YOU THE ANSWER IS NO, AND TO THE

3  EXTENT THAT THEY'RE LOOKING FOR A STATEWIDE SOLUTION, THIS IS

4  NOT A COURT THAT CAN GRANT THAT KIND OF RELIEF.

5         AND IT CAN'T BECAUSE THERE'S -- THE TYPE OF RELIEF

6  THAT WOULD BE SOUGHT, YOU WOULD EFFECTIVELY EXCISE ALL OF

7  PARAGRAPH 11 FROM THE PRAYER FOR RELIEF.  THAT'S WHERE IT GOES

8  THROUGH, AND THE STATE IS SOMEHOW TO CONTROL EVERYTHING FROM

9  HOW MANY PEOPLE COUNTIES HIRE, AND HOW MANY PEOPLE THEY HAVE

10  WORKING AT THE POLLS TO WHAT THEY ORDER IN TERMS OF HAVING

11  MACHINES, OR EVEN IN ONE CASE POWER CORDS AT A POLLING BOOTH,

12  AND, AGAIN, FOR THOSE COUNTIES IN THE NORTHERN DISTRICT, THAT

13  MAY BE OKAY, BUT TO THE EXTENT THAT THEY'RE CONTINUING TO LOOK

14  FOR A STATEWIDE SOLUTION, THAT'S THE NECESSARY PARTY PROBLEM

15  THEY HAVE, AND THOSE COUNTIES CANNOT BE BROUGHT IN AND ARE

16  FEASIBLE.

17         GETTING BACK TO THE REST OF THE HOUSE BILL --

18         THE COURT:  316, THOUGH, DOES NOT TOTALLY ADDRESS

19  THAT ISSUE.  I UNDERSTAND THAT YOUR ARGUMENT IS IT'S MORE ON

20  THE NECESSARY PARTY'S ISSUE.

21         MR. BELINFANTE:  THAT'S RIGHT, YES, YOUR HONOR, NOR

22  DOES 316 ADDRESS, AND I PUT THIS IN HERE PARAGRAPH 122

23  INVOLVING A PRECINCT IN SNELLVILLE THAT LACKED A POWER CORD.

24  AGAIN THAT'S NOT THE RESPONSIBILITY OF THE SECRETARY OF STATE

25  NOR THE BOARD, BUT THAT, TOO, IS A NECESSARY PARTY ISSUE THAT

1   IS NOT ADDRESSED BY 316, BUT IT IS NOT A STATE ISSUE.

2          THIS WAS MEANT TO COVER THE VOTING MACHINES.  I THINK

3   I'VE ALREADY COVERED THAT WITH THE COURT, AND VOTER SECURITY, I

4   ALSO COVERED THAT WITH THE COURT AND HOUSE BILL 392 SPEAKS TO

5   THAT.

6          SO THEN YOU LOOK AT THE FAILURE TO TRAIN OR FAILURE

7   TO SUPERVISE CLAIMS, AND AGAIN THE GOLD STANDARD SAYS THAT IT'S

8   EFFECTIVELY THE SAME ANALYSIS.  THERE ARE -- I BELIEVE IT WENT

9   FROM A TO J ON THE LISTING OF THINGS THAT THE STATE ALLEGEDLY

10  DID NOT TRAIN SUPERINTENDENTS AND REGISTRARS ON.  I'VE BROKEN

11  THEM DOWN INTO JUST FOUR CATEGORIES, ABSENTEE BALLOTS,

12  PROVISIONAL BALLOTS, MACHINES AND THEN ALL OF THAT WHICH THEN

13  CREATED LONG LINES THAT HAD PEOPLE TURN AWAY FROM THE POLLING

14  PLACES.

15         THIS IS WHY ON THE LAW ITSELF, PLAINTIFFS' CLAIMS ON

16  FAILURE TO TRAIN SHOULD BE DISMISSED, AND THIS GETS TO WHAT WE

17  TALK ABOUT A LITTLE BIT EARLIER IN TERMS OF WHY 1983 DOES NOT

18  ALLOW RESPONDEAT SUPERIOR TYPE DECISION, AND CANDIDLY, YOUR

19  HONOR, MOST OF THE CASES INVOLVING THIS AREN'T IN THE ELECTIONS

20  AREA.  YOU TEND TO SEE THEM WHERE SOMEONE IS IN THE CUSTODY OF

21  THE STATE AT LEAST AS IT INVOLVES STATES.

22         CITIES ARE HERE ALL THE TIME ON FAILURE TO TRAIN AND

23  DELIBERATE INDIFFERENCE DEALING WITH USE OF FORCE AND THINGS OF

24  THAT NATURE, BUT WHEN IT'S THE STATE, IT'S TYPICALLY SOMEONE IN

25  THEIR CUSTODY.  THE PLAINTIFFS CITE A CASE INVOLVING FOSTER

1  KIDS.  THERE ARE OTHER CASES TYPICALLY IN THE PRISON CONTEXT

2  AND MEDICAL TREATMENT, BUT NOT TYPICALLY IN ELECTION CASES.

3         AND THIS IS WHERE THE ELEVENTH CIRCUIT IN THE HARTLEY

4  CASE SAID YOU NEED TO SHOW OR NEED TO AT LEAST ALLEGE A HISTORY

5  OF WIDESPREAD ABUSE.  NOW TO BE SURE, GEORGIA DOES NOT HAVE THE

6  BEST HISTORY IN TERMS OF VOTING RIGHTS AND SO ON, BUT THE

7  COMPLAINT ITSELF FOCUSES ON THE 2018 ELECTION.  IT DOESN'T SAY

8  THAT THESE WERE PROBLEMS EVIDENT IN 2016 OR 2014, AND

9  IMPORTANTLY 2018, IN LARGE PART DUE TO SOME OF THE REALLY HARD

10  WORK OF THE PLAINTIFFS, HAVE MADE IT A CASE OR A SITUATION

11  WHERE VOTER TURNOUT WAS WELL BEYOND WHAT PEOPLE EXPECTED.

12         SO THERE'S NOT THE HISTORY OF ABUSE, AND THAT SPEAKS

13  TO THE GOLD CASE AGAIN WHY THERE HAS TO BE NOTICE TO TRAIN OR

14  SUPERVISE IN A PARTICULAR AREA, AND I CITE AT THE BOTTOM THE

15  SUPREME COURT'S DECISION IN BOARD OF COMMISSIONERS AGAINST

16  BROWN FROM 1997 BECAUSE THAT GIVES AN EXAMPLE OF A TYPE OF

17  FAILURE TO TRAIN CASE.

18         IF A STATE HAS CONTINUED ADHERENCE TO AN APPROACH

19  THAT THEY KNOW OR SHOULD KNOW HAS FAILED, THAT CAN LEAD TO A

20  POTENTIAL FAILURE TO TRAIN, BUT HERE AGAIN THE SYSTEM WORKED.

21  THERE WERE CONCERNS RAISED ABOUT GEORGIA'S ELECTION LAWS.  THE

22  STATE CHANGED THEM IN MANY OF THE WAYS WALKING THROUGH YOU'VE

23  SEEN THAT WERE THERE, AND IN SOME OF THE WAYS WERE JUST NOT

24  STATE ISSUES TO BEGIN WITH.

25         HERE'S THE OTHER PROBLEM THEY HAVE ON THEIR FAILURE

1    TO TRAIN, AND THIS IS ACTUALLY CITED.  I KNOW THE PLAINTIFFS

2    RELY HEAVILY ON THE ELEVENTH CIRCUIT'S DECISION IN CURLING, BUT

3    IN CURLING THE ELEVENTH CIRCUIT CITED THE SUMMIT DECISION

4    HEAVILY, AS WELL, BECAUSE IT TALKED ABOUT YOU CAN HAVE

5    PROSPECTIVE INJUNCTIVE RELIEF WHEN PEOPLE ARE SUED IN THEIR

6    INDIVIDUAL CAPACITIES AND SO ON, BUT IT ONLY APPLIES TO, QUOTE,

7    ONGOING AND CONTINUOUS VIOLATIONS.

8              ANY TIME THAT HOUSE BILL 316, HOUSE BILL 392 TOUCH ON

9    THE ELECTION LAW, THERE WILL PRESUMABLY BE AND WILL HAVE TO BE

10   IN MANY OF THESE CASES NEW REGULATIONS, AND TO THE EXTENT THAT

11   THE SECRETARY IS ENGAGED IN TRAINING REGISTRARS AND

12   SUPERINTENDENTS, THERE WILL BE NEW TRAINING BASED ON THE NEW

13   LAWS. THERE'S NOT A CONTINUING OR ONGOING VIOLATION BECAUSE THE

14   LINK OR THE CHAIN HAS BEEN BROKEN.

15             THE COURT:  NO VIOLATION OF THAT PARTICULAR LAW YET

16   IS YOUR ARGUMENT.

17             MR. BELINFANTE:  CORRECT, YES, YOUR HONOR, AND

18   BECAUSE YOU CAN'T UNDER THE ELEVENTH AMENDMENT GET RELIEF FOR

19   PAST HARM.  PAST HARM CAN BE EVIDENCE OF POTENTIAL FUTURE HARM,

20   BUT IF THE PAST HARM WAS BASED ON LAWS AND REGULATIONS THAT ARE

21   NO LONGER IN PLACE, THAT YOU CAN'T HAVE PROSPECTIVE RELIEF

22   GOING FORWARD.

23             LOOKING AT THE CLAIMS THAT WERE THERE IN THE

24   COMPLAINT, AS I INDICATED WERE BROKEN DOWN, ABSENTEE BALLOTS

25   PARAGRAPHS 140 TO 57 THAT, TOO, AND THIS DEALS WITH BOTH

1  NECESSARY PARTY AND MOOTNESS UNDER 316, THAT IS A

2  RESPONSIBILITY OF COUNTY OFFICERS.  HERE, TOO, THE SECRETARY

3  DECIDES WHAT THE ABSENTEE BALLOT LOOKS LIKE, BUT THIS IS NOT A

4  CASE LIKE A BUSH V. GORE IN 2000 WHERE PEOPLE DIDN'T KNOW HOW

5  THEY WERE VOTING OR WHAT THEY WERE VOTING ON.

6        IT'S A QUESTION OF NUMBERS.  PEOPLE FAILED TO PROVIDE

7  A SUFFICIENT NUMBER OF BALLOTS THEY WANT PROCESSED, THAT'S ALL

8  COUNTY OBLIGATIONS UNDER EXISTING CODE, AND THOSE CODE

9  SECTIONS, SOME OF THEM HAVE NOT BEEN CHANGED, BUT WHAT HAS BEEN

10 CHANGED IS THAT THE ABSENTEE BALLOT METHOD IS NOW MORE VOTER

11 FRIENDLY, AND CODE SECTION UNDER 316 21-2-386, REGISTRARS HAVE

12 TO PROMPTLY NOTIFY VOTERS THAT AN ABSENTEE BALLOT IS BEING

13 DEEMED PROVISIONAL.  PROMPTLY WILL LIKELY REQUIRE A RULE BY THE

14 STATE ELECTION BOARD ABOUT WHAT THAT MEANS, AND SO THERE WILL

15 BE A NEW RULE ON THIS NEW LAW.

16        SIMILARLY IF SOMEONE HAD REQUESTED AN ABSENTEE BALLOT

17 BUT BY THE TIME OF ELECTION DATE DOES NOT RECEIVE IT,

18 FREQUENTLY WE HAD ISSUES THAT ARE ALLEGED HERE THEY WOULD GO

19 INTO THE POLLS AND BE TOLD THEY COULDN'T VOTE BECAUSE THEY'RE

20 SHOWING UP ON --

21        THE COURT:  RIGHT.

22        MR. BELINFANTE:  THAT IS ADDRESSED NOW, TOO, AND

23 THERE'S A NEW PROCEDURE WHERE THE REGISTRAR IS NOW EMPOWERED TO

24 LOOK UP VARIOUS OTHER FORMS OF INFORMATION TO SEE WHAT'S

25 AVAILABLE, CAST A PROVISIONAL IF NEED BE, AND THERE'S MORE TIME

1    PROVIDED FOR THAT VOTER TO CAST A PROVISIONAL BALLOT.

2            THE COURT:  LOOKING AT THAT PART OF THE BILL, I MADE

3    A NOTE AND HOPEFULLY YOU CAN ADDRESS THIS, HOUSE BILL 316 ONLY

4    ADDRESSES SIGNATURE MISMATCHES FOR ABSENTEE BALLOTS BUT NOT FOR

5    OTHER MISMATCHES SUCH AS BIRTHDAYS.

6            MR. BELINFANTE:  THE BIRTHDAY ISSUE, AS I UNDERSTAND

7    IT, YOUR HONOR, WAS BASED ON THE FORM OF THE ABSENTEE BALLOT

8    WHERE IT WAS LISTED THE VOTER NAME AND THEN DATE.

9            THE COURT:  BECAUSE YOU REMEMBER BACK IN NOVEMBER

10   WHEN THAT CASE CAME IN FRONT OF ME THAT WAS THE MAIN ISSUE, AND

11   I WAS LIKE WHY DID IT NOT ADDRESS THAT.

12           MR. BELINFANTE:  THAT IS IF YOU -- IN HOUSE BILL 316,

13   AND THERE'S A LINE-BY-LINE VERSION IN YOUR NOTEBOOK, ON PAGE 23

14   I THINK IS WHERE THE STATE HAS ADDRESSED THAT ISSUE BECAUSE IT

15   CLARIFIES WHERE IT STRUCK THROUGH THE YEAR OF THE ELECTOR'S

16   BIRTH AND THEIR ADDRESS.  THAT'S WHERE PEOPLE WERE FILLING OUT

17   JUST QUICKLY THE DATE THEY SUBMITTED THE BALLOT.  SO THAT, TOO,

18   HAS BEEN ADDRESSED IN TERMS OF THE FORM, BUT THE FORM, YOU

19   KNOW, I DON'T WANT TO SPEAK FOR THE PLAINTIFFS, BUT AS I READ

20   IT, IT WAS NOT AS MUCH AN ISSUE AS HOW THEY WERE COUNTED AND

21   THE NUMBER.

22           THE COURT:  BUT YOUR POSITION IS THE BIRTHDAY ASPECT

23   HAS BEEN ADDRESSED IN 316?

24           MR. BELINFANTE:  IT HAS BEEN, YES, YOUR HONOR.

25           THE COURT:  WELL, I'M GOING TO GO BACK AND TAKE A

1  LOOK AT THAT.

2          MR. BELINFANTE:  AND THERE ARE FAILSAFE PROVISIONS

3  THAT ALLOW A VOTER BECAUSE THEY WILL BE NOTIFIED PROMPTLY IF

4  THEIR BALLOT IS DEEMED TO BE PROVISIONAL BECAUSE OF SOMETHING

5  LIKE THAT THEY CAN THEN GO TO IT.

6          ALSO ON THIS SLIDE DEALING WITH PROVISIONAL BALLOTS,

7  ONE OF THE THINGS IN 316, IT'S IN THE BOTTOM RIGHT THERE, CODE

8  SECTION 21-2-493 SAYS THAT THE SECRETARY IS EMPOWERED TO EXTEND

9  THE DEADLINE TO CERTIFY RESULTS.  YOU REMEMBER THAT'S ONE OF

10 THE ISSUES WE HAD HERE --

11         THE COURT:  RIGHT.

12         MR. BELINFANTE:  THE SECRETARY NOW HAS THE DISCRETION

13 TO DELAY THAT, AND THERE'S A PROVISION IN THERE FOR CONDUCTING

14 AUDITS, IF NEED BE, ON PROVISIONAL BALLOTS IN MANY WAYS

15 INCORPORATING THE RULINGS OF THIS COURT WHETHER IN THIS

16 COURTROOM OR JUDGE MAY'S OR JUDGE TOTENBERG'S, BUT THE

17 PROVISIONAL BALLOTS MUCH LIKE THE ABSENTEE BALLOTS ARE A

18 RESPONSIBILITY OF THE COUNTIES, AND THE SUPERINTENDENT GETS THE

19 BALLOTS, THE REGISTRARS IMPLEMENT THE BALLOTS.

20         BUT AS WE HAVE ALREADY DISCUSSED, THE METHOD BY WHICH

21 PEOPLE WILL BE CHECKED IN TERMS OF IDENTIFICATION HAS BEEN

22 EXPANDED.  IT'S NOW MORE VOTER FRIENDLY.  THE STATE OR THE

23 LOCAL OFFICIALS HAVE TO CONSIDER EVERYTHING FROM DEPARTMENT OF

24 NATURAL RESOURCES TO DEPARTMENT OF DRIVER SERVICES OR LARGELY A

25 NEW HOST OF DATA THAT WAS NOT THERE BEFORE, AND THAT, TOO,

1  COMES OUT OF -- I REMEMBER THE COMMON CAUSE CASE AND SOME OF

2  THE WAYS THAT PROVISIONAL BALLOTS WERE BEING CHALLENGED.

3          THIS SLIDE DEALS WITH POLLING PRECINCTS.  I THINK

4  WE'VE ALREADY TALKED ABOUT THAT IN TERMS OF WHAT THE COUNTY

5  OBLIGATIONS ARE AND WHAT THE STATE CAN DO, AND THUS IN SUMMARY,

6  YOUR HONOR, AND I WILL RESERVE THE REST OF MY TIME IF NEED BE

7  FOR REBUTTAL, THE CLAIMS AGAINST THE STATE EITHER THERE'S BEEN

8  A FAILURE TO JOIN THE NECESSARY PARTY, THE COUNTIES THAT

9  IMPLEMENT THOSE LAWS, OR THEY HAVE BEEN MOOTED BY THE TWO

10  PIECES OF LEGISLATION PASSED THIS PAST SESSION.

11          THE FAILURE TO TRAIN OR SUPERVISE, AS A THRESHOLD

12  MATTER, ONE ELECTION DOES NOT MEET THE STANDARD IN THE ELEVENTH

13  CIRCUIT OR THE UNITED STATES UNDER SUPREME COURT PRECEDENT TO

14  DO IT.  IT DOESN'T PROVIDE THE TYPE OF NOTICE, AND TO THE

15  EXTENT IT DID, THE STATE HAS ACTED, AND IT'S THAT LAW CHANGE

16  THAT WOULD REQUIRE ANY NEW TRAINING OR OVERSIGHT THAT WE JUST

17  DON'T HAVE THE FACTS BEFORE THAT CLAIM, LIKE ONE CHALLENGING

18  ANY NEW VOTING MACHINES, IS NOT RIPE.

19          THE COURT:  ONE QUESTION BEFORE YOU SIT DOWN.  WHAT

20  IF THE COURT SAYS JUST JOIN ALL 159 COUNTIES.

21          MR. BELINFANTE:  THEN I WOULD LEAVE IT TO MANY OF

22  THOSE COUNTIES WHO ARE OUTSIDE OF THE COURT'S JURISDICTION TO

23  MAKE THEIR ARGUMENTS IN TERMS OF WHETHER THEY'RE SUBJECT TO THE

24  COURT'S JURISDICTION, AND WHETHER THAT WOULD BE FEASIBLE.

25          WE WOULD SUBMIT --

1          THE COURT:  LET'S SAY THE COURT SAID JOIN ALL THE

2    COUNTIES IN THE NORTHERN DISTRICT.

3          MR. BELINFANTE:  THEN I CAN'T SPEAK FOR THOSE

4    COUNTIES, THEY MAY HAVE INDEPENDENT ARGUMENTS, BUT THAT WOULD

5    CERTAINLY ADDRESS THE FEASIBILITY SIDE OF THE NECESSARY PARTY

6    ANALYSIS UNDER 19B.

7          THE COURT:  THANK YOU.

8          MR. BELINFANTE:  THANK YOU, JUDGE.

9          MS. TANIS:  GOOD AFTERNOON, YOUR HONOR.  BETH TANIS

10   FOR THE PLAINTIFFS.  YOUR HONOR, I WAS GOING TO GO IN ORDER

11   BASICALLY OF THE COURT'S QUESTIONS; ALTHOUGH, I'M HAPPY --

12         THE COURT:  YOU DO IT HOWEVER YOU SEE FIT, AND I'LL

13   TRY TO FOLLOW HOW YOU PRESENT IT WITH MY QUESTIONS.  I KNOW YOU

14   ALL PREPARE PRESENTATIONS, SO I DON'T WANT TO THROW YOU OFF

15   YOUR PRESENTATION.

16         MS. TANIS:  WELL, I HOPE YOU WON'T BE THROWING ME

17   OFF.  IF YOU'VE GOT A QUESTION, YOU KNOW, THAT'S REALLY WHAT

18   MATTERS TO ME MORE THAN ANYTHING IS TO MAKE SURE THAT I ANSWER

19   YOUR QUESTIONS.

20         THE COURT:  GREAT LAWYER.

21         MS. TANIS:  I LOOK FORWARD TO YOUR QUESTIONS.  SO LET

22   ME START AND SOME OF THESE I THINK HAVE ALREADY BEEN TAKEN CARE

23   OF IN TERMS OF THE DEFENDANTS' PRESENTATION, BUT I WANT TO GO

24   BACK TO THIS ISSUE OF THE COURT'S FIRST QUESTION WHICH IS WHAT

25   IS THE EFFECT OF HB 316 ON STANDING.  I THOUGHT I HEARD THE

1  DEFENDANTS' COUNSEL STAND UP AND SAY WELL, NO, STANDING IS

2  MEASURED AT THE TIME THE COMPLAINT IS FILED, BUT THEN THE

3  ARGUMENT ON STANDING SEEMED TO SHIFT INTO THE EFFECT OF 316 ON

4  THINGS LIKE REDRESSABILITY AND TRACEABILITY, ET CETERA.  A

5  QUICK RESPONSE TO THAT IS THAT DOESN'T MATTER BECAUSE STANDING,

6  YOU HAVE TO LOOK AT IT AT THE TIME --

7          THE COURT:  IT WAS FILED.

8          MS. TANIS:  SO I'M NOT GOING TO GO FURTHER ON THAT.

9          THE NEXT QUESTION IS THE MOOTNESS QUESTION.  I HAVE

10  SO MANY PAGES HERE THAT I WAS GOING TO TELL YOU THAT UNLESS

11  EVERY SINGLE CLAIM IS ELIMINATED THIS COURT HAS SUBJECT MATTER

12  JURISDICTION AND CONVINCE YOU THAT EVERY CLAIM WAS NOT

13  ELIMINATED, BUT THE DEFENDANTS HAVE CONCEDED THAT, SO I'M

14  HAPPILY GOING TO MOVE OFF OF THAT.

15          THE COURT:  BUT WHAT ABOUT THE ONES THEY DIDN'T

16  CONCEDE ON, THE VOTING MACHINES --

17          MS. TANIS:  RIGHT, SO I WANTED TO TALK ABOUT THOSE.

18  NOW, YOUR HONOR, IF I MAY, I DO HAVE A NOTEBOOK FOR THE

19  COURT.

20          THE COURT:  ALL RIGHT.  JUST WHAT I NEED IS MORE

21  STUFF TO READ.

22          MS. TANIS:  I'M HOPING THAT IT WILL CAUSE THINGS TO

23  BE EASIER.  IN THAT NOTEBOOK AT TAB I BELIEVE IT'S 23, WE HAVE

24  A CHART, AS WELL THAT DEALS WITH THE MOOTNESS ISSUE, AND IT

25  BASICALLY TAKES OUR CLAIMS AND TALKS ABOUT THE FIRST COLUMN ON

1  THERE ARE WHAT ARE OUR SPECIFIC ALLEGATIONS THAT WE ARE GIVING

2  THE COURT.  THE PARAGRAPH CITES FROM THE AMENDED COMPLAINT AS

3  WELL AS PRAYER FOR RELIEF PARAGRAPH CITES.  THE NEXT COLUMN IS

4  HB 316 PROVISIONS, AND THE NEXT COLUMN IS WHAT IS THE EFFECT,

5  DO THOSE HB 316 PROVISIONS ELIMINATE OUR CLAIM.

6         WHAT YOU SEE ON THE FIRST 9 PAGES OR SO OF THAT IS

7  THERE IS NO HB 316 PROVISION ON THERE, AND I THINK WE'VE

8  ALREADY DISCUSSED THAT.  I DON'T NEED TO BELABOR THAT POINT,

9  BUT WHAT THAT CERTAINLY DOES MEAN IS THAT THIS COURT HAS

10 SUBJECT MATTER JURISDICTION OF THIS CASE.

11         THE COURT:  I AGREE.

12         MS. TANIS:  ALL WE'RE NOW TALKING ABOUT IS YEAH, CAN

13 WE GET RID OF SOME CLAIMS BECAUSE THEY'RE MOOT.

14         THE COURT:  I'M GOING TO AGREE WITH YOU 316 IS OUT OF

15 THE CASE.  DEFENSE COUNSEL DOES NOT ELIMINATE ALL ASPECTS, ITS

16 MOOTNESS.  I SAW POSSIBLY THREE, I THINK THEY MAY HAVE

17 IDENTIFIED FOUR, BUT LET'S TALK ABOUT THE ONES THAT I THINK ARE

18 A POSSIBILITY.  I'LL MAKE MY MIND UP EITHER WAY, YOU

19 UNDERSTAND?

20         MS. TANIS:  ALL RIGHT.  I BELIEVE THE COURT MENTIONED

21 THE USE-IT-OR-LOSE-IT STATUTE.

22         THE COURT:  OR BETTER KNOWN AS OR OTHERWISE KNOWN,

23 NOT BETTER KNOWN, OTHERWISE KNOWN AS THE MAINTENANCE ONE.

24         MS. TANIS:  RIGHT, OR THE PURGE STATUTE, OR THERE'S

25 SO MANY DIFFERENT NAMES WE COULD CALL IT.  HB 316 DOES NOT

1  RENDER THAT CLAIM MOOT, AND THERE ARE TWO MAJOR REASONS,

2  ALTHOUGH OUR CHART ACTUALLY HAS SOME OTHER REASONS, AS WELL.

3  OUR CLAIMS HAVE TWO FUNDAMENTAL CHALLENGES TO THE STATUTE ALONG

4  WITH SOME OTHER ONES.

5          ONE IS THAT THE USE-IT-OR-LOSE-IT STATUTE, PURGE

6  STATUTE IS UNCONSTITUTIONAL BECAUSE IT USES AS A TRIGGERING

7  EVENT A VOTER'S INACTIVITY.

8          THE COURT:  WHAT ABOUT THE SUPREME COURT HAS LOOKED

9  AT THIS.  THEY DIDN'T LOOK AT IT FROM A CONSTITUTIONAL POINT OF

10  VIEW.  THEY LOOKED AT IT AND ISSUED A RULING.  YOUR ARGUMENT IS

11  THAT IF IT COMES BACK IN FRONT OF THEM AGAIN, YOU'RE LOOKING AT

12  AN ENTIRELY DIFFERENT RULING?

13          MS. TANIS:  YOUR HONOR, WELL, IT MAY BE AN ENTIRELY

14  DIFFERENT RULING.  OF COURSE WHAT THE SUPREME COURT LOOKED AT

15  WAS EXCLUSIVELY A STATUTORY CONSTRUCTION ISSUE, IS THIS OHIO

16  STATUTE INCONSISTENT, OR DOES IT VIOLATE TWO DIFFERENT FEDERAL

17  STATUTES ABOUT VOTING.  THAT WAS IT AND --

18          THE COURT:  BUT THE ISSUE WAS YOU CAN'T PURGE THEM

19  JUST BECAUSE THEY'RE NOT VOTING, RIGHT?

20          MS. TANIS:  I'M SORRY, SAY IT AGAIN.

21          THE COURT:  FAILURE TO VOTE DOES NOT GIVE THEM A

22  REASON TO PURGE.

23          MS. TANIS:  RIGHT.

24          THE COURT:  AND WHEN THEY ANALYZED IT, THEY SAID WE

25  AGREE WITH THAT.  THEY'RE NOT BEING PURGED BECAUSE THE PERSON

1  DIDN'T RESPOND TO THE POSTCARD, BUT AS YOU'RE GOING TO ARGUE

2  AND YOU HAVE ARGUED, THE POSTCARD WAS SENT OUT, IT WAS SENT OUT

3  ONE OF TWO WAYS.  THE POST OFFICE CONTACTED US AND SAYS THIS

4  PERSON IS LONGER HERE, AND WE ALL AGREE THAT'S NOT AN ISSUE IN

5  THIS CASE, OR THE PERSON HAS NOT VOTED FOR A PERIOD OF TIME AND

6  THEY SEND A POSTCARD OUT.  THE POSTCARD IS NOT RETURNED.  AS I

7  READ THE CASE THEY SAYS THAT'S GROUNDS OR GIVES YOU REASON TO

8  PURGE.

9          WHAT ELSE ARE -- HOW ELSE ARE THEY GOING TO ATTACK

10  THIS?

11          MS. TANIS:  WELL, THERE'S A VERY IMPORTANT PART OF

12  THAT DECISION THAT JUSTICE ALITO REFUSED TO LOOK AT, AND THAT

13  WAS THE REASONABLENESS OF THIS STATUTE, AND WHAT JUSTICE ALITO

14  SAID IN THAT CASE IN ESSENCE WAS I DON'T HAVE THE LUXURY OF

15  LOOKING AT THAT, THAT'S NOT BEFORE ME.  BECAUSE WHEN YOU'VE GOT

16  THIS TYPE OF A CHALLENGE THAT IS LOOKING AT THE STATUTORY

17  INTERPRETATION, JUST WHAT DO THE WORDS OF THE STATUTE SAY, AND

18  HOW DO THEY JIVE WITH THE FEDERAL STATUTES OR NOT, WE CAN'T

19  CONSIDER THE REASONABLENESS OF THIS STATUTE.

20          SO, FOR EXAMPLE, WHEN YOU LOOK AT THE DISSENTING

21  OPINIONS IN THAT CASE, THERE ARE ISSUES RAISED LIKE HOW CAN

22  VOTING INACTIVITY BE A PROXY FOR WHETHER SOMEBODY MOVED OR NOT,

23  THAT SIMPLY IS NOT A REASONABLE ASSUMPTION, AND JUSTICE ALITO

24  RESPONDS TO THAT AND SAYS THAT'S OFF THE TABLE FOR THIS, THAT

25  IS NOT SOMETHING THAT WE ARE ENTITLED TO CONSIDER WHEN WE ARE

1   DOING NOTHING BUT WHAT DO THE WORDS ON THE PAGE MEAN, AND THAT,

2   YOUR HONOR, IS WHERE THERE IS THIS HUGE UNRECONCILED ISSUE WITH

3   RESPECT TO THE CONSTITUTIONAL ISSUES, AND I'LL TELL YOU THE

4   ELEVENTH CIRCUIT'S --

5           THE COURT:  WHAT WOULD BE REASONABLE GROUNDS FOR THE

6   SECRETARY OF STATE TO REMOVE SOMEONE OR PURGE SOMEONE FROM THE

7   VOTERS LIST?  WHAT WOULD BE REASONABLE, OTHER THAN THE POST

8   OFFICE CONTACTING THEM SAYING THEY MOVED?

9           MS. TANIS:  YOUR HONOR, I WOULDN'T KNOW THE WHOLE

10  RANGE OF THINGS.  I THINK THAT --

11          THE COURT:  GIVE ME SOMETHING BECAUSE I'VE GOT TO

12  DECIDE IT.

13          MS. TANIS:  WELL, THERE'S ANOTHER SECURITY PROVISION

14  FOR EXAMPLE THAT ALLOWS THE SECRETARY OF STATE NOW TO JOIN UP

15  WITH THIS PROGRAM WHERE YOU CAN GET BETTER INFORMATION IN

16  TERMS OF WHETHER SOMEONE HAS MOVED.  YOU COULD CERTAINLY RAMP

17  UP THE NOTICE PROVISIONS ON THAT RATHER THAN JUST THIS SINGLE

18  POSTCARD.

19          BUT THE PROBLEM THAT WE HAVE ALLEGED IN THIS IS THAT

20  USING VOTING INACTIVITY IS NOT -- IT'S NOT JUST THE

21  REASONABLENESS, IT'S ALSO A FIRST AMENDMENT VIOLATION BECAUSE

22  OF THE POLITICAL MESSAGE THAT IS SENT BY PEOPLE NOT VOTING, AND

23  IF I CAN TALK FOR A MINUTE ABOUT WHAT THE ELEVENTH CIRCUIT DID

24  WITH JUDGE BATTEN'S RULING, AND WHEN THE ELEVENTH CIRCUIT

25  REMANDED THAT CASE --

```
 1              THE COURT:  THEY SAID LOOK AT THE FIRST AMENDMENT.
 2              MS. TANIS:  RIGHT.  AND WHAT'S IMPORTANT ABOUT THAT
 3    IS THAT THE COURT TREATED LOOKING AT THE FIRST AMENDMENT
 4    DIFFERENT FROM WHEN THE COURT SAID JUDGE BATTEN, YOU NEED TO
 5    CONSIDER THESE OTHER ISSUES WHEN THE SUPREME COURT DECIDES THE
 6    HUSTED OPINION, RIGHT?  IT SAYS YOU'VE GOT TO CONSIDER THOSE IN
 7    RELATION TO THAT, BUT TREATED THE FIRST AMENDMENT CLAIM
 8    DIFFERENTLY PRECISELY BECAUSE HUSTED DID NOT MAKE ANY
 9    RESOLUTION OF CONSTITUTIONAL CLAIMS, BUT TREATED THAT
10    DIFFERENTLY WHEN YOU LOOK AT THE LANGUAGE --
11              THE COURT:  I FIND IT INTERESTING THAT THE MOVING
12    PARTY IN THAT CASE NEVER FOLLOWED BACK UP.
13              MS. TANIS:  WELL, YOUR HONOR, WE FOLLOWED BACK UP.
14    WHAT CAN I SAY?  I WAS GOING TO SAY WE PICKED UP THE SLACK, BUT
15    THAT'S A HARD THING TO ARGUE WITH AS TO BONDURANT IN TERMS OF
16    SLACK, BUT --
17              THE COURT:  YOU SAID THAT, NOT ME, LET THE RECORD SO
18    REFLECT.
19              MS. TANIS:  HE IS A DEAR FRIEND SO I CAN ONLY HOPE
20    THAT HE WILL FORGIVE ME FOR SAYING THAT IN CONNECTION WITH
21    THAT, BUT THAT IS A LIVE ISSUE.  SO THE CONSTITUTIONAL
22    CHALLENGES WE HAVE TO THAT, IT CERTAINLY ENCOMPASSES THE
23    REASONABLENESS, BUT IT ALSO ENCOMPASSES FIRST AMENDMENT
24    CHALLENGES TO IT.
25              THE COURT:  BUT STILL YOU'RE SAYING -- I CAN
```

1  UNDERSTAND THE ARGUMENT ON THE REASONABLENESS OF IT, BUT WHAT

2  STANDARD DO I USE IN DETERMINING WHAT'S REASONABLE AND WHAT'S

3  NOT REASONABLE?  WE'RE ALL I THINK IN TOTAL AGREEMENT, IF THE

4  POST OFFICE SENDS YOU A NOTICE THAT SAYS THIS PERSON HAS MOVED,

5  THAT'S REASONABLE, BUT THAT'S NOT IN THIS CASE AS I READ IT.

6        SO WHAT OTHER STANDARD SHOULD I BE LOOKING AT OR

7  CONSIDERING ON WHAT'S REASONABLE?

8        MS. TANIS:  WELL, YOUR HONOR, HERE IS A QUICK

9  RESPONSE, AND I DON'T MEAN IT TO SOUND GLIB.  I ALSO DON'T WANT

10  TO GIVE YOU A WRONG ANSWER ON THIS.  I COULD NOT ARGUE WITH ALL

11  OF THE CONSTITUTIONAL ISSUES THAT WOULD BE RAISED IN THAT AND

12  THE VARIOUS ARGUMENTS AND THE VARIOUS CASE LAW.  THOSE ARE

13  ISSUES THAT WE WOULD NEED TO LOOK AT.

14        WHAT I CAN SAY IS THAT BASED ON THE MOTION TO DISMISS

15  HUSTED HAS NOT DISPOSED OF THIS CASE, AND I AM VERY SURE THAT

16  WE WILL HAVE FULSOME BRIEFING IN TERMS OF THESE OTHER ISSUES.

17  I THINK THOSE ISSUES ARE ALSO GOING TO BE AFFECTED BY WHAT WE

18  LEARN IN DISCOVERY, SO I THINK THAT THOSE ARE MERITS TYPES OF

19  ISSUES, AND THEY WILL GET RESOLVED AS WE ACTUALLY GET INTO THIS

20  CASE AND GET DISCOVERY.

21        THE COURT:  I CAN UNDERSTAND THAT ARGUMENT.

22        MS. TANIS:  ALL RIGHT.  SO IN THE HB 316 CONTEXT, OF

23  COURSE HB 316 DOESN'T DO ANYTHING.

24        THE COURT:  I AGREE.

25        MS. TANIS:  ALL RIGHT.  OKAY.  SO WHY DON'T I MOVE TO

1  VOTING MACHINES WHICH I THINK IS ONE OF THE OTHER THINGS THAT

2  THE DEFENDANTS HAVE MENTIONED.  MY QUICK RESPONSE ON THE VOTING

3  MACHINE ARGUMENT IS THE EXPRESSION THE ROAD TO HELL IS PAVED

4  WITH GOOD INTENTIONS, AND ONE OF THE -- THE NEW VOTING MACHINES

5  ARE NOT IN PLACE YET.  I MEAN THAT'S ONE OF THE REASONS THAT

6  JUDGE TOTENBERG SAID THAT SHE WOULD NOT FIND A MOOTNESS

7  CHALLENGE MERITORIOUS BECAUSE THEY ARE NOT GOING TO BE IN PLACE

8  FOR 2019 ELECTIONS.

9           I ALSO WANT TO CORRECT ANY IMPRESSION CREATED THAT

10  OUR COMPLAINT ONLY RELATES TO 2020 ELECTIONS BECAUSE IN FACT WE

11  SAID FUTURE ELECTIONS INCLUDING 2020 ELECTIONS, SO 2019 IS

12  STILL A LIVE ISSUE.

13           BUT FROM A MOOTNESS ARGUMENT IF YOU LOOK AT WHAT HB

14  316 DOES, IT REALLY TALKS ABOUT -- AND, YOUR HONOR, WE ALSO

15  HAVE IN YOUR NOTEBOOK, WE'VE HAVE GOT THE RED LINED HB 316.

16           THE COURT:  I HAVE THE BILL.  I'VE READ IT A NUMBER

17  OF TIMES.

18           MS. TANIS:  OKAY.  THEN YOU'LL BE FAMILIAR WITH

19  THIS.  IT'S GOT THINGS LIKE THESE VOTING MACHINES NEED TO BE IN

20  PLACE AS SOON AS POSSIBLE.  THAT'S AS DEFINITE AS THE TIMELINE

21  IS, AND THERE ARE A NUMBER OF CONTINGENCIES THAT THE BILL

22  ACTUAL RECOGNIZE, THINGS LIKE APPROPRIATIONS, AND IT'S GOT SOME

23  CATEGORY CALLED COUNTY RESPONSIBILITIES AND SEVERAL OTHER TYPES

24  OF THINGS, AND I KNOW THAT THE DEFENDANTS HAVE SAID THAT THE

25  SECRETARY OF STATE HAS SENT OUT AN RFP, BUT THAT'S A VERY LONG

1  WAY FROM HAVING --

2          THE COURT:  WELL, HERE'S THE QUESTION.  DOES THE NEW

3  VOTING MACHINES ADDRESS THE CONCERNS AND WHAT RELIEF CAN I GIVE

4  YOU AS A PLAINTIFF REGARDING THAT VOTING MACHINE.  I KNOW YOUR

5  ARGUMENT IS IT'S NOT IN PLACE YET, BUT LET'S SAY DOES THE

6  VOTING MACHINE APPROVED BY THE GENERAL ASSEMBLY THIS YEAR,

7  SIGNED BY THE GOVERNOR, DOES IT ADDRESS YOUR CONCERN, AND IF IT

8  DOES NOT, WHAT RELIEF CAN I GIVE YOU REGARDING THAT VOTING

9  MACHINE?

10          MS. TANIS:  THESE NEW VOTING REASONS DO NOT ADDRESS

11  OUR CONCERNS WHEN YOU GET INTO IT ON THE MERITS --

12          THE COURT:  WHY NOT?

13          MS. TANIS:  BECAUSE THEY DON'T HAVE AN AUDIT TRAIL ON

14  THEM THAT IS SUFFICIENT.  IT'S ONE OF OUR CLAIMS UNDER THE HELP

15  AMERICA TO VOTE.  IT DOESN'T CONTAIN THAT, SO YOU DON'T HAVE AN

16  AUDIT TRAIL.  IT DOESN'T HAVE PAPER BALLOTS.  I MEAN IT'S SO

17  MANY OF THE THINGS THAT WE'VE TALKED ABOUT THAT ARE NECESSARY

18  FOR MAKING THAT VOTING SYSTEM SECURE --

19          THE COURT:  THE NEW VOTING MACHINE DOES NOT GIVE A

20  PAPER BALLOT?

21          MS. TANIS:  NOT THE ONE THAT CREATES ANY TYPE OF AN

22  AUDIT TRAIL WHERE YOU CAN GO BACK AND SEE THE PROBLEMS.  SO IF

23  YOU HAVE THE SAME TYPES OF PROBLEMS, FOR EXAMPLE, THAT WERE IN

24  THE LAST ELECTION, VOTE SWITCHING, ET CETERA, THESE ARE

25  CERTAINLY HIGHLY TECHNICAL ISSUES IN CONNECTION WITH THAT, BUT,

1  AGAIN, THIS IS ANOTHER MATTER THAT WHEN WE CAN GET INTO

2  DISCOVERY ON THIS AND ACTUALLY GET BEFORE THE COURT EXPERTS IN

3  THIS AREA WHO CAN TALK ABOUT WHY THESE MACHINES DOESN'T COMPLY

4  WITH --

5          THE COURT:  ALL RIGHT.  LET'S SAY IF WE GET INTO

6  DISCOVERY AND YOU HAVE FIVE EXPERTS THAT SAY THIS MACHINE IS

7  INADEQUATE.  THEY HAVE FIVE EXPERTS THAT SAY THIS MACHINE IS

8  ADEQUATE.

9          SAME QUESTION I ASKED MR. TYSON, HAS THE GEORGIA

10 GENERAL ASSEMBLY AND THE GOVERNOR ALREADY DECIDED THAT MATTER

11 THAT THIS MACHINE IS ADEQUATE?

12         MS. TANIS:  RIGHT, YOUR HONOR, BUT WHAT WE'RE SAYING

13 IS -- IT'S GOT TO RISE TO THE LEVEL, RIGHT, FOR EITHER A

14 VIOLATION OF FEDERAL LAW ON THAT OR FOR A CONSTITUTIONAL

15 VIOLATION, AND JUST BECAUSE THE GOVERNOR SAID IT

16 DOESN'T MEAN --

17         THE COURT:  I UNDERSTAND THAT PART, BUT WHAT I'M

18 SAYING IS THAT YOUR ARGUMENT IS GOING TO BE THIS MACHINE IS NOT

19 ADEQUATE.

20         MS. TANIS:  WELL, I THINK IT'S GOING TO REALLY BE

21 BECAUSE WE HAVE THAT CLAIM UNDER THE HAVA COUNT IS GOING TO BE

22 THAT THESE MACHINES DON'T COMPLY WITH FEDERAL LAW FOR VOTING

23 MACHINES AND THAT THESE MACHINES ALSO JUST DO NOT PROVIDE THE

24 SECURITY THAT THEY ARE REQUIRED TO HAVE.

25         THE COURT:  I HAVEN'T READ HOUSE BILL 392.  THEY'VE

1  INDICATED THE GOVERNOR SIGNED IT TODAY, AND THEY'VE INDICATED

2  THAT HOUSE BILL 392 ADDRESSES THE DATA SECURITY.  I'M SURE YOU

3  PROBABLY HAVE NOT HAD TIME TO READ IT EITHER.  YOU MAY HAVE.

4          MS. TANIS:  WELL, YOUR HONOR, I READ A NEWSPAPER

5  ARTICLE ABOUT IT, AND I'VE SEEN IT, BUT THE PROBLEM WITH THAT

6  AGAIN NOT ADDRESSING THIS FROM A MOOTNESS PERSPECTIVE --

7          THE COURT:  NO, THAT'S WHAT I'M TALKING ABOUT.

8          MS. TANIS:  I DON'T MEAN TO DODGE YOUR QUESTION, BUT

9  I'M KIND OF LOOKING AT IT FROM A MOOTNESS PERSPECTIVE, AND IT

10  REALLY JUST SAYS YOU NEED TO DO SOMETHING ABOUT THIS, A

11  REGULATION NEEDS TO BE ESTABLISHED, AND A REGULATION IS NOT YET

12  ESTABLISHED, SO WE DON'T KNOW WHAT THAT REGULATION IS GOING TO

13  SAY, AND IT SAYS THE REGULATION SHALL BE GENERALLY CONSISTENT

14  WITH CURRENT INDUSTRY SECURITY STANDARDS, BUT, AGAIN, WE DON'T

15  KNOW WHAT THAT REGULATION SAYS, AND IT TELLS THE SECRETARY OF

16  STATE TO CONSIDER THOSE SECURITY STANDARDS.

17          I THINK FROM A MOOTNESS PERSPECTIVE, I THINK KIND OF

18  CUTTING TO THE CHASE ON THESE ISSUES ABOUT SOMETHING THAT MIGHT

19  HAPPEN IN THE FUTURE, INCLUDING IF THESE -- HOW THESE RFP'S

20  EVEN GET ANSWERED, ET CETERA.  I WANT TO DIRECT THE COURT'S

21  ATTENTION TO A CASE THAT WE HAVE IN OUR NOTEBOOK.  IT'S THE

22  FANIN CASE.  IT SHOULD BE TAB 7, AND WE'VE HIGHLIGHTED THESE

23  CASES, YOUR HONOR, AND WE'VE GIVEN A COPY OF THOSE CASES

24  HIGHLIGHTED, EXACTLY WHAT THE COURT HAS, TO THE DEFENDANTS, AND

25  IF YOU LOOK AT PAGE 876 IN THIS CASE, IT SAYS THAT THERE IS A

1  WIDE GULF -- THIS IS A VA CASE WHERE THE VA HADN'T BEEN DOING

2  WHAT THE PLAINTIFFS SAID IT SHOULD DO.  HAVE I GIVEN THE COURT

3  TIME TO GET THERE?

4           OKAY.  SO THE VA SAID YEAH, BUT WE'RE WORKING ON IT,

5  WE'VE GOT PROCESSES THAT WE'RE WORKING ON, AND THE ELEVENTH

6  CIRCUIT SAYS THERE'S A WIDE GULF BETWEEN THE VA BEING IN THE

7  PROCESS OF IMPLEMENTING NEW PROCEDURES, AND IT HAVING THOSE NEW

8  PROCEDURES FULLY IN PLACE, AND HERE'S THE CRITICAL LANGUAGE:

9  ALMOST MOOT IS NOT ACTUALLY MOOT.

10          AND IN SAYING THAT THE ELEVENTH CIRCUIT CITES TO THIS

11  CASE OF BUONO V NORTON WHICH IS ALSO IN YOUR NOTEBOOK AT TAB 1,

12  AND I'M NOT GOING TO QUOTE THE LANGUAGE OF THAT, BUT WHAT I

13  WILL SAY ABOUT THAT THAT IS A FACT SITUATION THAT'S ACTUALLY

14  MORE ON POINT BECAUSE PLAINTIFFS WERE CHALLENGING THE EXISTENCE

15  OF A CHRISTIAN CROSS ON FEDERAL PARK PROPERTY.

16          AFTER THE CASE WAS FILED, CONGRESS ENACTED

17  LEGISLATION THAT BASICALLY SAID THAT THAT LAND WHERE THE CROSS

18  WAS ON WAS GOING TO BE TRANSFERRED TO A PRIVATE ORGANIZATION,

19  AND WHAT THE NINTH CIRCUIT SAID IN THAT CASE IS, YOU KNOW, THAT

20  MIGHT TAKE AS MUCH AS TWO YEARS FOR THAT TO HAPPEN.  THIS IS

21  NOT MOOT AT THIS POINT.  THERE ARE TOO MANY THINGS THAT CAN

22  HAPPEN BETWEEN NOW AND THEN FOR THAT TO RENDER THIS CASE MOOT

23  ON THOSE CLAIMS NOW.

24          SO IT'S NOT JUST A MATTER -- I MEAN IT'S A MATTER OF

25  RIGHT NOW WHAT WE HAVE IN THE STATE OF GEORGIA IS THE OLD

1   VOTING MACHINES.  I UNDERSTAND THERE'S AN RFP.  I UNDERSTAND --

2            THE COURT:  BUT IN UNITED STATES VERSUS GEORGIA,

3   JUDGE JORDAN POINTED OUT ONCE THE STATE OF GEORGIA PASSED THAT

4   BILL REGARDING RUNOFF ELECTIONS THAT MADE IT MOOT AT THAT

5   POINT.

6            MS. TANIS:  YES, YOUR HONOR, THAT ALSO WAS -- IT WAS

7   ALREADY DONE.  I MEAN THE ACTION TO BE TAKEN IN THAT CASE WAS

8   DONE, RIGHT?  IT WAS WHEN THOSE ABSENTEE BALLOTS NEEDED TO BE

9   SENT OUT.

10           THE COURT:  IN OTHER WORDS IN THE 2014 ELECTION, SOME

11  JUDGE SAID YOU HAD TO HAVE A 45-DAY RUNOFF PERIOD.

12           MS. TANIS:  RIGHT.

13           THE COURT:  THE STATE OF GEORGIA CAME IN ON JANUARY

14  1ST, I THINK THEY PASSED IT IN LIKE TEN DAYS, BUT THE CASE GOES

15  UP IN FRONT OF THE ELEVENTH CIRCUIT, A THREE JUDGE PANEL WITH

16  JUDGE JORDAN.  ABOUT A YEAR LATER HE ISSUES AN OPINION THAT

17  SAYS WHEN GEORGIA PASSED THAT BILL AND THE GOVERNOR SIGNED IT,

18  IT MADE IT MOOT TO CHALLENGE WHAT GEORGIA WAS HAVING TO THE

19  RUNOFF ELECTION.  I UNDERSTAND YOUR ARGUMENT IS THAT WELL, IT

20  DOESN'T BECOME MOOT UNTIL THE VOTING MACHINES ARE ACTUALLY PUT

21  INTO PLACE.

22           MS. TANIS:  RIGHT, THERE WAS NOTHING ABOUT THE

23  STATUTE, THOUGH.  IN THE UNITED STATES VERSUS GEORGIA CASE IT

24  SAID, YOU KNOW, HERE IS WHAT WILL HAPPEN, YOU KNOW, HERE IS

25  WHAT IS GOING TO HAPPEN.  IT DIDN'T REQUIRE A SERIES OF

1  CONTINGENCIES, THINGS LIKE WE HAVE TO SEND OUT THESE RFP'S,

2  WE'VE GOT TO BE ABLE TO GET THE RFP'S AND FIND A VENDOR, WE

3  NEED TO HAVE COUNTIES DO THINGS WITH THEIR RESPONSIBILITIES AND

4  APPROPRIATIONS AND ALL THESE OTHER TYPES OF THINGS WHICH ARE

5  ALL KINDS OF CONTINGENCIES THAT NEED TO HAPPEN BEFORE THOSE

6  VOTING MACHINES ARE IN PLACE.

7            UNLIKE THE UNITED STATES VERSUS GEORGIA CASE WHERE

8  IT'S JUST SAYING HERE IS NOW THE TIMEFRAME THAT YOU HAVE TO

9  SEND AN ABSENTEE BALLOT TO OVERSEAS MILITARY PERSONNEL.  THERE

10 IS NO --

11           THE COURT:  IT'S MORE THAN THAT.  THEY HAD TO CHANGE

12 THE PRIMARY ELECTIONS IN GEORGIA TO MEET THE RUNOFF PERIOD.

13           MS. TANIS:  RIGHT, AND IT WAS DONE.  SO I THINK THAT

14 IT'S JUST A VERY DIFFERENT SITUATION, AND IT'S MUCH MORE LIKE

15 THE BUONO CASE WHERE YOU SAY ALL RIGHT, THE LEGISLATION SAYS

16 THAT THIS LAND SHALL BE TRANSFERRED, AND THE COURT IS SAYING

17 WELL THAT'S GOOD, BUT IT'S TALKING ABOUT FUTURE EVENTS, AND

18 THERE ARE TOO MANY UNCERTAINTIES --

19           THE COURT:  SO IS YOUR ARGUMENT THERE'S A POSSIBILITY

20 THE STATE OF GEORGIA MAY NOT USE THESE VOTING NEW MACHINES THEY

21 PASSED IN HOUSE BILL 316 IF ALL THESE CONTINGENCIES ARE NOT

22 MET?

23           MS. TANIS:  YES, YOUR HONOR, AND THERE IS A

24 POSSIBILITY OF THAT.  I MEAN THEY HAVE TO GO THROUGH A PRE-

25 CERTIFICATION PROCEDURE.  THERE ARE ALL KINDS OF THINGS THAT

1   WILL HAPPEN ON THAT, AND MEANWHILE WHAT WE HAVE, THE CURRENT

2   STATE OF AFFAIRS, I MEAN THIS IS ONE OTHER BIG DIFFERENCE

3   BETWEEN THE UNITED STATES VERSUS GEORGIA CASE.  RIGHT NOW AND

4   IN THE NEXT ELECTION CYCLE WHICH IS, OF COURSE, WHAT JUDGE

5   TOTENBERG FOUND, WE'RE STILL GOING TO HAVE THESE OLD MACHINES.

6   THAT WAS NOT THE CASE IN UNITED STATES VERSUS GEORGIA AT LEAST

7   INSOFAR AS I KNOW.

8           THAT YOU WEREN'T TALKING ABOUT WELL, WE'RE NOT GOING

9   TO IMPLEMENT THIS NEW NOTICE, YOU KNOW, THE DATE AND THE

10  TIMELINE.  WE'RE GOING TO WAIT.  WE WON'T DO IT IN THE NEXT

11  ELECTION.  WE'RE GOING TO DO IT SOME TIME IN THE FUTURE WHICH

12  WOULD BE THE ANALOGY TO WHAT'S HAPPENING WITH THESE VOTING

13  MACHINES, AND I THINK THAT'S THE REAL DISTINCTION THERE IN

14  THOSE CASES.

15          SO UNLESS YOU'VE GOT A QUESTION, LET ME GO.

16          THE COURT:  GO AHEAD.

17          MS. TANIS:  ALL RIGHT.  SO, YOUR HONOR, I'M NOT

18  EXACTLY SURE WHAT YOUR -- I'D KIND OF LIKE TO HEAR FROM YOU

19  WHERE YOU THINK THERE MIGHT BE OTHER MOOTNESS ISSUES, AND I CAN

20  ADDRESS THOSE BECAUSE I DIDN'T HEAR THE DEFENDANTS ADDRESS

21  THESE OTHERS.

22          THE COURT:  I THINK THEY TALKED ABOUT ONE, AND I HAD

23  ONE CONSIDERATION, BUT YOU'VE TALKED ABOUT THE DATA SECURITY,

24  SO YOU'VE ADDRESSED IT.

25          MS. TANIS:  OKAY.  ALL RIGHT, YOUR HONOR, SO I THINK

1   I WILL GO AHEAD AND SKIP AHEAD.  ONE OTHER ISSUE I WILL SAY IS

2   A DISTINGUISHING CHARACTERISTIC ALTHOUGH IT'S ON THE

3   PRESUMPTION.  MANY -- MOST OF OUR CLAIMS IN THIS CASE REALLY

4   HAVE TO DO WITH A FAILURE FOR GEORGIA LAW TO BE FOLLOWED.  I

5   MEAN THAT'S A GOOD BIT OF WHAT WE'RE TALKING ABOUT.

6           SO HB 316 EVEN IT PUTS A PROVISION IN PLACE, WHAT

7   DIFFERENCE DOES IT MAKE IF PEOPLE AREN'T GOING TO FOLLOW IT.

8   WE DO HAVE AN ISSUE, AND I THINK THEREFORE WE HAVE FACTS HERE

9   THAT ARE DEMONSTRABLY DIFFERENT FROM THE FACTS IN, FOR EXAMPLE,

10  UNITED STATES VERSUS GEORGIA WHEN YOU'RE TALKING ABOUT

11  REBUTTABLE PRESUMPTIONS, ET CETERA, WITH THE GOVERNMENT, BUT

12  THAT, OF COURSE, IS SOMETHING THAT WILL BE EXPLORED IN

13  DISCOVERY.

14          THE COURT:  IT GOES BEYOND UNITED STATES VERSUS

15  GEORGIA.  THERE WAS ANOTHER CASE CORAL SPRINGS STREET SYSTEMS

16  VERSUS CITY OF SUNRISE, 371 F.3D, ELEVENTH CIRCUIT, THAT

17  TALKS ABOUT MORE THAN WHAT UNITED STATES VERSUS GEORGIA TALKS

18  ABOUT.

19          MS. TANIS:  WHICH CASE IS THAT?

20          THE COURT:  CORAL SPRINGS SYSTEMS, INCORPORATED

21  VERSUS CITY OF SUNRISE, 371 F.3D 1320, AN ELEVENTH CIRCUIT

22  CASE, 2004.  I'M GOING TO GIVE YOU BOTH SIDES A CHANCE TO BRIEF

23  THIS.  SO THAT'S A CASE YOU MIGHT WANT TO LOOK AT.

24          MS. TANIS:  AND ONE OTHER THING IN TERMS OF WHILE

25  WE'RE TALKING ABOUT UNITED STATES VERSUS GEORGIA, THE COURT HAD

1   ALSO ASKED A QUESTION ABOUT WHETHER UNITED STATES VERSUS

2   GEORGIA IS THE PROPER ANALYSIS, AND THERE'S NOTHING ABOUT THAT

3   CASE THAT I WOULD SAY GEE, THAT'S REALLY WRONG LAW, YOUR HONOR,

4   THAT'S NOT WHAT I WOULD SAY; HOWEVER, WE DO HAVE OTHER CASES

5   AND THEY HAPPEN TO BE IN YOUR NOTEBOOK THAT WE THINK ARE MORE

6   ON POINT TO THIS.

7            UNITED STATES VERSUS GEORGIA WAS NOT THIS

8   MULTIFACETED STATUTE.  IT JUST IN A WAY WAS A MORE

9   STRAIGHTFORWARD CASE.  SO WE HAVE IN OUR NOTEBOOK A COUPLE OF

10  OTHER ELEVENTH CIRCUIT CASES THAT WE THINK PROBABLY PROVIDE

11  BETTER GUIDANCE WHEN YOU HAVE A SITUATION WHERE THE STATUTE

12  THAT IS MULTIFACETED AND CLAIMS THAT ARE MULTIFACETED.

13           THE FIRST IS A CASE THAT WE'VE GOT AT TAB 12 WHICH IS

14  THE NATURIST SOCIETY, INC. VERSUS FILLYAW CASE, 958 F.2D 1515,

15  ELEVENTH CIRCUIT, 1992.  ANOTHER CASE IS AT TAB 2 OF THE

16  COURT'S NOTEBOOK COALITION FOR THE ABOLITION OF MARIJUANA

17  PROHIBITION VERSUS CITY OF ATLANTA AT 2189 F.3D 1301, ELEVENTH

18  CIRCUIT, 2000, AND THEN WE'VE ALSO INCLUDED A SUPREME COURT

19  CASE THE NORTHEASTERN FLORIDA CHAPTER OF ASSOCIATED GENERAL

20  CONTRACTORS OF AMERICA VERSUS CITY OF JACKSONVILLE, FLORIDA AT

21  508 U.S. 656, 1992.  I DON'T NEED TO GO THROUGH THOSE WITH YOU

22  RIGHT NOW, BUT THOSE WE THINK FLUSH THESE ISSUES OUT A LITTLE

23  BIT MORE.

24           THE COURT HAD ASKED THE QUESTION ABOUT HOW SHOULD THE

25  COURT CONSIDER MOOTNESS AND TIMELINESS, BUT I ASSUME THAT THAT

1  QUESTION IS ACTUALLY MOOT ITSELF SINCE WE'RE HERE.  SO LET ME

2  THEN GO TO THE ISSUE OF JOINDER AND WHETHER THE ELECTION

3  OFFICIALS FROM 159 COUNTIES ARE NECESSARY PARTIES IN THE

4  FEASIBILITY OF JOINING THEM.

5       SHORT ANSWER IS NO, THEY ARE NOT NECESSARY PARTIES,

6  AND IN CONNECTION WITH FEASIBILITY, YES, IT IS FEASIBLE.  I'M

7  ACTUALLY -- THAT'S SUCH AN EASY ISSUE THAT I THINK I'LL JUST --

8  THEY'RE BOTH EASY, BUT I THINK IT'S A SHORT ISSUE.

9       THIS COURT ACTUALLY DOES HAVE PERSONAL JURISDICTION

10  OVER ANY RESIDENT IN THE STATE OF GEORGIA.  I'M ASSUMING

11  ELECTIONS OFFICIALS IN THE STATE OF GEORGIA ARE GEORGIA

12  RESIDENTS, AND THEREFORE, IT CAN GET SERVICE OF PROCESS OVER

13  THEM, AND OBVIOUSLY IT WOULDN'T AFFECT SUBJECT MATTER

14  JURISDICTION SINCE IT'S A FEDERAL QUESTION.

15       THE COURT:  WE'RE IN AGREEMENT.

16       MS. TANIS:  VERY GOOD.  ALL RIGHT.  SO THEN LET'S

17  TALK ABOUT WHETHER THESE OFFICIALS FROM 159 DIFFERENT COUNTIES

18  ARE NECESSARY PARTIES.

19       THE COURT:  HERE'S ONE QUESTION I HAVE.  IT SEEMS

20  LIKE A NUMBER OF THESE THINGS THAT'S BEING REQUESTED, I THINK

21  IT'S FOUR THAT I'VE COUNTED, FALL UNDER THE HEADING COUNTY

22  CONTROLS, THE LOCATION OF A POLLING PLACE FOR ONE.  LET'S TAKE

23  A HYPOTHETICAL.  IF I ORDER THE SECRETARY OF STATE TO MAKE SURE

24  ALL POLLING PLACES IN GEORGIA MEET REQUIREMENTS AS ALLEGED IN

25  YOUR COMPLAINT.  TWO COUNTIES FAILED TO DO THAT.  WHAT

1   AUTHORITY -- YOUR ARGUMENT IS OVERSIGHT.  MY QUESTION IS WHAT

2   AUTHORITY DOES THE SECRETARY OF STATE HAVE IN THE GEORGIA

3   STATUTES AND THE GEORGIA LAW TO MAKE THE COUNTY SUPERINTENDENT

4   PLACE A POLLING PLACE IN A CERTAIN COMMUNITY OR LOCATION.

5           MS. TANIS:  THE SECRETARY OF STATE -- I'M GOING TO

6   WALK THROUGH THIS IN A MINUTE -- UNDER THE ELEVENTH CIRCUITS

7   HOLDING IN GRIZZLE VERSUS KEMP WHICH IS REALLY A CRITICAL

8   HOLDING IN TERMS OF ADDRESSING ALL OF THESE ISSUES, AND I'M

9   GOING TO WALK THROUGH IT A LITTLE BIT.

10          THE COURT:  GO AHEAD.

11          MS. TANIS:  WHICH MAKES IT VERY CLEAR, IN FACT COMES

12  RIGHT OUT AND SAYS THAT BECAUSE THE SECRETARY OF STATE IS

13  CHARGED WITH THE RESPONSIBILITY TO ENFORCE THE GEORGIA ELECTION

14  CODE, THE SECRETARY OF STATE IS ALSO CHARGED WITH THE

15  RESPONSIBILITY TO MAKE SURE THAT COUNTIES AND OTHER LOCAL

16  ELECTION OFFICIALS ARE GOING WHAT THEY ARE REQUIRED TO DO UNDER

17  THE GEORGIA ELECTION CODE, THAT IS JUST PART OF HIS

18  RESPONSIBILITY.

19          THE COURT:  AND HOW DOES THE SECRETARY OF STATE

20  ENFORCE IT?

21          MS. TANIS:  THE SECRETARY OF STATE ESPECIALLY

22  COMBINED WHEN YOU TALK ABOUT THE STATE ELECTION BOARD AND IT'S

23  MEMBERS.

24          THE COURT:  I'M SORRY, HOW DOES THE SECRETARY OF

25  STATE ENFORCE, I'LL USE POLLING PLACES AS AN EXAMPLE, HOW DO

1   THEY ENFORCE IT IF A COUNTY SUPERINTENDENT FAILS TO DO WHAT THE

2   SECRETARY OF STATE WANTS THEM TO DO IN THEIR OVERSIGHT

3   CAPACITY?

4           MS. TANIS:  WELL, THE STATE ELECTION BOARD AND OF

5   COURSE THE SECRETARY OF STATE IS THE CHAIR.

6           THE COURT:  RIGHT, THE STATE ELECTION BOARD.

7           MS. TANIS:  HE HAS ENFORCEMENT PROCEEDINGS.  IT'S GOT

8   ENFORCEMENT POWER --

9           THE COURT:  WHAT STATUTE?

10          MS. TANIS:  THAT IS UNDER 21-2-31, AND I BELIEVE THAT

11  IS IN TAB 15 IN THERE, AND IT TALKS ABOUT THE ENFORCEMENT

12  PROVISIONS OF THE STATE ELECTION BOARD, AND THE STATE ELECTION

13  BOARD, OF COURSE, CAN ALSO PROMULGATE RULES.

14          NOW, I UNDERSTAND YOUR QUESTION WAS YES, OKAY, THAT'S

15  GREAT, BUT WHAT ABOUT IF THE COUNTY DOESN'T FOLLOW THE RULES.

16  THE SECRETARY OF STATE CAN OBVIOUSLY DIRECT THE COUNTIES, AND

17  SO CAN THE ELECTION BOARD DO THAT, BUT THERE IS ALSO THIS

18  ENFORCEMENT MECHANISM IN THE GEORGIA ELECTION CODE FOR BEING

19  ABLE TO ENFORCE THOSE RULES WHICH I'LL GET TO IN A MINUTE, BUT

20  THAT IS BASICALLY HOW THAT WOULD OCCUR.

21          NOW, LET ME JUST MOVE ON ON THAT.  ON THE JOINDER

22  ISSUE, OF COURSE, THE DEFENDANTS DO HAVE THE BURDEN OF PROVING

23  THAT ALL THE COUNTY ELECTION OFFICIALS ARE NECESSARY, AND I

24  WILL POINT OUT THAT THE DEFENDANTS HAVEN'T CITED A SINGLE CASE

25  IN SUPPORT OF THAT.  WE HAVE CITED SEVERAL CASES.  I KNOW THAT

1  THE DEFENDANTS SAY THAT OUR CASES ARE DISTINGUISHABLE TO THE

2  EXTENT THAT THEY ARE FROM OTHER JURISDICTIONS, BUT, IN FACT,

3  THE LAW AND THE STATUTORY SCHEME IN THOSE JURISDICTIONS IS

4  BASICALLY THE SAME.

5          THE COURT:  DO THE BOARD OF ELECTIONS OR SECRETARY OF

6  STATE IN THOSE STATES DO THEY HAVE MORE STATUTORY AUTHORITY

7  GIVEN TO THEM THAN THE SECRETARY OF STATE IN GEORGIA?

8          THE CUNNINGHAM CASE IS A CASE I'M QUITE FAMILIAR

9  WITH.  THE CUNNINGHAM CASE HAD TO DO WITH A RUNOFF ELECTION.  I

10  REMEMBER READING ABOUT THAT CASE, BUT DID THAT SECRETARY OF

11  STATE AND THEIR BOARD OF ELECTION HAVE MORE STATUTORY AUTHORITY

12  OVER THE LOCAL COUNTIES?

13          MS. TANIS:  NO, YOUR HONOR, IN LOOKING AT THE BERMAN

14  CASE WHICH DEALS WITH NEW YORK AND THE LEAGUE OF WOMEN VOTERS

15  OF OHIO DEALING WITH OHIO, AND THOSE ARE VERY, VERY SIMILAR,

16  AND, YOU KNOW, THE LEAGUE OF WOMEN VOTERS CASE ALSO MAKES THE

17  POINT THAT WHEN YOU'RE SEEKING A STATEWIDE REMEDY, YOU'RE GOING

18  FOR UNIFORMITY, AND THAT, OF COURSE, IS SOMETHING THAT WE WANT

19  TO HAVE HERE SO THAT WE DON'T HAVE THESE PIECEMEAL ACTIONS

20  COUNTY BY COUNTY.

21          THE COURT:  I AGREE WITH THAT.

22          MS. TANIS:  RIGHT, AND THAT IS ACTUALLY SOMETHING

23  THAT THE STATE ELECTION BOARD IS CHARGED WITH AS IS THE

24  SECRETARY OF STATE SO INSURE UNIFORMITY IN PRACTICES.

25          SO LET ME --

 1            THE COURT:  ONE OF THE EXAMPLES OR ARGUMENTS THAT THE

 2  DEFENSE MAKES IS THAT WE TRAIN THE SUPERINTENDENTS, BUT WE

 3  CAN'T BE RESPONSIBLE FOR TRAINING THAT THE SUPERINTENDENT GIVES

 4  TO EACH POLLING PERSON.

 5            MS. TANIS:  ALL RIGHT.  SO I WANT TO ADDRESS THAT

 6  FROM TWO DIFFERENT STANDPOINTS, AND IF THE COURT WILL BEAR WITH

 7  ME.

 8            THE COURT:  I WILL.  DO IT.

 9            MS. TANIS:  I REALLY WANT TO ANSWER YOUR QUESTION,

10  BUT I WANT --

11            THE COURT:  YOU PRESENT IT, AND I'M GOING TO QUIT

12  INTERRUPTING.  GO AHEAD.

13            MS. TANIS:  YOUR HONOR, I'VE GOT AN AUDIENCE OF ONE

14  IN THIS COURTROOM, AND IT'S YOU, AND SO IF YOU'VE GOT A

15  QUESTION ON YOUR MIND, I WANT TO MAKE SURE TO ANSWER IT, AND

16  WHAT I DON'T WANT YOU TO THINK IS THAT IF I'M STARTING AT THE

17  BASICS I'M NOT GETTING TO YOUR QUESTION.

18            THE COURT:  I'M NOT ENTERTAINING THAT IDEA

19  WHATSOEVER.  YOU'RE ADDRESSING THE QUESTIONS.

20            MS. TANIS:  ALL RIGHT.  VERY GOOD.  SO IN THE

21  DEFENDANT'S BRIEF, THE DEFENDANTS HAVE BASICALLY SAID WE NEED

22  TO HAVE ALL THESE COUNTIES BECAUSE WE, THE DEFENDANTS, DON'T

23  HAVE THE POWER, WE DON'T HAVE THE POWER TO DO ANY OF THESE

24  THINGS, AND SO IN THEIR BRIEFS THEY SAY, AND I'M GOING TO QUOTE

25  THESE A LITTLE BIT BECAUSE I WANT TO KIND OF METHODOLOGY GO

1   THROUGH THEM, AND I THINK I'M GOING TO ANSWER YOUR QUESTION IF

2   I DO THAT.

3           SO AT PAGE 13 OF THE OPENING BRIEF, THE DEFENDANTS

4   SAY DEFENDANTS NEITHER MANAGE NOR ADMINISTER ELECTIONS, AND

5   THEN THEY SAY THAT THE PLAINTIFFS' FIRST ERROR IS ALLEGING THAT

6   THE SECRETARY OF STATE OVERSEES AND ADMINISTERS ELECTIONS, AND

7   THEN THEY SAY THAT DESPITE PLAINTIFFS' LITANY OF CLAIMS THAT

8   THE SECRETARY IS RESPONSIBLE FOR ELECTIONS, NONE OF THE 15

9   ENUMERATED ITEMS IN O.C.G.A. 21-2-50 GIVES THE SECRETARY OF

10  STATE CONTROL OVER THE COUNTIES AND ELECTION SUPERINTENDENTS.

11  SO IF THE COURT WILL PERMIT ME, I WANT TO WRITE ALL THESE

12  THINGS DOWN?

13          THE COURT:  YES.

14          MS. TANIS:  SO THEY SAY YOU DO NOT CONTROL, DO NOT

15  OVERSEE, DO NOT MANAGE, DO NOT ADMINISTER.  SO THIS IS THE

16  BASIS FOR SAYING THAT COUNTY ELECTION OFFICIALS NEED TO BE

17  ADDED.  SO I WANT TO GO THROUGH EACH ONE OF THOSE THINGS, AND

18  WHAT I AM GOING TO SHOW THE COURT IS THAT WHAT THE SECRETARY OF

19  STATE AND THE OTHER DEFENDANTS ARE SAYING IN HERE IS COMPLETELY

20  CONTRARY TO WHAT THE ELEVENTH CIRCUIT HAS SAID, WHAT THE

21  GEORGIA ELECTION CODE PROVIDES, WHAT THE GEORGIA ATTORNEY

22  GENERAL HAS SAID, AND WHAT THE SECRETARY OF STATE HIMSELF HAS

23  SAID IN CONNECTION WITH HIS RESPONSIBILITIES.

24          SO LET'S START WITH THAT CONTROL ISSUE, AND I KNOW

25  THE COURT HAS BEEN ASKING ME ABOUT THE STATUTORY BASIS OF THIS,

1  AND, YOU KNOW, THE TWO MAIN PROVISIONS, ALTHOUGH THE GEORGIA

2  ELECTION CODE IS HUGE IN TERMS OF WHAT IT COVERS, BUT SECTIONS

3  21-2-50 AND 21-2-31 ARE TWO OF THE OVERARCHING STATUTES THAT

4  DEFINE THE POWERS AND THE DUTIES OF THE SECRETARY OF STATE AND

5  THE STATE ELECTION BOARD, AND, AGAIN, I REALLY WANT TO

6  UNDERSCORE THAT THE SECRETARY OF STATE WEARS TWO HATS, RIGHT,

7  HE'S THE SECRETARY OF STATE, BUT HE'S ALSO THE CHAIR OF THE

8  STATE ELECTION BOARD, SO HE'S GOT THE RESPONSIBILITIES

9  BASICALLY GIVEN TO BOTH OF THOSE OFFICES.

10          AND IN 21-2-50 WHICH IS THAT PROVISION THAT COVERS

11 THE SECRETARY OF STATE, THAT STATUTE REFERS TO THE SECRETARY OF

12 STATE AS THE CHIEF ELECTION OFFICIAL IN GEORGIA.  THAT'S IN

13 SUBPARAGRAPH 14 I THINK OF THAT, AND THAT IS ALSO IN YOUR

14 NOTEBOOK -- THOSE TWO STATUTES ARE IN THE NOTEBOOK AT TABS 15

15 AND 16.  21-2-31 SETS OUT THE RESPONSIBILITIES OF THE STATE

16 ELECTION BOARD.

17          NOW THE OPENING LANGUAGE OF O.C.G.A. 21-2-31 AND IT'S

18 FIRST PARAGRAPH SAY THIS, AND IT SAYS THAT -- NOPE, DO SLIDE

19 36.  SO, YOUR HONOR, IF YOU TAKE A LOOK AT THAT LANGUAGE IN

20 YOUR ACTUAL NOTEBOOK.

21          THE COURT:  I WILL.

22          MS. TANIS:  IT SAYS THAT IT SHALL BE THE DUTY OF THE

23 STATE ELECTION BOARD, AND THIS IS THE VERY FIRST PARAGRAPH, TO

24 PROMULGATE RULES AND REGULATIONS SO AS TO OBTAIN UNIFORMITY IN

25 THE PRACTICES AND PROCEEDINGS OF SUPERINTENDENTS, REGISTRARS,

1  DEPUTY REGISTRARS, POLL OFFICERS AND OTHER OFFICIALS AS WELL AS

2  THE LEGALITY AND PURITY IN ALL PRIMARIES AND ELECTIONS.  SO

3  RIGHT THERE YOU SEE THAT THE STATUTE SAYS TO THE STATE ELECTION

4  BOARD, YOU HAVE TO ISSUE THESE REGULATIONS TO BE TELLING COUNTY

5  AND POLL OFFICIALS WHAT IT IS THAT THEY NEED TO DO.

6          THERE ISN'T THIS DIVISION UNDER THE GEORGIA ELECTION

7  CODE OF THE COUNTIES OR OTHER ENTITIES HAVING THIS COMPLETE

8  AUTONOMY, AND I THINK THAT THAT'S REALLY ONE OF THE UNDERLYING

9  FALLACIES IN WHAT THE DEFENDANTS ARE ARGUING AS IF WE HAVE

10  THESE TWO SYSTEMS.  WE'VE GOT THIS STATE SYSTEM, AND THEN WE'VE

11  GOT THIS LOCAL SYSTEM, AND THE LOCAL SYSTEM HAS COMPLETE

12  AUTONOMY TO DO WHAT IT WANTS TO DO, AND THAT THE SECRETARY OF

13  STATE IS JUST HELPLESS TO DO ANYTHING ABOUT IT IF THOSE

14  COUNTIES RUN AMUCK.

15          THAT IS NOT THE STATUTORY SCHEME HERE AT ALL.  IN

16  FACT, GEORGIA HAS A VERY TOP DOWN STATUTORY SCHEME AS I'M GOING

17  TO DEVELOP IN A MINUTE.  SO RIGHT HERE WE SEE THAT THERE'S AN

18  OBLIGATION.  IT'S A DUTY ON THE PART OF THE STATE ELECTION

19  BOARD AND OF COURSE THE SECRETARY OF STATE AS THE CHAIR OF THAT

20  BOARD TO ACTUALLY BE PROMULGATING RULES AND REGULATIONS

21  ENFORCEABLE THROUGH ENFORCEMENT PROCEEDINGS TELLING THOSE

22  COUNTY OFFICIALS WHAT THEY NEED TO DO.

23          SUBPARAGRAPH 10 OF THAT SAME STATUTE FOR THE STATE

24  ELECTION BOARD, THEN SAYS THAT THE STATE ELECTION BOARD ALSO

25  HAS THE DUTY TO TAKE SUCH OTHER ACTION CONSISTENT WITH THE LAW

1   AS THE BOARD MAY DETERMINE TO BE CONDUCIVE TO THE FAIR, LEGAL,

2   ORDERLY CONDUCT OF PRIMARIES AND ELECTIONS, AND AS WE ALLEGED

3   IN OUR COMPLAINT, THE FULTON COUNTY DIRECTOR OF REGISTRATION

4   AND ELECTION TESTIFIED RECENTLY AS FOLLOWS, PRETTY MUCH

5   SUMMARIZING WHAT THE BOARD'S RESPONSIBILITY IS, THAT'S SLIDE

6   39, WHERE HE SAYS THE STATE ELECTION BOARD HAS THE ULTIMATE

7   AUTHORITY OVER THE BOARDS, THE FULTON COUNTY BOARD OF

8   REGISTRATION AND ELECTIONS.  ULTIMATE AUTHORITY OVER THAT BOARD

9   IS WHAT WE HAVE THE HEAD OF THE FULTON COUNTY ELECTIONS BOARD

10  SAYING.

11          NOW, LET ME TURN TO HOW THE ELEVENTH CIRCUIT HAS

12  INTERPRETED THIS.  IN YOUR NOTEBOOK AT TAB 9 IS THE ELEVENTH

13  CIRCUIT'S OPINION IN GRIZZLE VERSUS KEMP WHICH IS AT 634 F.3D

14  1314.  IN GRIZZLE THE PLAINTIFFS WERE CHALLENGING PROVISIONS IN

15  THE GEORGIA ELECTION CODE THAT PRECLUDED CERTAIN PEOPLE FROM

16  SERVING AS MEMBERS OF LOCAL SCHOOL BOARDS.  THAT'S PRETTY

17  GRANULAR WHEN WE'RE GETTING DOWN TO LOCAL SCHOOL BOARDS IN THE

18  STATE ELECTION CODE.

19          THE PLAINTIFFS NAMED THE SECRETARY OF STATE AS THE

20  DEFENDANT IN THAT CASE, AND THE SECRETARY OF STATE ARGUED I'M

21  NOT THE PROPER PARTY FOR THIS.  I DON'T REALLY HAVE THE POWER

22  OVER THESE STATE ELECTION BOARDS.  THE SECRETARY OF STATE

23  ARGUED THAT HE COULD NOT DIRECTLY QUALIFY OR CHALLENGE

24  CANDIDATES FOR LOCAL BOARDS OF EDUCATION, AND HE COULDN'T EVEN

25  CERTIFY THE RESULTS OF THOSE ELECTIONS.

1          THE ELEVENTH CIRCUIT DISAGREED, AND AT PAGE 1326 THE

2   ELEVENTH CIRCUIT STATES, AND IT'S SLIDE 30, THE SECRETARY OF

3   STATE, THIS IS KIND OF A SUMMARY STATEMENT, THE SECRETARY OF

4   STATE HAS THE DUTY AND THE POWER TO ENFORCE THE STATE'S

5   ELECTION CODE.  BUT EARLIER IN ITS OPINION, THE ELEVENTH

6   CIRCUIT REALLY FLESHED OUT WHAT DOES THAT MEAN, WHAT DOES IT

7   MEAN WHEN YOU HAVE THE DUTY AND THE POWER TO ENFORCE THE

8   GEORGIA ELECTION CODE, WHAT DOES THAT MEAN WHEN THE ACTION

9   BEING CHALLENGED HERE IS NOW DOWN AT THE STATE SCHOOL BOARD

10  LEVEL.

11         AND SO WHAT THE COURT SAID ABOUT THAT AT PAGE 1319

12  WHICH IS SLIDE 31, AND I THINK THAT THIS IS SO KEY, IT SAYS

13  ALTHOUGH THE SECRETARY OF STATE CANNOT DIRECTLY QUALIFY OR

14  CHALLENGE CANDIDATES FOR LOCAL BOARDS OF EDUCATION OR CERTIFY

15  THE RESULTS OF THOSE ELECTIONS, AS A MEMBER AND THE CHAIRPERSON

16  OF STATE ELECTION BOARD HE HAS BOTH THE POWER AND THE DUTY TO

17  ENSURE THAT THE ENTITIES CHARGED WITH THOSE RESPONSIBILITIES

18  COMPLY WITH GEORGIA'S ELECTION CODE IN CARRYING OUT THEIR

19  TASKS.

20         YOUR HONOR, THIS ABSOLUTELY BLOWS OUT OF THE WATER

21  ANY NOTION THAT THE SECRETARY OF STATE DOES NOT HAVE THE POWER

22  TO TELL COUNTY ELECTIONS OFFICIALS WHAT THEY NEED TO DO.  NOT

23  ONLY DOES HE HAVE THE POWER, HE HAS THE RESPONSIBILITY TO DO

24  IT, AND THAT IS JUST A KEY RULING IN TERMS OF WHETHER ALL THESE

25  OTHER COUNTY ELECTION OFFICIALS NEED TO BE BROUGHT INTO THIS

1 CASE.

2          AND CONSISTENT WITH THIS IDEA OF WHETHER THE GEORGIA

3 SECRETARY OF STATE IS THE PERSON TO BE ENFORCING THE GEORGIA

4 ELECTION CODE, I MEAN THIS COURT RECOGNIZED THE SAME THING IN

5 THE DEMOCRATIC PARTY OF GEORGIA VERSUS CRITTENDEN CASE.  IN A

6 FOOTNOTE THE COURT SAID THE SECRETARY OF STATE IS A DEFENDANT

7 IN THIS ACTION AND IS THE STATE OFFICIAL CHARGED WITH ENFORCING

8 THE ELECTION LAWS.

9          JUDGE TOTENBERG SAID THE SAME THING IN COMMON CAUSE

10 GEORGIA VERSUS KEMP, 347 F.SUPP.3D 1270, AND JUST DEMONSTRATING

11 HOW MUCH POWER THE SECRETARY OF STATE HAS OVER BEING ABLE TO

12 TELL THOSE COUNTY OFFICIALS WHAT TO DO, IN THE LAST SEVEN

13 MONTHS, AS I'M SURE THIS COURT IS VERY, VERY WELL AWARE,

14 NORTHERN DISTRICT OF GEORGIA JUDGES HAVE ENTERED ORDERS AGAINST

15 THE SECRETARY OF STATE ORDERING THE SECRETARY OF STATE TO

16 DIRECT COUNTY OFFICIALS AS TO WHAT THEY NEED TO DO.

17          THOSE CASES ARE MARTIN VERSUS KEMP, 341 F.SUPP.3D

18 1326; GEORGIA COALITION FOR THE PEOPLE'S AGENDA VERSUS KEMP,

19 347 F.SUPP.3D 1251; AND COMMON CAUSE GEORGIA VERSUS KEMP, 347

20 F.SUPP.3D 1270.  THESE ARE ALSO IN YOUR NOTEBOOK, YOUR HONOR,

21 AT TABS 3, 8 AND 11.

22          NOW, THESE CASES WHEN YOU READ THEM ALSO SHOW ACTIONS

23 THAT THE SECRETARY OF STATE HAS TAKEN TO DIRECT COUNTY ELECTION

24 OFFICIALS AS TO WHAT TO DO.  IN THE GEORGIA COALITION FOR

25 PEOPLE'S AGENDA VERSUS KEMP CASE, FOR EXAMPLE, JUDGE ROSS WENT

1  THROUGH AT LENGTH A MEMO THAT THE SECRETARY OF STATE HAD SENT

2  DIRECTING COUNTY OFFICIALS IN TERMS OF WHAT THEY NEEDED TO DO

3  WHEN PEOPLE CAME TO THE POLLS, AND THEY HAD BEEN FLAGGED AS

4  NONCITIZENS THROUGH THE EXACT MATCH POLICY.

5          EVEN THE EXACT MATCH POLICY WHICH WE HAVEN'T REALLY

6  TALKED ABOUT BECAUSE I DIDN'T THINK THERE WAS ANY ISSUE ABOUT

7  MOOTNESS, BUT EVEN THE EXACT MATCH POLICY PROVES THE POINT.

8  THE EXACT MATCH POLICY IS A SECRETARY OF STATE POLICY.  IT'S

9  DIFFERENT FROM THE MATCH STATUTE, RIGHT?  IT'S THE SECRETARY OF

10  STATE'S INTERPRETATION OF IT, AND THE SECRETARY OF STATE HAS

11  ISSUED THIS POLICY THAT ALL THE COUNTIES HAVE TO FOLLOW.  IT'S

12  NOT OPTIONAL FOR THEM TO FOLLOW, AND, YOU KNOW, THAT POLICY

13  SHOWS WHAT THE SECRETARY OF STATE CAN BE DOING.

14          NOW, LET'S TAKE A LOOK AT WHAT THE SECRETARY OF STATE

15  HIMSELF HAS SAID ABOUT HIS POWERS.  WE'VE ALLEGED IN PARAGRAPH

16  55 OF OUR COMPLAINT ABOUT THE SECRETARY OF STATE WEBSITE AND

17  HOW HE DESCRIBES HIS RESPONSIBILITIES, AND RIGHT HERE, THIS IS

18  A PROVISION FROM THE SECRETARY OF STATE'S WEBSITE, THE

19  HIGHLIGHTED LANGUAGE THERE IT SAYS THE SECRETARY OF STATE IS

20  ACCOUNTABLE FOR ENFORCING STATE ELECTION LAWS.

21          SO IF YOU TIE THAT BACK TO WHAT THE ELEVENTH CIRCUIT

22  HAS SAID WHAT DOES THAT MEAN, IT MEANS THAT WHEN THOSE STATE

23  ELECTION LAWS ARE DIRECTING LOCAL OFFICIALS TO DO X, Y AND Z,

24  THE BUCK STOPS AT THE SECRETARY OF STATE TO SAY THAT THEY NEED

25  TO DO THAT, AND SO YOU DON'T NEED TO JOIN ELECTIONS OFFICIALS

1  FROM 159 COUNTIES WHEN THE GUY WHO CAN DO ALL THAT IS ALREADY A

2  NAMED DEFENDANT, PARTICULARLY IN COMBINATION WITH MEMBERS OF

3  THE STATE ELECTION BOARD.

4        SO, YOUR HONOR, WITH THAT LAW PARTICULARLY THAT

5  ELEVENTH CIRCUIT CASE AND SEEING WHAT OTHER NORTHERN DISTRICT

6  OF GEORGIA COURTS HAVE SAID AND WHAT THE SECRETARY OF STATE HAS

7  SAID, IT'S NOT ACCURATE THAT HE DOESN'T HAVE CONTROL.  HE

8  DOES.  HE NOT ONLY CONTROLS HE HAS THE RESPONSIBILITY TO

9  CONTROL WHAT THOSE COUNTY OFFICIALS ARE DOING.

10        SO LET'S NOW TAKE A LOOK AT THE DEFENDANT'S STATEMENT

11  THAT THE SECRETARY OF STATE DOES NOT MANAGE ELECTIONS, AND I

12  WANT TO POINT TO THE COURT A GEORGIA ATTORNEY GENERAL OPINION

13  WHICH IS IN YOUR NOTEBOOK AT PAGE 22.  THIS IS AN OPINION THAT

14  THE GEORGIA ATTORNEY GENERAL ISSUED IN 2005 WHEN HE WAS BEING

15  ASKED WHAT IS THE RELATIONSHIP BETWEEN THE DUTIES OF THE

16  SECRETARY OF STATE AND THE DUTIES OF THE STATE ELECTION BOARD,

17  AND IF YOU GO TO THE HIGHLIGHTED LANGUAGE IN THE COPY THAT WE

18  GAVE YOU, IT'S AT PAGE 3, THE SECOND SENTENCE, WHAT IT SAYS

19  HERE, AND THIS IS A QUOTE, THERE'S EMPHASIS IN THIS BUT THAT'S

20  EMPHASIS IN THE ORIGINAL, JUST AS A MATTER OF SHEAR VOLUME AND

21  SCOPE, IT IS CLEAR THAT UNDER BOTH THE CONSTITUTION AND THE

22  LAWS OF THE STATE, THE SECRETARY IS THE, EMPHASIS IN THE

23  ORIGINAL, STATE OFFICIAL WITH THE POWER, DUTY AND AUTHORITY TO

24  MANAGE THE STATE'S ELECTORAL SYSTEM.

25        AND JUST TO PUT A PUNCTUATION POINT ON THE ATTORNEY

1  GENERAL'S VIEW OF THE BREADTH OF THE SECRETARY OF STATE'S

2  POWERS, THE ATTORNEY GENERAL GOES ON RIGHT AFTER THAT, SLIDE

3  28, TO SAY NO OTHER STATE OFFICIAL OR ENTITY IS ASSIGNED THE

4  RANGE OF RESPONSIBILITIES GIVEN TO THE SECRETARY OF STATE IN

5  THE AREA OF ELECTIONS.

6          SO ONCE AGAIN IT'S SIMPLY NOT ACCURATE WHEN THE

7  DEFENDANTS TELL THE COURT THAT THE SECRETARY OF STATE DOESN'T

8  MANAGE.  THE GEORGIA ATTORNEY GENERAL HAS SAID WHAT THE

9  SECRETARY OF STATE DOES.  THE SECRETARY OF STATE IS REQUIRED TO

10  DO.

11          SO LET'S TAKE A LOOK AT ANOTHER STATEMENT BY THE

12  DEFENDANTS THAT THE SECRETARY OF STATE DOES NOT OVERSEE

13  ELECTIONS.  LET'S GO BACK TO THAT SECRETARY OF STATE WEBSITE

14  THAT WE QUOTED IN PARAGRAPH 55 OF OUR COMPLAINT, SLIDE 34, AND

15  IF YOU LOOK AT THAT SECOND ENTRY, THE SECRETARY OF STATE SAYS

16  THE ELECTIONS DIVISION OF THE SECRETARY OF STATE'S OFFICE

17  ORGANIZES AND OVERSEES ALL ELECTION ACTIVITY, INCLUDING VOTER

18  REGISTRATION, MUNICIPAL, STATE, COUNTY AND FEDERAL ELECTIONS.

19          THERE'S ANOTHER THING THAT THE DEFENDANTS HAVE TOLD

20  THE COURT THAT THE SECRETARY OF STATE DOESN'T DO.  THE

21  SECRETARY OF STATE HIMSELF SAYS THIS IS WHAT I DO, I OVERSEE

22  ELECTIONS.  I NOT ONLY OVERSEE ELECTIONS, I GO DOWN TO THE

23  MUNICIPALITIES.  THAT'S MY JOB.

24          ALL RIGHT.  THE LAST ONE, THE SECRETARY OF STATE SAYS

25  I DON'T ADMINISTER ELECTIONS.  WELL, THAT'S NOT WHAT THE

1   SECRETARY OF STATE TOLD JUDGE ROSS IN THE GEORGIA COALITION FOR

2   THE PEOPLE'S AGENDA VERSUS KEMP CASE, WHICH IS AT TAB 8 OF THE

3   COURT'S NOTEBOOK.  IN GEORGIA COALITION AT PAGE 1259, JUDGE

4   ROSS IS SUMMARIZING AN ARGUMENT MADE BY THE SECRETARY OF STATE

5   AS THE DEFENDANT IN THAT CASE, AND SLIDE 35, AND THIS IS

6   QUOTING JUDGE ROSS, SAME DEFENDANT, THE SECRETARY OF STATE WAS

7   THE DEFENDANT, ASSERTS THAT PLAINTIFFS' LAST MINUTE CHALLENGE

8   PREJUDICES DEFENDANT WHO MUST ADMINISTER AND SUPERVISE THE

9   ELECTIONS.  THIS IS THE SECRETARY OF STATE'S POSITION.

10           THE SECRETARY OF STATE WAS SAYING THIS IN THE CONTEXT

11  OF A LATCHES ARGUMENT.  THE SECRETARY OF STATE WAS SAYING OH,

12  THIS ARGUMENT SHOULD HAVE BEEN MADE BEFORE, AND YOU KNOW WHAT,

13  I'VE GOT SO MUCH TO DO, I HAVE TO ADMINISTER AND SUPERVISE THE

14  ELECTIONS, AND THAT'S THE SECRETARY OF STATE'S SAYING THAT

15  HIMSELF.

16           SO EVERY ONE OF THE POWERS THAT THE DEFENDANTS HAVE

17  TOLD YOU THAT THE SECRETARY OF STATE AND THE STATE ELECTION

18  BOARD DON'T HAVE, THEY HAVE.  THEY HAVE IT EITHER THROUGH THE

19  ELEVENTH CIRCUIT HAS SAID THEY HAVE IT.  THEY HAVE IT BECAUSE

20  THE ATTORNEY GENERAL SAID THEY HAVE IT, OR THEY HAVE IT BECAUSE

21  THEY SAID THEY HAVE IT.

22           YOU DON'T NEED TO HAVE COUNTY ELECTIONS OFFICIALS

23  FROM 159 DIFFERENT COUNTIES BEFORE THIS COURT.  IT'S NOT

24  NECESSARY BECAUSE THE BUCK STOPS AT THE DEFENDANTS THAT WE'VE

25  NAMED, AND ONE OTHER THING I WANT TO POINT OUT THAT THE

1  DEFENDANTS ARGUED TODAY.  I WAS ACTUALLY GOING TO WAIT UNTIL

2  FAILURE TO TRAIN, WHICH IS THE SECRETARY OF STATE SAYING THAT

3  THE SECRETARY OF STATE DOESN'T TRAIN POLL WORKERS AT THAT

4  LEVEL.

5          THE DEFENDANTS DO ACKNOWLEDGE THAT THE SECRETARY OF

6  STATE HAS THE OBLIGATION TO TRAIN REGISTRARS AND

7  SUPERINTENDENTS, AND THEN THAT THE CODE TALKS ABOUT HOW THE

8  REGISTRARS AND SUPERINTENDENTS TURN AROUND AND TRAIN THE POLL

9  WORKERS, AND IN THEIR BRIEF, BECAUSE THE DEFENDANTS SAY, AND

10 I'M QUOTING FROM THE OPENING BRIEF AT 17, DEFENDANTS TRAIN ONLY

11 ELECTION SUPERINTENDENTS AND REGISTRARS.

12          BUT LET'S TAKE A LOOK AGAIN AT THE SECRETARY OF STATE

13 WEBSITE, THIS SLIDE THAT'S RIGHT UP IN FRONT OF YOU, THIS IS

14 FROM THE SECRETARY OF STATE, AND LOOK IT'S ENTITLED POLL WORKER

15 TRAINING RESOURCES, AND IF YOU LOOK DOWN FURTHER, IT'S GOT A

16 GEORGIA POLL WORKER TRAINING MANUAL, QUALIFICATIONS TO BE A

17 POLL WORKER, POLL WORKER TRAINING CERTIFICATE, POLL WORKER

18 TRAINING TIPS, AND, YOUR HONOR, IF YOU LOOKED AT THOSE MORE,

19 YOU'D SEE THINGS THAT THIS GETS AS GRANULAR AS TELLING POLL

20 WORKERS THEY SHOULD SMILE AT VOTERS WHEN THEY WALK INTO THE

21 POLLS.

22          IT'S JUST NOT ACCURATE TO SAY IT, AND, AGAIN, IF YOU

23 LOOK AT THE GEORGIA COALITION CASE THAT JUDGE ROSS HAD, JUDGE

24 ROSS ACTUALLY CRITICIZES THE SECRETARY OF STATE FOR THE FAILURE

25 TO TRAIN, AND SHE GOES ON TO SAY IN THAT CASE AND THAT FAILURE

1    TO TRAIN, SECRETARY OF STATE, YOUR FAILURE TO TRAIN RESULTED IN

2    POLL WORKERS NOT DOING THE RIGHT THING.  THERE IS, IN FACT, A

3    DIRECT LINK.

4            AND I MIGHT BE SKIPPING AROUND HERE A LITTLE BIT, BUT

5    I KNOW THE COURT LOOKED LIKE IT WAS INTERESTED IN THE COMMENT

6    BY THE DEFENDANTS THAT THERE'S NOT RESPONDEAT SUPERIOR

7    LIABILITY UNDER SECTION 1983, THAT IS CORRECT, THERE IS NOT,

8    BUT WHAT WE HAVE IN THIS CASE IS NOT RESPONDEAT SUPERIOR.  WE

9    ARE NOT -- WE ARE SAYING THAT THE SECRETARY OF STATE HIMSELF

10   AND THAT OFFICE HAS FAILED TO TRAIN POLL WORKERS, AND WE ALSO

11   HAVE JUDGE ROSS NOT ONLY MAKING IT CLEAR IN HER OPINION THAT

12   THE SECRETARY OF STATE DOES THAT.

13           IN FACT, ONE OF THE THINGS SHE TALKS ABOUT IN THAT

14   CASE IS THIS SAME POLL WORKER MANUAL.  SHE SAYS IT'S WRONG.

15   THAT'S PART OF THE PROBLEM, AS IS A DIRECTIVE SENT OUT BY THE

16   SECRETARY OF STATE'S OFFICE, AND SHE GOES ON TO SAY IN THAT

17   CASE, AT PAGE 1268, AND THE CITE ON THAT IS 347 F.SUPP.3D

18   1251.  IT IS IN THE COURT'S NOTEBOOK AT TAB 8.  THERE HAS BEEN

19   A LACK OF TRAINING OF ELECTIONS OFFICIALS FOR VERIFYING

20   CITIZENSHIP AT THE POLLS, ALL OF WHICH COULD LEAD TO THESE

21   INDIVIDUALS NOT BEING ABLE TO CAST A VOTE IN THE UPCOMING

22   ELECTION.

23           SO THERE IS THIS DIRECT LINK ON THAT, AND I KNOW I'VE

24   KIND OF SHIFTED FROM JOINDER TO THE FAILURE TO TRAIN, BUT WHILE

25   WE WERE ON THE SUBJECT, I THOUGHT I WOULD LINK THAT UP.

1            THE COURT:  NO PROBLEM.

2            MS. TANIS:  ALL RIGHT.  SO I HOPE I HAVE ANSWERED

3  YOUR ORIGINAL QUESTION TO ME ABOUT THE POWERS OF THE SECRETARY

4  OF STATE.  IF I HAVEN'T, I KNOW YOU'LL ASK ME, BUT IN ANY

5  EVENT, SO I WANT TO THEN TALK ABOUT WHAT IS THE RELIEF THAT WE

6  HAVE REQUESTED, AND WHETHER THIS RELIEF FALLS WITHIN THOSE

7  BROAD POWERS THAT THE NAMED DEFENDANTS HAVE.

8            SO IN TAB 21 WE'RE KIND OF CHART HAPPY ON THIS

9  THINKING THAT MAYBE IT WOULD OF HELP TO THE COURT.

10            THE COURT:  I'M GOING TO READ EVERY WORD IN THERE.

11            MS. TANIS:  YOUR HONOR, THIS ONE IS REALLY EXCITING

12  BECAUSE WHAT THIS CHART DOES IS IT LINKS OUR CLAIMS FOR RELIEF,

13  AND IT THEN PROVIDES THE STATUTORY PROVISIONS THAT WOULD PERMIT

14  THAT, AND SOME OF IT GETS PRETTY IN THE WEEDS.

15            THE COURT:  THAT IS IMPORTANT.

16            MS. TANIS:  SO I THOUGHT JUDGING --

17            THE COURT:  YOU'RE RIGHT.

18            MS. TANIS:  ALL RIGHT.  SO WE'VE DONE THAT.  NOW,

19  AGAIN, WHAT IT DOESN'T HAVE, HOWEVER, AND I DON'T WANT THE

20  COURT TO LOSE SIGHT OF IT, WE DON'T QUOTE CASE LAW.  SO YOU'RE

21  NOT GOING TO HAVE THAT SAME QUOTE FROM GRIZZLE VERSUS KEMP, BUT

22  WE DO GO THROUGH THAT.  I'M CERTAINLY NOT GOING TO WALK YOU

23  THREW IT.

24            BUT IN ANY EVENT, IT SEEMS THAT THE DEFENDANTS'

25  JOINDER MOTION IS PROBABLY -- WHEN TALKING ABOUT WHETHER YOU

1   HAVE TO JOIN ALL THESE COUNTY ELECTIONS OFFICIALS IS PROBABLY

2   GEARED AT PARAGRAPHS 11 AND 12 OF OUR PRAYER FOR RELIEF, BUT I

3   WANT TO TALK ABOUT WHAT THE LEAD-IN LANGUAGE IS TO THOSE

4   PRAYERS FOR RELIEF, AND THE LEAD-IN LANGUAGE ON PARAGRAPH 11 OF

5   THE PRAYER FOR RELIEF, WHICH IS AT PAGE 87 OF OUR AMENDED

6   COMPLAINT, LIMITS THE REQUESTED RELIEF TO THINGS THAT FOR THE

7   REASONS I'VE ALREADY TALKED ABOUT ARE WELL WITHIN THE POWERS OF

8   THE NAMED DEFENDANTS HERE.

9          SO WE ASK THE COURT TO ENJOIN THE DEFENDANTS TO

10  OVERSEE ELECTIONS, WHICH YOU CAN SEE THE SECRETARY OF STATE

11  SAYS YEP, I'M THE GUY WHO DOES THAT, BY ENFORCING UNIFORM

12  STANDARDS AND PROCESSES THAT, AND THEN WE'VE GOT ALL OF OUR

13  SUBPARAGRAPHS, BUT WE CAN ALREADY SEE THAT UNDER 21-2-31-1 THE

14  STATE ELECTION BOARD AND ITS MEMBERS ARE ACTUALLY CHARGED WITH

15  CREATING REGULATIONS AND RULES FOR COUNTY ELECTIONS OFFICIALS,

16  AND THE SECRETARY OF STATE AND THE STATE ELECTION BOARD ARE

17  CHARGED WITH ENFORCING THOSE RULES.  SO THE RELIEF THAT WE'RE

18  REQUESTING DOES FALL WELL WITHIN THEIR POWERS.

19          I THINK THE OTHER SECTION THERE IS PARAGRAPH 12 IS A

20  REQUEST FOR RELIEF.  IT ASKS THE COURT TO ENJOIN DEFENDANTS TO

21  ENSURE EACH COUNTY CONDUCTS EFFICIENT, JUST AND FAIR ELECTIONS,

22  AND, AGAIN, THAT IS RIGHT WITHIN THE LANGUAGE OF 21-2-31 FOR

23  THE ELECTION BOARD, AND, OF COURSE, WE'VE GOT THE SECRETARY OF

24  STATE ALSO SAYING THAT HE'S GOT THOSE RESPONSIBILITIES.

25          SO THE RELIEF THAT WE'VE REQUESTED IS ACTUALLY RIGHT

1   IN THE WHEELHOUSE OF WHAT THESE NAMED DEFENDANTS DO.  THERE

2   SIMPLY ISN'T ANY REASON FOR THIS COURT TO JOIN ALL OF THESE

3   OTHER COUNTY ELECTIONS OFFICIALS TO SAY NOTHING OF HOW

4   CUMBERSOME THAT WOULD MAKE THIS LAWSUIT.

5            I'D ALSO SAY, YOUR HONOR, AND I KNOW THE COURT HAS

6   ASKED ME QUESTIONS ABOUT OKAY, THAT'S ALL WELL AND GOOD, BUT

7   LET'S GET MORE CONCRETE, HOW DO I ACTUALLY GO ABOUT FASHIONING

8   THIS RELIEF, YOU KNOW, THAT'S WHAT I'M GOING TO BE STUCK WITH

9   DOING, AND I WOULD SAY ON THAT, YOUR HONOR, WE'RE DYING TO GET

10  SOME DISCOVERY IN THIS CASE, AND THERE IS GOING TO BE A LOT OF

11  BACK AND FORTH ON THOSE ISSUES.

12           I AM CONFIDENT THAT AS THIS CASE PROGRESSES, WE WILL

13  BE ABLE TO CRYSTALLIZE WHAT THESE ISSUES ARE, AND HOW THAT

14  RELIEF WOULD NEED TO BE PHRASED WILL BE A NORMAL OUTGROWTH OF

15  THAT PROCESS, BUT RIGHT NOW AT THIS STAGE IT'S DIFFICULT TO BE

16  ABLE TO SAY THAT WHEN WE DON'T HAVE THE DISCOVERY ON THE

17  UNDERLYING CLAIMS THAT ARE DRIVING THAT RELIEF, BUT CERTAINLY

18  WHATEVER RELIEF THE COURT IS GOING TO PROVIDE HAS TO BE RELIEF

19  THAT IS TAILORED TO THOSE NAMED DEFENDANTS.  THERE JUST SIMPLY

20  ISN'T ANY REASON TO BRING IN ALL OF THOSE COUNTY OFFICIALS.

21           ANY OTHER QUESTIONS ON JOINDER, YOUR HONOR?  OKAY.

22  I'M NOT EVEN SURE I NEED TO SAY ANYTHING ELSE ON THIS BECAUSE I

23  THINK ON STANDING, I THINK WE'VE ADDRESSED THOSE ISSUES, AND I

24  THINK BECAUSE THE STANDING ARGUMENT SEEMED TO BE SO TIED TO HB

25  316 THAT THEY SHOULDN'T HAVE ANY BEARING ON IT.

1          THANK YOU, YOUR HONOR.

2          THE COURT:  THANK YOU.  HOW MUCH TIME DO THEY HAVE

3    TIME FOR REBUTTAL, IF THEY WANT REBUTTAL?

4          THE CLERK:  15 MINUTES.

5          MR. TYSON:  THANK YOU, YOUR HONOR.  JUST A COUPLE OF

6    POINTS FOR ME, AND I'LL LET MR. BELINFANTE COVERS HIS AREA, AS

7    WELL.  I KNOW WE HAD A DISCUSSION ABOUT STANDING.  OBVIOUSLY

8    THE ISSUES RELATED TO STANDING WITH HOUSE BILL 316 REALLY GO TO

9    THE DUTY TO MAINTAIN STANDING THROUGHOUT THE LAWSUIT WHICH IS

10   REALLY A MOOTNESS QUESTION.

11         THE LARGER STANDING QUESTION WE TALKED ABOUT

12   ORIGINALLY WERE AT THE TIME OF THE COMPLAINT IF THERE A WASN'T

13   SUFFICIENT CONCRETE INJURY, WASN'T TRACEABLE, REDRESSABLE AS WE

14   COVERED IN OUR BRIEFS.  I JUST WANTED TO MAKE SURE WE WERE

15   DISTINGUISHING THOSE TWO PIECES.

16         REGARDING THE NATIONAL VOTER REGISTRATION ACT, THE

17   LIST MAINTENANCE PIECE, THE PLAINTIFFS HAVE NOT CHALLENGED THE

18   CONSTITUTIONALITY OF THE NVRA PROVISION THAT REQUIRES LIST

19   MAINTENANCE.  THEY OBVIOUSLY TAKE AN ISSUE WITH HOW GEORGIA IS

20   CONDUCTING THAT LIST MAINTENANCE, BUT IF THEIR CONCERN IS THAT

21   THE PROCESS THAT'S ACTUALLY OUTLINED IN THE NVRA AND UPHELD BY

22   THE SUPREME COURT UNDER A CHALLENGE UNDER THAT PROVISION ON THE

23   INTERPRETATION PIECE IS UNCONSTITUTIONAL, THEY NEED TO

24   CHALLENGE THAT FEDERAL STATUTE AS WELL, NOT JUST GEORGIA'S

25   IMPLEMENTATION OF IT.  SO THAT'S ONE OF THOSE PIECES AS FAR AS

1  HOW THEY'RE LOOKING AT THAT.

2          THE COURT:  THEIR ARGUMENT IS THE COURT HAS TO

3  DETERMINE THE REASONABLENESS OF WHAT'S BEING DONE, AND THAT HAS

4  NOT BEEN DETERMINED ACCORDING TO THE PLAINTIFFS.

5          MR. TYSON:  CORRECT.  AND ALTHOUGH THE PLAINTIFFS

6  REFERENCE THE FIRST AMENDMENT ISSUES THERE, THEIR CLAIM HERE IS

7  LIMITED TO THE FOURTEENTH AMENDMENT CLAIM ONLY AS FAR AS

8  NOTICE.  SO THAT'S ANOTHER CONSIDERATION AS THE COURT IS

9  LOOKING AT THOSE QUESTIONS RELATED TO THE NVRA.

10          THANK YOU, YOUR HONOR.

11          THE COURT:  THANK YOU.

12          MR. BELINFANTE:  YOUR HONOR, I WILL TRY TO NOT BE THE

13  ONLY ATTORNEY THAT TAKES UP MY ENTIRE TIME LEFT.

14          THE COURT:  I'M GOING TO TELL YOU LIKE I DID THE REST

15  OF THEM DO WHAT YOU NEED TO DO.

16          MR. BELINFANTE:  UNDERSTOOD.  LET ME START WITH JUST

17  SOME GENERAL THOUGHTS.  I THINK WHAT YOU'VE SEEN IN THE TWO

18  ARGUMENTS ARE TWO LEVELS KIND OF GOING FORWARD.  WHAT WE'VE

19  PRESENTED TO YOU IS BASED ON THE SPECIFIC ALLEGATIONS IN THE

20  COMPLAINT, WHETHER IT DEALS WITH ABSENTEE BALLOTS, VOTER

21  MACHINES, PROVISIONAL BALLOTS, HOW THE NEW LAW EITHER CHANGES

22  THOSE, OR HOW THOSE ARE DECISIONS THAT ARE MADE AT THE LOCAL

23  LEVEL.

24          AND IF YOU THINK ABOUT THE QUESTION OF, YOU KNOW,

25  THIS CHART HERE TO OVERSEE CONTROL, ET CETERA, THAT'S ALL AT

1   THE GENERAL LEVEL.  IF THE SPECIFIC ALLEGATION IS AND PARAGRAPH

2   163 IS THAT JUST AN EXAMPLE THAT'S REPEATED THROUGHOUT, WHEN IT

3   TALKS ABOUT FAILING TO FURNISH COUNTIES AND PRECINCTS WITH

4   SUFFICIENT TOOLS FOR VOTING, PRESUMING THAT MEANS NUMBER OF

5   PROVISIONAL BALLOTS AND WHAT NOT, WHAT DOES THAT ENTAIL?  IT

6   GOES TO THE QUESTION THAT YOUR HONOR ASKED ABOUT WHAT DOES THAT

7   MEAN FROM THE SECRETARY OF STATE'S OFFICE TO THE LOCAL

8   REGISTRAR.

9           IF THERE'S A THOUSAND VOTERS IN THE COUNTY, THEY NEED

10  TO HAVE A THOUSAND BALLOTS OR 1200 PROVISIONAL BALLOTS, WHEN

11  EVERYONE KNOWS EVERYONE IS NOT VOTING ON A PROVISIONAL BALLOT.

12  THAT'S WHY IT CAN'T BE DECIDED AT THIS LEVEL OF GENERALITY THAT

13  THE PLAINTIFFS ARE LOOKING AT.  YOU NEED TO LOOK, YOUR HONOR,

14  AT SPECIFICALLY WHAT THEY'RE ALLEGING IN THE ADDENDUM CLAUSES,

15  AND WHAT THEY'RE ALLEGING ARE THE SPECIFIC VIOLATIONS.  THAT'S

16  THE DIFFERENCE WHEN YOU LOOK AT THE QUESTION OF WHAT'S THE

17  SECRETARY'S POWER VERSUS THE POWER OF THE LOCAL GOVERNMENTS AND

18  THE LOCAL BOARD OF REGISTRARS.

19          ON THE QUESTION OF MOOTNESS, THE ISSUE REALLY I THINK

20  INVOLVING PARTICULARLY THE VOTING MACHINES THEMSELVES, THIS IS

21  ONE THAT THE MACHINES HAVE TO BE CERTIFIED BY THE UNITED STATES

22  ELECTION COMMISSION OR ELECTION ASSISTANCE COMMISSION.  SO THE

23  QUESTION OF WHETHER THE NEW MACHINES WILL COMPLY WITH FEDERAL

24  LAW, YOU DON'T GET THERE BECAUSE TO COMPLY WITH STATE LAW THEY

25  HAVE TO BE APPROVED BY A FEDERAL ENTITY ANYWAY.

1          THE COURT:  THE ARGUMENT WAS MADE THAT THE MOOTNESS

2  HERE DOES NOT APPLY BECAUSE THE ACT HAS NOT BEEN COMPLETED.

3  UNLIKE IN UNITED STATES VERSUS GEORGIA, COUNSEL HAS ARGUED

4  THOSE MACHINES MAY NEVER BE USED IN A SENSE IF CERTAIN

5  CONTINGENCIES ARE NOT MET.

6          MR. BELINFANTE:  THE CONTINGENCIES THEY'VE

7  IDENTIFIED, ONE WAS APPROPRIATIONS.  THE MONEY HAS BEEN

8  APPROPRIATED.  THE RFP HAS BEEN ISSUED.  YES, IS IT CONCEIVABLE

9  THAT -- I CAN'T COME UP WITH A SITUATION WHY THEY WOULD NOT BE,

10  BUT THAT SPEAKS AGAIN TO RIPENESS IN TERMS OF WHAT YOU LOOK AT

11  IN AN ATTACK ON FUTURE MACHINES.

12          BUT IF YOU'RE LOOKING AT THE QUESTION OF THE CURRENT

13  MACHINES AS THEY ARTICULATED FOR MUNICIPAL ELECTIONS IN 2019, I

14  WOULD URGE THE COURT SIMPLY TO LOOK AT PAGE 8 OF THEIR BRIEF.

15  BECAUSE THERE WHERE THEY TO ATTEMPT TO JUSTIFY THEIR STANDING,

16  THEY SAY EACH PLAINTIFF ALLEGES THAT IN CONNECTION WITH THE

17  2020 ELECTIONS IT WILL DIVERT RESOURCES FROM ITS OTHER

18  ACTIVITIES TO COUNTERACT DEFENDANTS' WRONGDOING.

19          SO THEY CAN'T GET AROUND STANDING AND ASSOCIATIONAL

20  STANDING BY CITING TO THE 2020 ELECTION, AND THEN SAY HANG ON A

21  SECOND, WE'RE ALSO LOOKING AT MACHINES FOR THE 2019 ELECTION,

22  TOO.  THAT'S NOT WHAT THEY'RE ARGUING, AND SO THAT'S WHY FROM

23  THE MACHINE STANDPOINT, THE CASE IS EITHER MOOT IN TERMS OF THE

24  OLD MACHINES, OR IT'S NOT RIPE IN TERMS OF THE NEW MACHINES.

25          AND A KEY DIFFERENCE BETWEEN THIS AND I BELIEVE IT

1  WAS THE FINDLEY DECISION, THE DEPARTMENT OF VETERANS AFFAIRS

2  FEDERAL CASE THAT THEY CITE.  FROM MY QUICK READ OF THAT CASE,

3  IT INVOLVED JUST THE AGENCY ACTING ON ITS OWN TO COME UP WITH A

4  RULE.  IT WAS NOT AS IN U.S. V GEORGIA WHERE THERE WAS A

5  VOLUNTARY CESSATION PARTICULARLY BY A LEGISLATIVE BODY SIGNED

6  BY THE GOVERNOR, AND THAT'S WHAT MEETS THE STANDARD OF MOOTNESS

7  FROM THERE.

8          I THINK PART OF IT, PERHAPS THE BIGGEST AREA WHERE

9  THE COURT COULD RULE AND DISMISS THE CLAIMS IS ON THE FAILURE

10  TO TRAIN AND FAILURE TO ADMINISTER.  THERE'S NO CONTENTION THAT

11  THE 2018 ELECTION STANDING ALONE IS AN INSUFFICIENT BASIS FOR A

12  FAILURE TO TRAIN OR FAILURE TO ADMINISTER ARGUMENT.  THE

13  CONTENTIONS WERE THAT YES, THE SECRETARY CAN CONTROL, MANAGE,

14  OVERSEE, ET CETERA, THAT MAY ONE ELEMENT, BUT IF THE ELEVENTH

15  CIRCUIT AND THE SUPREME COURT'S DECISION WHICH SAY THAT THE

16  STATE HAS TO BE ON SUFFICIENT NOTICE OF ONGOING PROBLEMS AND

17  THEN TURN A BLIND EYE TO HAVE THAT LEVEL OF DELIBERATE

18  INDIFFERENCE, YOU CAN'T HAVE THAT OFF OF ONE ELECTION, AND YOU

19  CERTAINLY CAN'T HAVE IT OFF OF ONE ELECTION WHEN THERE IS A

20  LEGISLATIVE RESPONSE THAT COMES IN IN A THOROUGH AND A HOLISTIC

21  MANNER.

22          SO THE QUESTION THEN IS WHAT IS LEFT OF THE

23  COMPLAINT, AND IT'S THOSE THINGS THAT HAVE BEEN ARGUED AGAINST

24  THE STATE ITSELF AS OPPOSED TO WHAT THE COUNTIES ARE DOING

25  BECAUSE THE FAILURE TO TRAIN IS GONE, AND WE'VE SEEN A LOT

1    WEBSITES.  WE'VE SEEN BRIEFS, BUT THE QUESTION IS ON

2    SPECIFICALLY WHAT DOES THE LAW OF GEORGIA SAY, AND IF THE

3    SECRETARY WANTS TO GO ON HIS VOLITION AND HAVE INFORMATION

4    AVAILABLE FOR POLL WORKERS, THAT'S NOT A BASIS OF LIABILITY.

5    THAT'S SOMETHING THEY'RE GOING AHEAD AND DOING ON THEIR OWN

6    THAT THEY'RE NOT REQUIRED TO DO.

7            LIABILITY ATTACHES WHEN THERE IS A LEGAL OBLIGATION

8    TO DO SOMETHING, AND SOMEONE IS NOT DOING IT OR SHOWING A

9    DELIBERATE INDIFFERENCE TO THAT LEGAL OBLIGATION, AND THAT'S

10   WHERE THE FACT THAT THE STATUTES COME IN, AND PARTICULARLY THE

11   NEW STATUTE IN 316 AND THE NEW STATUTE IN 392 THAT REQUIRES AN

12   ANNUAL CERTIFICATION OF VOTER SECURITY.  THIS IS NOT JUST THE

13   SECRETARY AGREES HE'S GOING TO DO SOMETHING.  THE GENERAL

14   ASSEMBLY HAS COMPELLED THE SECRETARY TO PROMULGATE REGULATIONS,

15   AND THE FAILSAFE IS THAT THEY HAVE TO CERTIFY THAT THE VOTER

16   DATA HAS BEEN SECURED.

17           AGAIN IT ADDRESSES ON THE SPECIFIC LEVEL OF

18   ADDRESSING THE CONCERNS IN THE COMPLAINT AS THEY'VE BEEN

19   ARTICULATED AS OPPOSED TO GENERAL QUESTIONS OF WHAT'S THE

20   AUTHORITY OVERALL VERSUS THOSE THAT ARE SPECIFICALLY ENUMERATED

21   IN THE COMPLAINT, AND UNLESS THE COURT HAS ANY OTHER QUESTIONS,

22   I'LL --

23           THE COURT:  THANK YOU, SIR.  WELL, LET ME COMMEND ALL

24   YOU ALL, YOUR BRIEFS WERE OUTSTANDING, AND YOUR ARGUMENTS WERE

25   OUTSTANDING, AND YOU ALL ARE MAKING IT DIFFICULT FOR THE

1  COURT.

2           THE DEFENDANTS AT ONE POINT IN TIME WHEN YOU ALL

3  ASKED TO CONTINUE THIS CASE INDICATED YOU WANTED TO FURTHER

4  BRIEF.  DOES THE PLAINTIFFS WANT TO GIVE ANY FURTHER BRIEFING

5  ON THIS?

6           MS. LAWRENCE:  ONLY IF THE COURT WOULD LIKE FURTHER

7  BRIEFING, YOUR HONOR, OR OF COURSE IF THE DEFENDANTS WILL BE

8  BRIEFING.

9           THE COURT:  WELL, TO BE HONEST WITH YOU ALL, I THINK

10  I CAN MAKE A DECISION, BUT I WANT TO BE FAIR TO EVERYBODY.  IF

11  ANYBODY THINKS THEY NEED TO TELL ME ANYTHING ELSE, I'M WILLING

12  TO HEAR IT.  IF NOT, I'LL START WORKING TOWARDS ISSUING AN

13  ORDER.

14           MS. LAWRENCE:  AND, YOUR HONOR, PLAINTIFFS' POSITION

15  IS THAT TIME IS OF THE ESSENCE AS WE ARE WORKING VERY HARD TO

16  GET RELIEF QUICKLY FOR UPCOMING ELECTIONS.

17           THE COURT:  WELL, SO YOU ALL DON'T NEED TO BRIEF?

18           MS. LAWRENCE:  CORRECT, WE WOULD ASK THE COURT TO

19  MOVE FORWARD AS QUICKLY AS POSSIBLE.  WE'RE EAGER TO GET TO

20  DISCOVERY.

21           THE COURT:  DO THE DEFENDANTS WISH TO BRIEF?

22           MR. BELINFANTE:  YOUR HONOR, I THINK IT BEHOOVES US.

23  I MEAN THE ARGUMENTS HAVE BEEN HELPFUL, THE NOTEBOOKS HAVE BEEN

24  HIM, BUT THERE'S A LOT CASE THAT ARE NOT BEING TALKED ABOUT

25  THAT WERE NOT BRIEFED BEFORE, AND IN A LOT OF WAYS THE ARGUMENT

1  HAS CHANGED BECAUSE OF THE PASSAGE OF 316 AND 392.

2          WE THINK IT WOULD BE HELPFUL TO THE COURT.  WE HAD

3  PROPOSED AN EXPEDITED BRIEFING SCHEDULE.  WE HAD PROPOSED

4  POSTPONING THIS HEARING BUT THAT'S HAPPENED.  WE'RE NOT SEEKING

5  ANOTHER HEARING, AND WE WOULD STICK TO AN EXPEDITED BRIEFING

6  SCHEDULE IF THAT'S SOMETHING THE COURT WOULD ENTERTAIN.

7          THE COURT:  I'LL ALLOW YOU TO SUBMIT BRIEFS SEVEN

8  DAYS FROM TODAY WHICH WILL BE NEXT MONDAY.

9          MS. LAWRENCE:  AND, YOUR HONOR, WE WOULD SIMPLY ASK

10  MAY WE GO AHEAD AND BEGIN OUR DISCOVERY WHILE THIS BRIEFING

11  GOES ON?

12          THE COURT:  WELL, USUALLY, MS. LAWRENCE, AS YOU KNOW

13  DISCOVERY DOESN'T START UNTIL I ISSUE AN ORDER ON THE MOTION TO

14  DISMISS, AND EVEN IF I DIDN'T ALLOW ANY BRIEFING, DISCOVERY

15  WOULD NOT START UNTIL I ISSUE AN ORDER ON THE MOTION TO

16  DISMISS.

17          MS. LAWRENCE:  UNLESS THE JUDGE DIRECTS OTHERWISE.

18          THE COURT:  WELL, YOU ASKED ME THAT.  I THINK I KNOW

19  WHAT THE DEFENSE IS GOING TO SAY THAT IF I DISMISSED IT THEN

20  THE DISCOVERY WOULD BE JUST A WASTE OF TIME.

21          MR. BELINFANTE:  YOUR HONOR, THESE ARE PUBLIC DOLLARS

22  AT WORK, AND IF WE'RE GOING TO GET INTO DISCOVERY BASED ON

23  WHAT'S AT ISSUE IN THE COMPLAINT, THEN WE THINK IT'S BEST TO GO

24  AHEAD AND HAVE A RULING.

25          THE COURT:  WELL, AGAIN, THE COURT IS OBVIOUSLY GOING

1  TO ISSUE A RULING ON THE MOTION TO DISMISS, BUT USUALLY AS YOU

2  KNOW IF YOU THE PRACTICE IN THIS CIRCUIT, IN THIS DISTRICT, WE

3  HAVE THE HEARING FOR A MOTION TO DISMISS OR ENTERTAIN THE

4  MOTION TO DISMISS, WE DON'T START DISCOVERY UNTIL AFTER THE

5  COURT ISSUES A RULING OF THE MOTION TO DISMISS.

6          I ASSURE YOU I WILL MOVE AS FAST AS I CAN, BUT I HAVE

7  TO BE FAIR.  YOU ALL HAVE ALREADY GIVEN ME -- I WON'T BE

8  WATCHING THE SPORTS FOR A WHILE, BUT IT'S AN IMPORTANT MATTER.

9  I WANT EVERYBODY -- HOWEVER I RULE YOU MAY NOT AGREE WITH THE

10 RULING, BUT AT LEAST I WANT YOU TO KNOW I GAVE YOU A FAIR SHOT

11 TO TELL ME WHAT YOU WANTED TO TELL ME.  SO IF YOU WANT TO ISSUE

12 A BRIEF, YOU CAN, BUT I NEED ALL BRIEFS THAT'S GOING TO BE

13 SUBMITTED TO BY FIVE O'CLOCK NEXT MONDAY. THANK YOU, ALL.

14          MR. BELINFANTE:  THANK YOU.

15          MS. LAWRENCE:  THANK YOU.

16          (PROCEEDINGS CONCLUDED.)

17

18

19

20

21

22

23

24

25

```
 1

 2                        C-E-R-T-I-F-I-C-A-T-E

 3

 4  UNITED STATES OF AMERICA

 5  NORTHERN DISTRICT OF GEORGIA

 6

 7           I, ANDRE G. ASHLEY, DO HEREBY CERTIFY THAT I AM A

 8  U.S. DISTRICT REPORTER FOR THE NORTHERN DISTRICT OF GEORGIA,

 9  THAT I REPORTED THE FOREGOING AND THE SAME IS A TRUE AND

10  ACCURATE TRANSCRIPTION OF MY MACHINE SHORTHAND NOTES AS TAKEN

11  AFORESAID.

12           IN TESTIMONY WHEREOF I HAVE HEREUNTO SET MY HAND ON

13  THIS 1ST DAY OF MAY, 2019.

14

15

16

17

18
                          S/ ANDRE G. ASHLEY
19                        ANDRE G. ASHLEY
                          OFFICIAL COURT REPORTER
20                        NORTHERN DISTRICT OF GEORGIA

21

22

23

24

25
```