**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| FAIR FIGHT ACTION, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action File |
| v. | ) | |
| | ) | No. 1:18-cv-05391-SCJ |
| BRAD RAFFENSPERGER, in his | ) | |
| official Capacity as Secretary of State | ) | |
| of Georgia; *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendants Brad Raffensperger, in his official capacity as Secretary of State

of the State of Georgia and Chairman of the State Election Board of Georgia (the

"Secretary"), Rebecca N. Sullivan, David J. Worley, Anh Lee, and Seth Harp, in

their official capacities as members of the State Election Board (collectively,

"Members"), and the State Election Board ("Board") (collectively "Defendants"),

submit this Supplemental Brief in Support of Their Renewed Motion to Dismiss

Plaintiffs' Amended Complaint.

## **INTRODUCTION**

Plaintiffs allege a series of disconnected events in their effort to show that one election, the 2018 general election, was administered in an unconstitutional manner by the Secretary of State and the Members of the State Election Board. Plaintiffs' theory is that acts by local officials were somehow caused either directly by state policy (*e.g.*, voter-list maintenance, electronic voting machines (DREs), state-maintained voter data) or by the state's purported failure to train *everyone* involved in elections—from election superintendents to individual poll workers.

Plaintiffs' claims that are based on actual state duties and obligations have been mooted by two pieces of legislation that were recently signed by Governor Kemp.  Put simply, Plaintiffs' allegations about voting machines, voter data, and voter-list maintenance were all addressed by the Georgia General Assembly, and the laws about which Plaintiffs complain no longer exist in Georgia.  The remaining claims that are based on the obligations of county and local governments (which are the majority of Plaintiffs' claims) fail because Plaintiffs have not alleged sufficient facts to state a claim for failure to oversee elections generally or failure to train, especially in light of the new legislation.  For these reasons, Plaintiffs' claims should be dismissed.

I.    **Plaintiffs Have Not Sufficiently Alleged Standing.**

At the hearing, Plaintiffs failed to advance any arguments in support of their standing to bring this litigation or otherwise respond to State Defendants' Motion to Dismiss on standing issues.  This Court, however, raised the Eleventh Circuit's decision in Arcia v. Secretary of Florida, 772 F.3d 1335 (11th Cir. 2014).  As recognized by this Court, Arcia is one of the only organizational standing cases decided in the Eleventh Circuit after Clapper v. Amnesty International, USA, 568 U.S. 398, 133 S. Ct. 1138 (2013), and it is unlike this case.  Arcia found that the plaintiff organizations were not alleging a "highly attenuated chain of possibilities" like that found insufficient in Clapper because of two facts: (1) two individuals that had been placed on the list of non-citizens were plaintiffs, 772 F.3d at 1342 n.2; and (2) the organizations spent funds to assist members who had been placed on the list of non-citizens, id. at 1342.  None of the Plaintiffs in this case are individuals and only three of the organizations have spent any funds. [Doc. 41, ¶¶ 18-19, 23].  The organizations in Arcia also alleged associational standing on behalf of members—which none of the Plaintiffs have done here. Id. at 1342.[1]

---

[1] In addition to the lack of allegations to support standing in the Amended Complaint, all Plaintiffs except Care in Action, Ebenezer Baptist, and BMBC have only alleged possible future harm, as Plaintiffs admit.  [Doc. 52, p. 4].  While HB 316 does not bear on the allegations at the outset of the case, it does emphasize the

While standing is measured at the time of the filing of the lawsuit, <u>Focus on the Family v. Pinellas Suncoast Transit Auth.</u>, 344 F.3d 1263, 1275 (11th Cir. 2003), mootness and standing are often connected: "the doctrine of mootness can be described as 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" <u>Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.</u>, 528 U.S. 167, 189, 120 S. Ct. 693, (2000) (quoting <u>Arizonans for Official English</u>, 520 U.S. 43, 68 n.22, 117 S.Ct. 1055 (1997)).  To the extent HB 316 has mooted Plaintiffs' claims, as discussed below, there is no longer a traceable harm for purposes of standing.  <u>Clapper</u>, 568 U.S. at 422 ("respondents lack Article III standing because they cannot demonstrate that the future injury they purportedly fear is certainly impending and because they cannot manufacture standing by incurring costs in anticipation of nonimminent harm").

## II.    <u>HB 316 And HB 392 Moot Most Of Plaintiffs' Claims</u>.

During the 2019 legislative session, the Georgia General Assembly passed House Bill 316 ("HB 316") and House Bill 392 ("HB 392") (collectively, the

---

remoteness and unlikelihood of the purported harm most of the Plaintiffs plan to inflict on themselves in the future.

"2019 Legislation"), which effectively moot and limit the scope of Plaintiffs'

claims. Mootness is part of the "powerful limitation[]" that Article III imposes on

the federal judiciary: "if a suit is moot, it cannot present an Article III case or

controversy and the federal courts lack subject matter jurisdiction to entertain it …

Mootness can occur due to a change in circumstances, or, as here, a change in the

law." Coral Springs Street Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1328 (11th

Cir. 2004).

Whenever the government "repeal[s] … or amend[s]" a complained-of statute

or regulation, the underlying litigation can be mooted. Id. at 1329. Indeed,

"federal courts of appeal have virtually uniformly held that the repeal of a

challenged ordinance will moot a plaintiff's request for injunctive relief in the

absence of some evidence that the ordinance has been or is reasonably likely to be

reenacted." Id. at 1331 n.9. "[G]overnmental entities and officials have been

given considerably more leeway than private parties in the presumption that they

are unlikely to resume illegal activities." Id. at 1328-29. To be sure, legislative

changes do not, per se, require the dismissal of the full lawsuit. Instead, courts

engage in a claim-by-claim analysis to determine how, and to what extent, the new

law addresses the "challenged features of the prior law." Naturist Soc., Inc. v.

Fillyaw, 958 F.2d 1515, 1521 (11th Cir. 1992).

Here, Plaintiffs allege that Georgia's current voting machines malfunction, and do not produce an auditable paper trail.  [Doc. 41, ¶¶ 94-107, 121, 122].[2]  Putting aside that no law or binding precedent mandates a paper trail to comply with the United States Constitution, HB 316 requires the replacement of current voting machines with new machines "as soon as possible."  O.C.G.A. § 21-2-300(a)(2).  Funds have been appropriated to purchase the new machines, and as shown during the hearing, requests for proposals are currently being evaluated with a notice of intent to award the contract expected by July, 2019.[3]  Further, and contrary to Plaintiffs' argument in the hearing, the new voting machines required by HB 316 must be certified by the United States Election Assistance Commission, and they will provide an "elector verifiable" audit trail that allows each elector to see a printout of who they voted for in each election.  Compare [Doc. 64 at 48:8 – 49:4] with O.C.G.A. §§ 21-2-300(a)(2) (requiring new voting equipment to print paper ballots that are readable to the voter) and (a)(3) (requiring new voter machines to be certified by the United States Election Assistance Commission).

---

[2] Plaintiffs' claims that the Defendants provided insufficient resources (e.g., provisional ballots and power cords) are addressed below as part of Plaintiffs' claim alleging a failure to oversee the 2018 election.

[3] See Georgia Procurement Registry, Statewide Voting System, eRFP No. 47000-SOS0000037, Attachment A at 2—3, *available at* https://ssl.doas.state.ga.us/PRSapp/PublicBidNotice?bid_op=194780047800-SOS0000037 (describing schedule of request for proposal process).

This "comprehensive electoral reform" squarely addresses and moots Plaintiffs' claims about Georgia's voting machines.  United States v. Georgia, 778 F.3d 1202, 1205 (11th Cir. 2015).

Plaintiffs also allege that Georgia's voter data and voter lists are not secured. [Doc. 41, ¶¶ 94-96, 100-120].  HB 392 addresses these claims by requiring (1) the Secretary to promulgate a regulation establishing industry-based security standards; and (2) annually certify that the State is complying with its own security regulations.  See O.C.G.A. § 45-13-20(14.1).  There is no evidence or allegation that the Secretary will not comply with this statutory mandate.[4]

Plaintiffs also allege that Georgia's voter-list-maintenance statutes (and the policies enacted pursuant to them), O.C.G.A. §§ 21-2-231 through 21-2-234, are unlawful.  [Doc. 41, ¶¶ 69-93].  Specifically, Plaintiffs complain that voters subject to being removed from the active voter rolls for years of unresponsiveness and

---

[4] In response to the voting machines and voter security concerns, Plaintiffs' citation to Fanin v. United States Department of Veterans Affairs, 572 F.3d 868 (11th Cir. 2009), is misplaced.  First, Fanin addressed a situation where the government claimed it was working to comply with a known violation of the law, specifically, the failure to protect personal health information.  572 F.3d at 875-76. There was no statutory obligation to act or annually certify anything.  Second, Fanin shows that, at best, Plaintiffs' claims are not ripe.  By the time of the next election, the Secretary will have promulgated a new regulation regarding security and may have certified Georgia's compliance with it.  Until then, Plaintiffs cannot claim that the state is doing nothing (in the light of HB 392), nor can Plaintiffs allege that HB 392 is insufficient.  The first is moot, and the second is not ripe.

inactivity need more notice.  [Doc. 41 at 28–33].  HB 316 addresses these concerns directly.  First, it extends the "inactive" time of an elector (i.e. the time period the elector has failed to vote or update information) from three calendar years to five.  O.C.G.A. § 21-2-234(a)(1).  Second, the legislation requires notice to the elector not less than 30 days but no more than 60 days prior to cancellation of the elector's registration.  O.C.G.A. § 21-2-235(b).  Finally, the legislation also improves the data relied on in the list-maintenance process, permitting the Secretary to share voter change of address information amongst other states.  O.C.G.A. § 21-2-255.

Given state policymakers' decisions to enact the 2019 Legislation, the application of United States v. Georgia bars Plaintiffs' claims regarding voter machines, database security, voter-list maintenance, absentee ballots,[5] and provisional ballots as moot.  778 F.3d at 1205.[6]  Importantly, the General

---

[5] Separate constitutional challenges to the absentee-ballot statute as unconstitutional for allowing the rejection of applications and ballots for any reason other than a lack of a signature match have been dismissed by those plaintiffs because their claims were mooted by HB 316. See Ga. Muslim Voter Project v. Raffensperger, Joint Stipulation of Dismissal [Doc. 62], Case No. 1:18-cv-4789-LMM (April 15, 2019); Martin v. Raffensperger, Joint Stipulation of Dismissal [Doc. 85], Case No. 1:18-cv-4776-LMM (April 16, 2019).

[6] Plaintiffs' allegations regarding absentee and provisional ballots are based on their claim that the Defendants did not train or oversee election officials.  See [Doc. 41 ¶¶ 132-139 (provisional ballots); 140-156 (absentee ballots)].  As addressed more fully below, Plaintiffs' claims that the State (as opposed to local governments) did not furnish enough provisional ballots is wrong as a matter of

Assembly enacted the "comprehensive electoral reforms" voluntarily.  Id.[7]  This

distinguishes this case from the authority Plaintiffs cited in the hearing.  See, e.g.,

NE Fla. Chapter of the Assoc. Gen. Contractors of Am. v. City of Jacksonville,

Fla., 508 U.S. 656 (1993) (involving a change of policy only after the issuance of a

preliminary injunction: "there is no mere risk that Jacksonville will repeat its

allegedly wrongful conduct; it has already done so").  Accord City of Sunrise, 371

F.3d at 1330-32 (finding voluntary repeal of ordinance mooted legislation).  That

voluntary action renders much of Plaintiffs' allegations moot, and they should be

dismissed.

## III.   Plaintiffs Have Failed To State A Claim Regarding Georgia's Voter-List Maintenance Program.

Beyond being moot, Plaintiffs' claims regarding Georgia's voter-list

maintenance program also fail to state a claim for relief.  See Bracewell v.

Nicholson Air Services, Inc., 680 F.2d 103, 104 (11th Cir. 1982) (reaffirming

---

law.  At best, the claims fall into Plaintiffs' failure-to-train or oversee allegations, which are addressed below.

[7] Plaintiffs' authority does not require a different conclusion.  To the contrary, it stands for the unremarkable conclusion that claims impacted by new legislation are viewed individually to determine whether the new legislation addresses the issues raised in the lawsuit.  Coal. For the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301 (11th Cir. 2000); Fillyaw, 958 F.2d at 1515.  Defendants do not argue anything different and do not need to.  Plaintiffs' challenges to these laws have all been addressed and substantially mooted by the 2019 Legislation.

standard for dismissing a portion of a complaint).  They appeared to abandon their

argument that Georgia's program does not comply with the National Voter

Registration Act ("NVRA") per the analysis in Husted v. A. Philip Randolph Inst.,

___ U.S. ___, 138 S. Ct. 1833 (2018).  Indeed, Plaintiffs could not identify *any* set

of facts which would allow this Court to reach a different conclusion about

Georgia's voter-list maintenance program than that reached in Husted.

Instead, Plaintiffs' focused on their constitutional question and the

"reasonableness" of Georgia's program, but their claim is really an attack on the

NVRA itself.  [Doc. 64 at 43:9-19].  And Plaintiffs have not challenged the NVRA

in their Amended Complaint.  Specifically, Plaintiffs challenge the reasonableness

of Georgia's use of postcard notices.  Id.  That approach, however, is directly

contrary to the text of the NVRA.  52 U.S.C. § 20507 provides that a state is

specifically authorized to remove the name of a registrant if that registrant has

"failed to respond" to a notice that is "a postage prepaid and pre-addressed return

card, sent by forwardable mail, on which the registrant may state his or her current

address," with several included notices.  52 U.S.C. § 20507(d)(2).  In Husted, the

Supreme Court found that Ohio's process (and, by extension, Georgia's) followed

that provision "to the letter," 138 S. Ct. at 1842, and further determined that "it is

the federal NVRA, not Ohio law, that attaches importance to the failure to send back the card." Id. at 1848.[8]

Further, insufficient notice is Plaintiffs' sole alleged constitutional violation regarding Georgia's voter-list-maintenance statute. [Doc. 41, ¶ 205]. The Supreme Court specifically rejected Plaintiffs' argument that more notice was required because voters discard return cards after receiving them: "Congress clearly did not think that the failure to send back a return card was of no evidentiary value." Husted, 138 S. Ct. at 1845.

Plaintiffs' reliance on Justice Alito's statement that the reasonableness of a response is "off the table" in Husted is misplaced. [Doc. 64 at 43:23-24]. That section of the decision refers to the reasonableness of the *Congressional judgment* in the NVRA about the effect of a returned card—not the reasonableness of the Ohio statute. Husted, 138 S. Ct. at 1848. Plaintiffs' problem with the sufficiency of notice lies with the NVRA, not with Georgia's statutory process. Plaintiffs failed to challenge the constitutionality of the NVRA, and only attacked Georgia's

---

[8] As Defendants explained in their Brief in Support of their Renewed Motion to Dismiss, Georgia's process is nearly identical to Ohio's except that it is, in fact, more forgiving. See [Doc. 48-1 at 22, n.13]. This is even more so given that HB 316 now requires five—rather than three—years of inactivity followed by another two federal election cycles. Compare Husted, 138 S. Ct. at 1840–41 (Ohio practice of sending notice after two years of inactivity) with O.C.G.A. §§ 21-2-234, -235 (requiring five years of inactivity).

compliance with that federal law, which is foreclosed by the Supreme Court's ruling in <u>Husted</u>.[9]  Plaintiffs' challenge to Georgia's voter-list maintenance program, therefore, fails.

## IV. Plaintiffs Have Not Stated A Claim For Failure-To-Train.

While Plaintiffs wrongly claim that the Secretary has authority to direct all aspects of Georgia elections, they appear to acknowledge that Georgia law largely leaves election administration to counties.  Consequently, the gravamen of their Complaint is that the Secretary and the State Election Board failed to oversee (or train) county officials' conduct during the 2018 general election.  This specifically includes allegations about (1) absentee voting; (2) provisional voting; and (3) moving polling locations; and (4) general claims about the sufficiency of resources.  [Doc. 41, ¶¶ 2, 164, 176, 190, 214].  The claims fail for three reasons.  First, Plaintiffs have alleged insufficient facts to set forth a claim for failure-to-train or -oversee.[10]  Second, the 2019 Legislation forecloses any claims for failure-

---

[9] The only constitutional issue the Supreme Court assumed in <u>Husted</u> was that Congress had the authority to place limits on voting eligibility through the NVRA. <u>Husted</u>, 138 S. Ct. at 1846 n.5.

[10] In the Eleventh Circuit, the same legal analysis governs Plaintiffs' claims for failure to train election superintendents and boards of registrars and for failure to manage or oversee the 2018 election. <u>See</u> <u>Gold</u>, 151 F.3d at 1350; <u>Dubose v. City of Hueytown</u>, V-15-BE-852-S, 2016 WL 3854241, at *8 (N.D. Ala. July 15, 2016) (acknowledging same analysis applies per <u>Gold</u>).

to-train or -oversee, because there can be no allegation that the Defendants have failed to oversee the implementation of new mandates.  Third, the Eleventh Amendment also precludes relief.

A government's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train" theory.  Connick v. Thompson, 563 U.S. 51, 61 (2011) (addressing municipal liability).  For this reason, a "stringent standard of fault" applies in failure to train cases to prevent 42 U.S.C. § 1983 from establishing what Congress did not intend: "*de facto respondeat superior* liability." Id. (citations omitted).  See also Bd. of Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 406 (1997) (describing plaintiffs' "difficult standards of proof"); Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (concluding failure-to-train liability exists only in "limited circumstances") (citing City of Canton v. Harris, 489 U.S. 378, 387 (1989)).

Plaintiffs' decision to raise failure to train claims requires them to allege three elements.  **First**, Defendants must have a legal obligation or some form of control over the poll workers whose actions Plaintiffs claim violated the Constitution.  See McMillan v. Monroe Cnty., Al., 520 U.S. 781, 791 (1997) (holding a County was not liable for actions of a Sheriff where no "direct control"

existed).[11]  **Second**, Defendants must have, as a matter of fact, actually failed to

train or oversee persons "it employs in the lawful execution of their duties."  Kerr

v. City of W. Palm Beach, 875 F.3de 1546, 1555 (11th Cir. 1989).  **Third**, the

failure to train or oversee amounted to an intentional governmental policy that

demonstrated a "deliberate indifference to the rights of its inhabitants."  Id.[12]

The third element requires allegations that the Defendants were on notice of

the need to train (or provide additional oversight) and did nothing in response.

This is a "difficult" burden.  AFL-CIO v City of Miami, 637 F.3d 1178, 1189 (11th

Cir. 2011).  It is a particularly challenging burden in this case given the uniqueness

---

[11] Georgia law requires that the Secretary provide training only to county election
superintendents and county election boards of registrars.  O.C.G.A. § 21-2-50(1).
At the hearing, Plaintiffs' reliance on training materials that the Secretary
provides—on a purely voluntary basis—does not establish liability.  To the
contrary, a failure-to-train or failure-to-manage claim can survive only if the state
defendant is under an obligation to train or manage the process in question.
Notably, the Board has *no* duty to train *whatsoever*. O.C.G.A. § 21-2-31.

[12] To the extent Plaintiffs' claims are based on supervisory liability—a claim that
has never been raised by Plaintiffs in the briefing or at the hearing—the elements
are similar.  Supervisory liability claims against public officials in their individual
capacities require either (1) the personal involvement in the alleged constitutional
violation; or (2) a "causal connection between [the individual's] actions and the
constitutional violations that his subordinates commit."  AFL-CIO, 637 F.3d at
1190.  The supervisory liability standard is "'extremely rigorous.'"  Kerr v. Miami-
Dade Cty., 856 F.3d 795, 820 (citing Braddy v. Fla. Dep't. of Labor & Emp't Sec.,
133 F.3d 797, 802 (11th Cir. 1998)).  It also requires allegations of multiple
deprivations: "one incident will not suffice."  Id.  Plaintiffs fail to allege any act by
Secretary Raffesnsperger individually, and they have not alleged anything that any
single member of the State Election Board did to engage in the conduct that
Plaintiffs claim creates a basis for relief.

of the 2018 election: "The 2018 election cycle drew *historic voter registration and turnout*, particularly among voters of color … This voter turnout was more than for any previous midterm election *in Georgia history*."  [Doc. 41, ¶ 43 (emphasis added).]

In the light of Plaintiffs' own allegations, they failed to meet the standard set forth in binding precedent.  For example, Plaintiffs were required to allege a "history of widespread abuse," but they focused on only one election: the 2018 general election.  Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999); see also Kerr v. Miami-Dade Cty., 856 F.3d 795, 820 (11th Cir. 2017) (requiring showing of "repeated acts").  Precedent also compels Plaintiffs to cite to specific and meritorious facts that establish notice; Plaintiffs cannot rest on generalized allegations.  Brooks v. Scheib, 813 F.2d 1191, 1193 (11th Cir. 1987); see also Gold, 151 F.3d at 1351 (concluding that there can be no liability without notice).  Here too, they cited nothing outside of the 2018 general election.  Next, allegations of notice must also include claims that the Defendants were "on notice that the training was inadequate."  AFL-CIO, 637 F.3d at 1189.  The Complaint is void of any such allegations.  Finally, Plaintiffs had to allege that, in the light of the notice, Defendants "'made a deliberate choice' not to train."  Id. at 1189 (citing Gold, 151 F.3d at 1350)).  Here too, the Complaint is silent.

Beyond this, Plaintiffs' theories are rendered meritless in light of the 2019 Legislation.  HB 316 addresses numerous aspects of Plaintiffs' failure-to-train or failure-to-supervise claims, including how local governments will implement absentee ballots, provisional ballots, and the moving or closing of polling precincts.[13]  O.C.G.A. §§ 21-2-385 (absentee ballots); 21-2-386 (same); 21-2-388 (same); 21-2-419 (provisional ballots); 21-2-493 (empowering the Secretary to delay certification pending an audit of provisional ballots); 21-2-235 (precinct changes); 21-2-262 (same); 21-2-498 (auditing in general elections).  These changes go to the heart of Plaintiffs' claims, and Defendants have not yet had the opportunity to oversee an election under the new law, promulgate regulations to comport with the new statutory requirements, or train county election superintendents or boards of registrars on the laws' requirements.  Consequently, Plaintiffs cannot state a claim for failing to train or oversee an election under "Georgia's current elections process."  [Doc. 41, Prayer for Relief ¶¶ 1–3].  See Kerr, 875 F.3d at 1555 (requiring allegations of inadequate training on the law).

Similarly, sovereign immunity precludes relief on claims that are addressed by the 2019 Legislation.  The Ex Parte Young doctrine limits Plaintiffs' relief

---

[13] HB 392 addresses the maintenance of the voter security database, which does not appear to be part of the Plaintiffs' failure-to-train/oversee claim.  To the extent that it is, the same analysis applies.

"only to ongoing and continuous violations of federal law."  Summit Med. Assocs., P.C. v. Pryor, 180 F.3d 1326, 1337 (11th Cir. 1999).  It is axiomatic that there cannot be ongoing violations of federal law based on state statutes that are no longer in effect.[14]

For each of these reasons, Plaintiffs' claims regarding failure to oversee the 2018 election and to train for the 2018 election should be dismissed.

## V.     The Eleventh Circuit Does Not Permit "Obey The Law" Injunctions.

Plaintiffs seek nothing short of a federal takeover of Georgia's election process and cannot articulate anything more that this Court should do other than order Georgia to act in a manner that is "consistent with Georgia and federal law." [See Doc. 41 at ¶¶ 11, 12].  The Eleventh Circuit has routinely rejected such "obey the law" injunctions, as a court order "must do more than tell a defendant to 'obey the law' and 'merely cross-reference the relevant statutes and regulations.'"  S.E.C. v. Morgan Keegan & Co., Inc., 2013 WL 109445346 at *57 (N.D. Ga. Feb. 15, 2013) (citing S.E.C. v. Goble, 682 F.3d 934, 948-952 (2012)).  See also Burton v. City of Belle Glade, 178 F.3d 1175, 1200 (11th Cir. 1999) (citation omitted) (requiring orders to "contain an operative command capable of enforcement").

---

[14] Notably, Plaintiffs have not challenged any aspect of the 2019 Legislation as unconstitutional.

Otherwise, defendants will not know what conduct is prohibited or required to comply with the law.  Fla. Ass'n of Rehab. Facilities, Inc. v. State of Fla. Dep't of Health & Rehab. Servs., 225 F.3d 1208, 1223 (11th Cir. 2000) see also Walker v. City of Calhoun, GA, 682 Fed. Appx. 721, 725 (11th Cir. 2017) (vacating injunction where it required the City to "fashion constitutionally compliant post-arrest procedures" with no further guidance).

Plaintiffs' requested relief is no different from that in Walker and demonstrates the unavailability of relief.  See [Doc.41 at ¶ 11(a)-(m) (emphasis added), ¶ 12].  Indeed, when this Court asked for specific remedies, Plaintiffs could articulate none:

> as this case progresses, we will be able to crystallize what these issues are, and how that relief would need to be phrased will be a normal outgrowth of that process, but right now at this stage it's difficult to be able to say that when we don't have the discovery on the underlying claims that are driving that relief…

[Doc. 64 at 76:12-19.][15]  This warrants dismissal.  See Elend v. Basham, 471 F.3d 1199, 1209 (2006).[16]

---

[15] It should be troubling to the Court that the Plaintiffs claim they need discovery to know what relief they want.  There is no denying that this is a politically charged lawsuit, and Plaintiffs have already indicated their intent to use the power of this Court to conduct a video deposition of Governor Kemp.  [Doc. 49].  Plaintiffs are apparently willing to engage in a fishing expedition that is neither warranted nor permissible under federal law.

## VI.   Plaintiffs Must Join Counties Who Conduct Elections.

Regardless of the "obey the law" nature of Plaintiffs' requested relief, there is no question that the proposed remedies would be implemented by county officials and funded by county coffers.  Indeed, Plaintiffs rely heavily on two provisions of the Election Code which speak of the Secretary's and Board's authority generally.  See O.C.G.A. §§ 21-2-50, 21-2-31.  Plaintiffs' claims and prayer for relief, however, focus almost exclusively on local actions. Consequently, the gravamen of Plaintiffs' claims is that they are based on either failure-to-oversee or failure-to-train liability or should be brought against the local governments themselves.[17]

---

[16] In addition to the Eleventh Circuit's foreclosure of "obey the law" injunctions, federal pleading standards also warrant dismissing Plaintiffs' Complaint.  See Melvin H. v. Atlanta Indep. School Sys., 2008 WL 11411102 (N.D. Ga. Dec. 1, 2008) (noting Plaintiffs' failure to articulate specific types of relief other than general ideas constituted a request for an "obey the law" injunction);  Mancha v. Immigration & Customs Enforcement, 2007 WL 4287766 (N.D. Ga. Dec. 5, 2007) (dismissing complaint due to lack of specificity in request for injunctive relief); Hines v. Nazaire, 2017 WL 1250999 (M.D. Ga. Feb. 17, 2017) (dismissing Plaintiff's claims for injunctive relief as an impermissible "obey the law" injunction).

[17] The various statutes Plaintiffs now cite in a chart submitted to this Court generally provide only vague references to broad statutory duties of the Board and Secretary and otherwise focus on county responsibility; they do not address the specific authority to implement much of what the Complaint alleges as improper (e.g., number of provisional and absentee ballots).  See generally [Plaintiffs' Motion to Dismiss Oral Argument Documents, Tab 21].

Specifically, paragraph 11 of Plaintiffs' prayer for relief seeks to enjoin Defendants "to oversee adequately elections by enforcing uniform standards and processes that" generally require some sort of action or change in practice by county elections officials and poll workers.  [Doc. 41, Prayer for Relief at ¶ 11]. Plaintiffs propose that the State require everything from a new method of processing absentee ballots (mooted by HB 316) (¶ 11(d)), to hiring a sufficient number of poll workers (¶ 11(h)). [Doc. 41, Prayer for Relief].  Specific statutory law makes clear that these obligations rest with the counties and not the state.  See, e.g., O.C.G.A. § 21-2-220.1 (discerning whether voter registration information matches other state information); O.C.G.A. § 21-2-417 (evaluating voter qualifications at the polls); O.C.G.A. §§ 21-2-383 through 21-2-386 (preparing, delivering, and certifying or rejecting absentee ballots); O.C.G.A. §§ 21-2-283, 418, 379.3 (providing provisional ballots and purchase additional DRE machines); O.C.G.A. § 21-2-70(4) (equipping polling places and determining the number of machines to deploy); O.C.G.A. §§ 21-2-261, 21-2-265) (determining the number of precincts and location of polling places); and O.C.G.A. § 21-2-40, 21-2-70 (train and hire poll workers).

It is axiomatic that the more-specific statutes control over Plaintiffs' repeated citations to the Secretary's generalized authority.  See Tug Allie-B, Inc. v.

United States, 273 F.3d 936, 948 (11th Cir. 2001); Nissan N. Am., Inc. v. Walker-Jones Nissan, LLC, 345 Ga. App. 447, 454, 812 S.E.2d 130, 136 (2018), reconsideration denied (Mar. 28, 2018).  For this reason, Plaintiffs' claims involving direct county action must fall under the failure-to-train or failure-to-oversee category, and as shown, those claims must be dismissed.[18]

To the extent that Plaintiffs seek direct relief against the county governments, they must bring them into the lawsuit as complete relief cannot otherwise be afforded.  FED. R. CIV. P. 19(a)(1)(A).  In Focus on the Family, the Eleventh Circuit required a contractually subordinate party to be joined in a First Amendment suit.  344 F.3d 1263.  There, Plaintiffs sought to enjoin a Transit Authority to run certain advertisements on bus stop displays but refused to name the media company that actually placed the advertisements.  Id.  The Court noted that, for First Amendment reasons, the Authority had no power to require the media company to run certain advertisements and therefore the media company needed to be joined.  Id.  Similarly, but due to their limited statutory powers and

---

[18] Plaintiffs' citation to Grizzle v. Kemp does not save them.  634 F.3d 1314 (11th Cir. 2011).  That case asked whether the Secretary had to "accept, and [not] alter, the qualifications of" candidates appearing on the ballot.  634 F.3d at 1319.  The court answered the question in the negative.  This demonstrates why all of Plaintiffs' allegations—except those involving voter machines, voter registration data, and the voter-list-maintenance program—must be failure-to-train claims and fail.  It also stands only for the proposition that the Secretary cannot enforce unconstitutional laws.

not the Constitution, Defendants have only power to enforce promulgated rules or law against the counties, and, with respect to the aforementioned relief, Plaintiffs apparently seek entirely new processes which the Board and Secretary do not have the unilateral authority to require.

In addition, it would be inequitable to issue an order compelling the spending of county resources—local taxpayer dollars—without bringing the counties into the lawsuit.  See Toney v. White, 476 F.2d 203, 207 (5th Cir. 1973) (citing Provident Tradesman Bank & Trust Co. v. Patterson, 390 U.S. 102 (1968)) (Rule 19 determinations "bottomed on equitable principles").[19]  For these reasons, the counties should be deemed necessary parties, or Plaintiffs claims must be limited to a failure-to-train and failure-to-oversee the 2018 election (allegations which fail to state a claim for relief).

## **CONCLUSION**

For the reasons stated above and those stated in Defendants' Renewed Motion to Dismiss Plaintiffs' Complaint, and Brief and Reply in Support Thereof Defendants request that the Amended Complaint be dismissed with prejudice.

---

[19] "Cases decided by the Court of Appeals for the Fifth Circuit before 1981 are binding precedent in the Eleventh Circuit today." Hope v. Pelzer, 536 U.S. 730, 742 (2002) (citing Bonner v. Prichard, 661 F.2d 1206 (11th Cir. 1981)).

## CERTIFICATE OF COMPLIANCE

I certify that this brief has been prepared in a Times New Roman 14-point font, one of the font and point selections approved by the Court in Local Rule 5.1(C).

Respectfully submitted this 6th day of May, 2019.

**State Law Department**
Christopher M. Carr
Attorney General
GA Bar No. 112505
Annette M. Cowart
Deputy Attorney General
GA Bar No. 191199
Russell D. Willard
Senior Assistant Attorney General
GA Bar No. 760280
40 Capitol Square, S.W.
Atlanta, Georgia 30334

**Robbins Ross Alloy Belinfante Littlefield LLC**

*/s/ Josh B. Belinfante*
Josh B. Belinfante
GA Bar No. 047399
jbelinfante@robbinsfirm.com
Vincent R. Russo
GA Bar No. 242648
vrusso@robbinsfirm.com
Brian E. Lake
GA Bar No. 575966
blake@robbinsfirm.com

Carey A. Miller
GA Bar No. 976420
cmiller@robbinsfirm.com
Kimberly K. Anderson
GA Bar No. 602807
kanderson@robbinsfirm.com
500 14th Street NW
Atlanta, GA 30318
Telephone:   (678) 701-9381
Facsimile:    (404) 856-3250

**Taylor English Duma LLP**
Bryan P. Tyson
Special Assistant Attorney General
GA Bar No. 515411
btyson@taylorenglish.com
1600 Parkwood Circle, Suite 200
Atlanta, GA 30339
Telephone: 678.336.7249

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| FAIR FIGHT ACTION, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action File |
| v. | ) | |
| | ) | No. 1:18-cv-05391-SCJ |
| BRAD RAFFENSPERGER, in his | ) | |
| official Capacity as Secretary of State | ) | |
| of Georgia; *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

<u>**CERTIFICATE OF SERVICE**</u>

I HEREBY CERTIFY that I have this date electronically filed the foregoing

**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF THEIR**

**RENEWED MOTION TO DISMISS PLAINTIFFS' AMENDED**

**COMPLAINT** with the Clerk of the Court using the CM/ECF system which will

automatically send email notification of such filing to the attorneys of record listed

on the case.

This 6th day of May, 2019.

<u>*/s/ Josh B. Belinfante*</u>
Josh B. Belinfante
GA Bar No. 047399