## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

FAIR FIGHT ACTION, INC, *et al.*,

     *Plaintiffs*,

     v.

BRAD RAFFENSPERGER, *et al.*,

     *Defendants*.

Civ. Act. No. 18-cv-5391 (SCJ)

## PLAINTIFFS' SUPPLEMENTAL BRIEF OPPOSING
## DEFENDANTS' RENEWED MOTION TO DISMISS

The recent hearing leaves no doubt that Defendants oversee, administer, manage, and control elections in Georgia. Defendants are charged with the duty to enforce the Georgia Election Code, a duty that requires them to ensure that county elections officials do the jobs given them under the Georgia Election Code. In light of Defendants' broad powers, Defendants have failed to carry their burden of proving that elections officials from Georgia's 159 counties are necessary parties for this Court to accord the statewide relief Plaintiffs are requesting.

Defendants have likewise failed to carry their heavy burden of proving this case is moot. Defendants outright concede that H.B. 316, 236 Gen. Assemb., Reg. Sess. (Ga. 2019) ("HB 316") has no effect on broad swaths of Plaintiffs' allegations. The rule is simple: a "court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved

consistent with the allegations." *Palm Beach Golf Ctr.-Boca, Inc. v. John G. Sarris, D.D.S., P.A.*, 781 F.3d 1245, 1260 (11th Cir. 2015) (internal quotation marks and citations omitted).

Defendants' other contentions—including that Defendants did not fail in their duties to train—are factual in nature and not appropriate for adjudication on a motion to dismiss.

Because the correct parties to a live controversy are before this Court and Plaintiffs have sufficiently pleaded their claims, the Court should deny in its entirety Defendants' Renewed Motion to Dismiss.

## I.    THE CORRECT PARTIES ARE BEFORE THIS COURT.

Elections officials from Georgia's 159 counties are not necessary parties because Defendants, who are charged with enforcing the Georgia Election Code and with overseeing, managing, controlling, and administering Georgia's elections statewide, can provide the relief requested by Plaintiffs. A court should order absent parties added only if they are "required." Fed. R. Civ. P. 19. Under Federal Rule of Civil Procedure 19(a)(1)(A), a party is required only when "in that person's absence, the court *cannot* accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A) (emphasis added).[1]

---

[1] A separate provision of the rule, Rule 19(a)(1)(B), provides that an absent party should be joined when "that person claims an interest relating to the subject of the action . . ." Here, the absent parties (county elections officials) have not asserted

Defendants argue joinder of local elections officials is necessary because Defendants do not control, oversee, manage, or administer Georgia's elections. Defendants essentially argue that because the Georgia Election Code assigns certain duties to county elections officials, those officials have complete autonomy and are not answerable to Defendants for whether and how they perform those duties. (Def. Br. in Supp. of Their Renewed Mot. to Dismiss Pl. Am. Compl. (Mar. 3, 2019), ECF No. 48-1 at 13, 15.) Defendants cite no statutory provisions, caselaw, or other authority to support these blanket statements. In contrast, Plaintiffs have cited the Georgia Election Code,[2] caselaw from the United States Court of Appeals for the Eleventh Circuit and this Court,[3] an opinion from

---

they are necessary parties, and Defendants do not and cannot make that argument on their behalf. *See State Farm Mut. Auto. Ins. Co. v. Performance Orthopaedics & Neurosurgery, LLC*, 278 F. Supp. 3d 1307, 1332 (S.D. Fla. 2017) ("Defendants cannot invoke the necessary party rule set forth in Rule 19(a)(1)(B)") (citing C*onnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 683 (2d Cir. 1996) (rejecting Defendant's "self-serving attempts to assert interests on behalf of" absent party)).

[2] *E.g.*, O.C.G.A. § 21-2-31(1) and (2) (requiring Defendants to ensure uniformity in the actions of county elections officials and giving them the enforcement and rule-making powers to do so).

[3] *Grizzle v Kemp*, 634 F.3d 1314 (11th Cir. 2011); *see also Common Cause Ga. v. Kemp*, 347 F. Supp. 3d 1270, 1291 (N.D. Ga. 2018) (the Secretary of State is charged with enforcing the election laws); *Democratic Party of Ga. v. Crittenden*, 347 F. Supp. 3d 1324, 1338 n.2 (N.D. Ga. 2018) (same); *Georgia Coal. for the People's Agenda v. Kemp*, 347 F. Supp. 3d 1251 (N.D. Ga. 2018) (the Secretary of State maintains that it administers and supervises elections).

Georgia's Attorney General,[4] and statements from the Secretary of State himself[5] to demonstrate that Defendants are wrong.

Showing just how subject even the most local of elections officials are to Defendants' authority, the Eleventh Circuit, in *Grizzle*, 634 F.3d 1314, held that the Secretary of State was a proper party in a case challenging Georgia Election Code provisions that precluded certain people from serving as members of local school boards. *Id.* at 1318. The Eleventh Circuit stated:

> Although the Secretary of State cannot directly qualify or challenge candidates for local boards of education or certify the results of those elections, as a member and the chairperson of the State Election Board, *he has both the power and the duty to ensure that the entities charged with those responsibilities comply with Georgia's election code in carrying out those tasks.*

[4] Ga. Att'y Gen., Official Opinion 2005-3 Letter (Apr. 15, 2005) (the Secretary of State manages the state's electoral system), *available in* Pl. Notebook for Mot. to Dismiss Hr'g (Apr. 29, 2019) ("Pl. Notebook") at Tab 22. Attorney General opinions are persuasive authority. *See, e.g.*, *Harris Cty. Comm'rs Ct. v. Moore*, 420 U.S. 77, 87 n.10 (explaining Attorney General opinions are entitled to careful consideration by courts and generally regarded as highly persuasive); *Kenny A ex rel Winn v. Perdue*, 356 F. Supp. 2d 1353, 1358 (N.D. Ga. 2005) (citing *Campbell v Poythress*, 456 S.E. 2d 110, 111, 216 Ga. App. 834, 835 (Ga. Ct. App. 1995).
[5] Ga. Sec'y of State, *Elections*, http://sos.ga.gov/index.php/elections (last visited May 6, 2019) (the Secretary of State oversees all elections in Georgia) *available in* Pl. Notebook at Tab 24, pp. 33–34. This Court can take judicial notice of the Defendants' websites because they are not capable of reasonable dispute. *See Common Cause Ga.*, 347 F. Supp. 3d at 1297 (taking judicial notice that websites hosted by the Secretary of State and county did not post the required free access hotline number); *Haynes v. McCalla Raymer, LLC*, No. 1:11-CV-3149-TWT, 2013 WL 2452241, at *3 n.1 (N.D. Ga. June 5, 2013) (denying Defendant's motion to dismiss and taking judicial notice of statements on Defendant's website because they were not capable of reasonable dispute).

*Id.* at 1319 (emphasis added). In other words, local elections officials do not have autonomy because Defendants here have not just the power, but also the duty, to ensure that those officials comply with Georgia's Election Code in carrying out their tasks. Indeed, the named Defendants are the only elections officials who can ensure uniformity in elections statewide. O.C.G.A. § 21-2-31(1).

Consistent with *Grizzle*, Northern District of Georgia judges have repeatedly ordered the Secretary of State to instruct and direct county elections officials on a wide variety of actions Defendants incorrectly assert are within the exclusive province of local officials. *See, e.g.*, *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1341 (N.D. Ga. 2018) (ordering the Secretary of State to issue "instructions to all county boards of registrars, boards of elections, election superintendents, and absentee clerks" with respect to acceptance of certain absentee ballot applications and ballots); *see also* Temporary Restraining Order, *Martin v. Kemp*, No. 1:18-CV-4789-LMM (N.D. Ga. Oct. 25, 2018), ECF No. 32; *Georgia Coal. for People's Agenda, Inc.*, 347 F. Supp. 3d at 1270 (enjoining the Secretary of State to "[d]irect all county registrars, deputy registrars, and poll managers on how to verify proof of citizenship" and "[d]irect the county boards of elections to post a list of acceptable documentation to prove citizenship"); *Common Cause Ga.*, 347 F. Supp. 3d at 1300 (ordering "the Secretary of State to direct each of the 159 county election superintendents to . . . publicize the availability of the hotline or secure website on

5

the county and county election websites" and "direct the county election superintendents" to review certain provisional ballots or engage in an independent review).

Further refuting Defendants' argument that they lack the power to tell county elections officials what to do, Defendants have brought enforcement actions against counties that failed to comply with Georgia's Election Code and State Election Board regulations. For example, the State Election Board, which the Secretary of State chairs, entered into a Consent Agreement with Fulton County based on "issues that arose in Fulton County during the general election and general election runoff of 2008 as well as the primary and general election of 2012." *In re Fulton Cty. Bd. of Registration and Elections*, Consent Order, SEB Cases 2008-000084, 2008-000104, 2008-000134, 2012-000056, 2012-000156 (June 22, 2015), at 1–2 (Ex. A). The State Election Board has also enforced compliance for, *inter alia*, "fail[ing] to adequately train some poll workers in provisional ballot procedures" in violation of O.C.G.A. §§ 21-2-70(8), -419, and Ga. R. & Reg. 183-1-12-.06(13)(a), *id.* at 4; "fail[ing] to offer provisional ballots to at least five electors due to an apparent shortage of available provisional ballots" in violation of O.C.G.A. § 21-2-418, *id.* at 5; failing to interlock DRE machines "with a chain or cable, in violation of O.C.G.A. § 21-2-369.9," *id.* at 2; assigning voters to incorrect precincts in violation of O.C.G.A. §§ 21-2-70, -226, *id.* at 3; and

6

failing to provide an absentee ballot to one voter in violation of O.C.G.A. § 21-2-384, *id*. Using its enforcement power, the State Election Board also ordered the Fulton County Board of Registration and Elections to, *inter alia*, establish additional advance voting locations, improve the training of its poll workers, and evaluate its policies, procedures, and systems "to facilitate the efficient and accurate administration of voter registration and election activities[.]" *Id.* at 9. These enforcement proceedings demonstrate that, directly contrary to Defendants' arguments, Defendants have the power to oversee, direct, manage and control county elections officials in carrying out even their most basic local functions.[6]

Precedent demonstrates that local elections officials are not necessary parties when the named defendants are state elections officials with the power to direct localities or counties.[7] Local officials are especially unnecessary when, as here,

_____

[6] The Amended Complaint alleges that the "Secretary of State takes an active role in how counties conduct elections," including by recommending polling place consultants to counties, encouraging polling place consolidation, and outlining why polling place closures were appropriate. (Am. Compl. (Feb. 19, 2019), ECF No. 41, ¶¶ 60,108.)

[7] *See, e.g.*, *Harman v. Forssenius*, 380 U.S. 528, 537 n.14 (1965) (in lawsuit challenging Virginia's voting requirements local registrars were not indispensable parties "given the State Board of Elections' power to supervise and to insure 'legality' in the election process"); *League of Women Voters of Ohio v. Blackwell*, 432 F. Supp. 2d 723, 733 (N.D. Ohio 2005), *aff'd in part, rev'd in part sub nom. League of Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008) (since plaintiffs "seek a state-level remedy for alleged state-wide constitutional wrongs," the "presence or absence of the local [Boards of Election] has no bearing on whether complete relief can be granted."); *State Comm. of Indep. Party v. Berman*, 294 F. Supp. 2d 518, 520 (S.D.N.Y. 2003) (county boards of elections not

plaintiffs seek a statewide remedy for statewide harms.[8] Defendants have the power to provide the relief Plaintiffs have requested. And should it turn out, as Defendants argue, that certain items of relief requested by Plaintiffs are not within Defendants' powers to provide, the relief can be shaped accordingly once Plaintiffs have the benefit of discovery and this Court has the benefit of evidence.

## II.   THIS LITIGATION IS NOT MOOT.

Both sides agree that, at a minimum, the bulk of the Amended Complaint remains live. (*See, e.g.*, Tr. 24:18–25.) "Generally, a case becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Cook v. Bennett*, 792 F.3d 1294, 1299 (11th Cir. 2015) (internal quotation marks and citation omitted). Defendants do not argue that this exacting standard is satisfied here.

### A.   *Defendants bear the heavy burden to show the litigation is moot.*

The defendant, not the plaintiff, bears the "heavy" burden of proving mootness. *See Ouachita Watch League v. Jacobs*, 463 F.3d 1163, 1175 (11th Cir.

---

necessary parties where defendant State Board of Elections had the power and responsibility to oversee the county boards).

[8] As the Court recognized, even if county elections officials are necessary parties (they are not), it is feasible to join them. (*See* Mot. Hr'g Tr. (Apr. 29, 2019) ("Tr.") at 57:1–15.) Joinder would not destroy jurisdiction because the Court has federal question jurisdiction over this case. *See Focus on the Family v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1280 (11th Cir. 2003). Additionally, the Court has personal jurisdiction over all Georgia residents under Federal Rule of Civil Procedure 4(k)(1)(A), and they are subject to service of process in the state.

2006) ("Since the tie goes to the runner in the mootness inquiry and we cannot ascertain whether the provisions have any effect, we must conclude that the Forest Service has failed to carry its heavy burden to establish that Ouachita's claims are moot."); *see also Bennett v. Jefferson County, Ala.*, 899 F.3d 1240, 1245 (11th Cir. 2018) ("[T]he party who alleges that a controversy before us has become moot has the 'heavy burden' of establishing that we lack jurisdiction'") (quoting *Michigan v. Long*, 463 U.S. 1032, 1042 n.8 (1983)). The degree of proof needed to assess a court's jurisdiction changes depending on the stage of litigation. Even in assessing standing, in which the plaintiff bears the burden of proof, the Supreme Court has held that justiciability must be proved only "with the manner and degree of evidence required at the successive stages of litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992). Thus, in assessing justiciability at the motion to dismiss stage, plaintiffs' allegations must be "taken to be true." *See id.*

To assess mootness, the Court must assume that a plaintiff's claim is meritorious and restrict its analysis to whether, using that assumption, the new legislation eliminates the plaintiff's alleged harm. *See, e.g.*, *Bennett*, 899 F.3d 1240; *Johnson v. Turpin*, No. 94-9420-AA, 2001 WL 520804, at *1 (11th Cir. Apr. 11, 2001) (accepting plaintiff's allegations as true in mootness inquiry). In *Bennett*, the Eleventh Circuit rejected the defendant's mootness challenge because it was based on the court not having the legal authority to issue the requested relief. The

Eleventh Circuit observed that this challenge "confuse[d] mootness with the merits." 899 F.3d at 1246.

As discussed at oral argument, *Coalition for the Abolition of Marijuana Prohibition (CAMP) v. City of Atlanta*, 219 F.3d 1301 (11th Cir. 2000), sets out the proper framework for assessing mootness in the context of the kind of new legislation presented here. In *CAMP*, the Eleventh Circuit explained that "to determine whether the controversy presented on appeal is moot, we must 'stop, look, and listen' to determine the impact of the changes in the law.'" *Id.* at 1310 (quoting *Naturist Soc'y, Inc. v. Fillyaw*, 958 F.2d 1515, 1520 (11th Cir. 1992)); *see also Northeastern Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656 (1993). The Court therefore scrutinized the new legislation to determine whether it eliminated all of the harm the plaintiff had asserted with respect to the prior legislation. *Id.* at 1315.

*Coral Springs Street Systems, Inc. v. City of Sunrise* is in accord with *CAMP's* holding in saying: "[W]hen an ordinance is repealed by the enactment of a superseding statute, then the 'superseding statute or regulation moots a case only to the extent that it removes challenged features of the prior law.'" 371 F.3d 1320, 1329 (11th Cir. 2004) (quoting *CAMP*, 219 F.3d at 1310). The case, however, is inapplicable insofar as it goes on to reject the assertion that the defendant city might reenact the offending ordinance. *Id.* Here, Plaintiffs do not assert that

unconstitutional laws might be reenacted; rather, Plaintiffs assert that implementation of HB 316 and H.B. 392, 236 Gen. Assemb., Reg. Sess. (Ga. 2019) ("HB 392") will not eliminate the harms pleaded.[9]

B.   *HB 316 and 392 do not eliminate the alleged harms.*

Applying the *CAMP* "stop, look, and listen" analysis to HB 316 and 392 demonstrates that the new legislation is not the comprehensive reform Defendants claim. Nor do the new legislation's marginal changes eliminate the harms about which Plaintiffs complain. *See* Pl. Demonstrative Analysis of HB 316's Effect on Am. Compl. *available in* Pl. Notebook at Tab 23.

As a threshold matter, most of Plaintiffs' allegations relate to the repeated failures of the Secretary of State and the Board (through its members) to enforce the Georgia Election Code against local elections officials and to carry out the Code's mandate to make Georgia's elections uniform and fair. Because these allegations are not that the Georgia Election Code is deficient but rather pertain to Defendants' failure to follow the Georgia Election Code, amending the Georgia Election Code does not eliminate the harms about which Plaintiffs complain.

For Plaintiffs' claims asserting that a Georgia Election Code provision (specifically, the "purge" statute regarding registered voters) or a Secretary of State

---

[9] *United States v. Georgia*, 778 F.3d 1202, 1204 (11th Cir. 2015), is distinguishable on the same basis and for the reason stated *infra* at 12–13.

policy (specifically, the "exact match" policy) is unconstitutional or otherwise unlawful, neither HB 316 nor 392 remedies the harm alleged because the amendments do not address those harms. *See* Pl. Demonstrative Analysis of HB 316's Effect on Am. Compl., 2–10, *available in* Pl. Notebook at Tab 23.

And, with respect to Plaintiffs' claims about Defendants' insecure and unreliable DRE voting machines, those claims are not moot because the DRE machines will remain in use through at least the next election and potentially longer, pending contingencies like the ongoing RFP process and the need for federal certification of the machines ultimately acquired.[10] Similarly, HB 392, which requires the Secretary of State to promulgate rules regarding security protocols for voter registration information, is contingent upon promulgation of a regulation consistent with industry standards that effectively eliminates the ongoing harms of the insecure voter registration list. If this fails to occur, the Secretary of State has no obligation to implement new rules addressing security and voter registration.

Because the new provisions will not be implemented before the next election, *United States v. Georgia*, 778 F.3d at 1204, is inapposite. There, the

---

[10] Defendants also argue that claims relating to the new voting machines are not ripe. (Tr. 28:10-14.) This eviscerates their mootness argument by acknowledging the new machines are subject to many contingencies. So, the court should focus on what is in place for the next election: the insecure and unreliable DRE machines.

legislature repealed the offending provision in its entirety, replacing it with a provision that would be in place for the next election and would unquestionably eliminate the plaintiff's asserted harm. *Id.* Here, in contrast, the Eleventh Circuit's statement in *Fanin v. United States Department of Veteran Affairs*, 572 F.3d 868, 876 (11th Cir. 2009), applies: "Almost moot is not actually moot."

Furthermore, Defendants' mootness argument rests on the notion that even were the new voting machines and security measures in place for the next election, they would eliminate the harms Plaintiffs allege, such as lack of security, paper ballots and an audit trail. Defendants' argument not only raises disputed factual issues that are inappropriate to decide at the motion to dismiss stage, but also improperly confuses mootness with the merits.[11]

## III.   PLAINTIFFS SEEK PROSPECTIVE RELIEF FOR SYSTEMIC HARMS INFLICTED BY THE DEFENDANTS.

Defendants spent significant time at oral argument suggesting that Plaintiffs are not entitled to prospective relief because the Amended Complaint challenges only the administration of the 2018 election. (Tr. 22:18–20, 33:5–7.) Defendants are wrong. The Amended Complaint details the decades-long pervasive and systemic unconstitutionality of Georgia's elections system. (Am. Compl. ¶¶ 39, 45, 47, 78, 95, 108–09, 215–24, 227.) Even Defendants' counsel acknowledged at the

---

[11] As this Court observed at the hearing, these issues will likely be the subject of extensive expert testimony. (Tr. 49:5–11.)

hearing that "Georgia does not have the best history in terms of voting rights and so on." (Tr. 33:5–7.)

That Plaintiffs' Amended Complaint cites many instances of misconduct during the 2018 election cycle does not mean that Plaintiffs' case is based only on the 2018 election. As the Eleventh Circuit recognized in *Curling v. Worley*, No. 18-13951, --- F. App'x ---, 2019 WL 480034 (11th Cir. Feb. 7, 2019), "Plaintiffs use these allegations only to show that past is prologue to their future injuries caused by the same election system." *Id.* at *4 (citing *Lynch v. Baxley*, 744 F.2d 1452, 1456 (11th Cir. 1984) ("Past wrongs do constitute evidence bearing on whether there is a real and immediate threat of repeated injury which could be averted by the issuing of an injunction.")).

Defendants also argue the new legislation rewrites the Georgia Election Code so profoundly that Plaintiffs can no longer seek prospective relief.  (Tr. 7:16–21, 12:6–14.) Defendants' assertion relies on two false premises: (1) that HB 316 and 392 constitute a sweeping change to the Georgia Election Code; and (2) that Plaintiffs' allegations rest solely on Georgia Election Code provisions that have now been changed. As described above, the new legislation changes very little of the Georgia Election Code. And, in any event, Plaintiffs' claims, with the exception of Plaintiffs' challenge to the "purge" statute, are not challenges to the Georgia Election Code; rather, they are based on Defendants' failure to follow and

14

enforce the Georgia Election Code and on Defendants' creation and enforcement of the "exact match" policy. The new legislation provides no relief from those harms. Therefore, Plaintiffs still require prospective relief to ensure future elections in Georgia are conducted constitutionally.[12]

## IV.   PLAINTIFFS ADEQUATELY PLEAD CLAIMS UNDER A FAILURE-TO-TRAIN THEORY.

Failure-to-train claims are "fact-intensive inquir[ies]." *Paul v. City of N.Y.*, No. 16-CV-1952 (VSB), 2017 WL 4271648, at *6 (S.D.N.Y. Sept. 25, 2017) (citing *Cash v. Cty. of Erie*, 654 F.3d 324, 334 (2d Cir. 2011) ("deliberate indifference . . . necessarily depends on a careful assessment of the facts at issue in a particular case")). "It is unlikely that a plaintiff would have information about the [Defendant's] training programs or about the cause of the misconduct at the

---

[12] Defendants also asserted for the first time at the hearing that states have "special sovereignty interests" in their elections system that prohibit injunctive relief "directing the precise way in which Georgia should conduct voting." (Tr. 12:15–22 (quoting *Curling*, 2019 WL 480034, at *5)). But as the Eleventh Circuit also explained in *Curling*, those interests are not implicated when elections officials are accused of carrying out unconstitutional elections: "[u]ndoubtedly, *Ex parte Young* suits are permitted when the plaintiff alleges that state election officials are conducting elections in a manner that does not comport with the Constitution." *Curling*, 2019 WL 480034, at *5 (citing *Grizzle*, 634 F.3d at 1316). The Eleventh Circuit went on to explain that the suit was proper because plaintiffs sought "only injunctive and declaratory relief against a system that they decr[ied] as unconstitutionally unsecure." *Id.* As in *Curling*, Plaintiffs here seek injunctive relief against an unconstitutional system, and the relief will be tailored to the scope of the Defendants' authority once Plaintiffs have the benefit of discovery and this Court has the benefit of evidence.

pleading stage, and therefore [Plaintiffs] need only plead that the [Defendant's] failure to train caused the constitutional violation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004). Plaintiffs here have done so. (Am. Compl. ¶¶ 139, 155–56.)

Plaintiffs' allegations related to Defendants' failure to train are sufficient at this stage of the litigation because they give Defendants notice of the claims and grounds on which they are based. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Complaint notifies Defendants that Plaintiffs' deliberate indifference allegations are based on Georgia's "history of neglecting its elections infrastructure and suppressing votes" (Am. Compl. ¶ 39) and a "pattern of tortious conduct by inadequately trained [poll workers and county elections officials]" as opposed to a "one-time negligent administration of [a training] program." *See Board of the Cty. Comm'rs v. Brown*, 520 U.S. 397, 407–08 (1997).

Plaintiffs further allege Defendants have duties to train that Defendants fail to carry out at two levels: Defendants fail to properly train county elections officials and that Defendants fail to ensure that county elections officials are carrying out their statutory obligation to train poll workers. (Am. Compl. ¶¶ 139, 155.) These allegations are based on statutory duties Defendants themselves have, not on a *respondeat superior* theory. Because Defendants have statutory duties and authorities to train, oversee, investigate, and bring enforcement actions against

counties and their elections officials, Defendants are subject to suit under 42 U.S.C. § 1983 for constitutional deprivations caused by failing to exercise these duties. *See* O.C.G.A. § 21-2-31(1), (2), (5), (10); O.C.G.A. § 21-2-50(a)(11); *see also* (Am. Compl. ¶¶ 53–67.).

While Defendants argue that the link between Defendants' failure to train and the alleged constitutional harm (e.g., preventing voters from casting a vote or having their ballots counted) is too attenuated, *Georgia Coalition for People's Agenda, Inc.*, 347 F. Supp. 3d at 1263, shows the opposite. There, Judge Ross identified the Secretary of State's bulletin for county elections officials and Georgia Poll Worker Manual[13] as "indicat[ing] a lack of training to poll workers" and tied that lack of training to the alleged deprivation of constitutional rights: "[T]here has been a lack of training of election officials for verifying citizenship at the polls, all of which could lead to these individuals not being able to cast a vote in the upcoming election." *Id.* at 1268. Plaintiffs allege this same link between the

---

[13] Defendants' counsel stated that the Secretary of State can "go on his volition and have information available for poll workers," but "that's not a basis of liability" because "that's something they're going ahead and doing on their own that they're not required to do." (Tr. 82:3–6.) This argument is incorrect. When the Secretary of State takes it upon himself to train poll workers, he must ensure that training is appropriate and accurate given his overarching responsibility to ensure fair and legal elections. Defendants have a legal obligation to ensure that county elections officials and poll workers are adequately trained, and inadequate training is a basis for liability. *City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

Secretary of State and training deficiencies. (Am. Compl. ¶¶ 49–50, 57, 65, 131, 134–36, 142–43.)

Plaintiffs' allegations are similar to those found sufficient in *League of Women Voters*, 432 F. Supp. 2d 723, where the court denied defendants' motion to dismiss in Ohio, a state in which the top-down statutory scheme for elections is similar to Georgia's. There, the court held that plaintiffs sufficiently pleaded a failure-to-train claim where they alleged that the defendants, the Secretary of State and Governor of Ohio, acted with "deliberate indifference" to voters' constitutional rights shown by a "history of election problems in Ohio that should have put defendants on notice of the need for better training," "election problems stem[ming] from a statewide failure to ensure adequately trained poll workers," and "problems with provisional balloting" that "occurred on a broad basis." *Id.* at 729–30. Plaintiffs likewise plead that Defendants acted with "deliberate indifference," (Am. Compl. ¶¶ 139, 155), shown by: Georgia's history, (*id.* ¶ 39), Defendants' knowledge "that the 2018 Election would have particularly high turnout," (*id.* ¶ 155), and Defendants' failure to "train county elections officials adequately on the use of" provisional and absentee ballots "despite knowing that this training is necessary." (*Id.* ¶¶ 139, 155.) As in *League of Women Voters*, Plaintiffs have met their pleading burden for a failure-to-train claim.

18

**CONCLUSION**

For the foregoing reasons, this Court should dismiss Defendants' motion and allow this matter to proceed promptly with discovery.

Respectfully submitted this the 6th day of May, 2019.

## CERTIFICATION

I certify that this brief has been prepared in a Times New Roman 14-point font, one of the font and point selections that this Court has approved. *See* LR 5.1(C)(3).

/s/Allegra J. Lawrence
Allegra J. Lawrence (GA Bar No. 439797)
Leslie J. Bryan (GA Bar No. 091175)
Maia Cogen (GA Bar No. 832438)
**LAWRENCE & BUNDY LLC**
1180 West Peachtree Street
Suite 1650
Atlanta, GA 30309
Telephone: (404) 400-3350
Fax: (404) 609-2504
allegra.lawrence-hardy@lawrencebundy.com
leslie.bryan@lawrencebundy.com
maia.cogen@lawrencebundy.com

Thomas R. Bundy (Admitted *pro hac vice*)
**LAWRENCE & BUNDY LLC**
8115 Maple Lawn Boulevard
Suite 350
Fulton, MD 20789
Telephone: 240-786-4998
Fax: (240) 786-4501
thomas.bundy@lawrencebundy.com

i

Dara Lindenbaum (Admitted *pro hac vice*)
**SANDLER REIFF LAMB ROSENSTEIN &
BIRKENSTOCK, P.C.**
1090 Vermont Avenue, NW
Suite 750
Washington, DC 20005
Telephone: (202) 479-1111
lindenbaum@sandlerreiff.com

Elizabeth Tanis (GA Bar No. 697415)
John Chandler (GA Bar No. 120600)
957 Springdale Road, NE
Atlanta, GA 30306
Telephone: (404) 771-2275
beth.tanis@gmail.com
jachandler@gmail.com

Kurt G. Kastorf (GA Bar No. 315315)
**THE SUMMERVILLE FIRM, LLC**
1226 Ponce de Leon Avenue, NE
Atlanta, GA 30306
Telephone: (770) 635-0030
kurt@summervillefirm.com

Matthew G. Kaiser (Admitted *pro hac vice*)
Sarah R. Fink (Admitted *pro hac vice*)
Scott S. Bernstein (Admitted *pro hac vice*)
**KAISERDILLON PLLC**
1099 Fourteenth Street, NW
Eighth Floor West
Washington, DC 20005
Telephone: (202) 640-2850
Fax: (202) 280-1034
mkaiser@kaiserdillon.com
sfink@kaiserdillon.com
sbernstein@kaiserdillon.com

Andrew D. Herman (Admitted *pro hac vice*)
Sarah Dowd (Admitted *pro hac vice*)
**MILLER & CHEVALIER CHARTERED**
900 Sixteenth Street, NW
Washington, DC 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
aherman@milchev.com
sdowd@milchev.com

Kali Bracey (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Fax: (202) 639-6066
kbracey@jenner.com

Jeremy H. Ershow (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 891-1600
Fax: (212) 891-1699
jershow@jenner.com

*Counsel for Fair Fight Action, Inc.; Care in
Action, Inc.; Ebenezer Baptist Church of Atlanta,
Georgia, Inc.; Baconton Missionary Baptist
Church, Inc.; Virginia-Highland Church, Inc.; and
The Sixth Episcopal District, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 6th day of May, 2019, I electronically filed the

foregoing PLAINTIFFS' SUPPLEMENTAL BRIEF OPPOSING DEFENDANTS'

RENEWED MOTION TO DISMISS with the Clerk of Court using the CM/ECF

system, which will automatically send notification of such filing upon Counsel of

Record:

**Chris Carr**
Attorney General
**Dennis Dunn**
Deputy Attorney General
**Russell Willard**
Senior Assistant Attorney General
**Georgia Office of the Attorney General**
40 Capitol Square
Atlanta, GA 30334
Email: ccarr@law.ga.gov
Email: ddunn@law.ga.gov
Email: rwillard@law.ga.gov

**Brian Edward Lake**
Robbins Ross Alloy Belinfante Littlefield, LLC -Atl
500 Fourteenth Street, NW
Atlanta, GA 30318
678-701-9381
Fax: 404-856-3250
Email: blake@robbinsfirm.com

**Bryan P. Tyson**
Special Assistant Attorney General
Taylor English Duma LLP
1600 Parkwood Circle
Suite 200
Atlanta, GA 30339

Telephone: (678) 336-7249
Email: btyson@taylorenglish.com

**Carey Allen Miller**
Robbins Ross Alloy Belinfante Littlefield, LLC
500 Fourteenth Street, NW
Atlanta, GA 30318
678-701-9381
Fax: 404-856-3250
Email: cmiller@robbinsfirm.com

**Joshua Barrett Belinfante**
Robbins Ross Alloy Belinfante Littlefield, LLC -Atl
500 Fourteenth Street, NW
Atlanta, GA 30318
678-701-9381
Fax: 404-856-3250
Email: jbelinfante@robbinsfirm.com

**Vincent Robert Russo, Jr.**
Robbins Ross Alloy Belinfante Littlefield, LLC -Atl
500 Fourteenth Street, NW
Atlanta, GA 30318
404-856-3260
Fax: 404-856-3250
Email: vrusso@robbinsfirm.com

*/s/Allegra J. Lawrence*
Allegra J. Lawrence
Georgia Bar No. 439797