## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| FAIR FIGHT ACTION, *et al.*,<br><br>    Plaintiffs<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official Capacity as Secretary of State of Georgia; *et al.*,<br><br>    Defendants. | Civil Action File<br><br>No. 1:18-cv-05391-SCJ |

## ORDER GOVERNING DISCOVERY OF HARD COPY
## AND ELECTRONICALLY STORED INFORMATION

The parties having jointly requested the entry of an Order governing

Discovery of Hard Copy and Electronically Stored Information, and for good cause

shown, it is hereby ORDERED as follows:

**A.     Definitions**

1.     "Document" means all hardcopy documents or electronically stored
       information ("ESI") existing in any medium from which information
       can be obtained or translated into reasonably usable form.

2.     "Electronically stored information" or "ESI" means computer-
       generated information or data of any kind, stored in or on any storage
       media located on computers, file servers, disks, tape, or other real or
       virtualized devices or media.

3.     "Native File(s)" means ESI in the file type for the application in

which such ESI is normally created, viewed, and/or modified.

4.      "Metadata" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted, or otherwise manipulated by a user of such system.

5.      "Load file" means a set of hardcopy images or electronically processed files and indicates where individual pages or files belong together as documents, including attachments, and where each document begins and ends.  A Load/Unitization file will also contain data relevant to the individual documents, such as agreed-upon Metadata, coded data, and OCR or Extracted Text.

6.      "OCR" means the optical character recognition file, which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

7.      "Extracted Text" means the text extracted from a Native File and includes all header, footer, and document body information.

**B.      ESI Production**

Electronic data produced by either of the parties should be provided in the following format:

1.      TIFFs.  Single-page 300 dpi CCITT Group IV black and white TIFFs should be provided, with page breaks at document end.

Conversion of PowerPoint documents.  When PowerPoint documents are converted to TIFFs, the version that will be converted will show the speaker notes, to the extent that they exist.

2

Conversion of Word documents.  When Word documents are converted to TIFFs, the version that will be converted is as it was last saved.

The parties shall produce documents in way that does not require a person reviewing the documents on a document-review platform (e.g., Relativity or eDiscovery Point) to open separate Tiff image files to view all pages within a document.

2.      Color.  The parties will accommodate reasonable requests for production of specific images in color.  However, for any document that will lose meaning or will be illegible if produced in black and white, parties agree to produce those documents in color.  ESI produced in color will be produced in .jpg format.

3.      Database Load Files/Cross-Reference Files.  Documents should be provided with (1) a Relativity delimited file (.DAT) and (2) an Opticon (.OPT) delimited file.

Example of Relativity Delimited File:

þBegDoc þ¶þEndDocþ¶þAttachRangeþ¶þCustodianþ¶

The objective coding and/or electronic file metadata should be provided in the following format:

a)      Fields should be delimited by the default Relativity field delimiter for ANSI character 20 (¶)
b)      String values within the fields file should be enclosed with a text delimiter for ANSI character 254 (þ)
c)      The first line should contain objective coding and/or electronic file metadata headers and below the first line there should be exactly one line for each document
d)      Each row of objective coding and/or electronic file metadata must contain the same number of fields as the header row
e)      Each return and new line in full text fields shall be marked by the Relativity default delimiter of ANSI character 174 (®)
f)      Multi-values should be separated by a semicolon (;)

3

<u>Example of Opticon Delimited File:</u>

ABC0000001,ABC001,D:\IMAGES\001\ABC0000001.TIFF,Y,,,3
ABC0000002,ABC001,D:\IMAGES\001\ABC0000002.TIFF,,,,,
ABC0000003,ABC001,D:\IMAGES\001\ABC0000003.TIFF,,,,,
ABC0000004,ABC001,D:\IMAGES\001\ABC0000004,TIFF,Y,,,2
ABC0000005,ABC001,D:\IMAGES\001\ABC0000005,TIFF,,,,,

4.  Text Files.  For each document, a document-level text file should be provided in addition to the TIFFs.  The text of native files should be extracted directly from the native file and each text file will be named using its corresponding image files (<u>e.g.</u>, ABC0000001.TXT).  Parties will produce OCR for those documents produced for which text cannot be extracted

5.  Redactions.  With respect to documents containing redacted text, no text will be provided for the redacted portion.  The metadata fields listed in Table A (attached to this document) will be provided to the extent they exist and do not also need to be redacted.

    OCR will be produced for the un-redacted portions of those documents that are produced.

6.  Unique IDs.  Each image should have a unique file name which will be the Bates number of that page.  The Bates number must appear on the face of the image in the lower right corner (<u>e.g.</u>, ABC0000001).

7.  Unique Documents.  The parties agree to de-duplicate documents using a verifiable process in an effort to ensure that only one unique copy of a document is produced.  Near-duplicate documents shall be produced.

    The identity of all custodians of a document that has been de-duplicated out of the production set will be listed in the "Custodian" field in the Relativity delimited file.  Multiple custodians in the Custodian field will be separated with a semicolon.

The parties agree that even though a document may have been exchanged between counsel prior to the commencement of the litigation, the parties will re-produce any such documents in the course of discovery in the litigation.

8. De-NIST.  To reduce the number of irrelevant files in their respective data collections, each party may remove files from the document set to the extent those files have hash values that match those file hashes appearing on the National Software Reference Library list, maintained by the National Institute of Standards and Technology.  This process is commonly referred to as "deNISTing."  Each party agrees that, to the extent that it does deNIST its data, it will do so using a verifiable process and may do so before any data reaches the review stage.

9. Metadata Fields.  The metadata fields listed in Table A attached to this document will be provided if they exist.

10. Native Format.  The parties have agreed that the following documents will be produced in native format:  Excel spreadsheets, emails, and Microsoft Project files.

The parties reserve their rights to seek additional electronic documents in their native format.  Producing documents in native format does not excuse either party from producing extracted text and metadata for that file.

Native Files will be produced with a placeholder TIFF image.  Each TIFF placeholder will contain the endorsed bates number and endorsed confidentiality designation.  A native file path link will be provided in the Relativity delimited file (.DAT).

Conversion of Excel documents to TIFF for redactions: When Excel files are converted to TIFFs, any hidden Rows, Cells or Columns will be unhidden in the version that will be converted.  Excel documents may also be redacted and produced with redactions in their native format.

11. Databases.  Certain types of databases are dynamic in nature and will

often contain information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Thus, a party may opt to produce relevant and responsive information from databases in an alternate form, such as a report or data table.  These reports or data tables will be produced in a static image format.  To the extent that relevant and responsive reports or data tables derived from a database were also maintained in static form (e.g., as a PDF attachment or a hard copy in a file), those documents will be produced as static images consistent with the specifications for production of paper.

12.   Non-Convertible Files:  Certain types of files such as system, program, video and sound files may not be amenable to conversion into anything meaningful in TIFF format.  Responsive, non-convertible files will be produced in the form of a placeholder TIFF image.  Some examples of file types that may not convert include file types with the following extensions: *.exp *.ilk *.res *.trg *.tlh *.idb *.pdb *.pch *.opt *.lib *.cab *.mov *.mp3 *.swf *.psp *.chi *.chm *.com *.dll *.exe *.hld *.ivi *.ivt *.ix *.msi *.nls *.obj *.ocx *.rmi *.sys *.tmp *.tff *.vbx *.wav *.wpg *.iso *.pdb *.eps *.mpeg *.mpg *.ram *.rm *.psd *.ai *.aif *.bin *.hqx *.snd *.mpe *.wmv *.wma *.xfd *

Other files may not be able to be converted to TIFF due to password protection or corruption (for example).  If reasonable efforts to obtain useful TIFF images of these files are unsuccessful, these non-convertible files will also be accounted for with a TIFF placeholder.

Nothing in this paragraph 12 is meant to include productions of data produced from databases.

Responsive non-convertible files will be produced in the form of a placeholder TIFF image.  Each TIFF placeholder will contain the endorsed bates number and endorsed confidentiality designation.

13.   Gaps.  Productions should contain sequential bates numbers with no gaps.  There should be no gaps in bates numbers between productions.  A unique production volume number will be used for each production.

If any unavoidable gaps occur, the parties agree to provide advance notice of those gaps within productions and/or between productions.

14.     Parent-Child Relationships.  Parent-child relationships (the association between an attachment and its parent document) must be preserved.

15.     Search Terms/Date Ranges.  The Parties will agree on search terms to use to identify documents.  Nothing herein prevents a party from serving additional document requests for relevant documents not identified by search terms.

## C.     Hard-Copy Production

Hard-copy documents produced by either of the parties should be provided in the following format:

1.     TIFFs.  Single page 300dpi CCITT Group IV black and white TIFFs should be provided with page breaks at document end.

2.     Color.  The parties will accommodate reasonable requests for production of specific images in color to the extent possible. Documents produced in color will be produced in JPG format.

3.     Unique IDs.  Each image should have a unique file name that will be the Bates number of that page.  The Bates number must appear on the face of the image in the lower right corner (e.g., ABC0000001).

4.     Gaps.  Productions should contain sequential bates numbers with no gaps.  There should be no gaps in bates number between productions. A unique production volume number will be used for each production. If any unavoidable gaps occur, the parties agree to provide advance notice of those gaps within productions and/or between productions.

5.     Parties will provide OCR for all hard copy documents produced.

6.     Mass Distributed Documents.  With respect to hard copy documents that were distributed and received in identical form, and only to the

extent any such document was not subsequently altered (<u>e.g.</u>, highlighting or handwritten notes applied to the document), the producing party may produce one copy if the producing party can also provide to the other party, in the Custodian field of the Relativity delimited file (.DAT), the custodians to whom the documents were delivered.

7.     Unitizing of Documents.  When scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized).  The parties will make their best efforts to have their vendors unitize documents correctly and will commit to address situations where there are improperly unitized documents.

8.     Database Load File/Cross-Reference Files.  Documents should be provided with (1) a Relativity delimited file and (2) an Opticon delimited file.

<u>Example of Relativity Delimited File:</u>

þBegDocþ¶þEndDocþ¶þAttachRangeþ¶þCustodianþ¶

The objective coding and/or electronic file metadata should be provided in the following format:

a)     Fields should be delimited by the default Relativity field delimiter for ANSI character 20 (¶)
b)     String values within the fields file should be enclosed with a text delimiter for ANSI character 254 (þ).
c)     The first line should contain objective coding and or electronic file metadata headers and below the first line there should be exactly one line for each document
d)     Each row of objective coding and/or electronic file metadata must contain the same number of fields as the header row
e)     Each return and new line in full text fields shall be marked by the Relativity default delimiter of ANSI character 174(®)
f)     Multi-values should be separated by a semicolon(;)

<u>Example of Opticon Delimited File:</u>

```
ABC0000001,ABC001,D:\IMAGES\001\ABC0000001.TIFF,Y,,,3
ABC0000002,ABC001,D:\IMAGES\001\ABC0000002.TIFF,,,,,
ABC0000003,ABC001,D:\IMAGES\001\ABC0000003.TIFF,,,,,
ABC0000004,ABC001,D:\IMAGES\001\ABC0000004.TIFF,Y,,,2
ABC0000005,ABC002,D:\IMAGES\001\ABC0000005.TIFF,,,,,
```

9.     Parent-Child Relationships.  Parent-child relationships (the association between an attachment and its parent document), to the extent they can be reasonably determined, must be preserved.

10.    Objective Coding Fields.  The following objective coding fields should be provided to the extent determinable: (i) Beginning Bates Number; (ii) Ending Bates Number; (iii) Beginning Attachment Number; (iv) Ending Attachment Number; (v) Attachment Range Bates Numbers; (vi) Custodian; and (vii) Confidentiality.

**D.    Miscellaneous Production Items.**

1.     Production Media.  Documents will be produced on CD-ROM or DVD disks, on portable hard drives, or via secure file transfer protocol (SFTP)

2.     Production Labels.  When productions are made on physical media, the parties agree to attach a label to each piece of media containing production data.  The label will provide the following information:

**Party v. Party** (case name)
**Case No. 000000** (case number)
**Month, Day, Year** (date production was created on the disk)
**Volume Number**
**Bates Range:** (no gaps from production to production and no gaps within productions unless otherwise notified)
**Confidential Designation** (if necessary)

**E.    Accessible and Inaccessible ESI.**  Pursuant to Rule 26(b)(2)(B) of the

9

Federal Rules of Civil Procedure, a party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost.

**F.    Right to Request Additional Information.**

The agreements set forth herein are without prejudice to the right of a requesting party to request additional information about specific ESI, including sources of ESI previously identified as "inaccessible ESI," if that party can demonstrate that material, relevant, and responsive information that is not otherwise cumulative of information already produced can only be found through such additional efforts.  The parties will negotiate in good faith with regard to whether such additional efforts are reasonably required and, if so, who should bear the cost, with the Court to resolve such disputes if agreement cannot be reached.

**G.    Inadvertent Production of Documents.**

Inadvertent production of any document produced in response to discovery requests in this action by any party or non-party, that a party or non-party later claims should have been withheld on grounds of a privilege, including the work product doctrine (collectively referred to hereinafter as an "Inadvertently Produced Privileged Document") will not be deemed to waive any privilege or work product protection in this case or in any other federal or state proceeding.  This shall be interpreted to provide the maximum protection allowed by Federal Rule of Evidence 502(d), provided that the holder of the privilege or protection took reasonable steps to prevent the disclosure, Federal Rule of Evidence 502(b)(2).  Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production.

The parties agree that, to establish that a disclosure of documents, including ESI, was inadvertent, the parties need only furnish a declaration, executed under penalty of perjury, within ten (10) business days of learning that the production of such documents has occurred, stating that the disclosure at issue was, in fact, inadvertent.

Before producing any documents in response to discovery requests, counsel for the parties will conduct an electronic search, using search terms to identify potentially privileged documents.  The search terms will include generic terms (e.g., "Interrogatory" and "Request for Production") and specific terms (e.g., names of lawyers and law firms used by the parties).  Counsel for the parties will review the documents in this set to determine whether those documents are, in fact, privileged.  When that review is complete, the parties and their counsel will produce the documents that are determined "not privileged" and then generate a privilege log for those documents that are privileged.  The parties agree that the process outlined in this paragraph constitutes "reasonable steps to prevent the disclosure" of privileged information under Federal Rule of Evidence 502(b).

A party or non-party may request through counsel the return of any document ("Notice of Recall") that it inadvertently produced by identifying the Inadvertently Produced Privileged Document.

Once the Notice of Recall is given by the producing party, the receiving party shall promptly coordinate the destruction of the recalled documents and take reasonable steps to ensure that any ESI, documents, materials, data, and information reflecting the contents of the inadvertently produced information, are expunged.  If the production was provided on CD or DVD, the received party will destroy the production media, along with any copies, and certify to the producing party, in writing, of the destruction.  If the production was provided on hard drive the receiving party will delete recalled documents from the hard drive and certify in writing that the recalled documents were deleted.

The producing party will provide replacement media and/or documents, if applicable, within ten (10) business days of the Notice of Recall.  If any documents are being removed in totality from the production, the receiving party may insert TIFF placeholders in the production to cover any Bates number gaps created by the recalled documents.

Written certification from the receiving party may be provided via email and will provide confirmation that the original and any copies of the original

media were destroyed and/or deleted, all electronic and hard copy versions of the recalled document(s) was deleted and/or destroyed, that no other iteration of the recalled document(s) exists, and reasonable steps were taken to ensure that any ESI, documents, materials, data, and information reflecting the contents of the inadvertently produced information were expunged.

The producing party shall add the subject document to its privilege log and provide the updated Privilege Log to the receiving party within fifteen (15) business days of the Notice of Recall.

The return of an Inadvertently Produced Privilege Document does not preclude the receiving party from disagreeing with the designation of the document as privileged or redacted and re-produced and bringing a Motion to Compel its production pursuant to the Federal Rules of Civil Procedure.

If the Notice of Recall is made during or in preparation for a deposition, the examining and defending counsel shall meet and confer at the earliest opportunity to determine appropriate steps under this circumstance and consistent with this Agreement to return the document, redact the document, or withdraw the claim of privilege.

## H.    Modifications to ESI Protocol

The parties agree that any of the terms and requirements herein can be modified by agreement between the parties reduced to writing.

**SO ORDERED,** this _____ day of _____, 2019.

_____
Hon. Steve Jones
United States District Judge
Northern District of Georgia

Agreed to by counsel of record:

*/s/ Allegra J. Lawrence*
Allegra J. Lawrence (GA Bar No. 439797)
Leslie J. Bryan (GA Bar No. 091175)
Maia Cogen (GA Bar No. 832438)
**LAWRENCE & BUNDY LLC**
1180 West Peachtree Street
Suite 1650
Atlanta, GA 30309
Telephone: (404) 400-3350
Fax: (404) 609-2504
allegra.lawrence-hardy@lawrencebundy.com
leslie.bryan@lawrencebundy.com
maia.cogen@lawrencebundy.com

Thomas R. Bundy (Admitted *pro hac vice*)
**LAWRENCE & BUNDY LLC**
8115 Maple Lawn Blvd.
Suite 350
Fulton, MD 20789
Telephone: 240-786-4998
Fax: (240) 786-4501
thomas.bundy@lawrencebundy.com

Dara Lindenbaum (Admitted *pro hac vice*)
**SANDLER REIFF LAMB ROSENSTEIN & BIRKENSTOCK, P.C.**
1090 Vermont Avenue, NW Suite 750
Washington, DC 20005
Telephone: (202) 479-1111 lindenbaum@sandlerreiff.com

Elizabeth Tanis (GA Bar No. 697415)
John Chandler (GA Bar No. 120600)
957 Springdale Road, N.E.
Atlanta, GA 30306
Telephone: (404) 771-2275
beth.tanis@gmail.com
jachandler@gmail.com

Kurt G. Kastorf (GA Bar No. 315315)
**THE SUMMERVILLE FIRM, LLC**
1226 Ponce de Leon Avenue, NE
Atlanta, GA 30306
Telephone: (770) 635-0030
kurt@summervillefirm.com

Matthew G. Kaiser (Admitted *pro hac vice*)
Sarah R. Fink (Admitted *pro hac vice*)
Scott S. Bernstein (Admitted *pro hac vice*)
**KAISERDILLON PLLC**
1099 14th Street, NW 8th Floor West
Washington, DC 20005
Telephone: (202) 640-2850
Fax: (202) 280-1034
mkaiser@kaiserdillon.com
sfink@kaiserdillon.com
sbernstein@kaiserdillon.com

Andrew D. Herman (Admitted *pro hac vice*)
**MILLER & CHEVALIER CHARTERED**
900 16th St. NW
Washington, DC 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
aherman@milchev.com

Kali Bracey (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
1099 New York Avenue, NW Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Fax: (202) 639-6066
kbracey@jenner.com

Jeremy H. Ershow (*Pro hac vice* pending)
**JENNER & BLOCK LLP**

919 Third Avenue
New York, New York 10022
Telephone: (212) 891-1600
Fax: (212) 891-1699
jershow@jenner.com

*Counsel for Plaintiffs*


*/s/ Josh B. Belinfante*
Josh B. Belinfante (GA Bar No. 047399)
Vincent R. Russo (GA Bar No. 242628)
Brian E. Lake (GA Bar No. 575966)
Kimberly K. Anderson (Georgia Bar No. 602807)
Carey A. Miller (GA Bar No. 976240)
Alexander Denton (GA Bar No. 660632)
Catherine C. Berenato (GA Bar No. 957620)
**Robbins Ross Alloy Belinfante Littlefield LLC**
500 14th Street, N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3250
jbelinfante@robbinsfirm.com
vrusso@robbinsfirm.com
blake@robbinsfirm.com
kanderson@robbinsfirm.com
cmiller@robbinsfirm.com
adenton@robbinsfirm.com
cberenato@robbinsfirm.com


Christopher M. Carr, Attorney General (GA Bar No. 112505)
Annette M. Cowart, Deputy Attorney General (GA Bar No. 191199)
Russell D. Willard, Senior Assistant Attorney General (GA Bar No. 760280)
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

15

Bryan P. Tyson, Special Assistant Attorney General (GA Bar No. 515411)
Bryan F. Jacoutot (GA Bar No. 668272)
Taylor English Duma LLP
1600 Parkwood Circle - Suite 200
Atlanta, Georgia 30339
Telephone: (678) 336-7249
Facsimile: (678) 247-2210
btyson@taylorenglish.com
bjacoutot@taylorenglish.com

*Counsel for Defendants*

## Table A.  Metadata Fields

| Field Name | Description/Comments | Fields for ESI and or Hard Copy |
|---|---|---|
| BEG_NO | Bates number associated with the first page of a document | ESI and Hard Copy |
| END_NO | Bates number associated with the last page of a document | ESI and Hard Copy |
| CUSTODIAN | Specific description of who provided the document.  Multiple custodians will be separated by a semi-colon. | ESI and Hard Copy |
| BEG_ATTACH | Beginning Attachment number for parent and children.  The number should be BEG_NO of the parent. | ESI and Hard Copy |
| END_ATTACH | Ending Attachment number for parent and children.  The number should be END_NO of the last child. | ESI and Hard Copy |
| ATTACH-RANGE | Beginning and Ending Attachment numbers for parent and children.  The number should be BEG_NO of the parent and END_NO for the last child. | ESI and Hard Copy |
| PROD_TYPE | Paper or ESI should be noted in this field.  This field defines whether the produced document was produced from Paper or from ESI. | ESI and Hard Copy |
| REDACT | Y or N will be noted in this field.  The field defines whether or not a document contains redactions or not. | ESI and Hard Copy |
| FILE_EXT | File extension of a native file (e.g., XLS, DOC) | ESI |
| FILE_NAME | Original file name of native file.  Contains subject of email message for email records. | ESI |
| PAGE_COUNT | Number of pages per electronic document. NOTE:  Not all ESI documents have this field. To the extent it exists, it is extracted.  This is an electronically populated field that is based on the machines estimate. | ESI |
| HASH | The Hash value or "de-duplication key" assigned to a document.  Parties will use MD5 Hash value | ESI and |

| | | |
|---|---|---|
| | for this unique identifier.  PID's for email families should also be preserved. | Hard Copy |
| NATIVE_LINK | Native link to documents produced in native format.  The path provided in this field is where the file is located on the production media. | ESI |
| FILE_PATH | Folder path of where documents came from on server – when collected.  Include the letter of the drive, path information through to the extension of the file. | ESI |
| TITLE | Title of document. NOTE:  Not all ESI have this field.  Certain of the attached email docs, like a scanned PDF, will not have any metadata. | ESI |
| AUTHOR | Author of a document. NOTE: Not all ESI have this field.  Certain of the attached email docs, like a scanned PDF, will not have any metadata | ESI |
| CREATE_DATE | Creation date of the native file.  Must be in mm/dd/yyyy format. | ESI |
| TIME_CREATED | Creation time of the native file.  Time will be provided in GMT and will be in military format. | ESI |
| DATE_LAST-MOD | Date native file was last modified.  Needs to be in mm/dd/yyyy format. | ESI |
| TIME_LAST_MOD | Time native file was last modified.  Time will be provided in GMT and will be in military format. | ESI |
| MESSAGID | The Email Message ID | ESI (email) |
| SUBJECT | Information from the Subject line of the e-mail message | ESI (email) |
| FROM | Author of e-mail message | ESI (email) |
| TO | Recipients of the email message | ESI (email) |
| CC | Recipient of Caron Copies of the e-mail message | ESI (email) |

|  |  |  |
|---|---|---|
| BCC | Recipient of blind carbon copies of the e-mail message | ESI (email) |
| DATE_SENT | Sent date of an e-mail message.  Must be in mm/dd/yyyy format | ESI (email) |
| TIME_SENT | Sent time of an e-mail message.  Time will be provided in GMT and will be in military format. | ESI (email) |
| DATE_RCVD | Received date of an e-mail message.  Needs to be in mm/dd/yyyy format. | ESI (email) |
| TIME_RCVD | Received time of an e-mail message.  Time will be provided in GMT and will be in military format. | ESI (email) |
| CONFIDENTIAL | Denotes confidentiality designation pursuant to applicable Protective Order. | ESI and Hard Copy |

## **L.R. 7.1(D) CERTIFICATION**

I certify that the foregoing filing has been prepared with one of the font and point selections approved by the Court in Local Rule 5.1(C).  Specifically, this brief has been prepared using 14-pt Times New Roman Font.

*/s/ Allegra J. Lawrence*

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 9, 2019, I electronically filed the foregoing

**ORDER GOVERNING DISCOVERY OF HARD COPY AND**

**ELECTRONICALLY STORED INFORMATION** with the Clerk of Court

using the CM/ECF system, which will automatically send email notification of

such filing to all attorneys of record in this case.

*/s/ Allegra J. Lawrence*