IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FAIR FIGHT ACTION, INC., *et al.*,

    **Plaintiffs,**

**v.**

BRAD RAFFENSPERGER, *et al.*,

    **Defendants.**

CIVIL ACTION FILE

NO. 1:18-CV-5391-SCJ

## ORDER

After consideration, the Court issues the following order on the previously deferred discovery-dispute question of whether Plaintiffs may depose Governor (and former Secretary of State) Brian Kemp and the current Secretary of State Brad Raffensperger. See Order of Nov. 21, 2019, Doc. No. [146].

## I. BACKGROUND

As stated in the Court's prior order, the Court received correspondence from the parties concerning various discovery disputes. See Doc. Nos. [131-1], [131-2], [139], and [143]. In their correspondence, the parties indicated that they had reached an impasse on the issue of whether Plaintiffs may depose Governor

(and former Secretary of State) Brian Kemp and the current Secretary of State Brad Raffensperger. Doc. No. [131-2].

The Court held a hearing on November 20, 2019 pursuant to its informal discovery dispute resolution process. Doc. No. [34]. The Court thereafter deferred its ruling on the depositions until it could review the 30(b)(6) witness testimony (and other depositions) referenced by the parties in their arguments. See Doc. No. [146]. The Court also requested that Plaintiffs produce audio clips of statements made by Governor Kemp that were referenced at the hearing.

The depositions and audio clips were delivered to chambers on November 21, 2019 and December 5, 2019. More specifically, the Court received the transcripts of the Secretary of State's 30(b)(6)[1] witnesses, Merrit Beaver and Chris Harvey,[2] and the transcripts of the following members of the State Election Board ("SEB"):  David Worley, Rebecca Sullivan, and Seth Harp. The Court also

---

[1] Under Federal Rule of Civil Procedure 30(b)(6), a governmental agency may designate an officer, director, managing agent, or other person to testify about "information known or reasonably available to the organization."

[2] Merrit Beaver's current job title is Chief Information Officer. Beaver Dep., p. 5. Chris Harvey's current job title is Director of Elections. Harvey Dep., p. 5.

received the deposition of Stacey Abrams. All of these materials have been thoroughly reviewed by the Court.[3]

## II. LEGAL STANDARD

Governor Kemp and Secretary Raffensperger are high-ranking government officials.

"[I]n the Eleventh Circuit, there is no *per se* rule forbidding the deposition of high-ranking government officials." Davis *ex rel.* J.D.D. v. Carroll, No. 8:16-CV-0998-T-35MAP, 2017 WL 11151858, at *2 (M.D. Fla. July 24, 2017) (citations omitted). However, "the Supreme Court has indicated that the practice of calling high officials as witnesses should be discouraged." In re United States, 985 F.2d 510, 512 (11th Cir. 1993) (citing United States v. Morgan, 313 U.S. 409 (1941)). It has also been held that "'top executive department officials should not, absent

---

[3] As the transcripts and audio were produced in the context of the discovery process, the Court will maintain the transcripts/audio under seal and allow the parties to file them at a later date (in the event that the transcripts/audio are used in a substantive motion). See United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) ("Discovery is neither a public process nor typically a matter of public record. Historically, discovery materials were not available to the public or press. Moreover, documents collected during discovery are not 'judicial records.' Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private.") (citations omitted).

3

extraordinary circumstances, be called to testify regarding their reasons for taking official actions.'" Id. (citing Simplex Time Recorder Co. v. Sec'y of Labor, 766 F.2d 575, 586 (D.C. Cir. 1985)). Additionally, district courts are cautioned to "'remain mindful of the fact that exceptional circumstances must exist before the involuntary depositions of high agency officials are permitted.'" Id. (citing In Re Office of Inspector Gen., 933 F.2d 276, 278 (5th Cir. 1991)).

The reason for the exceptional circumstances rule is considered obvious, as "[h]igh ranking government officials have greater duties and time constraints than other witnesses." Id. Their time is "very valuable." Id. Accordingly, "[i]n order to protect officials from the constant distraction of testifying in lawsuits, courts have required that defendants show a special need or situation compelling such testimony." Id.

The exceptional circumstances requirement is considered met "when high-ranking officials 'have direct personal factual information pertaining to material issues in an action' and the 'information to be gained is not available from any other sources,'" such as lower-level officials. McDaniel v. Bradshaw, No. 10-81082-CIV, 2011 WL 13150501, at *1 (S.D. Fla. May 23, 2011), *on reconsideration*, No. 10-81082-CIV, 2011 WL 13150486 (S.D. Fla. June 8, 2011); see also Cruz v.

4

<u>Green</u>, No. 18-60995-CIV, 2019 WL 5208913, at *3 (S.D. Fla. Feb. 7, 2019) ("[e]ven if the official has such knowledge, a court may require a party to pursue alternative means of discovery, e.g., through lower-level officials, before permitting the deposition to proceed.").

## III.  DISCUSSION

In their correspondence and arguments, Plaintiffs state that they seek to depose Governor Kemp on the following eight topics:  (1) his motivation, when Secretary of State, for his "exact match policy;" (2) a memorandum encouraging polling place closures; (3) his decision to purge voters from the rolls in years preceding state elections; (4) his statements about and interpretation of the responsibilities of the Secretary of State and the SEB; (5) his expressed concern that large numbers of "minority voters" would be voting; (6) his hands-off approach to local election officials; (7) his failure to alert local election officials to expected high turnout for the 2018 elections; and (8) the reasons for the inaction of the SEB while he served as its chair. Pl. Hearing Ex. 1.

Plaintiffs assert that "[n]o other [Secretary of State] official or SEB member can say what Governor Kemp's reasons and intentions were with respect to these issues." Doc. No. [131-1], p. 1.

5

In opposition, Defendants argue that Plaintiffs have failed to make the requisite showing of special need or situation for compelling the testimony of a high-ranking government official. Doc. No. [131-1], p. 2. Specifically, in regard to Governor Kemp, Defendants argue that Plaintiffs have failed to show or elicit testimony that establishes that the Governor possesses any unique and personal knowledge beyond that already available to Plaintiffs through the prior above-referenced depositions. Id. Defendants assert that the Secretary of State's 30(b)(6) witnesses provided adequate substitutes for the high-ranking government official's appearance, as they possessed the relevant knowledge to provide the testimony that Plaintiffs seek from the Governor. Id. Defendants also assert that Plaintiffs have "simply failed to obtain the answers they wanted," from the 30(b)(6) witnesses. Id. Defendants further assert that any argument that the mere allegations of a complaint are sufficient to depose high-ranking government officials would "vitiate the privilege established by the Eleventh Circuit's precedent, as any plaintiff in any case could make conclusory allegations and use them as a basis to depose high-ranking officials." Doc. No. [131-1], p. 8.

In reply, Plaintiffs state that "[o]ther witnesses cannot supply this evidence for the simple reason that no one else can get into the heads of Governor Kemp

and Secretary Raffensperger and thus cannot know their thoughts, their intentions, what factors they considered in arriving at various decisions, or what they meant when they made certain statements." Doc. No. [131-1], p. 5.

The Court begins its discussion by noting that it does not appear that issues of relevancy or personal knowledge are in dispute. Rather, as correctly framed by Plaintiffs, the issue is whether only the Governor and Secretary Raffensperger can supply the information sought or stated another way, whether the information sought is personal and unique to the Governor and Secretary Raffensperger. Doc. No. [131-1], p. 4. The Court also notes that there is some support for Defendants' insufficiency of the allegations of the complaint argument as prior authority in this district holds that "an allegation of knowledge by the noticing party, without more, generally will not suffice to mandate the deposition." Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation, 175 F.R.D. 347, 348 (N.D. Ga. 1997). The Court accepts this authority as guiding principle and also reviews the entire circumstances of this case in deciding whether Governor Kemp and Secretary Raffensperger may be ordered to sit for depositions.

The Court will now individually consider the eight topics proposed for Governor Kemp's deposition and the four topics proposed for Secretary Raffensperger's deposition.

**A. <u>Deposition of Governor Brian Kemp</u>**

        **1.** *Motivation, when Secretary of State, for his "exact match policy"*

Plaintiffs first seek to depose Governor Kemp on his motivation, when Secretary of State, for his "exact match" identification policy. According to Plaintiffs, then-Secretary Kemp was responsible for the interpretation of the "exact match" identification policy from 2010 to 2018, thereby making his personal motivation for and explanations of said policy relevant. <u>See</u> Pl. Hearing Ex. 1, p. 1.

Yet according to the deposition testimony from one of the Secretary of State's 30(b)(6) witnesses, Chris Harvey, the interpretation of the "exact match" identification policy possibly predated Governor Kemp's tenure as Secretary of State. Harvey Dep., pp. 238–39 ("I don't know if it started with him or it started with Karen Handel or Kathy Cox."). Furthermore, in his deposition, Harvey provided detailed testimony on the interpretation as well as the implementation of the "exact match" identification policy, both prior to and after the passage of

8

H.B. 316. Id. at 236–38. Harvey also testified that he never had any conversations with then-Secretary Kemp regarding the "exact match" process. Id. at 229.

Accordingly, the Court finds that Harvey, as the Secretary of State's 30(b)(6) witness on this topic, was an adequate substitute for Governor Kemp's appearance, as he possessed the relevant knowledge on the "exact match" identification policy to provide the testimony that Plaintiffs seek from the Governor. Plaintiffs have not met their burden and therefore may not depose Governor Kemp on this topic.

## 2. *Memorandum encouraging polling place closures*

Next, Plaintiffs seek to depose Governor Kemp on his memorandum encouraging polling place closures. See Pl. Hearing Ex. 5. As pointed out by Defendants, however, there is no evidence or suggestion that then-Secretary Kemp personally wrote or approved of this memorandum. The memorandum, while bearing the State of Georgia seal, is not signed by the then-Secretary. The Court also notes that Plaintiffs have not had the opportunity to ask the SEB members any questions regarding the memorandum in their respective depositions. Accordingly, the Court finds that Plaintiffs have not discharged their burden of showing that Governor Kemp has any personal or unique

9

information regarding this memorandum that cannot possibly be gained from other available sources. Plaintiffs therefore may not depose the Governor on this topic.

### 3. *His decision to purge voters from the rolls in years preceding state elections*

Plaintiffs also seek to depose Governor Kemp on his decision to purge voters from the rolls in years preceding state elections. They allege that then-Secretary Kemp was responsible for Georgia's voter list purges from 2010 to 2018, thus making his personal motivation for and explanations of the Secretary of State's policy approach relevant. See Pl. Hearing Ex. 1, p. 1.

Defendants, in response, point to the deposition testimony of the Secretary of State's 30(b)(6) witness, Chris Harvey. Harvey testified at length to the process used in removing, or "cancelling," inactive voters, both prior to and after the passage of H.B. 361. Harvey Dep., pp. 200–08. Specifically, Harvey testified that the process of cancelling inactive voters generally occurs towards the end of odd-numbered years, namely because there is no 90-day window in which voter list maintenance can be done in election years. Id. at 206–07. Harvey further testified that the manual process of cancelling voters in the registration system requires

two people; and, in 2017, that those two people were himself and Ryan Germany. Id. at 208.

Plaintiffs assert that the reasons given by Harvey in his 30(b)(6) deposition for the purge are pretext. Yet Plaintiffs cite no evidence or law in support of this assertion, and the Court's own independent research did not yield any binding authority showing that pretext can be a basis for the deposition of a high-ranking government official.

The Court finds that Harvey, as the Secretary of State's 30(b)(6) witness on this topic, was an adequate substitute for Governor Kemp's appearance. Plaintiffs therefore may not depose the Governor on this topic.

### 4. *His statements about and interpretation of the responsibilities of the Secretary of State and the State Election Board (SEB)*

After reviewing the depositions of three members of the SEB, the Court agrees with Plaintiffs' assertion that "as Chair, the [Secretary of State] dictates all aspects of the SEB's operations, including the frequency of meetings," the agenda for each meeting, and "the promulgation of rules." Letter from Plaintiffs to Court (Nov. 11, 2018), Doc. No. [131-1], pp. 5–6. All three SEB members testified that they were given no orientation or training, Harp Dep., p. 8; Sullivan Dep., p. 20; Worley Dep., p. 10, and that their meetings and agendas were set by the Secretary

11

of State or his office, Harp Dep., p. 23; Sullivan Dep., p. 23; Worley Dep., p. 101. One SEB member, Seth Harp, testified that he was not familiar with or had never seen the statute setting out the SEB's duties. Harp Dep., p. 23.

As the Chair of the SEB, then-Secretary Kemp directed all relevant activities of the SEB. In the discovery hearing, Plaintiffs argued that only Kemp could provide insight into his interpretation of the SEB's duties and how it informed his actions or inaction as Chair. For example, in the discovery hearing, Plaintiffs questioned why certain counties were not sanctioned for violations of the voting laws addressed in SEB complaints. It is clear from the testimony of the other three SEB members that they do not have answers to such questions—nor are they addressed in the 30(b)(6) testimony. Thus, Plaintiffs have met their burden for this topic.

**5. *His expressed concern that large numbers of "minority voters" would be voting***

Plaintiffs seek to depose Governor Kemp about two statements: one he made at a Gwinnett event in July of 2014 while he was running for Secretary of State, and one he made at a campaign event in Atlanta in October of 2018 while

he was running for Governor. [4] Kemp was the sitting Secretary of State when both

statements were made.

In 2014, regarding the voter registration efforts of the New Georgia Project,

then-Secretary Kemp stated:

> In closing, I just wanted to tell you real quick, after we
> get through this runoff, you know the Democrats are
> working hard, and all these stories about them, you
> know, registering all these minority voters that are out
> there and others that are sitting on the sidelines, if they
> can do that they can win this November. But we've got
> to do the exact same thing.

He then went on to describe how event attendees could help register more

Republican voters.

In 2018, regarding his gubernatorial opponent's get-out-the-vote effort,

then-Secretary Kemp stated:

> And as worried as we were going into the start of early
> voting with the literally tens of millions of dollars that
> they are putting behind the get out and vote efforts for
> their base, a lot of that was absentee ballot requests,
> they have just an unprecedented number of that, which
> is something that continues to concern us, especially if
> everybody uses and exercises their right to vote—which
> they absolutely can—and mail those ballots in, we gotta
> have heavy turnout to offset that.

---

[4] The audio recordings of both statements are on file with the Court.

Plaintiffs argue these statements are material as they relate to their 15th Amendment and Equal Protection claims, which allege "Defendants intended, at least in part, to suppress the number of votes cast by persons of color." Doc. No. [41], ¶¶ 179, 193.

Defendants argue that Plaintiffs mischaracterize Kemp's statements. To explain the 2014 statement, they point to an *Atlanta Journal Constitution* article which argued Kemp was simply advocating for greater registration of Republican voters to offset Democratic registration efforts. However, despite the explanations given by his counsel or local journalists, only then-Secretary Kemp can explain what he actually meant when he made the statement. Therefore, Plaintiffs have met their burden as to this topic.

**6. *His hands-off approach to local election officials***

Plaintiffs seek to depose Governor Kemp on his hands-off approach to local election officials. The Court, however, finds that the Secretary of State's 30(b)(6) witness, Chris Harvey, sufficiently addressed this topic in his deposition. Specifically, Harvey provided detailed testimony regarding the manner in which the Secretary of State's Office prepares and provides training materials to local election officials, as well as the training procedures and policies employed by the

14

Secretary of State's Office. Harvey Dep., pp. 26–101. Accordingly, Plaintiffs have not met their burden and therefore may not depose Governor Kemp on this topic.

> **7.** ***His failure to alert local election officials to expected high turnout for the 2018 elections***

Plaintiffs seek to depose Governor Kemp on his failure to alert local election officials to expected high turnout for the 2018 elections. Once more, this precise topic was addressed and answered by the Secretary of State's 30(b)(6) witness, Chris Harvey. Namely, Harvey testified that it is usually "common knowledge" among local election officials when a "high volume election" is to be expected. Harvey Dep., p. 172. Harvey further stated that while the Secretary of State's Office emphasizes the scope and gravity of a projected high turnout election, most counties know what to expect and are generally prepared. Id. at 173. Accordingly, the Court finds that Harvey, as the Secretary of State's 30(b)(6) witness on this topic, was an adequate substitute for the Governor's appearance. Plaintiffs have not met their burden and therefore may not depose Governor Kemp on this topic.

> **8.** ***The reasons for the inaction of the SEB while he served as its chair***

As mentioned *supra*, the deposition testimony supports that as Chair, the Secretary of State "dictates all aspects of the SEB's operations, including the

15

frequency of meetings," the agenda for each meeting, and "the promulgation of rules." Letter from Plaintiffs to Court (Nov. 11, 2018), Doc. No. [131-1], p. 6. Rebecca Sullivan testified that meetings were always called by the Secretary of State, and that an agenda and materials were provided to SEB members by the Secretary of State's office. Sullivan Dep., p. 23. David Worley was aware that a meeting can be called by two SEB members, but nonetheless testified that in his experience, it was always the Chair who called the meetings. Worley Dep., p. 101. Seth Harp confirmed that the Secretary of State called the meetings and provided meeting materials. Harp Dep., p. 23.

All three SEB members also testified that complaints did not reach the SEB until the Chair scheduled them to be discussed. Harp. Dep., p. 23; Sullivan Dep., p. 34–35; Worley Dep., pp. 102–103. Thus, the SEB could not perform its core function of reviewing complaints until the Chair brought them to the attention of the other SEB members. Even when Rebecca Sullivan, the Vice Chair, lead meetings in then-Secretary Kemp's absence, his office would meet with her ahead of time to explain the agenda, which was prepared before her arrival. Sullivan Dep., pp. 34–35. Finally, Rebecca Sullivan and Seth Harp testified that the SEB had never promulgated a single rule during their tenure. Harp Dep., p. 25;

Sullivan Dep., 58. The longest-serving member, David Worley, stated the regulations he recalled were generally "adopted as a result of recommendations from the Secretary of State." Worley Dep., p. 111.

The SEB's alleged failure to timely investigate complaints and impose sanctions or promulgate ameliorative regulations is material to Plaintiffs' claims. The other members of the SEB could not review complaints or otherwise act without the Chair's direction, and only then-Secretary Kemp can explain why he decided to call (or forgo) meetings when he did, and why he chose to schedule certain items of discussion when he did. Nothing in the 30(b)(6) testimony speaks to these precise questions. Thus, Plaintiffs have met their burden of showing that Governor Kemp "'ha[s] direct personal factual information pertaining to material issues in an action' and the 'information to be gained is not available from any other sources.'" McDaniel, No. 10-81082-CIV, 2011 WL 13150501, at *1.

### B. Deposition of Secretary of State Brad Raffensperger

In their correspondence, Plaintiffs state that they seek to depose Secretary Raffensperger on the following topics:  (1) information relevant to their request for prosecutive relief (specifically, whether and how he intends to continue the practices and policies that Plaintiffs allege are unlawful), (2) his interpretation of

17

current election law, (3) his policy decisions, and (4) his expressed bias against Plaintiffs' claims. Doc. No. [131-2], p. 2. Plaintiffs further assert that "[n]o other official can address [Secretary Raffensperger's] unique personal knowledge and intent on these subjects. Id.

     **1.** *Information relevant to Plaintiffs' request for prosecutive relief*

The Court recognizes that to obtain prospective relief, Plaintiffs will need to establish a sufficient likelihood that the alleged wrongful conduct will likely continue to occur. See generally Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc., 528 U.S. 167, 170 (2000); City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); and Davis v. Rucker, No. 3:01-CV-627-J-25HTS, 2002 WL 31235735, at *2 (M.D. Fla. Aug. 23, 2002).

In considering the proposed deposition topic, the Court thoroughly reviewed the deposition testimony of the Secretary of State's 30(b)(6) witness, Chris Harvey, and noted his vast knowledge of the state's election policies, procedures, and activities. After reviewing this testimony, the Court finds that Harvey can adequately provide information relevant to Plaintiffs' request for prospective relief. Plaintiffs have not met their burden of establishing exceptional circumstances to warrant Secretary Raffensperger's deposition. To this regard,

Harvey may be re-deposed in a 30(b)(6) capacity and Plaintiffs may pose their prospective relief questions to him.

## 2. *Interpretation of current election law*

As this case is primarily based on conduct that occurred prior to Secretary Raffensperger being sworn in as Secretary of State and in light of the fact that there has been a recent, dramatic change in Georgia election law, without more, the Court is unable to conclude that Plaintiffs have sufficiently met their burden of establishing that Secretary Raffensperger's interpretation of *current* election law would be a material issue sufficient to authorize a high-ranking official deposition. See Baas v. Fewless, 886 F.3d 1088, 1091 (11th Cir. 2018) ("A 'material' fact is one that 'might affect the outcome of the suit under the governing law.'"). The Court also notes that generally, "the interpretation of a statute is a question of law for the court to decide." Birnholz v. 44 Wall St. Fund, Inc., 880 F.2d 335, 341 n.8 (11th Cir. 1989).

Plaintiffs have not met their burden on this topic.

19

### 3. *Policy decisions*

Similar to the first topic/request, the Court finds that Harvey may be re-deposed in a 30(b)(6) capacity to provide this information. Plaintiffs have not met their burden on this topic.

### 4. *Expressed biases against Plaintiffs' claims*

Based on the Court's judicial experience, the Court is aware that most defendants do not like being sued and harbor bias (or some type of dislike) in the litigation process. To this regard, Plaintiffs have not sufficiently shown how deposing Secretary Raffensperger on the topic of his alleged lawsuit bias is material, such that the testimony would affect the outcome of this lawsuit. See Baas, 886 F.3d at 1091 (providing the definition of "material").[5]

## IV. CONCLUSION

In conclusion, Plaintiffs' request to depose Governor (and former Secretary of State) Brian Kemp is **GRANTED** as to proposed topics 4, 5, and 8 and **DENIED** as to proposed topics 1, 2, 3, 6, and 7. In recognition of the time constraints and

---

[5] The Court recognizes that this topic could concern the § 3(c)/retention of jurisdiction relief requested by Plaintiffs in their Amended Complaint. Doc. No. [41], p. 89, ¶ 5. To this regard, Plaintiffs may petition the Court (by motion) for additional discovery in the event that the § 3(c) issue is reached at the conclusion of this litigation.

important duties of the Governor, the following parameters shall govern the deposition: (1) the deposition shall occur at a date and time that is convenient and least disruptive to the Governor's schedule (but no later than January 10, 2020); (2) the location of the deposition shall be at the Governor's Office or a location of his choosing; (3) the duration of the deposition shall not be longer than two hours (objections included); and (4) deviations outside of topics 4, 5, and 8 are not be permitted.[6]

Plaintiffs' request to depose Secretary of State Brad Raffensperger is **DENIED, with leave to renew (as to topic 3) at a later date**.

The Court also *sua sponte* **AMENDS** its prior scheduling order (Doc. No. [79]) to allow for fact discovery to be extended until **January 10, 2020** for the *limited purpose*s of re-deposing Harvey in a 30(b)(6) capacity and deposing Governor Kemp. The Court also *sua sponte* **STAYS** the scheduling order's remaining deadlines (with the exception of the December 16, 2019 close of expert discovery) until further order of the Court.

---

[6] After the deposition is scheduled, the parties shall notify the Court's Courtroom Deputy Clerk of the time and date so that the Court may be available by phone call to resolve any unexpected disputes that may hinder the deposition from going forward.

21

**IT IS SO ORDERED** this 5th day of December, 2019.

s/Steve C. Jones
**HONORABLE STEVE C. JONES**
**UNITED STATES DISTRICT JUDGE**