

## ROBBINS
LITIGATION AND REGULATORY LAW

Josh Belinfante
Direct Line: (404) 856-3262
Email: jbelinfante@robbinsfirm.com

December 18, 2019

**VIA E-MAIL**
The Honorable Steve C. Jones
United States District Judge
Northern District of Georgia
1967 Richard B. Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, Georgia 30303-3309
*VIA: Electronic Mail to*
*pamela_wright@gand.uscourts.gov and ECF*

    Re:   *Fair Fight Action, et al. v. Raffensperger, et al.*,
           Civil Action No. 1:18-CV-05391 SCJ,
           United States District Court, Northern District of Georgia

Dear Judge Jones:

    Pursuant to the Court's direction on December 16, 2019, Defendants respond to Plaintiffs' latest complaints about the discovery process as set forth in their December 17, 2019 letter to the Court (the "December 17 Letter"). Plaintiffs now raise three issues: (1) Defendants' application of Plaintiffs' own search terms and identified custodians for discovery of a subset of electronically stored information ("ESI"); (2) general discovery concerns and the privilege log; and (3) Plaintiffs' desire to import discovery from an unrelated case pending in the Northern District of Georgia. None warrant the Court's involvement.

    As this Court likely recalls, the Parties appeared before it on November 20, 2019. At that time, the Court ordered the Defendants to do what Defendants had agreed to do:

- In response to Plaintiffs' First Request to Produce No. 12, provide an "additional/expanded production from three additional custodians" on or before November 27, 2019;[1] and

---
[1] Order, Doc. 146 at 3.

The Honorable Steve C. Jones
c/o Pamela Wright
December 18, 2019
Page 2

- Provide documents regarding "Kansas Cross-Check" and voter complaints received in 2015-2017.[2]

In response to the Court's Order and Defendants' efforts beyond the scope of the Order, Defendants produced approximately 4,000 additional documents on or before November 27. The productions included documents that Plaintiffs claimed their experts needed to produce reports by this Court's December 16, 2019 deadline.

Last week, Defendants identified a technical issue that prevented the disclosure of a limited set of documents – voter complaints and emails – that predated 2018.[3] When Defendants learned the cause of the issue, they began efforts to conduct additional searches and anticipate additional documents being produced before the end of the year. Other than this limited subset of electronic mail and voter complaints, Defendants have produced the documents required by this Court's Order.

Plaintiffs have now claimed that some of their experts cannot complete their reports based on documents not addressed in the Court's prior Order. At this time, Plaintiffs timely produced reports from six of their eleven identified potential experts. Of the reports already produced, they range from the legal obligations of the Secretary of State;[4] to Georgia history;[5] incidents of voter fraud and the photo identification law (which statute is not part of this litigation);[6] voting lines in Fulton County;[7] training of election officials;[8] and provisional and absentee ballot use.[9] Plaintiffs have not produced their anticipated reports on voting technology that is no longer in use; HAVA-match policies; NVRA-mandated voter maintenance efforts; Section 2 of the Voting Rights Act; and the efficacy of postcard notifications. This is true despite (1) Defendants having produced all responsive and non-privileged documents previously identified as necessary for expert reports; and (2) Plaintiffs not requesting a meet-and-confer on document requests from the Fourth Request to Produce in the light of Defendants'

---

[2] *Id.* at 3-4.
[3] First Requests for Production 6 and 12 seeks voter complaints and certain custodians' emails regarding identified search terms, respectively. Although Defendants conducted the responsive searches, an "indexing" issue prevented the pulling of documents that were created before mid-2018. That some documents were not pulled was both inadvertent and unknown to Defendants until it was raised in Chris Harvey's individual deposition on December 5, 2019.
[4] *See* Doc. 138. It is axiomatic that experts cannot testify on the law. *See, e.g., United States v. Oliveros,* 275 F.3d 1299, 1307 (11th Cir. 2001) (citing United States v. McClain, 593 F.2d 658, 669-70 (5th Cir. 1979)).
[5] *See* Doc. 92.
[6] *See* Doc. 148.
[7] *See* Doc. 166.
[8] *See* Doc. 167.
[9] See Doc. 168.

The Honorable Steve C. Jones
c/o Pamela Wright
December 18, 2019
Page 3

asserted objections and requested reasonable limitations. In most cases, Plaintiffs have had the information they claim to need for months.

Having provided the Court with an overview of the course of discovery, Defendants respond to Plaintiffs' specifically raised issues as follows:

1. **Document Custodians.**

Plaintiffs raise the same issue they did before the Court in November: they are not satisfied with the custodians *Plaintiffs* identified after the (first) 30(b)(6) deposition of the Secretary of State, and after Defendants expanded the custodians to include three additional officials within the Secretary's office. Plaintiffs argue that their own identified custodians and search terms are merely advisory, and the Defendants' objections to the scope of discovery should be ignored.

In support of this position, Plaintiffs rely on a decision from the Southern District of Florida that does not involve ESI search terms and custodians, cites no authority in the portion cited by the Plaintiffs, and actually orders the parties to confer in good faith to create a search protocol – which is the very thing the Parties did in this case.[10] The Plaintiffs also rely on the Sedona Conference, which provides that a party cannot "unilaterally demand the requesting party submit proposed search terms and a list of custodians," but does not address a situation, like this one, where the parties mutually agreed to search terms and custodians to address the producing parties' objections.[11] None of this purported authority compels the relief demanded by Plaintiffs.

2. **General Discovery Issues and Privilege Log.**

On December 11, 2019, Plaintiffs identified numerous issues they found deficient in Defendants' production. Defendants have now responded to the December 11 letter, as Defendants indicated they would before the Plaintiffs sought judicial relief. For the most part, Plaintiffs concerns arise from their misreading of their own discovery requests (e.g., complaining that potential internal Secretary of State documents are responsive to requests for communications with local officials); drafts of documents that Plaintiffs already have; local government or third party documents that the Secretary does not possess or control; or documents that simply do not exist. It is likely that a good faith conference would have been more productive than Plaintiffs' decision to seek the Court's involvement, and Defendants remain ready to discuss the issues with the Plaintiffs.

---

[10] *See Bad Moms, LLC v. STX Fin., LLC*, No. 17-cv-62510, 2018 WL 4184535, at *4-5.
[11] *See The Sedona Principles*, 3d ed. 19 Sedona Conf. J. 1, 124 (2018).

The Honorable Steve C. Jones
c/o Pamela Wright
December 18, 2019
Page 4

On the issue of the privilege log, Plaintiffs are aware that Defendants are still producing some documents (due to the "indexing" issue) and have withheld the privilege log pending that production.

### 3. Access to Protected Information from the *Curling* Case.

Plaintiffs filed their Amended Complaint in February of this year.[12] At that time, Georgia still used Diebold DRE voting machines and ExpressPoll check-in units. Since that time, the Georgia General Assembly mandated that ballot marking devices ("BMDs") supplant all Diebold DREs, and the Secretary awarded a contract to a vendor to provide all-new voting equipment and moved all hosting of the voter-registration software to a facility under the control of the Secretary of State. Plaintiffs are limited to prospective injunctive relief and they never filed a second amended complaint to address the new technology.[13]

Now, Plaintiffs seek to import discovery on outdated voting technology produced in a different lawsuit and subject to a protective order. This Court should deny that request for at least three reasons. First, but for some subpoenas sent to third party vendors, Plaintiffs conducted no written discovery on voting technology generally or the new voting technology specifically. Their attempt to address this omission now is contrary to the Federal Rules of Civil Procedure. Second, Plaintiffs seek information that has been mooted by the mandates of House Bill 316, which requires the state to shift to BMD technology as soon as possible, and that time has come.[14] Third, Plaintiffs' eleventh-hour attempt to rely on disputed discovery in another case prevents Defendant from making objections that they are entitled to under the Federal Rules of Civil Procedure. Put simply, the information Plaintiffs seek is about moot claims that cannot override Defendants' rights to object.

For these reasons, Plaintiffs' requested relief should be denied.

Sincerely,

Josh Belinfante
Special Assistant Attorney General

---

[12] Doc. 41.
[13] *See, e.g. Nat'l Ass'n of Boards of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1308 (11th Cir. 2011) (addressing relief in cases against state officers).
[14] O.C.G.A. § 21-2-300.