# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

FAIR FIGHT ACTION, INC., *et al.*,

    *Plaintiffs*,

    v.

BRAD RAFFENSPERGER, *et al.*,

    *Defendants*.

Civ. Act. No. 18-cv-5391 (SCJ)

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL CONCERNING PUBLIC BUSINESS CONDUCTED ON PRIVATE EMAIL ACCOUNTS

Plaintiffs Fair Fight Action, Inc., Care in Action, Inc., Ebenezer Baptist Church of Atlanta, Georgia, Inc., Baconton Missionary Baptist Church, Inc., Virginia-Highland Church, Inc., and the Sixth Episcopal District, Inc., hereby file this Memorandum of Law in Support of their Motion to Compel.  As detailed in this memorandum, Plaintiffs respectfully ask this Court to compel Defendants to search any private email accounts, including email accounts of KempforGovernor, of Governor Kemp, Secretary Raffensperger, David Dove, Ryan Germany, Chris Harvey, and Jordan Fuchs (and any other person whom Defendants know to have used a personal email account for Secretary of State business) to determine whether those accounts contain any documents, from January 1, 2015, to the present, that are responsive to Plaintiffs' requests for production.[1]

The Court acknowledged Plaintiffs' interest in reaching an amicable resolution of this issue with defense counsel, and instructed Plaintiffs to file this motion if the parties were unable to reach mutual agreement.  *See* Order, ECF No. 258.  The parties have conferred, and were unable to reach agreement.

---

[1] Plaintiffs are attaching their First, Second, and Fourth Requests for Production as Exhibits 1, 2, and 3. They are referred to herein as "Plaintiffs' [First, Second, or Fourth] RFP No. ___."

**FACTUAL BACKGROUND**

The Court is already familiar with the basis for this motion, which is explained in detail in Plaintiffs' February 28 Status Report. *See* ECF No. 255. On February 25, 2020, the Committee on Oversight and Reform of the U.S. House of Representatives released a memorandum that—in addition to highlighting the vast deficiencies in Georgia's election system—revealed documents that were produced to the House Oversight Committee, apparently by the Kemp for Governor campaign. *See id.* at 2. These documents indicate that Secretary of State ("SOS") employees, including now-Governor Kemp, used *personal* (or non-SOS) email accounts to correspond on issues directly related to voter disenfranchisement and suppression and responsive to Plaintiffs' document requests.

For example, Brian Kemp sent one email via Gmail to a KempforGovernor email address and the personal email addresses of several SOS officials illustrating his dismissive reaction to the potential disenfranchisement of Georgia voters. *See* ECF No. 255-6. Kemp sent this message to the Gmail accounts of David Dove, then SOS Chief of Staff and General Counsel, Ryan Germany, at the time an Assistant SOS General Counsel and now SOS General Counsel, and Tim Fleming, at the time a Deputy Secretary of State. *See* ECF No. 255-6. Kemp's email included an article published in The Atlanta Journal-Constitution describing how

2

the town of Thunderbolt challenged the eligibility of more than 300 voters, out of a

total population of 2,600, based on the fact that their names did not appear in its

utility records. *Id.* at 2. The article illustrated the flaws with utility-based

eligibility challenges—highlighting concerns that the State was not doing enough

to protect voters from arbitrary disenfranchisement. *Id.* at 6. In the subject line of

his email, Kemp wrote "Good work, this story is so complex folks will not make it

all the way through it. BK." *Id.* at 2. This email, which obviously relates to

Kemp's role as SOS, is responsive to several of Plaintiffs' requests for production.[2]

Kemp sent another email, this time from a KempforGovernor email account,

appearing to make light of an email from the Stacey Evans campaign regarding

---

[2] *See* Plaintiffs' First RFP No. 4 (requesting "All documents, including policies, procedures, and lists of cancelled registrations, relating to cancelled voter registrations since January 1, 2012"; Plaintiffs' First RFP No. 10 (requesting "All documents concerning the number of voters by county who were removed from the voter registration rolls for any reason and, if available, the reason for the removal beginning as of January 1, 2012"); Plaintiffs' First RFP No. 12 (requesting "All documents relating to complaints that the Secretary of State has received about elections since January 1, 2012, including any investigations conducted by the Secretary of State as a result of such complaints"); Plaintiffs' Fourth RFP No. 6 (requesting "All Documents and Communications related to any actions taken by the Georgia Office of the Secretary of State, including any of its employees or officers, in response to being made aware in any way of problems related to voting in Georgia or voter registration including . . . removal from voter registration rolls").

Georgia's cancellation of more than 591,500 voters, *see* ECF No. 255-9.  David

Dove had forwarded the Evans campaign email from his Gmail account to Kemp's

KempforGovernor email and Fleming's and Germany's Gmail accounts, with

dismissive emojis suggesting that he was crying from laughing so much.  *See id.* at

2.  Kemp responded with a "vomit" emoji.  *Id.*  This, too, is responsive to several

of Plaintiffs' requests for production.[3]

Kemp sent yet another email via Gmail to someone named "Kris," likely

Kris Kobach, with the text of a "substitute resolution" concerning voter fraud from

the National Association of Secretaries of State.  The resolution called on President

Trump to "establish a voter fraud taskforce to root out fraud where it exists in some

states."  *See* ECF. No. 255-5.  This email is responsive to Plaintiffs' first request

for production.  *See* Plaintiffs' First RFP No. 13 (requesting "All documents

---

[3] *See* Plaintiffs' First RFP No. 4; Plaintiffs' First RFP No. 9 (requesting "All documents related to the implementation of the 'use it or lose it' statute (O.C.G.A. § 21-2-234)"); Plaintiffs' Second RFP No. 4 (requesting "All Documents and Communications related to the removal of voters from the voter registration rolls under O.C.G.A. § 21-2-234 for each year from 2011 to the present, including documents describing each voter registration removed, the date of the removal, and the reason for the removal"); Plaintiffs' Fourth RFP No. 6; Plaintiffs' Fourth RFP No. 10 (requesting "All Documents and Communications related to any procedures, policies, or actions taken pursuant, or relating, to O.C.G.A. § 21-2-234").

*relating to* assertions or allegations of voter fraud that the Secretary of State has received since January 1, 2008" (emphasis added).

Defendants supplemented their February 28 Status Report to state that each of these documents was produced to the House Oversight Committee by the Kemp for Governor campaign, not the Secretary of State's Office ("SOS").  ECF No. 257, at 2–3.  According to Defendants, this explains why the documents were not produced in response to Plaintiffs' request for the documents the SOS produced to the House Oversight Committee.  *Id.*  But setting aside the question of whether these three documents should have been produced in response to Plaintiffs' Request for Production of the House Oversight Documents, Defendants did not address Plaintiffs' numerous other document requests to which these communications are responsive.  These three documents show that Kemp and other SOS employees used personal email accounts to communicate with one another about official SOS business. Defendants, however, did not address their failure to independently search the personal and campaign email accounts of SOS employees for responsive documents, including, at a minimum, those of Brian Kemp, Ryan Germany, and David Dove.

SOS employees communicated with one another about SOS business directly relevant to this litigation on personal email accounts, yet Defendants failed

to search these accounts. Defendants made clear during the parties' meet-and-confer session that they do not intend to rectify this omission without court intervention.

## ARGUMENT

Defendants are required to make a "reasonable inquiry" into the completeness of their responses to Plaintiffs' requests for production. *See, e.g.*, *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d 1335, 1350–51 (N.D. Ga. 2012); *Venator v. Interstate Resources, Inc.*, No. CV415-086, 2016 WL 1574090, at *9 (S.D. Ga. Apr. 15, 2016). This requires Defendants to search for all responsive items within their "possession, custody, or control." Fed. R. Civ. P. 34(a)(1).

During the parties' meet-and-confer, Defendants maintained that they do not control the personal email accounts of the SOS's employees. But, for the purposes of discovery, a party has sufficient "control" whenever it has "the legal right to obtain the documents requested upon demand." *Sergeeva v. Tripleton Int'l Ltd.*, 834 F.3d 1194, 1201 (11th Cir. 2016) (quoting *SeaRock v. Stripling*, 736 F.2d 650, 653–54 (11th Cir. 1984)). The Eleventh Circuit has further recognized that "control" can exist when a party has the "practical ability to obtain responsive

6

documents." *See id.* & n.6 (citing *Costa v. Kerzner Int'l Resorts, Inc.*, 277 F.R.D. 468, 470–71 (S.D. Fla. 2011) (internal quotation marks omitted)).

When a government employee uses a personal email account to communicate about governmental affairs, the personal email falls within the relevant government agency's "possession, custody, or control." First, the SOS's status as a governmental entity means that personal emails related to public affairs constitute public records subject to SOS control. Second, even putting aside the SOS's status as a governmental entity, these communications are discoverable because the SOS has control over work-related emails its employees send using personal accounts. Indeed this *has* to be the case or else government officials could evade transparency—or discovery obligations in litigation—simply by using their personal email accounts for official business.

## I.     Documents Related To Public Employees' Discussion Of Public Affairs On Personal Email Accounts Are "Public Records" Over Which The SOS Has Control.

When interpreting open records laws, courts regularly determine that records contained within personal email accounts constitute governmental records within an agency's control. Governing case law interpreting the federal Freedom of Information Act (FOIA) essentially tracks the "possession, custody, or control" standard for discovery obligations: "the agency must be in control of the requested

materials at the time the FOIA request is made," meaning "the materials have

come into the agency's possession in the legitimate conduct of its official duties."

*U.S. Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989).  Applying this

standard, courts have concluded that "[e]mployees' communications on non-

agency accounts may constitute 'agency records' subject to the FOIA."  *Brennan*

*Ctr. for Justice at N.Y. Univ. Sch. of Law v. U.S. Dep't of Justice*, 377 F. Supp. 3d

428, 435–36 (S.D.N.Y. 2019) (collecting cases).

State courts have reached similar conclusions with respect to their own

public records laws.  For example, applying a public records statute that generated

"a presumptive right of access to any record *created or maintained* by a public

agency that relates in any way to the business of the public agency," the California

Supreme Court held "a city employee's communications related to the conduct of

public business do not cease to be public business just because they were sent or

received using a personal account."  *City of San Jose v. Superior Ct.*, 389 P.3d 848,

858 (Cal. 2017); *accord Comstock Residents Ass'n v. Lyon Cty. Bd. of Comm'rs*,

414 P.3d 318, 321–23 (Nev. 2018); *Toensing v. Att'y Gen.*, 178 A.3d 1000, 1004–

07 (Vt. 2017).

Georgia's Open Records Act is in accord.  That Act broadly defines

"[p]ublic record" to include, among other things, "all documents . . . or similar

8

material prepared and maintained or received by an agency or by a private person

or entity in the performance of a service or function for or on behalf of an agency."

O.C.G.A. § 50-18-70(b)(2).  While Georgia courts have not yet considered whether

this statutory definition extends to emails sent or received by government

employees on topics related to public affairs, the definition parallels—or is even

broader than—the definitions under which courts have found a public right to

personal emails like those at issue here.  *See Comstock Residents Ass'n*, 414 P.3d

at 321–23 (records of private entities used in "the provision of a public service");

*Toensing*, 178 A.3d at 1004–07 (information "produced or acquired in the course

of public agency business"); *City of San Jose*, 389 P.3d at 858 (records "created or

maintained by a public agency that relates in any way to the business of the public

agency").

    The newly released communications leave no doubt that SOS officials,

including Kemp, used personal email accounts to perform their public functions

and that these email accounts contain documents responsive to Plaintiffs'

document requests.  When he was Secretary of State—"the State's chief election

official" and "responsible for maintaining Georgia's voter registration list," *Project

Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1326 (N.D. Ga. 2016)—Governor Kemp

corresponded by Gmail with his agency's lawyers (who were also using personal

email addresses) about a news story discussing improper challenges to voters'

eligibility.  Doc. No. 255-6.  He again corresponded with the same people about

the cancellation of hundreds of thousands of Georgia voters, once again sending a

message from a personal email address to their personal email addresses.  Doc. No.

255-9.  And he corresponded from a personal Gmail account about a voter-fraud-

related resolution to be adopted by the National Association of Secretaries of State.

     All of these documents show on their face that SOS personnel were using

personal and other email accounts to discuss SOS business. There is every reason

to believe that these three documents were not the only instances when SOS

personnel used email accounts other than their official SOS accounts to discuss

SOS matters responsive to Plaintiffs' RFPs.  Plaintiffs are not required to prove

with certainty at this juncture that all SOS employees communicated in this

manner.  Instead, Defendants were and still are obligated to make a "reasonable

inquiry" into whether their discovery responses included all relevant information.

*See, e.g.*, *In re Delta/AirTran Baggage Fee Antitrust Litig.*, 846 F. Supp. 2d at

1350–51 (N.D. Ga. 2012). Defendants cannot shirk their discovery obligations by

ignoring personal email accounts that SOS employees used to communicate with

other SOS employees or governmental officials about SOS business.

## II.   Even If The Personal Accounts Did Not Belong To Public Employees, They Would Be Discoverable.

Even if the SOS were not a government agency, it still would be obligated to conduct a diligent search of the personal email accounts of employees who used their personal accounts for their professional work. Courts regularly hold that work-related emails found in current employees' personal email accounts fall within an employer's possession, custody, or control for the purpose of complying with discovery obligations. *See Waymo LLC v. Uber Techs., Inc.*, No. 17-CV-00939-WHA(JSC), 2017 WL 2972806, at \*2 (N.D. Cal. July 12, 2017); *P.R. Tel. Co. v. San Juan Cable LLC*, No. CIV. 11-2135 GAG/BJM, 2013 WL 5533711, at \*1 (D.P.R. Oct. 7, 2013); *Miniace v. Pac. Maritime Ass'n*, No. C 04-03506 SI, 2006 WL 335389, at \*2 (N.D. Cal. Feb. 13, 2006) ("Numerous courts have found that corporations have control over their officers and employees and that corporations may be required to produce documents in their possession."). In so holding, these courts have recognized that an employer has the legal right—or, at a minimum, the practical ability—to obtain work-related documents from current employees. To argue that personal email accounts are beyond the reach of discovery is, as one court expressed, a "remarkable proposition." *Waymo LLC*, 2017 WL 2972806, at \*2. Since Jordan Fuchs, a Deputy SOS, and Ryan Germany, the SOS General Counsel are current SOS employees and Secretary Raffensperger

11

is a named defendant, Defendants unquestionably have the ability to obtain their

work-related emails even when housed in personal accounts.  *See, e.g.*, *Miniace*,

2006 WL 335389, at \*2 (holding that even an outside director's personal emails

were under the control of a corporate defendant because the director could be

removed from the board).

As for Kemp and Dove, not only were they public servants at the time they

exchanged the relevant emails, but they still are employed by the State of

Georgia—and Kemp is the top governmental official and David Dove is his

Executive Counsel.[4] While some courts have distinguished between past and

current employees for discovery purposes, *see Miniace*, 2006 WL 335389, at \*2,

that distinction has been made in cases where an employee has fully left an

employer.  That is not the situation here. For all intents and purposes, the SOS has

the ability to obtain Kemp's and Dove's personal emails.  Any other conclusion

would yield an absurd result: just as in the FOIA context, "an agency always acts

through its employees and officials.  If one of them possesses what would

otherwise be agency records, the records do not lose their agency character just

---

[4] Dove is currently employed as Executive Counsel in the Office of the Governor.
*See David Dove*, Office of the Governor, https://gov.georgia.gov/david-dove (last
visited Mar. 4, 2020).

because the official who possesses them takes them out the door or because he is the head of the agency." *Competitive Enter. Inst. v. Office of Sci. & Tech. Policy*, 827 F.3d 145, 149–50 (D.C. Cir. 2016).

In sum, Defendants cannot seriously contend that their employees' personal emails about SOS business are not discoverable.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' motion to compel and direct Defendants to search the personal email accounts (and the KempforGeorgia account) of Messrs. Kemp, Dove, Raffensperger, Germany, Harvey, and Ms. Fuchs—as well as any other person known to have used a personal email account to conduct the election-related business of the Secretary of State—to identify documents responsive to Plaintiffs' Requests for Production.

## CERTIFICATE OF COMPLIANCE

I certify this Status Report was prepared using one of the font and point

selections the Court has approved. *See* LR 5.1(C)(3).

Respectfully submitted, this, the 6th day of March, 2020.

/s/Leslie J. Bryan
Allegra J. Lawrence (GA Bar No. 439797)
Leslie J. Bryan (GA Bar No. 091175)
Maia Cogen (GA Bar No. 832438)
Suzanne Smith Williams (GA Bar No. 526105)
**LAWRENCE & BUNDY LLC**
1180 West Peachtree Street
Suite 1650
Atlanta, GA 30309
Telephone: (404) 400-3350
Fax: (404) 609-2504
allegra.lawrence-hardy@lawrencebundy.com
leslie.bryan@lawrencebundy.com
maia.cogen@lawrencebundy.com
suzanne.williams@lawrencebundy.com

Thomas R. Bundy (Admitted *pro hac vice*)
**LAWRENCE & BUNDY LLC**
8115 Maple Lawn Boulevard
Suite 350
Fulton, MD 20789
Telephone: (240) 786-4998
Fax: (240) 786-4501
thomas.bundy@lawrencebundy.com

14

Dara Lindenbaum (Admitted *pro hac vice*)
**SANDLER REIFF LAMB ROSENSTEIN &
BIRKENSTOCK, P.C.**
1090 Vermont Avenue, NW
Suite 750
Washington, DC 20005
Telephone: (202) 479-1111
Fax: 202-479-1115
lindenbaum@sandlerreiff.com

Elizabeth Tanis (GA Bar No. 697415)
John Chandler (GA Bar No. 120600)
957 Springdale Road, NE
Atlanta, GA 30306
Telephone: (404) 771-2275
beth.tanis@gmail.com
jachandler@gmail.com

Kurt G. Kastorf (GA Bar No. 315315)
**THE SUMMERVILLE FIRM, LLC**
1226 Ponce de Leon Avenue, NE
Atlanta, GA 30306
Telephone: (770) 635-0030
Fax: (770) 635-0029
kurt@summervillefirm.com

Andrew D. Herman (Admitted *pro hac vice*)
Nina C. Gupta (Admitted *pro hac vice*)
**MILLER & CHEVALIER CHARTERED**
900 Sixteenth Street, NW
Washington, DC 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
aherman@milchev.com
ngupta@milchev.com

15

Matthew G. Kaiser (Admitted *pro hac vice*)
Sarah R. Fink (Admitted *pro hac vice*)
Scott S. Bernstein (Admitted *pro hac vice*)
Norman G. Anderson (Admitted *pro hac vice*)
**KAISERDILLON PLLC**
1099 Fourteenth Street, NW
Eighth Floor West
Washington, DC 20005
Telephone: (202) 640-2850
Fax: (202) 280-1034
mkaiser@kaiserdillon.com
sfink@kaiserdillon.com
sbernstein@kaiserdillon.com
nanderson@kaiserdillion.com

Kali Bracey (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Fax: (202) 639-6066
kbracey@jenner.com

Jeremy M. Creelan (Admitted *pro hac vice*)
Jeremy H. Ershow (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
919 Third Avenue
New York, New York 10022
Telephone: (212) 891-1600
Fax: (212) 891-1699
jcreelan@jenner.com
jershow@jenner.com

16

Von A. DuBose
**DUBOSE MILLER LLC**
75 14th Street N.E., Suite 2110
Atlanta, GA 30309
Telephone: (404) 720-8111
Fax: (404) 921-9557
dubose@dubosemiller.com

Johnathan Diaz (Admitted *pro hac vice*)
Paul M. Smith (Admitted *pro hac vice*)
**CAMPAIGN LEGAL CENTER**
1101 14 St. NW Suite 400
Washington, DC 20005
Telephone: (202)736-2200
psmith@campaignlegal.org
jdiaz@campaignlegal.org

*Counsel for Fair Fight Action, Inc.; Care in Action, Inc.; Ebenezer Baptist Church of Atlanta, Georgia, Inc.; Baconton Missionary Baptist Church, Inc.; Virginia-Highland Church, Inc.; and The Sixth Episcopal District, Inc.*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that, on March 6, 2020, I caused to be served the foregoing

**MEMORANDUM IN SUPPORT OF MOTION TO COMPEL** by filing it

through the Court's ECF system, which will serve the following counsel:


Chris Carr, Esq.
Attorney General
Dennis Dunn, Esq.
Deputy Attorney General
Russell Willard, Esq.
Senior Assistant Attorney General
**Georgia Office of the Attorney General**
40 Capitol Square
Atlanta, GA 30334
ccarr@law.ga.gov
ddunn@law.ga.gov
rwillard@law.ga.gov

Joshua Barrett Belinfante**,** Esq.
Vincent Robert Russo, Jr., Esq.
Brian Edward Lake, Esq.
Carey Allen Miller, Esq.
Alexander Denton, Esq.
Special Assistant Attorneys General
**Robbins Ross Alloy Belinfante Littlefield, LLC**
500 Fourteenth St., N.W.
Atlanta, GA 30318
Telephone: (678) 701-9381
Fax: (404) 856-3250
jbelinfante@robbinsfirm.com
blake@robbinsfirm.com
vrusso@robbinsfirm.com
cmiller@robbinsfirm.com
adenton@robbinsfirm.com

Bryan P. Tyson, Esq.
Bryan F. Jacoutot, Esq.
Diana LaRoss, Esq.
Special Assistant Attorneys General
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, GA 30339
Telephone: (678) 336-7249
btyson@taylorenglish.com
bjacoutout@taylorenglish.com
dlaross@taylorenglish.com

This, the 6th day of March, 2020.


                        */s/ Leslie J. Bryan*
                        Leslie J. Bryan