IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FAIR FIGHT ACTION, INC., *et al.*,<br><br>　　　Plaintiffs,<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official Capacity as Secretary of State of Georgia; *et al.*,<br><br>　　　Defendants. | Civil Action File<br><br>No. 1:18-cv-05391-SCJ |

## DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF DR. KHALILAH BROWN-DEAN

Defendants Brad Raffensperger, in his official capacity as Secretary of State of the State of Georgia (the "Secretary"), the State Election Board, and State Election Board Members Rebecca Sullivan, David Worley, and Anh Le (collectively, the "Defendants"), submit this Motion to Exclude the Testimony of Dr. Khalilah Brown-Dean ("Dr. Brown-Dean") pursuant to Federal Rule of Evidence 702. This Motion seeks to exclude Dr. Brown-Dean's testimony at trial and for this Court's consideration of Defendants' Motions for Summary Judgment. *See Chapman v. Procter & Gamble Distrib., LLC,* 766 F.3d 1296, 1313 (11th Cir. 2014) (citation omitted) (providing that only admissible evidence can be considered on a motion for summary judgment).

The parties disagree on the role of the Secretary versus that of county election officials, *See, e.g.*, [Doc. 68], but this Court has already opined that the question is a legal one. *See* Nov. 20, 2020 Hr'g Tr. at 43. Nevertheless, Plaintiffs offer the testimony of Dr. Brown-Dean to opine on the Secretary's legal obligations and Georgia election law. [Doc. 80, p. 2] (disclosing Dr. Brown-Dean's testimony regarding "elections-related duties of the [S]ecretary of [S]tate under Georgia law and under federal law."); *see also* [Doc 138, p. 3]. Her testimony should be excluded for four reasons: (1) it impermissibly seeks to opine on the law; (2) Dr. Brown-Dean is not qualified to offer a legal opinion; (3) her testimony is not helpful to the jury because she provides an irrelevant quantitative analysis that would confuse and not aid the jury; and (4) she did not utilize a reliable methodology in reaching her conclusions.

## I.     Factual Background—Dr. Brown-Dean's legal testimony.

Dr. Brown-Dean is an Associate Professor of Political Science at Quinnipiac University. [Doc. 138 at 2]. While she has authored a number of publications, none of her writings have focused on the role of the Georgia Secretary of State in election administration. Dr. Brown-Dean is not a lawyer, nor has she ever been to law school. *See* Transcript of December 11,

2019 Deposition of Dr. Khalilah Brown-Dean, 31:6–11, attached as **Exhibit 1**.

Dr. Brown-Dean offers several opinions in her report,[1] namely that enforcement and administrative oversight of the right to vote rests with states under the concept of federalism, and, within the State of Georgia, the Secretary has the primary responsibility to:

- oversee the process of voter participation in federal elections,
- address and reconcile undue barriers to voting, and
- protect voter access to federal elections.

[Doc. 138 at 3–4]. She concludes that these responsibilities supersede any authority delegated or provided to the counties. [Doc. 138 at 18-19].

---

[1] Dr. Brown-Dean submitted her initial Expert Report, [Doc. 91], on August 15, 2019. She submitted a second Expert Report, [Doc. 138], on November 18, 2018. Among other changes, the November report contained substantive changes to Opinion 3, [Doc. 138 at 3-4; Brown-Dean Dep. Tr. 62:11-13], and reflected an increase in the number of "duties" for which Dr. Brown-Dean opined the Secretary was legally responsible. [Doc. 91 at 19; Doc 138 at 20]. Dr. Brown-Dean's explanation for the submission of the November report was Georgia's voting equipment update, [Brown-Dean Dep. Tr. 35:1-7], which is presumably a reference to House Bill 316, replacing direct-recording electronic voting machines (DREs) with touchscreen ballot-marking devices (BMDs). Dr. Brown-Dean testified in her deposition that it was her intent for the November report to replace the August report in full. Brown-Dean Dep. Tr. 119:10-12. All references herein to Dr. Brown-Dean's Expert Report are to the November report.

Dr. Brown-Dean based her opinion on federal law: the National Voter Registration Act ("NVRA"); the Help America Vote Act ("HAVA"); the Voting Rights Act of 1965 (the "VRA"); and the Supreme Court's decision in *Shelby County, Alabama. v. Holder*, 570 U.S. 529 (2013).  Brown-Dean Dep. Tr. 137: 8-9; *see also* [Doc. 138 at 3].  On the *Shelby County* decision, Dr. Brown-Dean also opines—without citation or support from judicial decision or legal text—that the Court's decision: (1) "shifted" the "primary responsibility" of preventing "harmful electoral practices" from the federal government to states' chief election officers, resulting in their "heightened" responsibility "to address and reconcile undue barriers to voting," [Doc. 138, pp. 3-4, 19–20]; and (2) "imposed a primary responsibility on the chief election officers in states" to protect voter access to federal elections.  Brown-Dean Dep. Tr. 71:22-72:25; [Doc. 138 at 4].  Dr. Brown-Dean acknowledged that *Shelby* does not expressly state or hold the conclusions she reaches; she states that it was, instead, an effect of the Court's opinion.  Brown-Dean Dep. Tr. 73:5.

During her deposition, Dr. Brown-Dean clarified the federal rights and protections she refers to in her discussion of *Shelby County* are those afforded by the VRA, HAVA, NVRA, and in particular the 14th and 15th Amendments.  Brown-Dean Dep. Tr. 93:12-17.  Here, Dr. Brown-Dean opines that the Secretary now also has the primary authority to enforce the 14th and 15th

Amendments.  Brown-Dean Dep. Tr. 94:1-95:9.  Yet, Dr. Brown-Dean provides no independent basis for this opinion; it is hers alone, though she later includes a list of Georgia statutes described below as also forming her opinion.  Brown-Dean Dep. Tr. 98:6-12.

The state statutes relied upon by Dr. Brown-Dean are identified as "Table 2" in her report. [Doc. 138 at 20].  These statutes were pre-selected and provided to her by Plaintiffs' counsel.[2]  Brown-Dean Dep. Tr. 98:16-18.  Her opinion also considered various Georgia regulations, which were also supplied by Plaintiffs' counsel and included in "Table 2" of her report. *Id.* at 100:2-24.  Lastly, there is no indication in Dr. Brown-Dean's report or deposition that she reviewed any decisions issued by Georgia courts.

## II.  Standard of admissibility under Rule 702 and *Daubert*.

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) The testimony is based on sufficient facts or data; (c) The testimony is the product of reliable principles or methods; and (d) The expert

---

[2] The day before Dr. Brown-Dean's deposition, Plaintiffs' counsel emailed to Defendants yet a third version of Table 2. This table contained additional changes in an apparent attempt to further account for House Bill 316. Brown-Dean Dep. Tr. 126:6-127:4.

has reliably applied the principles and methods to the facts of the case.

"Under Rule 702 and *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)], district courts must act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). The primary purpose of this gatekeeping function is to ensure that an expert "'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Am. Gen. Life & Acc. Ins. Co. v. Ward*, 530 F.Supp. 2d 1306, 1312 (N.D. Ga. 2008) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

For expert testimony to be considered reliable, it must be supported on "good grounds." *Encompass Indem. Co. v. Ascend Techs., Inc.*, No. 1:13-CV-02668-SCJ, 2015 WL 10582168, at *11 (N.D. Ga. Sept. 29, 2015) (quoting *Daubert*, 509 U.S. at 590). The court may consider four non-exhaustive factors to assess reliability: "(1) [t]estability of the theory or technique; (2) whether or not there is a known or potential rate of error; (3) whether the theory or technique has been subjected to peer review; and (4) whether the theory has received general acceptance in the relevant community." *Butler v. First Acceptance Ins. Co., Inc.*, 652 F. Supp. 2d 1264, 1271 (N.D. Ga. 2009)

(citing *Daubert*, 509 U.S. at 593-94). For it to be considered relevant, the expert testimony must "logically advance[] a material aspect" of a party's case. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999).

> The burden is on the proponent of the expert testimony to show:
>
> (1) the expert is qualified to testify about the matters he intends to address; (2) the methodology used by the expert to reach his conclusions is sufficiently reliable; and (3) the expert's testimony will assist the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or determine a fact in issue.

*Maiz v. Virani*, 253 F.3d 641, 665 (11th Cir. 2001). Taken together, "the admissibility of an expert's opinion turns on three things: qualifications, reliability, and helpfulness." *Coggon v. Fry's Elecs., Inc.*, 2019 WL 2137465, at *2 (N.D. Ga. Feb. 6, 2019).

### III. Dr. Brown-Dean's testimony offers impermissible legal opinions she is not qualified to provide, and her testimony is unhelpful to the trier of fact and based on unreliable methodology.

Dr. Brown-Dean's testimony is inadmissible under Rule 702 for four reasons: First, Dr. Brown-Dean's testimony offers myriad legal conclusions as to the Secretary's statutory duties, but, as this Court previously noted in its December 5, 2019 Order denying Plaintiffs' request to depose Governor Brian Kemp to ascertain his interpretation of current election law, "generally, 'the interpretation of a statute is a question of law for the court to decide.'" [Doc.

154, p. 19] (quoting *Birnholz v. 44 Wall St. Fund, Inc.*, 880 F.2d 335, 341 n.8 (11th Cir. 1989)).  Second, even if Dr. Brown-Dean's legal opinions were otherwise permissible, she is not qualified to offer those opinions—she is not a lawyer, nor has she ever been to law school.  Brown-Dean Dep. Tr. 31:6-11.  Third, Dr. Brown-Dean's testimony is not helpful to the jury and her testimony will only serve to mislead and confuse.  Lastly, Dr. Brown-Dean utilized no methodology in her report, much less one that is sufficiently reliable to reach her conclusions.

A. <u>Dr. Brown-Dean's testimony offers impermissible opinions regarding the law.</u>

This Court has previously noted that an expert opinion concerning "testimony on ultimate questions of law, i.e., legal opinions or conclusions, is not favored." *Plantation Pipe Line Co. v. Associated Elec. & Gas Ins. Servs. Ltd.*, No. 1:09-CV-1260-SCJ, 2011 WL 13143563, at *4 (N.D. Ga. Dec. 2, 2011) (quoting *Anderson v. Suiters*, 499 F.3d 1228, 1237 (10th Cir. 2007)). *See also*, *Coggon*, 2019 WL 2137465, at *4 (excluding expert testimony that draws improper legal conclusions that would not assist the trier of fact).

Here, Dr. Brown-Dean's analysis should be excluded because it impermissibly opines on a disputed issue of law.  Her deposition testimony and report focus largely on what she called the Secretary's "duties," and

obligations she interprets from statutes and case law.  Brown-Dean Dep. Tr. 100:16-24; 72:20-23.  It is axiomatic that the question of whether a statute imposes an obligation or duty is a legal question.  *Santillana v. Florida State Court Sys., Eighteenth Judicial Circuit, Seminole Cty. Courts*, 6:09-CV-2095-ORL-19, 2010 WL 6774486, at *6 (M.D. Fla. June 4, 2010) (citing *McCain v. Fla. Power Corp.,* 593 So.2d 500, 502 (Fla.1992)).  Indeed, this Court has previously utilized the definition of "legal conclusion as '[a] statement that expresses a legal duty or result but omits the facts creating or supporting the duty or result." *Plantation Pipe Line Co.*, 2011 WL 13143563, at *3 (quoting Black's Law Dictionary 976 (9th ed. 2009)).  Such is precisely the case with Dr. Brown-Dean's testimony.  The same is true of Dr. Brown-Dean's opinions regarding the *Shelby County* decision.  The legal effect of a court's opinion and an interpretation of that opinion not present in the text of the opinion itself constitute legal interpretation of a case. *Id.*  In other words, Dr. Brown-Dean expounds additional meaning into *Shelby County* when she takes the court's opinion and draws a conclusion as to its effect on the legal duties of state election officials.

   Dr. Brown-Dean's testimony—on both statutory and case law—is impermissible precisely because it seeks to opine on questions of law that are reserved for the Court alone.  *United States v. Oliveros*, 275 F.3d 1299, 1307

(11th Cir. 2001). "Domestic law is properly considered and determined by the court whose function it is to instruct the jury on the law; domestic law is not to be presented through testimony and argued to the jury as a question of fact." *Id.* "[T]he court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990). "As a general matter, all witnesses, either acting as a lay witness or an expert witness, are prohibited from testifying as to questions of law regarding the interpretation of a statute, the meaning of terms in a statute, or the legality of conduct." *Leathers v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 13014634, at *4 (N.D. Ga. Dec. 3, 2012) (internal quotations omitted). Dr. Brown-Dean crosses the line established by these cases and this Court when she seeks to inform the jury what federal and state law require of the Secretary. This is not a close call.

B. Even if Dr. Brown-Dean's legal opinions are otherwise permissible, she is not qualified to offer them.

Having shown that Dr. Brown-Dean's testimony is exclusively about state and federal law, her testimony should also be excluded because she is not qualified to opine on those topics. Expert testimony is only admissible if "the expert is qualified to testify competently regarding the matters he intends to address." *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d

548, 562 (11th Cir. 1998).  Here, Plaintiffs have offered Dr. Brown-Dean's testimony regarding "the elections-related duties of the [S]ecretary of [S]tate under Georgia law and federal law." [Doc. 80, p. 2].  But Dr. Brown-Dean is not a lawyer and never attended law school (Brown-Dean Dep. Tr. 31:6-11), and her current academic work is not focused on legal (as opposed to historical or policy) topics.  [Doc. 138, pp. 2-3].  Thus, beyond not having the requisite legal training to offer a legal opinion, she also lacks the type of experiences that would support her testimony in this lawsuit.

C. Dr. Brown-Dean's testimony is not helpful to the trier of fact and instead will likely confuse and mislead.

Equally concerning is that Dr. Brown-Dean's analysis of Georgia law is nothing more than a means for Plaintiffs' counsel to testify about what statutes they find relevant to this Court's legal deliberations.  Dr. Brown-Dean did not create "Table 2" herself, nor did she conduct an independent assessment of the law beyond what was provided to her.  Brown-Dean Dep. Tr. 98:13-100:24.

Under these circumstances, Dr. Brown-Dean merely "parrot[s] the conclusion" of Plaintiffs' counsel by determining the statutes pre-selected by Plaintiffs' counsel are legal duties of the Secretary.  *Jacobson v. R.J. Reynolds Tobacco Co.*, WL 12094860, at *2 (S.D. Fla. Sept. 20, 2013).  This

regurgitation of Plaintiffs' own conclusions is not helpful to the jury. "If an expert can offer nothing more than his stamp of approval on the plaintiff's case, his testimony does nothing to advance a material aspect of their claims, and therefore lacks the indicia of relevant required by Rule 702 and Daubert." *Coggon*, 2019 WL 2137465, at \*4 (quoting *Sackman v. Balfour Beatty Communities, LLC*, 2014 WL 4415938, at \*26 (S.D. Ga. Sept. 8, 2014)).

It is also inadmissible because the jury will not be deciding questions of law. "Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1110–11 (11th Cir. 2005). An expert cannot "merely tell the jury what result to reach." *Montgomery*, 898 F.2d at 1541.

Finally, Dr. Brown-Dean's list of statutes and regulations will likely cause more confusion to the jury than anything else. Specifically, she appears to have conducted a largely quantitative analysis—suggesting some import to the number of statutes or regulations that mention the Secretary. The (legal) issue is not the quantity of statutory or regulatory text; the issue is what the text actually does. If the analysis even reaches them, jurors could mistakenly believe that the number of statutes addressing the Secretary's purported duties demonstrates the thrust of those obligations. There is not

support for this concept in law.  "Simply put, expert testimony may be assigned talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *United States v. Frazier*, 387 F.3d 1244, 1263 (11th Cir. 2004).

### D. Dr. Brown-Dean's testimony is based on unreliable methodology.

Even if Dr. Brown-Dean were permitted to testify about the Secretary's legal duties, the testimony should be excluded because Dr. Brown-Dean did not employ reliable methodology (or any methodology) to reach her conclusions.  "The reliability inquiry focuses solely on the principles and methodology underlying the expert's opinion." *Coggon*, 2019 WL 2137465, at *2.  Here, Dr. Brown-Dean read statutes from a table and a Supreme Court decision, then offered her opinion on their meaning.  In addition, Dr. Brown-Dean did not, herself, select the statutes that went into "Table 2," so she employed no methodology in making those determinations.  Moreover, Dr. Brown-Dean has not indicated how she defined a "duty" for it to count in her tally of 156 duties, and she does not say what criteria she used to determine which provisions provided to her by Plaintiffs' counsel constitute duties of the Secretary.

The problem with this lack of methodology is plain. As an initial matter, none of her methods or analysis—on *Shelby County* or Georgia—are peer reviewed, and none has been published. Brown-Dean Dep. Tr. 71:13-25; 72:20-73:8. In assessing methodology, "[t]he fact of publication (or lack thereof) in a peer reviewed [is] a relevant, though not dispositive, consideration." *Daubert*, 509 U.S. at 594. *See also Hendrix ex rel. G.P. v. Evenflo Co.*, 609 F.3d 1183 (11th Cir. 2010) (excluding proposed expert testimony where there was no evidence proposed expert's theory of causation had been tested or subject to peer-reviewed publication).

Second, the lack of any identifiable methodology leads Dr. Brown-Dean to conduct numerous errors as demonstrated by her tally. For example, Dr. Brown-Dean apparently included in her duty tally statutes that contain discretion to act but no obligation to do so.[3] She also included statutes in which the Secretary is on the receiving end of a different party's obligation.[4]

---

[3] One such example is Ga. Comp. R. & Regs. 183-1-6-.02(5)(c), which provides, "[t]he secretary may develop and provide to the board of registrars manuals for this instruction." *See also* Brown-Dean Dep. Tr. at 135 ("Q: 'If it is simply a power without an obligation, you still included it in your 156 duties and responsibilities?' A: 'I did.'").

[4] For example, Ga. Comp. R. & Regs. 183-1-12-.02(8)(b) provides, "[i]n the event of any malfunction or problem with DRE units, the county election superintendent shall document the problem and its resolution and shall provide such information to the Secretary of State." *See also,* Ga. Comp. R. & Regs. 183-1-12-.07(9) ("The registrars and election superintendent

Dr. Brown-Dean also did not take care to prevent double-counting of statutes. For example, she is not sure whether a duty contained in both a statute and its implementing regulation were double-counted. Brown-Dean Dep. Tr. 103:11-16. Similarly, she included general statutes that require the Secretary to perform other duties as prescribed by law, even though those statutes encapsulate duties already contained in other laws; this means her compilation of "duties" must include double-counts.[5] Brown-Dean Dep. Tr. 129:22-132:4. There is also at least one instance where a duty that appears in three different statutes was counted three separate times even though each statute relates to the same act—a request for the Secretary to reexamine a voting device.[6] The only difference is who the statute authorizes to make the request to the Secretary. Lastly, Dr. Brown-Dean included statutes and regulations that are not even at issue in this case, [Brown-Dean

---

shall coordinate the return of the flash cards from the ExpressPoll units to the Secretary of State."); Ga. Comp. R. & Regs. 183-1-12-.02(2)(g)(6) ("The election superintendent shall notify the Secretary of State of any instances of unaccounted for" voting equipment).

[5] *See, e.g.*, O.C.G.A. § 21-2-50(a)(8) ("(a) The Secretary of State shall exercise all the powers granted to the Secretary of State by this chapter and shall perform all the duties imposed by this chapter, which shall include the following: . . . (8) To perform such other duties as may be prescribed by law").

[6] O.C.G.A. § 21-2-368(a); O.C.G.A. § 21-2-324(a); and O.C.G.A. § 21-2-368(a); and O.C.G.A. § 21-2-379.24(a)-(d).

Dep. Tr. 103:25-104:7], are inapplicable,[7] or are no longer in effect.[8] Because Dr. Brown-Dean employed no methodology (much less any real independent research into Georgia law), it is impossible to deduce how she analyzed the statutes to determine whether something constituted a duty and what method of counting she utilized. Thus, her testimony is unreliable.

Dr. Brown-Dean's testimony is also unreliable because she did not read all of the actual statutes in Table 2. Brown-Dean Dep. Tr. 101:10-102:13. Instead, she mostly relied on the selected portions of text that had already been entered into Table 2 by Plaintiffs. *Id.*; *see also Id.* at 57:19-25. Thus, her testimony as an expert witness is unreliable because it is simply a regurgitation of portions of Georgia law already chosen (and described) by Plaintiffs.

## IV.   Conclusion

Plaintiffs offer Dr. Brown-Dean's testimony to provide legal conclusions and opinions inappropriate for an expert witness—particularly one not

---

[7] Dr. Brown-Dean includes at least 8 statutes related to "voting machines," also known as "lever machine[s]," [O.C.G.A. § 21-2-2(40)], which are antiquated voting devices no longer used in federal elections.

[8] As discussed above, Dr. Brown-Dean's November report added "duties" to Table 2 as a result of House Bill 316, but inexplicably declined to also remove the no-less-than 13 DRE-related "duties" in regulations that were no longer applicable as a result of the bill.

qualified to offer legal opinions. Further, her testimony will not be helpful to the jury, as she merely parrots Plaintiffs' own conclusions and provides an irrelevant quantitative analysis. Finally, setting aside those bases, she did not utilize a reliable methodology to reach those "unhelpful" conclusions. For these reasons, Dr. Brown-Dean's testimony is inadmissible under Rule 702 and should be excluded.

Respectfully submitted this 24th day of June, 2020.

>*/s/ Josh Belinfante*
>Josh Belinfante
>Georgia Bar No. 047399
>jbelinfante@robbinsfirm.com
>Vincent Russo
>Georgia Bar No. 242628
>vrusso@robbinsfirm.com
>Carey Miller
>Georgia Bar No. 976240
>cmiller@robbinsfirm.com
>Brian Lake
>Georgia Bar No. 575966
>blake@robbinsfirm.com
>Alexander Denton
>Georgia Bar No. 660632
>adenton@robbinsfirm.com
>Melanie Johnson
>Georgia Bar No. 466756
>mjohnson@robbinsfirm.com
>**Robbin Ross Alloy Belinfante Littlefield LLC**
>500 14th Street NW
>Atlanta, GA 30318
>Telephone: (678) 701-9381
>Facsimile: (404) 856-3250

Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, GA 30339
Telephone: 678-336-7249

Christopher M. Carr
Attorney General
GA Bar No. 112505
Brian K. Webb
Deputy Attorney General
GA Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
GA Bar No. 760280
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*Attorneys for Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF DR. KHALILAH BROWN-DEAN was prepared double-spaced in 13-point Century Schoolbook font, approved by the Court in Local Rule 5.1(C).


                                        */s/Josh Belinfante*
                                        Josh Belinfante

## **CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF DR. KHALILAH BROWN-DEAN with the Clerk of Court using the CM/ECF system, which will send e-mail notification of such filing to all counsel of record.

This 24th day of June, 2020.

*/s/ Josh Belinfante*
Josh Belinfante
GA Bar No. 047399