# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| FAIR FIGHT ACTION, INC., *et al*., | |
| Plaintiffs, | |
| v. | Civil Action File |
| BRAD RAFFENSPERGER, in his official Capacity as Secretary of State of Georgia; *et al*., | No. 1:18-cv-05391-SCJ |
| Defendants. | |

## DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF KEVIN KENNEDY AND SUPPORTING MEMORANDUM OF LAW

Defendants Brad Raffensperger, in his official capacity as Secretary of State of the State of Georgia (the "Secretary"), the State Election Board (the "Board"), and State Election Board Members Rebecca Sullivan, David Worley, and Anh Le (collectively, the "Defendants"), submit this Motion to Exclude the Testimony of Kevin Kennedy pursuant to Federal Rule of Evidence 702. This Motion seeks to exclude Mr. Kennedy's testimony at summary judgment and trial. *See Chapman v. Procter & Gamble Distrib., LLC,* 766 F.3d 1296, 1313 (11th Cir. 2014) (citation omitted) (providing that only admissible evidence can be considered on a motion for summary judgment).

An underlying issue in this matter is the role of the Secretary and State Election Board versus that of county election officials in training various election workers, specifically poll workers. *See* Doc. No. [68] (Order on Defendants' Renewed Motion to Dismiss). Defendants maintain that the counties are responsible for poll worker training. *See* O.C.G.A. § 21-2-99 ("the election superintendent shall provide adequate training to all poll officers and poll workers"). Doc. No. [68], p. 70. Plaintiffs disagree, and have offered the testimony of Kevin Kennedy "to opine the basic policies, procedures and practices that the Georgia Secretary of State and the State Election Board must have in place in order to train county election superintendents, registrars and poll workers to carry out their duties; and in order to ensure that elections comply with state and federal election laws and the United States Constitution; and whether those policies, practices and procedures are in place in Georgia." Doc. No. [167], p. 1. In short, Mr. Kennedy testifies that the Secretary and Board are legally obligated to train poll workers, *id.*, p. 8, and such training must incorporate specific practices in order to be effective. *See, e.g.*, *id.*, pp. 13-14.

Mr. Kennedy's testimony should be excluded for three reasons. First, Mr. Kennedy is not qualified to opine on election worker training in Georgia because he has no direct experience with Georgia elections, is not barred in

Georgia, and has never served as an elections official outside of Wisconsin.

Second, he has not employed a sufficiently reliable methodology to reach his

conclusions.  Rather, his testimony is solely comprised of comparing Georgia's

procedures to those of Wisconsin and summarily declaring, without

examination or any form of independent analysis, the latter to be superior.

Third, his testimony is not helpful to the trier of fact because it constitutes

impermissible legal conclusions, is irrelevant, and has significant potential to

confuse or mislead the jury.

## I.    Facts: Mr. Kennedy's Testimony.

Mr. Kennedy has experience as an election official in the State of

Wisconsin, but he has never administered elections in any other state. (*See*

Transcript of March 31, 2020 Deposition of Kevin Kennedy, 73:23-74:1,

attached as **Exhibit 1**.[1])  Mr. Kennedy is also an attorney and is a member of

the Wisconsin bar, but he is not a member of the bar in any other state and

has never previously issued an opinion on Georgia law.  (*Id.* at 15:12- :17.)

Neither Mr. Kennedy nor his consulting firm, Kennedy Election Law

Services, has ever been retained by a state government for advice or

---

[1] Due to size limitations, Exhibit 1 was divided into three sections for filing:
Exhibit 1 Part 1, Exhibit 1 Part 2, and Exhibit 1 Part 3.

consultation on election administration. (*Id.* at 18:13- :22.)  Mr. Kennedy believes he has observed elections in other states but can only remember observing elections in South Korea.  (*Id.* at 174:4- :10.)

Mr. Kennedy offers several opinions in his report, namely what he believes are components of a good election worker training program and how Georgia's training materials are "lacking key ingredients" he finds important. Doc. No. [167], p. 10.  As further described herein, Mr. Kennedy's opinions on the insufficiency of Georgia's training materials are based almost exclusively on his Wisconsin efforts that may no longer be used in the Badger State.[2]  He does not cite any other models, training guides, or recognized competitor methods.

Mr. Kennedy's proffered report includes testimony on both state and federal election laws.  He cites federal election laws that "election officials need to be familiar with."  Doc. No. [167], pp. 6-8 (citing the Help America Vote Act of 2002, the Voting Rights Act of 1965, the National Voter Registration Act of 1993, the Uniformed and Overseas Citizens Absentee Voting Act, and the Voting Accessibility for the Elderly and Handicapped

---

[2]  Wisconsin's Government Accountability Board, for which Kennedy was Director and General Counsel, was dissolved by an act of the Legislature in 2016 in favor of two new commissions. (Kennedy Dep. 28:8-31:16.)

Act).  He further devotes several paragraphs to reciting certain Georgia

statutes related to the Board and the Secretary.  *Id.* at pp. 9-10.  Beyond

simply identifying these legal provisions, however, Kennedy further opines on

their meaning and apparent legal effect.  For example, his report states that

the Board and the Secretary "are *required* by law to train local election

officials . . . and ensure their performance conforms to Georgia and federal

law."  *Id.* at p. 8; (Kennedy Dep. 58:16-18) (emphasis added).  Mr. Kennedy

also attempts to interpret statutes and claims to have surmised "implicit . . .

requirements" and obligations of Defendants. Doc. No. [167], p. 9. These

implicit obligations include the "responsibility for the [State Election] Board

to ensure local election officials are apprised of their responsibilities and the

consequences of failure to carry out their duties." *Id*. He also opines that the

Secretary is subject to an implicit obligation to train poll workers. (Kennedy

Dep. 64:1-66:6.)  Mr. Kennedy has not, however, examined any decision of

Georgia's appellate courts to provide any support for his contention that

implicit public duties are recognized in Georgia.  (*Id.* at 58:19- :22.)

Mr. Kennedy's report provides specific and irrelevant detail as to what

he believes are components of a good training program.  These components

include protocols "presented in language that is easy for a diverse audience to

understand," "a hands-on approach" to technology with user manuals

containing "checklists and step-by-step instructions," "accountability mechanisms" such as tests or assessments, and training protocols accessible to the public. Doc. No. [167], p. 8. Additional elements of a Kennedy-approved training program include a "communication protocol;" requirements for county election officials to report to the Secretary that they have received, reviewed, and taken steps to implement Official Election Bulletins (OEBs); "focus[ing] on teaching challenges due to age, background and learning styles of the local election officials;" and addressing past history of discrimination "in a straightforward manner." *Id.* at pp. 13-14. Mr. Kennedy also has his own ideas for proper election administration including how to log and track complaints, monitor early and Election Day voting, and conduct post-election paperwork audits. *Id.* at pp. 20-21.

While Mr. Kennedy concludes that some of Georgia's training efforts are effective and detailed, *id.* at pp. 14 and 22, he opines that, for other aspects, there are four elements missing from the Secretary's and Board's training and enforcement of elections. *Id.* at p. 16. These include a "voter-centric" focus, a comprehensive training program for poll officers and poll workers directed by the Board and the Secretary, performance accountability for election officials, and transparency. *Id.*

## II.   Rule 702 And The *Daubert* Standard.

Federal Rule of Evidence 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) The testimony is based on sufficient facts or data; (c) The testimony is the product of reliable principles or methods; and (d) The expert has reliably applied the principles and methods to the facts of the case.

"Under Rule 702 and *Daubert* [*v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)], district courts must act as 'gatekeepers' which admit expert testimony only if it is both reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005). The primary purpose of this gatekeeping function is to ensure that an expert "'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Am. Gen. Life & Acc. Ins. Co. v. Ward*, 530 F. Supp. 2d 1306, 1312 (N.D. Ga. 2008) (quoting *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 152 (1999)).

For expert testimony to be considered reliable, it must be supported on "good grounds." *Encompass Indem. Co. v. Ascend Techs., Inc.*, No. 1:13-CV-02668-SCJ, 2015 WL 10582168, at *11 (N.D. Ga. Sept. 29, 2015) (quoting *Daubert*, 509 U.S. at 590). The court may consider four non-exhaustive

factors to assess reliability: "(1) [t]estability of the theory or technique; (2) whether or not there is a known or potential rate of error; (3) whether the theory or technique has been subjected to peer review; and (4) whether the theory has received general acceptance in the relevant community." *Butler v. First Acceptance Ins. Co., Inc.*, 652 F. Supp. 2d 1264, 1271 (N.D. Ga. 2009) (citing *Daubert*, 509 U.S. at 593-94). For it to be considered relevant, the expert testimony must "logically advance[] a material aspect" of a party's case. *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1312 (11th Cir. 1999). The burden of establishing these factors is on the party seeking to introduce the evidence. *Rink*, 400 F.3d at 1292. Taken together, "the admissibility of an expert's opinion turns on three things: qualifications, reliability, and helpfulness." *Coggon v. Fry's Elecs., Inc.*, No. 1:17-cv-03189-SCJ, 2019 WL 2137465, at *2 (N.D. Ga. Feb. 6, 2019).

## III.  Analysis.

A.  <u>Mr. Kennedy's testimony should be excluded because he is not qualified to opine on Georgia elections and his testimony is not reliable.</u>

Expert testimony is only admissible if "the expert is qualified to testify competently regarding the matters he intends to address." *City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). In addition, an expert's testimony must be reliable. "It is proper and necessary for the

trial judge to focus on the reliability of a proffered expert's sources and methods." *Chapman*, 766 F.3d at 1306.

Here, Mr. Kennedy's testimony relies almost exclusively on his experience as a state election official in Wisconsin. Doc. No. [167], p. 3. While experience-based testimony can be admissible, the witness must first provide certain explanations to establish such admissibility. Specifically, an experience-based expert witness "must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004) (internal quotations omitted). These explanations help establish the qualification and reliability prongs of Rule 702, which are often related in this type of testimony. "An expert's qualifications and the reliability of his testimony do not always separate into a clear dichotomy, and, in fact, are often blurred in the case of experience-based expert testimony." *Id.* at 1296 (internal citation omitted).

      1.    *Mr. Kennedy is not qualified to opine on Georgia elections.*

Here, Mr. Kennedy has no elections experience with any state other than Wisconsin. Yet he does not explain just how or why his experience in Wisconsin alone qualifies him to opine about Georgia elections. An expert must "provide[] a reliable foundation or basis for his opinion." *Id.* at 1265.

Mr. Kennedy fails to do so. He does not establish Wisconsin as any sort of proper comparator for Georgia and does not otherwise explain why his experience in Wisconsin, which has a different set of elections laws from that of Georgia, is a sufficient basis for his opinions on the Secretary's role in training election officials or the training protocols the Georgia Secretary of State "must" have. Doc. No. [167], p. 13. Indeed, some of the differences between Georgia and Wisconsin law are quite material. For example, in Wisconsin, the State has an express statutory obligation to train poll workers. *Id.* at p. 3 (citing Wis. Stat § 5.05(7)). Georgia does not. O.C.G.A. § 21-2-99. (*See also* Kennedy Dep. 67:14-68:13.) Mr. Kennedy's experience in Wisconsin is immaterial to what is necessary, and legally required, in Georgia. However qualified Mr. Kennedy may be to discuss Wisconsin elections and Wisconsin law, he does not have the requisite training or experience to opine on Georgia elections. In short, Plaintiffs have failed to show how Mr. Kennedy's experience in Wisconsin provides a sufficient basis for his opinions or otherwise qualifies him to make those opinions.

2.    *Mr. Kennedy's testimony is not reliable.*

Even if Mr. Kennedy were qualified, however, his experience-based testimony should still be excluded because it is not reliable. "Of course, the unremarkable observation that an expert may be qualified by experience does

not mean that experience, standing alone, is a sufficient foundation rendering reliable any conceivable opinion the expert may express." *Frazier*, 387 F.3d at 1261.

Mr. Kennedy does not provide the explanations required by *Frazier* to establish the reliability of his testimony.  Specifically, he fails to explain how his experience in Wisconsin was applied to the facts in this case.  He also does not explain how that experience leads to his conclusions about Georgia. For example, Mr. Kennedy concludes that Georgia's election worker training protocol is lacking key elements and that there are certain elements required of such protocols.  Doc. No. [167], p. 10.  But he does not explain how he applied his prior experience in Wisconsin to the facts in this case in order to reach such a conclusion.  Similarly, Mr. Kennedy goes into specific and extensive detail about how he believes election training and administration should be conducted, but he cannot state why Wisconsin's efforts and policies must be adopted by Georgia.  Mr. Kennedy simply opines that, under his leadership, Wisconsin did it better.  This is an insufficient basis to establish admissibility in this lawsuit. Rule 702 and *Frazier* require more.

This Court has previously excluded experience-based testimony where the proposed expert did not provide the explanations required by *Frazier*.  In *Summit At Paces, LLC v. RBC Bank*, No. 1:09-cv-03504-SCJ, 2012 WL

13076793, at *2 (N.D. Ga. May 22, 2012), this Court excluded the testimony of the plaintiff's expert witness as to the applicable duty of care that an ordinary bank would exercise under the same circumstances. The Court concluded that the expert witness did not explain how his experiences in the banking industry supported his opinion on duty of care under the circumstances at issue, and noted he merely stated his opinion was based on his experience in the bank industry. *Id*. Accordingly, the Court held this testimony was inadmissible. *Id*. Similar to the expert testimony in *Summit At Paces*, Mr. Kennedy fails to provide the explanations required for admitting experience-based testimony under the *Frazier* standard.

In addition to lacking the required *Frazier* explanations, Mr. Kennedy's testimony is also unreliable because he did not employ any methodology in reaching his conclusions. Specifically, Mr. Kennedy is unable to provide any comparator or model standards against which he compares Georgia to reach his conclusions. He cannot point to a model standard for training on provisional ballots, (Kennedy Dep. 174:11-21), standard training materials for elections board members, (Kennedy Dep. 156:12-14), a standard for intake of complaints, (Kennedy Dep. 182:20-183:19), or a threshold foundation to train poll workers, (Kennedy Dep. 84:17-23), despite opining that Georgia should conduct training for each of these elements in his particular way. Nor

are his opinions based on any research, study, or evidence, as he admits that he does not have information on how other states communicate court orders to election officials, (Kennedy Dep. 141:6-9), if other states test their election officials' training and require feedback, (Kennedy Dep. 111:6-19), whether other states have effectively adopted training materials with a "focus on the voter" approach, (Doc 167 at 16; Kennedy Dep. 158:4-5), or case studies showing "a mandatory state-directed uniform training program for poll workers is the best way to ensure the citizen's right to vote is protected." Doc. [167], p. 17 (internal quotations omitted); (Kennedy Dep. 168:4).

In sum, there is no study, no analysis of results and outcomes of one model versus another, no test, no evidence, and no known (much less published) national standard as the basis for his opinion. Essentially, Mr. Kennedy's opinions are based on Wisconsin's former elections model and his gut-assessment of "my way is better than your way."  Such testimony does not meet the reliability prong for admissibility.  At least one other circuit has excluded expert testimony where the plaintiff's proffered expert did not describe the standards against which he was measuring defendants' training in a failure to train case. *Benavides v. County of Wilson*, 955 F.2d 968, 973 (5th Cir. 1992) (Affirming district's court's exclusion of expert testimony on failure to hire, supervise, and train jailers and peace officers in accordance

with national and state standards because the expert's "assertions were only his subjective opinion, unrooted in factual foundation or proven expertise."). *See also*, *Toy v. D.C.*, 549 A.2d 1, 7-8 (D.C. 1988) (Expert's reliance on anecdotal evidence and failure to identify any standards or authorities as support for his opinion were not enough to establish standard of care owed by Department of Corrections to arrestee in a negligence claim).

Without a standard for comparison, Mr. Kennedy is merely providing baseless conclusions and his own personal preferences with no indicia of reliability[3]. This is not sufficient for admissibility, as "[t]he *ipse dixit* of an expert in a given field is simply not enough to establish the reliability of a particular opinion." *Summit At Paces, LLC*, 2012 WL 13076793, at *2 (quoting *Frazier*, 387 F.3d at 1284). "The trial court's gatekeeping function requires more than simply taking the expert's word for it." *Frazier*, 387 F.3d at 1261 (internal quotations omitted).

---

[3] This also shows why Kennedy is not qualified to opine on Georgia's efforts. There is nothing to indicate that Wisconsin's former model complies with the Constitution any more than Georgia's. There is no evidence that, for example, Wisconsin's model withstood a Constitutional challenge or was used as a national standard of constitutionality. As such, it is not a reliable (or relevant) standard of comparison.

B.    <u>Mr. Kennedy's testimony is not helpful to the trier of fact.</u>

Mr. Kennedy's testimony is not helpful to the trier of fact because he impermissibly opines on the law and provides legal conclusions. The testimony is also irrelevant and will likely confuse or mislead the trier of fact, far outweighing the minimal value of the testimony.

1.    *Mr. Kennedy Impermissibly Opines on the Law.*

Mr. Kennedy frequently and impermissibly testifies on the law throughout his report.  First, his report includes several pages describing state and federal election law.  This type of testimony is impermissible under Rule 702, as "the court must be the jury's only source of law." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).  "Domestic law is properly considered and determined by the court whose function it is to instruct the jury on the law; domestic law is not to be presented through testimony and argued to the jury as a question of fact."  *United States v. Oliveros*, 275 F.3d 1299, 1307 (11th Cir. 2001) (citing *United States v. McClain*, 593 F.2d 658, 669-70 (5th Cir. 1979)).  *See also Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1365 (S.D. Fla. 2015) (excluding proposed expert testimony because it "quotes and summarizes relevant statutory provisions, regulations, and regulatory guidance materials.  This entire

swath of the Declaration is not helpful to the jury because it is nothing more than impermissible legal standard testimony.")

Second, the legal conclusions in Mr. Kennedy's report are likewise inadmissible.  For example, Mr. Kennedy's ultimate conclusion is that the Secretary is legally obligated to train poll workers, (Kennedy Dep. 65:7-66:3), which is plainly a question of law. "The question of the existence of such a duty is an issue of law" for the court, not the jury, to decide. *Dollar v. Haralson Cty.*, Ga., 704 F.2d 1540, 1543 (11th Cir. 1983). This Court has previously used the definition of "legal conclusion as '[a] statement that expresses a legal duty or result but omits the facts creating or supporting the duty or result." *Plantation Pipe Line Co. v. Associated Elec. & Gas Ins. Servs. Ltd.*, No. 1:09-cv-1260-SCJ, 2011 WL 13143563, at *3 (quoting Black's Law Dictionary 976 (9th ed. 2009)). This type of opinion is prohibited under Rule 702 because "while an expert may testify as to his opinions on an ultimate issue of fact, he may not testify as to his opinions regarding ultimate legal conclusions." *United States v. Delatorre*, 308 F. App'x 380, 383 (11th Cir. 2009).  In making such assertions, Mr. Kennedy is merely "tell[ing] the jury what result to reach." *Montgomery*, 898 F.2d at 1541. "[S]imply drawing ultimate legal conclusions as opposed to explaining a scientific or technical fact or process" is not helpful to the jury.  *Coggon*, 2019 WL 2137465, at *4.

Similarly, Mr. Kennedy's ultimate conclusion on the Defendants' legal duties regarding poll worker training is also inadmissible because it involves statutory interpretation. "As a general matter, all witnesses, either acting as a lay witness or an expert witness, 'are prohibited from testifying as to questions of law regarding the interpretation of a statute, the meaning of terms in a statute, or the legality of conduct.'" *Leathers v. State Farm Mut. Auto. Ins. Co.*, No. 1:12-CV-00198-SCJ, 2012 WL 13014634, at *4 (N.D. Ga. Dec. 3, 2012) quoting *Dahlgren v. Muldrow*, No. 1:06-cv-00065, 2008 WL 186641, at *5 (N.D. Fla. Jan. 18, 2008). "[T]he interpretation of a statute is a question of law for the court to decide." *Birnholz v. 44 Wall St. Fund, Inc.*, 880 F.2d 335, 341 n.8 (11th Cir. 1989). The jury will not be deciding whether the Secretary or State Election Board must train poll workers, and this testimony offers nothing more than what the lawyers can argue in closing arguments. *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1110-11 (11th Cir. 2005).

In short, Mr. Kennedy is attempting to act as a legal expert on Georgia's election law and it is impermissible for an expert witness to

communicate this type of information to the jury, as the judge is the jury's

only source of law. *Montgomery*, 898 F.2d at 1541.[4]

2. *Mr. Kennedy's opinions on how to train election workers are irrelevant and will mislead or confuse the jury.*

The helpfulness prong of Rule 702 "goes primarily to relevance. Expert

testimony which does not relate to any issue in the case is not relevant and,

ergo, non-helpful." *Daubert*, 509 U.S. at 591.  In his report, Mr. Kennedy

provides specific and detailed descriptions of the components he believes a

proper training protocol should entail. But there is no evidence, let alone even

a contention, that Mr. Kennedy's training practices are any more

constitutional than what is currently done in Georgia.  Mr. Kennedy's

election training ideas are not proven constitutional standards against which

other programs must be measured. In other words, Kennedy's views do not

reflect a constitutional or any other standard, just his ideas on how things

*should* be.  Mr. Kennedy's opinions on what he believes are "best practices" in

training election officials, whatever they are, are not helpful or relevant to

---

[4] Even if Mr. Kennedy were permitted to testify regarding the law—which he is not—his testimony would further be barred because he is unqualified to testify on these matters.  He is not a member of the Georgia bar and has never issued an opinion on Georgia law before.  (Kennedy Dep. 15:10- :17.) He read no Georgia case law and cannot opine on how Georgia courts would apply and interpret Georgia law.  (*Id.* at 58:19- :22.)  In short, Mr. Kennedy is not qualified to opine on Georgia law.

the jury's determination of whether Georgia committed a constitutional violation. Instead, his subjective suggestions merely enlighten the jury on Mr. Kennedy's own ideas for micromanaging election worker training protocols in Georgia. As such, these ideas are irrelevant and will not assist the trier of fact.

Even if Kennedy's testimony was relevant—and it is not—it would still be excluded because of its likelihood to mislead or confuse the jury. Fed. R. Evid. 403. "Exclusion under Rule 403 is appropriate if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury." *Frazier*, 387 F.3d at 1263. *See also*, *Evans v. Mathis Funeral Home, Inc.*, 996 F.2d 266, 268 (11th Cir. 1993) (affirming exclusion of expert testimony where minimal probative value outweighed by danger of unfair prejudice). Mr. Kennedy's report is likely to confuse or mislead the jury because it consists of mere recommendations masquerading as requirements. *E.g.*, Doc. No. [167], p. 8 ("There *must* be accountability measures in place," and "training protocols *must* be accessible to the public") (emphasis added). A jury could easily be misled by this language and confuse Mr. Kennedy's recommended ideas for actual legal requirements. This is especially true since Mr. Kennedy already opined on the law throughout his report, as described above. "Simply put, expert testimony may be assigned

-19-

talismanic significance in the eyes of lay jurors, and, therefore, the district courts must take care to weigh the value of such evidence against its potential to mislead or confuse." *Frazier*, 387 F.3d at 1263.  In this case, the strong likelihood that the testimony will confuse or mislead the jury unquestionably outweighs the minimal value of the testimony.  Accordingly, it should be excluded.

## IV.  Conclusion.

Mr. Kennedy's testimony should be excluded because it does not meet the requirements for admissibility established by Rule 702.  Mr. Kennedy is not qualified to opine on Georgia election procedures, and even if he were, his testimony is not reliable because it employs no methodology.  In addition, his testimony is not helpful to the jury in that it opines on the law and states legal conclusions. Lastly, his testimony is irrelevant because "we did it differently in Wisconsin" is not competent or admissible expert testimony.

Respectfully submitted this 28th day of June, 2020.

> */s/ Josh Belinfante*
> Josh Belinfante
> Georgia Bar No. 047399
> jbelinfante@robbinsfirm.com
> Vincent Russo
> Georgia Bar No. 242628
> vrusso@robbinsfirm.com
> Carey Miller

Georgia Bar No. 976240
cmiller@robbinsfirm.com
Brian Lake
Georgia Bar No. 575966
blake@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Melanie Johnson
Georgia Bar No. 466756
mjohnson@robbinsfirm.com
**Robbin Ross Alloy Belinfante Littlefield LLC**
500 14th Street NW
Atlanta, GA 30318
Telephone: (678) 701-9381
Facsimile:  (404) 856-3250


Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, GA 30339
Telephone: 678-336-7249


Christopher M. Carr
Attorney General
GA Bar No. 112505

Brian K. Webb
Deputy Attorney General
GA Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
GA Bar No. 760280
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing

MOTION TO EXCLUDE TESTIMONY OF KEVIN KENNEDY was prepared

double-spaced in 13-point Century Schoolbook font, approved by the Court in

Local Rule 5.1(C).


*/s/Josh Belinfante*
Josh Belinfante