# EXHIBIT 18



Deposition of:
# J. Alex Halderman , Ph.D.

*February 25, 2020*

In the Matter of:

# Fair Fight Action, Inc., Et Al. Vs. Raffensperger, Brad, Et Al.

Veritext Legal Solutions
800.808.4958 | calendar-atl@veritext.com | 770.343.9696

Case 1:18-cv-05391-SCJ   Document 451-18   Filed 06/29/20   Page 3 of 6
J. Alex Halderman, Ph.D.   February 25, 2020
Fair Fight Action, Inc., Et Al. Vs. Raffensperger, Brad, Et Al.

Page 13

1  Q.  And I should have asked.  Beyond the Dominion
2      subpoena documents, did Plaintiffs' Counsel provide
3      you any other data or documents that you relied on?
4  A.  Nothing beyond what's in the docket.
5  Q.  And did Plaintiffs' Counsel ask you to make any
6      assumptions about facts in this case for your report?
7  A.  No, they didn't.
8  Q.  Have you read the amended complaint in this case?
9  A.  Yes, I have.
10 Q.  Have you read any of the depositions that were taken
11     in this case?
12 A.  I don't believe so.
13 Q.  You indicated some docket information.  Have you read
14     any of the briefs that were filed in this case?
15 A.  I have -- I've skimmed through the docket, and I've
16     read some of the materials.  I'm not sure I've read
17     any of the briefs in full.
18 Q.  I'm not asking for your legal opinion here.  But in
19     your own words, do you have a description of what you
20     believe this case is about?
21 A.  So this case is broadly about whether election
22     practices in the state of Georgia have violated the
23     rights of Georgia voters or had discriminatory
24     effects.
25 Q.  And for your report and your work in this case,

Case 1:18-cv-05391-SCJ   Document 451-18   Filed 06/29/20   Page 4 of 6
J. Alex Halderman, Ph.D.   February 25, 2020
Fair Fight Action, Inc., Et Al. Vs. Raffensperger, Brad, Et Al.

Page 14

```
 1        you're not alleging any racial component to any of
 2        the problems that you've identified in your report,
 3        correct?
 4   A.   Well, the problems that I have discussed in my report
 5        certainly could have a racial effect, especially if
 6        an attacker seeking to so discord or alter the
 7        outcome of an election targeted specific candidates
 8        or racial groups for that effect.
 9   Q.   For purposes of this report, though, you have not
10        examined any racial impacts that -- you can speculate
11        about there might be one.  But for purposes of your
12        report here, you're not alleging there are any racial
13        impacts, correct?
14   A.   I haven't gone back to examine racial data.
15   Q.   Okay.
16   A.   But certainly one of the risks, the problems that I
17        identify in this report could have is racially
18        disparate impacts.
19   Q.   And the opinions that you've authored in this report
20        in Exhibit 2 do not address the potential racial
21        impact, correct?  You're not analyzing -- let me
22        start over again.
23                The opinions you're expressing in Exhibit 2
24        are not an analysis of any racial effect of
25        particular methods of attack.  Is that a fair
```

Case 1:18-cv-05391-SCJ   Document 451-18   Filed 06/29/20   Page 5 of 6

J. Alex Halderman , Ph.D.                    February 25, 2020
Fair Fight Action, Inc., Et Al. Vs. Raffensperger, Brad, Et Al.

Page 15

1          statement?
2     A.   Well, they raise the possibility that -- and describe
3          methods by which an attack could occur that I think
4          it's clear could have a racial impact.  Do I analyze
5          exactly what that impact would be?  I think that
6          depends on what the attacker is hoping to achieve.
7     Q.   Maybe I can put a finer point on this.  In the
8          opinions you're expressing in your report, you're not
9          alleging that Georgia has selected particular voting
10         machines or voting practices to have a racially
11         disparate impact, are you?
12    A.   I'm not alleging intention.
13    Q.   And you're not expressing any opinion about
14         intention; is that correct?
15    A.   No, I don't go to intention.
16    Q.   As part of your work on your report, have you spoken
17         to anyone in Georgia to obtain any information that
18         you later used in your report beyond Plaintiffs'
19         Counsel?
20    A.   I have had past conversations with people in Georgia
21         that have informed my -- that have informed my
22         overall knowledge about Georgia election systems.
23    Q.   And who would those individuals be?
24    A.   I've spoken to Dr. Richard DeMillo at Georgia Tech
25         and Dr. Wenke Lee at Georgia Tech.  That's just two

Case 1:18-cv-05391-SCJ   Document 451-18   Filed 06/29/20   Page 6 of 6
J. Alex Halderman, Ph.D.   February 25, 2020
Fair Fight Action, Inc., Et Al. Vs. Raffensperger, Brad, Et Al.

Page 192

1    replaced.
2  Q.  Which components of the system are not being
3    replaced?
4  A.  The eNet system, the general network infrastructure
5    and computing infrastructure at the Secretary of
6    State, other infrastructure at the county level that
7    is used by election administrators.
8  Q.  So if history needs to move on and the election has
9    been decided, why not just do forensic analyses of
10   eNet, the network infrastructure of the Secretary of
11   State, the network infrastructure of county offices?
12 A.  That's going to be a less reliable way and much more
13   complicated way of trying to answer some of the
14   similar questions.
15 Q.  And you referenced the design of Georgia's election
16   system.  You're not testifying that anyone
17   intentionally designed a system that would be
18   vulnerable to hacking, are you?
19 A.  Intentionally designed, no.  Negligently maintained?
20   In my opinion, yes.
21         MR. TYSON:  Off the record for just a
22      minute.
23         (Recess taken.)
24         MR. TYSON:  All right.  Back on.
25