# EXHIBIT 50

## AFFIFIDAVIT OF KELLY M. DERMODY

1. My name is Kelly Dermody. I am over twenty-one years of age and am competent to testify to the matters contained herein. I understand that this affidavit will be offered in connection with litigation brought by Stacey Abrams and the Abrams campaign related to the 2018 General Election.

2. I am a graduate of Harvard University and Berkeley Law School. I was admitted to the practice of law in California in 1994. In addition to being admitted before the state and federal courts in California, I have been admitted to the following federal appeals courts: First, Second, Third, Fourth, Sixth, Seventh, Ninth, Eleventh, and U.S. Supreme Court.

3. I am currently the Managing Partner of the San Francisco office of Lieff Cabraser Heimann & Bernstein, LLP ("LCHB"), where I also chair LCHB's Employment Practice Group. In 2012, I served as the president of the Bar Association of San Francisco. In 2015, the College of Labor and Employment Lawyers named me a Fellow. I have served in leadership roles in the American Bar Association Labor and Employment Law Section ("LELS"), including co-chairing its Equal Employment Opportunity Committee, Diversity in the Legal Profession Committee, and Annual Section Conference. In August 2017, I completed an eight-year term as one of four employee advocates on the ABA LELS Governing Council. In 2017-2018, I served on the American Bar Association Section of Litigation's Attorney Client Privilege Task Force. I am an AV-Preeminent rated attorney, and have received a variety of awards from civic and non-profit organizations for my work. The *Daily Journal* (California's legal newspaper) has repeatedly named me as a "Top 100 Lawyer in California," a "Top California Women Litigator," and a "Top 75 Labor and Employment Attorney in California."

Confidential pursuant to Protective Order entered in Fair Fight Action Inc. v. Raffensperger Case No. 18-5391 pending in the United States District Court for the Northern District of Georgia

PLTFS-FFA-010373

4. During the 2018 mid-term election, I worked as a Poll Watcher for the Democratic Party. Prior to arriving in Georgia, I participated in the required Poll Watcher Training offered on-line. I previously served as a Poll Watcher in North Carolina during both early and election-day voting for the 2016 Presidential election, as well as in Arizona for earlier elections.

5. On Election Day, November 6, 2018, I served as a Poll Watcher at the D.M. Therrell High School in Fulton County from approximately 6:25 am until about 7:50 pm. This location was inside a large gymnasium of a high school, and contained approximately 17 voting booths. When I arrived I introduced myself to the Poll Manager, Ms. Jackson. I also introduced myself to other poll workers, including Ms. Davis (who generally handled all provisional ballots) and others whose names I don't recall now. I was told the staff that worked that day had worked together before. I explained to the poll workers what I was there for, and I asked to sit near the voter registration. Ms. Jackson suggested I sit next to her, but because she was seated across the gym from the stations handling voter data and provisional ballots, I moved across the room several times that day so that I could better see/hear what was happening with voters who experienced problems.

6. With the exception of the Poll Manager (as explained more fully herein), I found the poll workers to be welcoming and professional. The Poll Manager appeared exclusively to handle issues with voters that required a phone call to the Fulton County elections office. This caused a bottle neck throughout the day. Unfortunately, the Poll Manager also did not seem to like her job. She expressed exasperation with the process throughout the day, complained about being tired, often seemed bothered by voters with issues, and exhibited

Confidential pursuant to Protective Order entered in Fair Fight Action Inc. v. Raffensperger Case No. 18-5391
pending in the United States District Court for the Northern District of Georgia

PLTFS-FFA-010374

little urgency when assisting voters, who I heard express frustration on multiple occasions with the pace of assistance. Ms. Jackson certainly had at least one reason for being flustered all day, as no cell phones (including hers) worked inside the gym and the only way she could communicate with Fulton County was by walking out of the building and calling them from the steps outside. I witnessed multiple voters flustered because they did not think Ms. Jackson was doing anything to help them, and a few left because she did not communicate with them. When I saw this happen I tried to follow the voter out of the building to give them feedback about what would happen next if they waited so that the voter would choose to wait for Ms. Jackson to get outside (where cell service worked) so she could make a call to get more information for them. This process with Ms. Jackson could take 10-30 minutes per person, often with little feedback about what was happening or how long it would take.

7. Throughout the day, I also observed several structural issues that raised concerns.

8. One of the machines for checking in voters malfunctioned before 8:00 am in the morning (the technician said it needed a new card). Fulton County was alerted right away but never sent a new card to get the machine running again. During the morning rush, lack of enough registration machines caused the back up, so this machine being down impacted the length of the line and may have deterred voters looking at a long line.

9. I also observed a large number of voters who were told they were in the wrong precinct. Many of those said that they had lived in the same location and voted at the same location for many years and could not understand why they were being told to vote elsewhere. I heard this story over and over again. Here are some examples of issues I observed:

1664768.1

Confidential pursuant to Protective Order entered in Fair Fight Action Inc. v. Raffensperger Case No. 18-5391
pending in the United States District Court for the Northern District of Georgia

PLTFS-FFA-010375

a. The poll workers at Therrell were under the impression that there was a "Fulton County rule" that no registered voter could vote provisionally before 5:00 p.m. because, presumably, before 5:00 p.m. that voter could just (i) go to his/her "correct" polling location (even if hours away and even if the voter claimed the assignment was in error and the voter was in the correct place) or (ii) go first to the Fulton County office to fix data issues before returning to Therrell and voting with a regular ballot. I believe several voters were turned away without a provisional ballot because of this misunderstanding, and I am sure some of them did not get to cast a vote. Near 2:00 p.m., I became aware that this specific "rule" was being enforced, when I saw a young woman get rejected by staff and walk out of the building. Outside the building I asked the voter what had happened, and she told me that Therrell is her precinct and she has voted there very recently with no problem, but that somehow the official voter data showed her being registered in another county, which she did not understand. She told me that she is a home healthcare worker, with a live-in client who needed a pick up from the VA where he was being treated for PTSD and dementia, and that she needed to get back to him and couldn't drive so far away to vote. I told her (while outside the precinct) that she could vote provisionally and I directed her to Ms. Davis. I then observed that Ms. Davis rejected the voter's request to vote provisionally, and Ms. Davis called to Ms. Jackson for confirmation. I explained to Ms. Jackson that the voter needed a provisional ballot but was being denied, and Ms. Jackson informed me of the "Fulton County 5pm rule." When I advised Ms. Jackson that this "rule" was inconsistent with the voter's rights, Ms. Jackson told me that she didn't care about "my" rules and told the voter to ignore me because "she is an outsider." While the voter waited with me outside, Ms. Jackson called

Confidential pursuant to Protective Order entered in Fair Fight Action Inc. v. Raffensperger Case No. 18-5391 pending in the United States District Court for the Northern District of Georgia

PLTFS-FFA-010376

Johnny Harris of the Fulton County Department of Elections to ask him to direct me to leave because she didn't like me raising a concern about the voter not getting to vote. Ms. Jackson passed the phone to me, and Mr. Harris started to suggest I leave until I explained the provisional ballot situation to him. Mr. Harris confirmed that there is no Fulton County 5:00 pm rule for provisional ballots and directed that the voter standing with me be allowed to vote provisionally. (The voter finally voted more than an hour after this situation first came to a head.) I do not know how many voters were disenfranchised at Therrell before 2:00 p.m. because of this failure of training and interference with voters, but clearly this was not the first time that day that the "rule" was applied, including in the next example which caused a voter to be prevented from voting. (I did not see this "rule" applied again after I spoke with Mr. Harris around 3:00 p.m., nor was I asked to leave again.) I called the boiler room and submitted an incident report about this Fulton County "rule" through the Voter Protection hotline on November 6, 2018.

   b.  One voter showed up at 7:10 pm having missed the chance to vote after she had bounced between precincts. She told me she had come to Therrell High School to vote earlier in the day because she is a registered voter who wanted to vote at the precinct she's always voted at. (She has not moved.) However, the poll workers at Therrell sent her away because, they told her, her address didn't match her registration and she needed to go vote at her "home" precinct. However, the address to which the poll worker said she was registered is an address for a house the voter sold 5 years ago and hasn't lived in for over a decade. (And she has voted since then at Therrell High School.) The precinct for that erroneous registration address was at least an hour's drive

Confidential pursuant to Protective Order entered in Fair Fight Action Inc. v. Raffensperger Case No. 18-5391 pending in the United States District Court for the Northern District of Georgia

PLTFS-FFA-010377

away, in West Georgia. The voter was not offered the chance to vote provisionally at Therrell and when she could not make it to West Georgia, she returned to Therrell once again, too late. I submitted an incident report with contact information for this disenfranchised voter on November 6, 2018.

c. I witnessed this personally and a Therrell poll worker confirmed her observation to me that there were multiple issues during the day involving voters who (1) went online and viewed their voting location before coming to Therrell and/or (2) had a recent letter from election officials designating Therrell as their voting location, but who arrived at Therrell only to be turned away because the "official" database reflected that the voter was assigned to a different location. This was a major issue all day, and I logged more than 10 issues like this for individual voters. A poll worker told me that she also had noted that this problem sometimes happened in clusters of addresses, not all of which she could recall, but said that she believed this came up several times for residents with a "Devon" address. The poll worker suspected DMV may have been in the center of many issues based on what she said voters described as the source of their registrations or address updates. I can't recall the poll worker's name who shared this with me, but she sat at the registration table that logged voters to the online system and at the end of the night she sat in the chair at the far left end of the table (from her perspective, or far right end/closest to voting booths from a voter's perspective checking in), where she was also counting the ballots.

d. Similarly, a voter told me that there were registration irregularities for the residents of 2447 Campbellton Road. Some residents continued to be permitted to vote at Therrell, but poll workers sent others from that address to a different precinct even

Confidential pursuant to Protective Order entered in Fair Fight Action Inc. v. Raffensperger Case No. 18-5391 pending in the United States District Court for the Northern District of Georgia

PLTFS-FFA-010378

though those residents had voted at Therrell before and even had an October 2018 letter saying Therrell is their precinct. The voter believed this affected at least 4-5 voters and that he could not say that all of them successfully made it to vote at the re-designated precinct. (I logged this voter's information in an incident report on November 6, 2018.)

10. Because the poll workers gave changing information throughout the day to voters with registration issues, I believe that some voters in similar situations were treated differently.

11. I was not able to stay to the very end of the vote count, which I believe must have happened after 8pm. A poll worker told me near closing that she was concerned that the machines may not have counted all the voters properly, and based on my last logged tallies (at 6pm, 6:40pm, and 7:15pm) and my visual assessment of the number of voters in the room at those times, I concurred that the vote counts did not seem to match. For example, the vote count at 6pm was 1333, at 6:40pm it was 1374, and at 7:15pm it was 1384. I saw more than 10 people enter the building and vote after 6:40, and I did not count but strongly believe that more than 31 voters got registered to vote between my count at 6pm and the count at 6:40pm. I do not know what the official count is for that polling location, which combined more than one precinct. I was told by Ms. Davis that 29 provisional ballots were cast during the day, and I observed a very high number of provisional ballots at the very end of the day. (I was told that at the last election there were 8 provisional ballots cast.)

12. I declare under penalty of perjury that the foregoing is true and correct.

Further affiant sayeth not, this the ____ day of November, 2018.

1664768.1

Confidential pursuant to Protective Order entered in Fair Fight Action Inc. v. Raffensperger Case No. 18-5391 pending in the United States District Court for the Northern District of Georgia

PLTFS-FFA-010379

_____
Kelly M. Dermody

Sworn to and subscribed before me
This the _____ day of November, 2018.

_____
Notary Public

1664768.1

Confidential pursuant to Protective Order entered in Fair Fight Action Inc. v. Raffensperger Case No. 18-5391
pending in the United States District Court for the Northern District of Georgia

PLTFS-FFA-010380