IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| FAIR FIGHT ACTION, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> BRAD RAFFENSPERGER, in his official Capacity as Secretary of State of Georgia, *et al.*, <br><br> Defendants. | Civil Action File <br><br> No. 1:18-cv-05391-SCJ |

**DEFENDANTS' DECEMBER 30, 2021
STATUS REPORT REGARDING DISCOVERY**

Defendants submit this report to the Court in accordance with the Court's November 30, 2021 Order (Doc. No. [641]) (the "Order") requiring weekly discovery status reports.

**I.     Status of Depositions.**

Since the Parties' last status reports were filed on December 23, 2021 and December 24, 2021, respectively, the following has been completed:

A.     Plaintiffs' Post-2018 Fact Witness Depositions.

The depositions of Plaintiffs' new post-2018 election witnesses are ongoing. As of the date of this filing, 14 of the 25 depositions have been taken and an additional 2 have been scheduled. Plaintiffs are coordinating with

and scheduling their fact witnesses for depositions pursuant to the Court's Order.

Unfortunately, Defendants were forced to suspend the deposition of Ms. Payal Shah earlier this week due to Ms. Shah's repeated refusal to answer the majority of Defendants' counsel's questions. Ms. Shah completed a declaration for use in this case and remains unrepresented by counsel. Despite her virtual appearance in the deposition, Ms. Shah repeatedly objected to and refused to answer Defendants' counsel's questions on alleged "relevance" grounds. While none of these objections were valid, the mere fact that she continually objected on these grounds raises serious questions regarding the basis of Ms. Shah's objections and whether she received advice to make such objections prior to the deposition[1].

Defendants' counsel noted on the record Ms. Shah's refusal to answer questions and ultimately suspended the deposition. While Defendants would normally file an immediate motion to compel Ms. Shah's deposition, Defendants respectfully request guidance from the Court as to how it would prefer Defendants proceed under the circumstances; namely, the expedited

---

[1] Defendants note the Plaintiffs' counsel have recently begun objecting on alleged "relevance" grounds to certain questions posed by Defendants during depositions, despite the Parties' continued agreement to reserve all objections other than as to the form of the question and responsiveness of the answer until the deposition is first used at trial.

time frame for completion of Plaintiffs' election witness depositions and the Order's requirement that Plaintiffs' counsel to arrange the depositions without the normal issuance of a subpoena for a third-party witness. If the Court would prefer to have a conference call with the Parties' counsel to discuss the matter immediately, Defendants' counsel will make themselves available at the Court's convenience.

  B. <u>Expert Depositions.</u>

As stated in Defendants' prior status report, the deposition of Plaintiffs' expert, Dr. Jones, is scheduled for January 4, 2022 at 10:00 A.M. In addition, the deposition of Dr. Minnite has now been scheduled for January 7, 2022 at 2:00 P.M. Both depositions will be limited to two hours in accordance with the Court's Order. The Parties are still conferring regarding the scheduling of Dr. Mayer's deposition.

  C. <u>Other Depositions.</u>

Plaintiffs have stated their intent to take the deposition of Blake Evans, State Elections Director, who was identified as a potential witness on Defendants' December 15, 2021 witness list. Defendants are obtaining dates for Mr. Evans's deposition, which is expected to be in January 2022 but in no case later than the Court's deadline for all depositions of January 21, 2022.

Defendants will produce any documents relevant to Mr. Evans's testimony by January 14, 2022 in accordance with the Court's Order.

Plaintiffs have also requested to take the depositions of State Election Board ("SEB") Members Anh Le and Matt Mashburn. Defendants are obtaining dates for Ms. Le's and Mr. Mashburn's depositions, which will also be in January 2022. If either Ms. Le or Mr. Mashburn testify at trial, Defendants expect their testimony to be regarding their experiences on the SEB, including during COVID, the 2020 elections, and other activity of the SEB through the January runoff elections. Defendants expect that any documents relevant to Ms. Le's and/or Mr. Mashburn's testimony would be public, SEB Documents. Defendants will produce any documents relevant to either or both Ms. Le's and Mr. Mashburn's testimony by January 14, 2022 in accordance with the Court's Order. The Parties have not agreed on a time limit for these depositions.

Defendants plan to take the depositions Ms. Cianti Stewart-Reid and Rev. Bronson Woods, as new representatives of Fair Fight Action, Inc. and Ebenezer Baptist Church, respectively. The Parties are currently conferring regarding the scheduling of these depositions. Defendants agreed to limit these depositions to two hours.

Defendants are currently evaluating a proposal by Plaintiffs by which the deposition testimonies of Governor Kemp and Senator Warnock may be used at trial in lieu of their respective appearances in person. Defendants expect to be able to respond to Plaintiffs' proposal no later than early January 2022.

## II. Other Matters.

### A. Deposition Designations and Objections.

Plaintiffs and Defendants are currently conferring in good faith regarding a proposal by Plaintiffs that the Parties identify deposition designations and objections prior to the start of trial. Defendants are currently evaluating Plaintiffs' proposal and will respond accordingly as soon as possible. If the Parties come to an agreement on this issue, Defendants will update the Court with such information in a future status report.

### B. Trial Outline/Overview.

Defendants join in Plaintiffs' recent request to the Court for issuance of a "trial outline/overview" pursuant to the Court's Standing Order as they believe it will assist the Parties' preparation for trial.

Specifically, Defendants respectfully request that the Court provide additional guidance as to what it perceives to be the scope of Plaintiffs' remaining "list accuracy" claim and what legal standard the Court intends to

apply to it at trial. At present, most of the evidence Plaintiffs have identified for use at trial appears to be related to this claim.[2] As such, clarity as to the parameters of this claim stands to benefit both Parties as it would allow them to (a) streamline and focus their respective outstanding discovery as to the pertinent remaining issues; and (b) ensure that their respective arguments and presentation of evidence is tailored to the adjudication of this claim.

In its jurisdictional summary judgment order, the Court allowed Plaintiffs' "list accuracy" claim to go forward because O.C.G.A. §§ 21-2-50(a)(14); 21-2-50.2(a) and HAVA collectively indicated that "the Secretary plays a role in maintenance of accurate voter registration rolls," Doc. No. [612] at 43, and therefore Plaintiffs may have to seek redress for their "asserted injuries for **the Secretary's** challenged conduct," *id.* at 44 (emphasis added). The Court ultimately did not address Plaintiffs' "list accuracy" claim in its summary judgment order on the merits, however, because it concluded that Defendants had not moved for summary judgment on it. Doc. No. [617] at 45-46. As such, the Court was never afforded an

---

[2] For example, of the witnesses on Plaintiffs' witness list offering testimony regarding their voting experience, approximately two thirds (51/77) do so regarding some sort of "list accuracy" concern. In contrast, less than five appear to relate to the HAVA Match, a/k/a "Exact Match," process.

opportunity to define what "challenged conduct" of the Secretary is at issue in this claim or in what legal framework it was to be analyzed.

As to the claim's scope, most of Plaintiffs' claims regarding the State's list of registered voters, at least to the extent they involved any action by the Secretary of State, were dismissed at summary judgment.[3] *See* Doc. No. [612] at 61-62 (Plaintiffs' voter list security claims dismissed as moot); Doc No. [617] at 46-56 (summary judgment granted against Plaintiffs' voter list maintenance claims); and 60 at n.32 (dismissing in Counts II and III all "voter registration list allegations (that do not concern 'Exact Match').)". The Court cited the same Georgia statutes in its jurisdictional summary judgment order—O.C.G.A. §§ 21-2-50(a)(14) and 21-2-50.2(a)—to find that Plaintiffs' voter list "accuracy" and voter list "maintenance" claims involved responsibilities of, and thus were traceable to, the Secretary of State. *Compare* Doc. No. [612] at 35 with *id.* at 42-43. Because the latter was ultimately dismissed, however, it is unclear to Defendants what "challenged conduct" of the Secretary is encompassed in this surviving claim.

---

[3] Plaintiffs' HAVA Match or "Exact Match" claim may certainly be construed to involve "voter list accuracy." It is Defendants' understanding, however, that Plaintiffs' "list accuracy" claim is a separate from its claims regarding HAVA or "Exact" Match.

7

Furthermore, the Court rejected all of Plaintiffs' training claims apart from those regarding in-person absentee ballot cancellations. Doc. No. [617] at 36. As the Court previously noted, "updates to the voter registration rolls are made at the county (not state) level," Doc. No. [612] at 43, which is further confirmed by statute. O.C.G.A. § 21-2-212; *see also* O.C.G.A. §§ 21-2-226(a)-(b) (county registrars to determine eligibility to vote and place registrant in proper district); 21-2-215(a) (county registrars to be designated "for the purpose of taking and processing applications for registration and for the purpose of registering electors"); SEB Rule 183-1-6-.03 (setting forth "rules and regulations for voter registration by registrars and deputy registrars"). To the extent that Plaintiffs' "list accuracy" claims seek to address actions that are the responsibility and obligation of County officials, as opposed to the State, such would be foreclosed by the dismissal of Plaintiffs' broader and generalized training claims (as well as a lack of traceability).

As to the legal standard, Defendants have been unable to find any precedent describing what showing is required by a plaintiff to prevail on a "list accuracy" claim. Plaintiffs do not appear to be challenging any "law," "rule," or "policy" of the State to be analyzed under *Anderson-Burdick*. *See Jacobson v. Fla. Sec'y of State,* 974 F.3d 1236, 1261 (11th Cir. 2020)

(*Anderson-Burdick* provides "the legal standards that apply to **laws** that burden the right to vote.") (emphasis added). Moreover, the only precedent Defendants have been able to find on the matter seems to indicate that complaints regarding election **administration** or allegations that a state actor failed to comply with state law do not amount to constitutional claims.

> In *Gamza v. Aguirre*, the Fifth Circuit explained:
>
> If every state election irregularity were considered a federal constitutional deprivation, federal courts would adjudicate every state election dispute, and the elaborate state election contest procedures, designed to assure speedy and orderly disposition of the multitudinous questions that may arise in the electoral process, would be superseded by a section 1983 gloss. Section 1983 did not create a delictual action for the torts of state officials, and it did not authorize federal courts to be state election monitors.
>
> [...]
>
> In the absence of evidence that the alleged maladministration of the local election procedures was attended **by the intention to discriminate** against the affected voters or motivated by a desire to subvert the right of the voters to choose their school board representative, we cannot conclude that the error constituted a denial of equal protection of the laws.

*Gamza*, 619 F.2d at 453–54 (citations omitted) (emphasis added). "Although federal courts closely scrutinize state laws whose very design infringes on the rights of voters, federal courts will not intervene to . . . supervise the administrative details of a local election." *Curry v. Baker*, 802 F.2d 1302, 1314 (11th Cir. 1986); *see also Saxon v. Fielding*, 614 F.2d 78, 80 (5th Cir.

9

1980) ("The decisions from other circuits have clearly indicated an unwillingness to become embroiled in suits attacking state elections on the grounds of administrative or technical irregularities. […] We think that this unwillingness to intervene in the absence of aggravating factors . . . is appropriate.") (quotation and citations omitted) (collecting cases)); *Shipley v. Chicago Bd. of Election Commissioners*, 947 F.3d 1056, 1062 (7th Cir. 2020) ("[A]llegations [of administrative misconduct] may state a claim for violation of the [state] Election Code. But that is a state law claim for a violation of state law, not a federal claim for a violation of constitutional rights. A violation of state law does not state a claim under § 1983, and, more specifically, a deliberate violation of state election laws by state election officials does not transgress against the Constitution."); *Donald J. Trump for President, Inc. v. Boockvar*, 493 F. Supp. 3d 331, 391 (W.D. Pa. 2020) ("[I]t is well-established that even violations of state election laws by state officials . . . do not give rise to federal constitutional claims except in unusual circumstances.").

Given the comparative breadth of Plaintiffs' anticipated evidence to be presented on this claim, and the lack of legal authority elucidating how such a claim should be addressed, if at all, at trial, Defendants respectfully request that the Court address this matter in a trial overview/outline order.  Doing so

10

at this stage—before the current slate of outstanding discovery is completed—would be of benefit to both Parties so that they can properly prepare their respective arguments and evidence to be presented at trial.

Respectfully submitted this 30th day of December 2021.

> */s/Josh Belinfante*
> Josh Belinfante
> Georgia Bar No. 047399
> jbelinfante@robbinsfirm.com
> Vincent R. Russo
> Georgia Bar No. 242628
> vrusso@robbinsfirm.com
> Carey A. Miller
> Georgia Bar No. 976240
> cmiller@robbinsfirm.com
> Brian E. Lake
> Georgia Bar No. 575966
> blake@robbinsfirm.com
> Alexander Denton
> Georgia Bar No. 660632
> adenton@robbinsfirm.com
> Melanie L. Johnson
> Georgia Bar No. 466756
> mjohnson@robbinsfirm.com
> **Robbins Alloy Belinfante Littlefield LLC**
> 500 14th Street N.W.
> Atlanta, Georgia 30318
> Telephone: (678) 701-9381
> Facsimile:  (404) 856-3255
>
> Bryan P. Tyson
> Georgia Bar No. 515411
> btyson@taylorenglish.com
> Bryan F. Jacoutot
> Georgia Bar No. 668272
> bjacoutot@taylorenglish.com

Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
Telephone: (678) 336-7249

Christopher M. Carr
Attorney General
GA Bar No. 112505
Brian K. Webb
Deputy Attorney General
GA Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
GA Bar No. 760280
**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*Attorneys for Defendants*

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing, DEFENDANTS' DECEMBER 30, 2021 STATUS REPORT REGARDING DISCOVERY, was prepared double-spaced in 13-point Century Schoolbook font, approved by the Court in Local Rule 5.1(C).

*/s/Josh Belinfante*
Josh Belinfante

## CERTIFICATE OF SERVICE

I hereby certify that I have this day filed the within and foregoing **DEFENDANTS' DECEMBER 30, 2021 STATUS REPORT REGARDING DISCOVERY** with the Clerk of Court using the CM/ECF system, which will automatically send counsel of record e-mail notification of such filing.

This 30th day of December, 2021

*/s/ Josh Belinfante*
Josh Belinfante