## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| FAIR FIGHT ACTION, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action File |
| ) | No. 1:18-cv-05391-SCJ |
| BRAD RAFFENSPERGER, in his ) | |
| official Capacity as Secretary of ) | |
| State of Georgia, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## <u>MOTION IN LIMINE TO EXCLUDE CERTAIN PLAINTIFFS'</u>
## <u>WITNESSES FOR INADMISSIBILITY AND UNRELIABILITY</u>

Defendants hereby move to exclude the testimony of the following

witnesses under Federal Rules of Evidence 602, 701, and/or 802 as the

witnesses lack personal knowledge of the facts to which they purport to

testify and/or because their testimony consists of, or relies on, inadmissible

hearsay, speculation, and/or unfounded lay opinion.

Only three substantive issues[1] remain in this case to be tried: (1)

alleged insufficient training by the Secretary of State of county election

---

[1] In the interest of clarity and efficiency, Defendants refer to Plaintiffs' claims
by issue rather than count in parallel to the Court's approach. Doc No. [612]
at 71 n.34.  For purposes of this motion and determining the admissibility of
any proffered witness's testimony, however, Defendants have taken into

superintendents and registrars regarding in-person absentee ballot cancellation procedures (Plaintiffs' "Absentee Ballot Training" claim); (2) alleged insufficient efforts by the Secretary of State to maintain accurate voter registration lists (Plaintiffs' "List Accuracy" claim); and (3) a challenge to the State's implementation of the verification procedures set forth in the Help America Vote Act ("HAVA"), whereby information provided by individuals registering to vote is cross-referenced with information on file with the Georgia Department of Driver Services ("DDS") or United States Social Security Administration ("SSA"), as required by 52 U.S.C. § 21083(a)(5) (Plaintiffs' "HAVA Match" a/k/a "Exact Match" claim). See Doc. No. [636] at 4 n. 2.

For these three, discrete, issues, Plaintiffs have indicated that they seek a **five-week** trial.  This is based, in part, on Plaintiffs' desire to have approximately 40 non-party fact witnesses "tell their story about their voting experience[s]" in 2018 and/or 2020 to the Court.  Doc. No. [693] at 1.  Several of these witnesses' "stories," however, are not about their own voting experiences at all.  Instead, numerous potential witnesses—mostly poll watchers—seek to testify about what they claim to have seen (or heard about)

---

account where such issues have been challenged under multiple legal theories.

during the 2018 elections.  These third-party witnesses do not possess personal knowledge of the facts or circumstances of any other individuals' voting experiences about which they purport to testify.  Their testimony consists of, or is entirely based on, hearsay, speculation, and unfounded lay opinion.  It is therefore inadmissible, and such witnesses should be excluded from testifying at a potentially five-week trial.

Unlike a jury trial, Defendants acknowledge that the risk that the Court will be confused or swayed by inadmissible testimony is very low. Nevertheless, the reasons to exclude the testimony remain apparent. In addition to causing unnecessary delay and expense, admittance of these witnesses raises a public concern. Hearsay, speculation, and unfounded opinions from unreliable third-party witnesses are not only inadmissible as an evidentiary matter; they are dangerous when the public's confidence in our elections is at stake.  The poll watchers and third-party witnesses identified in this motion offer precisely the type of unreliable and inflammatory claims that have fueled election conspiracy theories in recent years.  If admitted, the Court need hardly wonder whether such testimony could, and would, be latched onto by persons seeking to undermine the public's trust in the election process. Granting this motion in limine would thus not only preserve judicial resources by limiting the testimony to that

which may actually be relied upon to prove or disprove a fact at issue—which is sufficient in and of itself—but avoid needless confusion, anxiety, and distrust among the public at large.

## ARGUMENT AND CITATION TO AUTHORITY

Being cognizant of the Court's indication that it prefers motions in limine for witnesses rather than documentary evidence, Doc. No. [686] at 2, Defendants seek to exclude the following fourteen (14) witnesses' testimony in their entirety:

- Margaret Church

- Kelly Dermody

- Mollye Lockwood

- Hank Bromley

- Patrick Longstreth

- Cam Thi Ashling

- Shannon Gaggero

- Barbara Liscord

- Melanie Manning

- Gary Ratner

- Benjamin Ross

- Diana Cofield

- Robin Boyd

- Lori Goldstrom

## 1. **The Governing Evidentiary Standards.**

### a. *Inadmissibility and Unreliability.*

Defendants' motion is filed pursuant to Federal Rules of Evidence 602, 701, and 802.  It seeks to prevent the admission of witness testimony that is unreliable and inadmissible because the witnesses at issue do not have personal knowledge of the facts they are testifying to and/or because their testimony consists of speculation, belief, and/or inappropriate lay opinion that lacks sufficient foundation.

To offer testimony as a fact witness, the witness in question must have personal knowledge of the fact(s) in question.  Fed. R. Evid. 602. "'Personal knowledge' . . . does not include what a witness may have learned from hearsay statements from other people or in documents." <u>Hamilton v. Schneider Nat'l Carriers, Inc.</u>, No. 1:17-CV-3264-MHC-JSA, 2019 WL 11553744, at *21 (N.D. Ga. Jan. 24, 2019), report and recommendation adopted, No. 1:17-CV-3264-MHC, 2019 WL 11553748 (N.D. Ga. Mar. 7, 2019) Moreover, "[a] party's mere 'belief' and/or speculation is not based on personal knowledge [...] For a matter to be considered within a witness's personal

knowledge, it must be derived from the exercise of his own senses, not from the reports of others . . . ." <u>Riley v. Univ. of Alabama Health Servs. Found., P.C.</u>, 990 F. Supp. 2d 1177, 1187 (N.D. Ala. 2014) (quotation and alteration omitted); <u>see also</u> <u>Pace v. Capobianco</u>, 283 F.3d 1275, 1279 (11th Cir. 2002) ("a statement that the [witness] believes something is not in accordance with the Rule.").

The rule against hearsay goes together with the rule that witnesses must testify based on their own personal knowledge. "Under the Federal Rules of Evidence, hearsay is an out-of-court statement offered into evidence 'to prove the truth of the matter asserted in the statement.'" <u>United States v. Hart</u>, 841 F. App'x 180, 182 (11th Cir. 2021) (quoting Fed. R. Evid. 801(c)). Unless it falls within a specific exception, "[h]earsay is generally not admissible." <u>Id.</u> (citing Fed. R. Evid. 802).

Finally, lay witnesses may only offer opinion testimony if such is "rationally based on the witness's perception," "helpful to clearly understanding the witness's testimony or determining a fact in issue," and "not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701; <u>see also</u> <u>United States v. McCorvey</u>, 215 Fed. App'x. 829, 834 (11th Cir. 2007); <u>Kipperman v. Onex Corp.</u>, No. 1:05-CV-01242-JOF, 2010 WL 11505688, at *20 (N.D. Ga. Sept. 29, 2010). "Rule 701's

requirement that the opinion be rationally based on the perception of the witness demands more than that the witness have perceived something firsthand; rather it requires that the witness's perception provide a truly rational basis for his or her opinion...." Taite v. Monroe Cty. Pub. Libr., No. CV 19-0212-TFM-MU, 2020 WL 7225832, at *11 (S.D. Ala. June 19, 2020), report and recommendation adopted, No. 1:19-CV-212-TFM-MU, 2020 WL 6342721 (S.D. Ala. Oct. 28, 2020) (quotation omitted). Where, as is frequently the case here, opinion testimony consists of "meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by the rule." Fed. R. Evid. 701 (1972 advisory committee notes).

### b. *Lack of Relevance.*

As explained herein, the pertinent portions of these witnesses' testimony are all inadmissible pursuant to Fed. R. Evid. 602, 701, and/or 802. Any testimony that is **not** excluded under these rules should further be excluded for lack of relevance under Fed. R. Evid. 401 and 403.[2]

---

[2] Under Fed. R. Evid. 401, a witness's testimony is relevant only if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Even minimally relevant testimony may also be excluded if it poses a threat of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

"Assessing the probative value of [the proffered evidence], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403." Sprint/United Mgmt. Co. v. Mendelsohn, 552 U.S. 379, 384, (2008) (quoting United States v. Abel, 469 U.S. 45, 54 (1984)) (alteration in original). "Federal Rule of Evidence 401 is broad, [but] it does have limits." United States v. Hollister, 746 F.2d 420, 422 (8th Cir. 1984). Relevance under Rule 401 carries "two distinct requirements: (1) [t]he evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action." United States v. Hall, 653 F.2d 1002, 1005 (5th Cir. 1981) (citing McCormick on Evidence § 185, at 425 (2d ed. 1972). "Whether a proposition is of consequence to the determination of the action is a question that is governed by the substantive law. Simply stated, the proposition to be proved must be part of the hypothesis governing the case a matter that is in issue, or probative of a matter that is in issue, in the litigation." Id. In other words, to be relevant, the "[e]vidence must be probative of a fact of consequence in the matter, and must have a tendency to make the existence of that fact more or less probable than it would have been without the evidence." Hollister, 746 F.2d at 422.

-8-

## 2. **Plaintiffs' Poll Watchers and Third-Party Witnesses**

Plaintiffs originally identified over 300 "voter witnesses" in this case, yet ultimately identified fewer than 40 of them on their trial witness list.[3] Of those, over a **third** do not offer testimony about their own experiences; they are conduits for the "stories" of, in most cases, unidentified individuals based on hearsay, speculation, and/or unfounded opinion.  This is no accident. Many, if not most, of the first-hand "stories" of Plaintiffs' voter witnesses fell apart under scrutiny when Defendants deposed them. The testimony of these third-party witnesses, however, was less impacted by such scrutiny for the same reason that such testimony is inadmissible: the witnesses lack personal knowledge of the "stories" they purport to testify about (including, in most cases, the names of the actual voter(s) allegedly involved).  These "stories" are virtually impossible to confirm, investigate, or debunk, which is why evidentiary rules preclude them in the first place.

As more fully explained herein, the witnesses identified in this motion cannot offer competent testimony regarding any relevant fact or remaining claim in this case.  Accordingly, they should be excluded.

---

[3] On December 7, 2021, Plaintiffs identified an additional 40 witnesses to testify about post-2018 election experiences.  The witnesses addressed in this motion all address the 2018 elections and were included in Plaintiffs' initial list.

A. **Margaret Church**. Ms. Church is a resident of Massachusetts who served as a poll watcher in Fulton County, Georgia during the 2018 general election. Church Decl., attached as **Exhibit A**, at 1. Ms. Church's testimony consists of her opinions about voters who, according to her alone, were not registered to vote at the location she was observing, id. at 2-3; an I.D. scanner that needed to be rebooted, id. at 2; the number of check-in computers at the location, id. at 3; the number of provisional ballots cast at the location, id. at 3; the line to vote, id. at 4; provisional ballot envelopes, id. at 4; and records of the DRE voting machines used at the site, id. at 5.[4]

The only testimony of Ms. Church even tangentially related to the claims remaining in this case is that she states she saw voters who "came in with absentee ballots that had not yet been cast and wanted to vote." Id. at 3. As a poll watcher, however, Ms. Church's testimony as to these individuals is based entirely on what she either (a) overhead or may have been told about them (e.g., hearsay); and/or (b) her own speculation and assumptions

---

[4] None of these issues are relevant to Plaintiffs' remaining claims; Plaintiffs' claims that related to lines, provisional ballots, voting machines, and the provision of supplies to polling places have all been dismissed from this case. See Doc. No. [612] at 44, 72; No. [617] at 42, 85. As discussed in Defendants' Motion in Limine to Exclude Certain Witnesses for Lack of Relevance, Ms. Church should similarly be excluded as a witness under Fed. R. Evid. 401 and/or 403.

regarding their circumstances. Ms. Church has no personal knowledge of, for example, whether these individuals had, in fact, requested absentee ballots nor can she testify as to whether, if they sought to cancel them and vote in person, they were eligible to do so.  Ms. Church's beliefs about these voters are not competent evidence and they are insufficient to render her testimony about them admissible.  United States v. Stein, 769 F. App'x 828, 832 (11th Cir. 2019) ("'Belief, no matter how sincere, is not equivalent to knowledge.'" (quoting Jameson v. Jameson, 176 F.2d 58, 50 (D.C. Cir. 1949)).  Moreover, Ms. Church does not, and cannot, identify any of these "voters" such that her speculation and presumptions about them might be investigated, confirmed, or debunked.  As such, there is no way to render Ms. Church's testimony admissible at trial.

At best, Ms. Church can testify that she saw individuals who purported (or she presumed) to have requested absentee ballots, and then wanted to vote in person.  Without some other evidence or testimony to corroborate the actual facts as to the personal circumstances of these voters, however, such testimony is immaterial.  Such testimony does not, and cannot, go to show any fact of consequence in this action.  Fed. R. Evid. 401.  As such, Ms. Church should be excluded as a witness for lack of personal knowledge and/or hearsay.

Moreover, Ms. Church's testimony comes from an election occurring in 2018; prior to the passage of HB 316.  As such, any testimony by Ms. Church regarding absentee ballot cancellation procedures would be moot and irrelevant.  Fed. R. Evid. 401.

**B.    Kelly Dermody.** Ms. Dermody is a resident of California who served as a poll watcher for the Democratic Party of Georgia during the 2018 general election.  Dermody Decl., attached as **Exhibit B**, at ¶ 4. She submitted her declaration "in connection with litigation brought by Stacey Abrams and the Abrams campaign." Id. at ¶ 2.

The declaration of Ms. Dermody, who is a Harvard- and Berkley-educated lawyer, is filled with obvious hearsay, speculation, and unfounded (and irrelevant) opinion.  See, e.g., id. at ¶ 5 ("**I was told** the staff that worked that day had worked together before."); ¶ 6 ("Unfortunately, the Poll Manager [ ] **did not seem** to like her job.  She … **often seemed** bothered by voters with issues, and exhibited little urgency when assisting voters, who **I heard** express frustration . . . **I believe** a few left without voting because she did not communicate with them."); ¶ 9(a) ("**I believe** several voters were turned away without a provisional ballot because this misunderstanding [about when a provisional ballot may be issued], and **I am sure** some of them did not get to cast a vote.") (emphasis added).

-12-

Ms. Dermody's only potentially relevant testimony would be regarding Plaintiffs' List Accuracy Claim. According to Ms. Dermody, she "observed a large number of voters who were told they were in the wrong precinct." <u>Id.</u> at 9(a). However, Ms. Dermody has no personal knowledge of these voters' personal circumstances including, specifically, whether they **were,** in fact, at the wrong precinct, whether their precinct moved, or whether the voter moved. Indeed, Ms. Dermody's declaration plainly reveals that her testimony is based entirely on what she heard from others:

> "Many [voters] **said that** they had lived in the same location and voted at the same location for many years and could not understand why they were being told to vote elsewhere. I **heard** this story over and over again."

> <u>Id.</u> at ¶ 9 (emphasis added).

> "One voter . . . **told me** she had come to Therrell High School to vote earlier in the day because she is a registered voter who wanted to vote at the precinct at which she has always voted (She has not moved). However, the poll workers at Therrell sent her away because, they **told her**, her address didn't match her registration and she needed to go vote at her 'home' precinct."

> <u>Id.</u> at ¶ 9(b) (emphasis added).

> "A poll worker **told me** that she also observed this problem [of voters showing up at the incorrect polling location] sometimes happened in clusters of addresses, **not all of which she could recall, but said that she believed** this came up several times for residents with a 'Devon' address."

> <u>Id.</u> at ¶ 9(c) (emphasis added).

"[A] voter **told me** that there were registration irregularities for the residents for 2447 Campbellton Road."

Id. at ¶ 9(d) (emphasis added).

Ms. Dermody also states that she reported the personal details and/or contact information of the voters in question to Plaintiffs.  See id. at ¶ 9(b) ("I submitted an incident report with contact information for this disenfranchised voter on November 6, 2018.); ¶ 9(c) ("…I logged more than 10 issues like this for individual voters."); and ¶ 9(d) ("I logged this voter's information in an incident report on November 6, 2018.").  As such, Plaintiffs could have, and should have, procured testimony from these voters directly if the statements contained in Ms. Dermody's declaration had any merit.[5] Indeed, Plaintiffs waged a ceaseless campaign to collect voters' "stories" in this case through the last day to identify fact witnesses, see Fair Fight (@fairfightaction), Twitter (Dec. 06, 2021, 4:40 PM), https://twitter.com/fairfightaction/status/1467972168910872582, attached as **Exhibit C**, and now, well after multiple deadlines, seek to add more, Doc.

---

[5] That Plaintiffs had access to these voters' contact information further precludes any argument that Plaintiffs may seek to make under the residual hearsay rule. See Fed. R. Evid. 807 (proponent must show that statement is "more probative on the point for which it is offered than **any other evidence that the proponent can obtain through reasonable efforts**." (emphasis added)).

No. [722]. In any case, the facts of these voters' "stories" lie with the voters themselves; not with Ms. Dermody.  She should be excluded as a witness.

**C.    Mollye Lockwood.** Ms. Lockwood is another Massachusetts resident who travelled to Georgia to serve as a poll watcher during the 2018 general election.  Lockwood Decl., attached as **Exhibit D**, at ¶¶ 2-3(a).  Like Ms. Dermody, Ms. Lockwood states that she observed voters who were **told** by third parties that they were registered to vote at another location.  Id. at ¶ 3(j).  But also like Ms. Dermody, Ms. Lockwood has no personal knowledge of, and cannot testify to, the facts or personal circumstances of these individuals. Ms. Dermody's knowledge regarding these individuals, if any, is based solely on her conversations with them. Id. at ¶ 3(k)-(l) ("From the voters **I spoke to** … they **told me** that they were completely caught off-guard and had not been informed of the change.  I asked them if they would have time to get to the other location, and many **said** that they would try." (emphasis added).)  This is inadmissible hearsay evidence and should be excluded.

Ms. Lockwood also makes general reference to poll workers' training, but her statements are both (a) far too attenuated to Plaintiffs' Absentee Ballot Training claim to be of any relevance; and (b) purely speculative.  See, e.g., id. at ¶ 3(m) ("The Poll Workers at my location tried very hard but did

not **appear** to have been trained or experienced.").  Ms. Lockwood's proffered testimony regarding training is based entirely off her views on the poll workers' performance; she does not have, and does not claim to have, personal knowledge of such training.  Id. at ¶ 3(o) ("The poll workers' lack of training was most apparent at the close of the polls.  When the polls closed at 7:00 pm, the line was still several hours long.").  Regardless, Ms. Lockwood never addresses absentee ballot cancellations, let alone the training that the county superintendent may have received regarding such. Ms. Lockwood does not contend that she observed or attended any training sessions of county election officials. Her testimony is therefore both irrelevant and inadmissible; it should be excluded.

The remainder of Ms. Lockwood's testimony constitutes, at best, unfounded lay opinion and/or outright activism masquerading as "fact" testimony.  For example, Ms. Lockwood asserts that she "felt like [she] had traveled back in time to the 1950s or had landed in another planet county [sic] that had just discovered democracy," id. at ¶ 3(b), and further stated that "[she did] not believe the results were accurate at this polling location, and [she did] not believe that the votes were fully counted," id. at ¶ 3(v). Such hyperbolic statements, clearly offered by a supporter of Plaintiffs with the intent to provoke and advocate on their behalf, are neither factual in

nature nor do they meet the requirements of Fed. R. Evid. 701. Ms.
Lockwood should be entirely excluded as a witness in this case.

**D.     Hank Bromley.** Mr. Bromley is a resident of Chatham County
who volunteered to give rides to voters to their polling places in the 2018
general election. Bromley Decl., attached as **Exhibit E**, at ¶¶ 2-3. Mr.
Bromley's testimony, however, is about the alleged experience of one of his
**riders**, not himself. Specifically, according to Mr. Bromley, another
individual named Doris Alexander "applied for an absentee ballot but never
received it" and "was told that because she was already issued a ballot she
could not vote unless she had the absentee ballot with her" before the issue
was remedied and she was eventually able to cancel her absentee ballot and
vote. Id. at ¶ 3.

In addition to being several steps removed from any fact of consequence
regarding Plaintiffs' Absentee Ballot Training claim—given that Ms.
Alexander's alleged experience says nothing of training, particularly as to
that of the county superintendent—Mr. Bromley has no personal knowledge
of the facts of Ms. Alexander's experience. The proper person to testify as to
the experience of Ms. Alexander is, of course, Ms. Alexander. Mr. Bromley is
a third-party observer; he cannot competently testify as to whether Ms.
Alexander did, in fact, previously request an absentee ballot or as to the

veracity of what other individuals allegedly told her.  This is inadmissible hearsay.

Mr. Bromley also claims that "several black students were told they were not on the list of registered voters and were denied access to the voting machines." Id. Again, Mr. Bromley has no personal knowledge of these individuals, including whether they were told they were not on the list **incorrectly** (which would be the only fact of relevance to Plaintiffs' List Accuracy claim) or even for that matter, whether they were students. Mr. Bromley's testimony is based entirely on speculation and hearsay.  He should be excluded as a witness.

**E.     Patrick Longstreth.** Mr. Longstreth is a resident of Chatham County and another poll watcher of the 2018 general election.  Mr. Longstreth claims that he observed "at least 10 individuals who tried to vote at this [polling] location [who] were **told** that they were at the wrong polling location, even though they had previously voted at this location in prior elections and had not changed their residence since that time." Longstreth Decl., attached as **Exhibit F**, at ¶ 4 (emphasis added). Mr. Longstreth does not have personal knowledge of the **correct** polling places for these individuals, however, as such could only be verified by the individuals themselves.  And because Mr. Longstreth's testimony cannot go to show that

these individuals were being told that they were at the wrong polling location **incorrectly**, his testimony is irrelevant to Plaintiffs' List Accuracy claim.[6] Mr. Longstreth should be excluded as a witness.

**F.     Cam Thi Ashling.** Ms. Ashling is the Chairman of the Georgia Advancing Progress PAC who, while canvassing on behalf of her organization, encouraged another individual named Mrs. Ngoc Anh Thi Tran to vote in the 2018 general election.  Ashling Decl., attached as **Exhibit G**, at ¶ 3(b).  Ms. Ashling's testimony is about Mrs. Tran's "story" and not her own.

According to Ms. Ashling, the Gwinnett County board of elections **told** her (and Mrs. Tran) that "Mrs. Tran's voter status was pending due to the exact match issue with her name as well as her gender being incorrectly reported." Id. at ¶ 3(g).  The issue was resolved with the county and Mrs. Tran was able to vote successfully.  Id.  Ms. Ashling's purported knowledge of Mrs. Tran's circumstances, however, is inherently based on hearsay, belief, and/or speculation.  Ms. Ashling has no personal knowledge of Mrs. Tran's citizenship status or how her voter registration was processed.  That Ms. Ashling may have been present while statements were made by Gwinnett

---

[6] Plaintiffs' claims regarding polling place closures have already been dismissed from this case. Doc. No. [612] at 44 ("The Court finds that Plaintiffs lack standing to pursue their claims related to resources at polling places because those claims are not traceable to Defendants.")

County's election staff to Mrs. Tran or may have reviewed what she understood to be Mrs. Tran's naturalization documents, does not mean she is able to offer admissible testimony as to these facts. <u>Hamilton</u>, 2019 WL 11553744, at \*21 ("'Personal knowledge' . . . does not include what a witness may have learned from hearsay statements from other people or in documents.").

Obviously, the best person to testify to these matters is, if anyone, Mrs. Tran.  Plaintiffs' motivation for seeking to channel Mrs. Tran's testimony through Ms. Ashling is equally obvious: Ms. Ashling is a political activist with ties to Plaintiffs, <u>see</u> Fair Fight (@fairfightaction), Twitter (Nov. 02, 2018, 10:56 AM), https://twitter.com/fairfightaction/status/1058372394996375552, attached as **Exhibit H**, and Ms. Ashling is motivated to advocate on Plaintiffs' behalf. This is evident from the conclusory, and unfounded, opinion testimony she attempts to offer in her declaration:

> "It is frustrating to me that our voting system that [sic] is not designed to accommodate names like hers.  Such a simple difference that is out of her control could have kept Mrs. Tran from voting. […] Her participation in this election was neither free nor fair, and without my assistance, she would not have cast a ballot in an election that she was very excited to participate in."

Id. at ¶ 3(g)-(h).  Ms. Ashling's political commentary, however, is just as inadmissible as the rest of her testimony.  She should be excluded as a witness.

**G.     Shannon Gaggero.** Ms. Gaggero is a resident of Fulton County who also served as a poll watcher in the 2018 general election.  The majority of Ms. Gaggero's testimony is irrelevant to this case, consisting of her observations regarding lines, alleged machine malfunctions and provisional ballots. Gaggero Decl., attached as **Exhibit I**, at ¶¶ 6-8, 12-13. Plaintiffs' claims regarding such issues have already been dismissed.

To the extent Ms. Gaggero's testimony may have any relevance, it would be as to Plaintiffs' List Accuracy claim.  Like other poll watchers, Ms. Gaggero claims that she observed voters who were told they were at the wrong polling location or did not show up on the list of registered voters. Id. at ¶ 9.  Also like the other poll watchers, Ms. Gaggero has no personal knowledge of these voters and cannot testify as to the veracity of their statements or the facts of their circumstances.  For example, Ms. Gaggero claims that one voter who "had registered on the October 9 registration deadline was not found in the system."  Id. at ¶ 10.  Ms. Gaggero has no personal knowledge of this individual's registration; this statement is plainly her assumption or belief based on what she heard or was told by the

individual in question.  It is not admissible evidence.  Similarly, Ms. Gaggero has no personal knowledge of whether any of the voters she observed being told they were in the wrong location were, in fact, in the correct location. Such testimony is either (a) calling for unfounded speculation; or (b) simply irrelevant.  In either case, it should not be admitted.

In sum, Ms. Gaggero does not possess personal knowledge of any of the material facts about which she purports to testify.  She should be excluded as a witness.

**H.    Barbara McCusick Liscord**.  Ms. Liscord is a resident of New Hampshire who served as a poll watcher in Chatham County, Georgia during the 2018 general election. Liscord Decl., attached as **Exhibit J**, at ¶¶ 3-4. She travelled to Georgia to serve as a poll watcher after "hear[ing] Stacey Abrams speak and then [ ] hearing stores about voter suppression issues." Id. at ¶ 5.

Ms. Liscord's testimony is not relevant to this case.  Ms. Liscord's declaration consists **exclusively** of commentary on the provision of supplies (specifically, machines and provisional ballots) that, in her opinion, were insufficient and caused long lines at the polling place. Id. at ¶¶ 8-12. Ms. Liscord also testified that she observed campaign signs near the polling place.

Id. at ¶ 13.  Neither issue is related, even tangentially, to any claim remaining in this case.[7]

Even if Ms. Liscord's testimony were relevant, however, she nonetheless also lacks personal knowledge about any voters she observed. She should be excluded as a witness.

**I.    Melanie Manning.**  Ms. Manning is a resident of DeKalb County who served as a poll watcher in Gwinnett County.  Most of Ms. Manning's testimony is plainly irrelevant and inadmissible, such as her assessment of the site and its manager, Manning Decl., attached as **Exhibit K**, at ¶ 5 ("I found the process at the polling site to be inefficient . . . . The Poll Manager was uncooperative and sometimes contentious with Poll Watchers."), machine issues and provisional ballot procedures, id. at ¶¶ 6-8, and her opinions about the line at the polling location, id. at ¶ 9 ("I noticed many cars pull into the parking lot and leave – presumably because of the length of the line. […] In my opinion, the length of the line negatively affected the number of people voting.").  All such testimony should be excluded for irrelevance, speculation, and lack of personal knowledge.

---

[7] Ms. Liscord's testimony, like that of Ms. Church is also due to be excluded for lack of relevance alone.  See supra fn. 3.

The only portion of Ms. Manning's testimony that could conceivably be relevant to this case are her statements that she observed voters being turned away or given provisional ballots.  But, for such testimony to be relevant, it would also have to be shown that the reason these voters were being turned away stemmed from inaccuracies in the state's voter registration list (and that such inaccuracies were the responsibility of Defendants).  Ms. Manning, of course, has no personal knowledge of these voters or the reason(s) they were turned away or given provisional ballots. Thus, she cannot offer competent testimony to link what she observed with any list accuracy issue or, even if an issue could be established, linking such inaccuracy with any action or inaction of Defendants.

In short, any conjecture that Ms. Manning's testimony has any bearing on Plaintiffs' List Accuracy claim is incorrect because her testimony would be pure, and inadmissible, speculation.  She should be excluded as a witness.

**J.    Gary Ratner.** Mr. Ratner is a resident of Fulton County and a Georgia-barred attorney.  He served as a "statewide poll watcher" for the Democratic Party of Georgia, observing Sumter and Dougherty Counties during the 2018 general election. Ratner Decl., attached as **Exhibit L**, at ¶ 3.

Mr. Ratner's testimony suffers from the same evidentiary defects as his fellow poll watchers.  While he states that he observed unidentified voters

being told they were not on the voter rolls or were registered in another county, id. at ¶¶ 4, 10, he does not possess personal knowledge of these voters or the facts surrounding their experiences.  His testimony that he advised some of these voters "who had hyphens or apostrophes in their names, or non-traditional spelling of their names" on how they could be located on the rolls is wholly inadmissible—at least as to the relevant underlying facts of these alleged voters. Id. at ¶¶ 5-7.  Mr. Ratner's "knowledge" of these unidentified voters' names comes from, at best, statements of the voters themselves, and his speculation that the spelling of their names had any impact on what they experienced is just that: speculation.

Mr. Ratner's testimony consists entirely of hearsay and speculation; none of the facts of which he purports to testify fall within his personal knowledge.  Mr. Ratner, a trained attorney, even goes so far as to include speculative hearsay-within-hearsay from other poll-watchers in his testimony: "I understand these [NAACP] advocates provided similar advice throughout the day to voters initially denied the opportunity to vote." Id. at ¶ 8.  Such testimony is plainly inadmissible.  Mr. Ratner should be excluded as a witness in this case.

**K.     Benjamin Ross.** Mr. Ross is a Maryland resident who "came to Georgia to serve as a poll watcher during the 2018 General Election."  Ross

Decl., attached as **Exhibit M**, at ¶ 1.  Mr. Ross's testimony addresses the issuance—or non-issuance—of provisional ballots to voters who allegedly did not appear on the rolls for the polling locations that Mr. Ross observed. <u>Id.</u> at ¶¶ 6-12.  Mr. Ross has served as an expert witness in cases unlike this one regarding matters not at issue here; his testimony in this case is based entirely on his observations as a poll watcher. <u>Id.</u> at ¶¶ 2-4.

Plaintiffs' claims regarding provisional ballots, of course, have been dismissed. <u>See</u> Doc. No. [617] at 72, 85.  Defendants assume that Plaintiffs wish to tie Mr. Ross's testimony to their undefined List Accuracy claim but, again, Mr. Ross does not, and cannot, testify as to (a) why any voters allegedly did not appear on the rolls; (b) whether such was in anyway incorrect; or (c) even if such was due to some indeterminate list accuracy issue, how such could be traceable to Defendants.  Mr. Ross has no personal knowledge of any of these facts and his perception of these interactions is based entirely on hearsay. To testify otherwise would be pure speculation.

In sum, Mr. Ross cannot provide admissible testimony relevant to any fact of consequence in this action.  He should be excluded as a witness.

**L.     Diana Cofield.** Diana Cofield is a Georgia resident who served as a poll watcher in Troup County.  Ms. Cofield cannot offer any admissible testimony relevant to this case.

Ms. Cofield contends that poll workers at the polling location she observed "would ask African American voters if they were registered and then send them directly to the provisional ballot process." Cofield Decl., attached as **Exhibit N**, at ¶ 4.  This statement, even if true, has no bearing on Plaintiffs' claims.  Moreover, Ms. Cofield has no personal knowledge of any of these voters and cannot testify as to whether they were, in fact, registered to vote.  Ms. Cofield similarly has no personal knowledge regarding the "young girl [who] came into vote and [ ] was told she needed to go to Hoganville." Id. at ¶ 8.  As Ms. Cofield admits, her awareness of this girl's circumstances come from what she "overheard."  Id. at ¶ 9.  To the extent that Plaintiffs may seek to use Ms. Cofield's testimony to support their List Accuracy claim, such would be based entirely on hearsay and speculation.

Similarly, Ms. Cofield's testimony regarding training, in addition to being irrelevant, consists of rank hearsay.  She states that "[the poll manager] explained that the workers were not trained correctly.  They had many older poll workers and many of them did not know what to do and were not trained."  Id. at ¶ 6. Ms. Cofield has no personal knowledge of the training these poll workers—let alone the county superintendent or registrar— received.  Moreover, Ms. Cofield's statements regarding alleged improper training do not address absentee ballot cancellation procedures; the

only training claim left at issue in this case.  Her testimony is both
inadmissible and irrelevant.

Ms. Cofield's remaining testimony consists of irrelevant, speculative,
and blatantly unfounded, inflammatory opinion testimony.  Specifically, she
claims that she saw "a girl about 8 years old [ ] pulling the express poll
machine" into a room for votes to be processed.  Id. at ¶ 11.  Ms. Cofield goes
on to claim, incredibly, that "[i]f she was a black child, she would not have
been allowed to do the same thing." Id. Ms. Cofield has no personal
knowledge to support her baseless assertion which, regardless, has no
relevance to Plaintiffs' claims or this case.  She should be excluded as a
witness.

**M.**     **Robin Boyd.** Ms. Boyd is a resident of DeKalb County who
served as a poll watcher in Clayton County for the 2018 general election.
Like Mr. Ross, Ms. Boyd's testimony largely focuses on provisional ballots,
which are no longer an issue in this case. Boyd Decl., attached as **Exhibit O**,
at ¶¶ 5-8, 12; Doc No. [617] at 42, 85.  Also like Mr. Ross, Ms. Boyd has no
personal knowledge of the voters who were issued (or not issued) provisional
ballots and, accordingly, her testimony has no relevance to Plaintiffs' List
Accuracy claim apart from pure, and inadmissible, speculation.

Ms. Boyd also has no personal knowledge of the facts regarding voters that she allegedly heard "were told that they had to vote in Fulton County even though their driver's licenses listed Clayton County as their county, and they pay taxes and perform jury duty in Clayton County" or about the "people who were told that their name was not on the registration roll even though they believed they were registered to vote . . . ." Id. at ¶ 9. The people able to testify from personal knowledge as to these voters' experiences are, again, the voters themselves. Ms. Boyd's proffered testimony on their behalf is based solely on hearsay and speculation. It is inadmissible and she should be excluded as a witness.[8]

**N.    Lori Goldstrom.** Ms. Goldstrom is a resident of Cobb County who served as a poll watcher during the 2018 general election. Ms. Goldstrom's proffered testimony is neither relevant nor admissible.

Ms. Goldstrom claims that she "observed voters who did not show up on the voter rolls based on what the poll workers were finding but [she] was able to find them on the Secretary of State's My Voter Page (MVP)." Goldstrom

---

[8] Ms. Boyd also offers testimony regarding two wholly irrelevant matters: (a) an alleged "young Asian male" she observed who a poll worker required to provide a photocopy of his passport to vote, id. at ¶ 10; and (b) her opinion that the polling location "seemed overwhelmed with voters and understaffed," id. at ¶ 13. Neither statement has any relevance to any issue in this case.

Decl., attached as **Exhibit P**, at ¶ 3(b).  At the outset, Ms. Goldstrom's testimony is inadmissible because she does not have personal knowledge of these voters beyond what they told her, nor what poll workers would have observed when looking them up.  Moreover, even if Ms. Goldstrom's statement could be shown to be true, such would not support Plaintiffs' List Accuracy claim.  Rather, it would indicate a failure on the part of the poll worker in the look-up process, not an inaccuracy in the voter registration list itself.

The other matters on which Ms. Goldstrom offers testimony are not at issue in this case.  Ms. Goldstrom claims that other voters casted provisional ballots because they had moved to the area but not updated their registration.  Id. at ¶ 3(d).  Ms. Goldstrom has no personal knowledge of these voters but, again, even if her statement were proven accurate it would be immaterial to this case. Ms. Goldstrom's other assertion, that the poll workers "would have allowed" a woman to stand with her adult son while he voted had she not changed her mind is both speculative and irrelevant.  Id. at ¶ 3(e).  Ms. Goldstrom should be excluded as a witness.

## **CONCLUSION**

For the reasons stated herein, the testimony of the witnesses identified above is not admissible due to lack of personal knowledge, hearsay,

unfounded opinion and/or some combination of all three.  Accordingly,

Defendants' Motion should be granted and each of the fourteen (14) witnesses

identified herein excluded from testifying at trial.

Respectfully submitted, this 25th day of February, 2022,

> Christopher M. Carr
> Attorney General
> GA Bar No. 112505
> Brian K. Webb
> Deputy Attorney General
> GA Bar No. 743580
> Russell D. Willard
> Senior Assistant Attorney General
> GA Bar No. 760280
> **State Law Department**
> 40 Capitol Square, S.W.
> Atlanta, Georgia 30334
>
>
> */s/ Josh Belinfante*
> Josh Belinfante
> Georgia Bar No. 047399
> jbelinfante@robbinsfirm.com
> Vincent R. Russo
> Georgia Bar No. 242628
> vrusso@robbinsfirm.com
> Carey A. Miller
> Georgia Bar No. 976240
> cmiller@robbinsfirm.com
> Brian E. Lake
> Georgia Bar No. 575966
> blake@robbinsfirm.com
> Alexander Denton
> Georgia Bar No. 660632
> adenton@robbinsfirm.com

Melanie L. Johnson
Georgia Bar No. 466756
mjohnson@robbinsfirm.com
**Robbins Alloy Belinfante Littlefield LLC**
500 14th Street N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile:  (404) 856-3255

Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot
Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
Telephone: (678) 336-7249

*Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing

DEFENDANTS' MOTION IN LIMINE TO EXCLUDE CERTAIN

PLAINTIFFS' WITNESSES FOR INADMISSIBILITY AND

UNRELIABILITY was prepared double-spaced in 13-point century

schoolbook font, approved by the court in local rule 5.1(c).

*/s/ Josh Belinfante*
Josh Belinfante
