IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FAIR FIGHT ACTION, INC., *et al.*,

   *Plaintiffs*,

v.

BRAD RAFFENSPERGER, *et al.*,

   *Defendants*.

Civ. Act. No. 18-cv-5391 (SCJ)

**PLAINTIFFS' MOTION IN LIMINE AND MEMORANDUM IN SUPPORT
TO LIMIT THE TESTIMONY OF GABRIEL STERLING AND
OTHERWISE PRECLUDE
THE INTRODUCTION OF ANY EVIDENCE
RELATED TO DEFENDANTS'
POST-2021 ELECTION "INITIATIVES"**

Plaintiffs Fair Fight Action, Inc., Care in Action, Inc., Ebenezer Baptist Church of Atlanta, Georgia, Inc., Baconton Missionary Baptist Church, Inc., Virginia-Highland Church, Inc., and the Sixth Episcopal District, Inc., move this Court to Limit the Testimony of Gabriel Sterling and Otherwise Preclude the Introduction of Any Evidence Related to Defendants' Post-2021 Election "Initiatives." The grounds for this Motion are set forth below.

## INTRODUCTION

Plaintiffs move to preclude Gabriel Sterling, the Chief Operating Officer of the Secretary of State's Office, from testifying at trial on any topic about which Defendants have refused to provide relevant documents. Plaintiffs also bring this motion to preclude Defendants from introducing any evidence—including any testimony Defendants might attempt to elicit on examination of witnesses called by Plaintiffs—about Defendants' post-2021 election "initiatives." Alternatively, Plaintiffs request the Court direct Defendants to produce the "relevant documents" that Plaintiffs have requested. *See infra* p. 9-10.

As this Court is well-aware, the Parties are subject to a Court Order limiting the evidence to matters up to and including the January 5, 2021, runoff election and requiring Defendants to provide Plaintiffs with documents "relevant" to any new witness's testimony. *See* Pretrial Scheduling Order ¶¶ 1, 6, Nov. 30, 2021, ECF No. 641 ("Nov. 30 Order").

1

Now, however, Mr. Sterling apparently plans to testify about several matters that post-date the January 5, 2021, cut-off date that the Court imposed. During his deposition, Mr. Sterling testified extensively about GaRVIS, a brand-new voter registration computer database, and Defendants will attempt to use the implementation of GaRVIS to counter Plaintiffs' evidence of the Secretary of State's gross mismanagement of its voter registration database. Likewise, during the deposition, Mr. Sterling disclosed yet another post-January 5, 2021, initiative—this one purportedly aimed at improving his Office's "Exact Match" citizenship verification procedure. Before Mr. Sterling's deposition, Defendants did not provide a single document related to this second recent initiative. In light of this deposition testimony, it is clear that Mr. Sterling intends to testify about a new voter registration database, an initiative to reduce the Exact Match citizenship error rate, and coordination with the Department of Driver Services. Yet, Defendants are resisting the production of all but a handful of relevant documents related to these initiatives.

Plaintiffs requested, shortly after Mr. Sterling's deposition, that Defendants produce a narrow set of documents directly relevant to Mr. Sterling's testimony about these two new (and newly disclosed) initiatives in accordance with this Court's prior orders. Defendants objected, citing this Court's order as to limitations on document production but ignoring the order's language that precludes

introducing evidence regarding events after January 5, 2021. To date, the only documents Defendants have produced are 1) an amended Statement of Work from December 2021 for the GaRVIS system; 2) three schedules thereto (a table of definitions, a statement of work "template," and a table of minimum data security standards); 3) another publication of the same minimum data security standards; 4) an August 5, 2021, Master Services Agreement between the Secretary of State's Office and MTX; and 5) an August 17, 2020, Memorandum of Agreement between the Secretary of State's Office and U.S. Citizenship and Immigration Services concerning S.A.V.E.

      To provide this Court with an accurate record, Plaintiffs are not opposed in principle to Defendants offering evidence regarding their current Exact Match procedures or voter registration database. Plaintiffs, however, must be given a full and fair opportunity to conduct their cross examinations and present a complete record upon which the Court can render its judgment. Plaintiffs are thus opposed to evidence at trial about these two recent initiatives without Defendants first producing the documents Plaintiffs have requested—documents likely to show the actual nature and potential impact (or, more likely, lack thereof) these initiatives have on Plaintiffs' claims.

      Plaintiffs respectfully ask the Court to limit the subject matter of Mr. Sterling's testimony and any other evidence of events occurring on or before

January 5, 2021, or, alternatively, to require Defendants to produce the requested "relevant documents," in compliance with this Court's November 30 Scheduling Order and earlier November 15 Order. Without either a limitation on the scope of evidence or production of the "relevant documents," Plaintiffs will be severely prejudiced in their ability to refute Defendants' evidence and to present the Court with an accurate and complete factual record.

## BACKGROUND

### A. The Court's November 30 Scheduling Order required Defendants to produce relevant documents.

In September 2021, Plaintiffs moved for modification of two interlocutory orders to permit trial testimony regarding post-2018 elections. *See* Pls.' Mot. Clarify or Modify Interlocutory Orders, ECF No. 631. The Court granted that Motion on November 15, 2021, acknowledging that "both Plaintiffs and Defendants will need to rely on post-2018 election evidence to meet their evidentiary burdens at trial." Order at 2, Nov. 15, 2021, ECF No. 635. In its subsequent Scheduling Order, however, the Court ruled "the cutoff date for the remaining discovery for all post-2018 election evidence is the January 5, 2021 elections." Nov. 30 Order ¶ 1.

While the Court denied Plaintiffs' request for additional ESI searches[1] of Defendants' files to identify relevant post-2018 evidence, its Scheduling Order permitted both parties to identify additional witnesses who may be called in support of claims and defenses related to post-2018 election events through the January 5, 2021, cut-off date. *Id*. The Court further ordered both parties to produce documents and other information relevant to the new witnesses' anticipated testimony. *Id.* ¶¶ 2, 6.

Concerning Defendants' witnesses, the Court ruled that "Plaintiffs may depose Defendants' additional witnesses and obtain relevant documents from Defendants in the advance of the depositions . . . ." *Id.* ¶ 6. This ruling expressly incorporated Defendants' representation that they "agree[d] to provide responsive documents to any supplemental requests on an expedited basis, provided that such do not require extensive communication or ESI searches." Defs.' Proposed Schedule Disc. Post-2018 Evid. 6 n.5, ECF No. 638; *see also* Nov. 30 Order ¶ 5 n.3 ("Defendants shall attempt to provide responsive documents on an expedited basis pursuant to the statement in their proposed schedule.").

---

[1] At the November 29, 2021, conference, Plaintiffs were prepared to submit a proposed date range, list of custodians, and search terms. Plaintiffs understand the Court declined to order Plaintiffs' traditional ESI approach, but nonetheless directed the production of "relevant documents" for any newly identified defense witness.

### B. Defendants added Mr. Sterling as a witness in mid-January 2022 to testify about the Secretary of State's recent actions.

On January 12, 2022, Defendants informed Plaintiffs they intended to add Mr. Sterling to their witness list. In their email to Plaintiffs, Defendants stated that, if called, Mr. Sterling would testify to "(1) efforts in the Secretary's office to enhance and improve the accuracy of county-entered voter data; (2) the efforts undertaken by the Secretary during the 2020 elections to address the COVID-19 pandemic; and (3) the period of time between the November 2020 general election and the runoff election." Ex. 1, Email from J. Belinfante to A. Lawrence-Hardy and L. Bryan, Jan. 12, 2022 ("Ex. 1").

Defendants attached two documents to their email purportedly "relevant to the topics at issue": (1) a September 2021 Statement of Work between the State of Georgia and the MTX Group (the "MTX Statement of Work"); and (2) an April 22, 2019, Membership Agreement between the State of Georgia and Electronic Registration Information Center, Inc. ("ERIC"). *Id.* Significantly, the MTX Statement of Work describes the anticipated installation of a brand-new voter registration computer database called "GaRVIS."

### C. Mr. Sterling's deposition elicited information regarding Secretary of State initiatives purportedly improving the State's management of the voter registration database and citizenship verification process that post-date January 5, 2021.

6

Plaintiffs deposed Mr. Sterling on February 9, 2022. Mr. Sterling testified extensively about the MTX Statement of Work and the Secretary of State's implementation of the associated GaRVIS system. As part of this deposition testimony, Mr. Sterling clarified that the MTX Statement of Work Defendants produced does not reflect the final specifications for the new GaRVIS system. *See* Ex. 2, Sterling Dep. 79:16-80:4, 88:23-89:16, 97:6-98:18, 102:18-21, 126:4-8 ("Ex. 2"). Mr. Sterling further testified that the Statement of Work reflects none of the extensive feedback Mr. Sterling testified the Secretary obtained from employees of the Secretary of State's Office and county officials. *See id.*

Mr. Sterling also disclosed that his Office had recently tried to "ma[k]e sure with [the] Department of Driver Services that [the Secretary of State] ha[s] the most up-to-date driver's licenses for individuals," *id.* at 17:22-25, 20:6-11, and that it conducts "citizenship checks" "using the S.A.V.E. system" administered by the federal government, *id.* at 17:19-22, 19:22-20:3, 20:6-11. As Mr. Sterling noted in his deposition, the Secretary only began using S.A.V.E. "towards the fall to winter of 2021." *Id.* 33:5-6.  Although it is inconceivable that the Secretary of State has no relevant documents regarding changes to a citizenship verification process that, in Defendants' words "enhance and improve the accuracy of county-entered voter data," Ex. 1, Defendants produced no such documents before Mr. Sterling's

7

deposition regarding these purported changes, defying the Court's Scheduling Order.[2] *See* Nov. 30 Order ¶ 6.

Given Mr. Sterling's deposition testimony, Plaintiffs expect Defendants to proffer Mr. Sterling as a witness to counter Plaintiffs' evidence that Georgians are wrongly disenfranchised through practices including the use of stale DDS data in the Secretary of State's Exact Match citizenship verification process.

### D. Defendants have refused to produce documents relevant to Mr. Sterling's testimony.

Immediately following Mr. Sterling's deposition, Plaintiffs asked Defendants to produce documents regarding the Secretary of State's purported improvements to the voter registration database and citizenship verification process. After numerous email exchanges, letters, an offer of a stipulation, and a meet-and-confer session aimed at narrowing the requests, the only documents Defendants have provided are 1) an amended Statement of Work from December 2021 for the GaRVIS system; 2) three schedules thereto (a table of definitions, a statement of work "template," and a table of minimum data security standards); 3) another publication of the same minimum data security standards; 4) an August 5,

---

[2] Defendants subsequently produced an August 2020 Memorandum of Agreement between the United States Department of Homeland Security, U.S. Citizenship and Immigration Services and the Georgia Secretary of State. The MOA does not, however, reflect what, if anything, the SOS plans to or is doing with information from S.A.V.E.

2021, Master Services Agreement between the Secretary of State's Office and MTX; and 5) an August 17, 2020, Memorandum of Agreement between the Secretary of State's Office and U.S. Citizenship and Immigration Services concerning S.A.V.E. Defendants still refuse to provide any documents reflecting the enhancements that phase two of the GaRVIS project will purportedly implement, enhancements that Mr. Sterling explicitly referred to in his deposition. *See* Ex. 2 at 127:2-10. Defendants likewise refuse to provide any documents reflecting feedback or analysis of the GaRVIS system by Secretary of State employees or any documents reflecting the Secretary performing citizenship checks using S.A.V.E.[3] In essence, Defendants have cherry-picked the documents they have provided and are withholding from production documents that are directly relevant to the scope and effect of these recent changes. Plaintiffs are thus compelled to seek this Court's intervention to limit the evidence Defendants can adduce at trial.

Alternatively, Plaintiffs ask the Court to order Defendants to produce the following documents:

1. Reports or other documents (a) indicating the reason(s) why the new GaRVIS system was needed, (b) containing or constituting the

---

[3] Plaintiffs also asked for documents about an issue not addressed in Mr. Sterling's deposition: a recently completed audit of citizenship status of would-be voter registrants that was reported in the press. While Defendants have yet to produce any documents, they agreed to produce "documents discussed in the press. . . ." The issue, of course, is a post-2021 Election event that has no role in this case.

9

specifications, "stories" (as that term is used in the Statement of Work), and functionalities/features to be included in that system, and (c) demonstrating or addressing the intended impact of the new GaRVIS system on the accuracy of data (input by counties or otherwise). This request includes the relevant project files maintained by the SOS employee(s) and outside consultant(s) directly responsible for this initiative, and does not require any keyword searches of ESI.

2. Comments, feedback, and analysis received from county officials or SOS employees on the specifications or functionalities/features of the GaRVIS system. This request includes the relevant project files maintained by the SOS employee(s) and outside consultant(s) directly responsible for this initiative, and does not require any keyword searches of ESI.

3. Reports or other documents that (a) set forth the details of or reason(s) for or (b) assess the impact of the Secretary of State's initiative to do "citizenship checks" "using the S.A.V.E. system with the federal government." Ex. 2 at 15:5-11, 15:25-16:4, 18:8-15, 18:18-23. This request includes the relevant project files maintained by the SOS employee(s) responsible for this initiative, and does not require any keyword searches of ESI.

*See* Ex. 3, Email J. Creelan to J. Belinfante, Mar. 3, 2022. These documents pertain to whether, how, and the extent (if any) to which these recent changes affect Plaintiffs' claims.

## LEGAL STANDARD

This motion in limine seeks to hold Defendants to the unambiguous terms of this Court's November 30 Order. *See Ashmore v. Sec'y, Dep't of Transp.*, 503 F. App'x 683, 685 (11th Cir. 2013) (a district court does not abuse its discretion "by holding the litigants to the clear terms of its scheduling order"). If Defendants fail to comply, the Court may "issue any just orders." Fed. R. Civ. P. 16(f)(1)(C); *see,*

*e.g.*, *Guimaraes v. NORS*, 366 F. App'x 51, 54 (11th Cir. 2010) (adding that Rule 16(f)(1)(C) encompasses discovery orders).

## ARGUMENT

Under the terms of the Court's Pretrial Scheduling Order, Defendants are precluded from presenting testimony about matters that post-date January 5, 2021. In apparent violation of that Order, Defendants intend to have Mr. Sterling testify to two recent, post-January 5, 2021, initiatives: the new GaRVIS system and the purported recent efforts to improve citizenship checks. To compound this problem, Defendants failed to provide Plaintiffs with "relevant documents" concerning these initiatives "in advance of" Plaintiffs' depositions of Mr. Sterling and produced only a few such documents afterward. Nov. 30 Order ¶ 6. Accordingly, the Court should either exclude Mr. Sterling's testimony and any other evidence as to events that post-date January 5, 2021, including purported changes to the voter registration database or citizenship matching process after the January 2021 runoff election, or require Defendants to produce the limited number of documents Plaintiffs have requested.

Two facts are indisputable. *First*, Defendants have proffered Mr. Sterling to testify in part about two initiatives that post-date January 5, 2021. This testimony would contravene the Court's Order designating a January 5, 2021, cutoff date for new evidence.

11

*Second*, Defendants have largely refused to comply with their obligation under the Court's Order to furnish documents relevant to the matters about which Mr. Sterling is expected to testify at trial. The only document Defendants provided before Mr. Sterling's deposition about the new GaRVIS database was a Statement of Work that Mr. Sterling himself identified as outdated and incomplete. *See* Ex. 2 at 102:18-21. And Defendants, except for a later-provided 2020 Memorandum of Agreement, did not provide a single document related to their initiatives about citizenship verification. Now, despite the Court's unambiguous Order and their own agreement to provide responsive documents to any supplemental requests on an expedited basis,[4] Defendants are resisting the production of relevant documents described above. Defendants' refusal is not because no other relevant documents exist, but rather because Defendants insist that the Court's Scheduling Order prevents them from having to search for relevant documents because they might be electronically stored.

Defendants' position reflects an unreasonable interpretation of this Court's Scheduling Order. Plaintiffs have not asked Defendants to perform ESI searches.

---

[4] Because both of the initiatives at issue—GaRVIS and Defendants' purported citizenship verification initiatives—occurred long after the close of discovery in this case, Plaintiffs could not have requested information relevant to these initiatives (whether electronically-stored or otherwise) before the close of discovery because it did not exist at that time.

12

To the contrary, documents relevant to recent events regarding GaRVIS and citizenship verification would be readily available to the Secretary of State employees with detailed knowledge of these issues. And those employees would know exactly where to find the relevant documents in their own files without the need for any generalized electronic searches. The mere fact that documents may be stored electronically—as virtually everything is in the twenty-first century—does not make Plaintiffs' request require an "ESI search."

A key purpose of Rule 16(f) is "to prevent unfair prejudice to the litigants." *Hicks v. Client Servs., Inc.,* No. 07-61822, 2009 WL 10667497, at *3 (S.D. Fla. Feb. 11, 2009). Plaintiffs would suffer unfair prejudice should they be denied the opportunity to cross-examine Mr. Sterling with relevant documents regarding recent changes to the voter registration database and Exact Match process. *See, e.g.*, *Meyer v. Gwinnett Cty.*, No. 1:14-CV-00066, 2021 WL 3716658, at *8 (N.D. Ga. July 26, 2021) (discussing "the unfairness of allowing a witness to testify when Defendants were unprepared" to cross-examine the witness "due to Plaintiff's discovery violations" in failing to disclose relevant records). While Plaintiffs doubt these changes affect their claims, Plaintiffs are entitled to obtain Defendants' documents that show that absence of impact or, if some impact exists, what the nature and scope of that impact is. Without those documents, Plaintiffs cannot fully cross-examine Mr. Sterling or thoroughly refute Defendants' arguments in the

13

manner permitted by law. And producing documents about two apparently significant initiatives Defendants have recently undertaken would impose little to no burden on Defendants.

Accordingly, Plaintiffs respectfully request that Defendants be precluded from eliciting testimony regarding post-January 5, 2021, changes to the voter registration database or citizenship verification. *See* Nov. 30 Order ¶ 1; *Meyer*, 2021 WL 3716658, at *8; *see also Gomez v. Haystax Tech., Inc.*, 761 F. App'x 220, 232 (4th Cir. 2019) ("Per Rule 16 of the Federal Rules of Civil Procedure, the exclusion of [witness testimony] is . . . well within the district court's discretion."). In the alternative, Defendants should have to produce the relevant documents in compliance with this Court's Order. *See* Nov. 30 Order ¶ 6; *cf. Hickman v. Taylor*, 329 U.S. 495, 501 (1947) ("The various instruments of discovery now serve . . . as a device for ascertaining the facts, or information as to the existence or whereabouts of facts, relative to [the basic] issues. Thus civil trials in the federal courts no longer need be carried on in the dark.").

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request this Court preclude Defendants from eliciting testimony from any witness or otherwise introducing any evidence regarding post-January 5, 2021, events or, in the alternative, require Defendants to produce the documents Plaintiffs have requested.

**CERTIFICATION**

I certify that the foregoing submission complies with the requirements of Local Rule 5.C.

This 7th day of March, 2022.

        Respectfully submitted,

        */s/ Allegra J. Lawrence*
        Allegra J. Lawrence (GA Bar No. 439797)
        Leslie J. Bryan (GA Bar No. 091175)
        Lovita T. Tandy (GA Bar No. 697242
        Celeste Coco-Ewing (Admitted *pro hac vice*)
        Michelle L. McClafferty (GA Bar No. 161970)
        Monica R. Owens (GA Bar No. 557502)
        Rodney J. Ganske (GA Bar No. 283819)
        Maia Cogen (GA Bar No. 832438)
        Suzanne Smith Williams (GA Bar No. 526105)
        **LAWRENCE & BUNDY LLC**
        1180 West Peachtree Street, Suite 1650
        Atlanta, GA 30309
        Telephone: (404) 400-3350
        Fax: (404) 609-2504
        allegra.lawrence-hardy@lawrencebundy.com
        leslie.bryan@lawrencebundy.com
        lovita.tandy@lawrencebundy.com
        celeste.coco-ewing@lawrencebundy.com
        michelle.mcclafferty@lawrencebundy.com
        monica.owens@lawrencebundy.com
        rod.ganske@lawrencebundy.com
        maia.cogen@lawrencebundy.com
        suzanne.williams@lawrencebundy.com

Thomas R. Bundy (Admitted *pro hac vice*)
**LAWRENCE & BUNDY LLC**
8115 Maple Lawn Boulevard
Suite 350
Fulton, MD 20789
Telephone: (240) 786-4998
Fax: (240) 786-4501
thomas.bundy@lawrencebundy.com

Dara Lindenbaum (GA Bar No. 980780)
**SANDLER REIFF LAMB ROSENSTEIN & BIRKENSTOCK, P.C.**
1090 Vermont Avenue, NW
Suite 750
Washington, DC 20005
Telephone: (202) 479-1111
Fax: 202-479-1115
lindenbaum@sandlerreiff.com

Elizabeth Tanis (GA Bar No. 697415)
John Chandler (GA Bar No. 120600)
957 Springdale Road, NE
Atlanta, GA 30306
Telephone: (404) 771-2275
beth.tanis@gmail.com
jachandler@gmail.com

Kurt G. Kastorf (GA Bar No. 315315)
**KASTORF LAW, LLC**
1387 Iverson St, Suite 100
Atlanta, GA 30307
Telephone: (404) 900-0330
kurt@kastorflaw.com

Matthew G. Kaiser (Admitted *pro hac vice*)
Sarah R. Fink (Admitted *pro hac vice*)
**KAISERDILLON PLLC**
1099 Fourteenth Street, NW
Eighth Floor West
Washington, DC 20005

Telephone: (202) 640-2850
Fax: (202) 280-1034
mkaiser@kaiserdillon.com
sfink@kaiserdillon.com

Kali Bracey (Admitted *pro hac vice*)
Ishan Bhabha (Admitted *pro hac vice*)
Kathryn Wynbrandt (Admitted *pro hac vice*)
Victoria Hall-Palerm (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Fax: (202) 639-6066
kbracey@jenner.com
ibhabha@jenner.com
kwynbrandt@jenner.com
vhall-palerm@jenner.com

Jeremy M. Creelan (Admitted *pro hac vice*)
Elizabeth A. Edmondson (Admitted *pro hac vice*)
Allison N. Douglis (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
1155 Avenue of the Americas
New York, NY 10036-2711
Telephone: (212) 891-1600
Fax: (212) 891-1699
jcreelan@jenner.com
eedmondson@jenner.com
adouglis@jenner.com

Kelsey L. Stimple (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, IL  60654-3456
Telephone: (312) 222-9350
Fax: (312) 527-0484
kstimple@jenner.com

Von A. DuBose
**DUBOSE MILLER LLC**
75 14th Street N.E., Suite 2110
Atlanta, GA 30309
Telephone: (404) 720-8111
Fax: (404) 921-9557
dubose@dubosemiller.com

Johnathan Diaz (Admitted *pro hac vice*)
Paul M. Smith (Admitted *pro hac vice*)
**CAMPAIGN LEGAL CENTER**
1101 14th St. NW Suite 400
Washington, DC 20005
Telephone: (202)736-2200
jdiaz@campaignlegal.org
psmith@campaignlegal.org

Andrew D. Herman (Admitted *pro hac vice*)
**MILLER & CHEVALIER CHARTERED**
900 Sixteenth Street, NW
Washington, DC 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
aherman@milchev.com

*Counsel for Fair Fight Action, Inc.; Care in Action, Inc.; Ebenezer Baptist Church of Atlanta, Georgia, Inc.; Baconton Missionary Baptist Church, Inc.; Virginia-Highland Church, Inc.; and The Sixth Episcopal District, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that, on, March 7, 2022, I filed the within and foregoing **PLAINTIFFS' MOTION IN LIMINE AND MEMORANDUM IN SUPPORT TO LIMIT THE TESTIMONY OF GABRIEL STERLING AND OTHERWISE PRECLUDE THE INTRODUCTION OF ANY EVIDENCE RELATED TO DEFENDANTS' POST-2021 ELECTION "INITIATIVES."** with the Clerk of Court using the CM/ECF electronic filing system which will automatically send counsel of record e-mail notification of such filing.

This, the 7th day of March, 2022.

*/s/* Allegra J. Lawrence
Allegra J. Lawrence