# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

FAIR FIGHT ACTION, INC., *et al.*,

    *Plaintiffs*,

    v.

BRAD RAFFENSPERGER, *et al.*,

    *Defendants*.

Civ. Action No.

18-cv-5391-SCJ

## PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' SEPARATE MOTIONS IN LIMINE TO EXCLUDE CERTAIN PLAINTIFFS' WITNESSES FOR LACK OF <u>RELEVANCE AND FOR INADMISSIBILITY AND UNRELIABILITY</u>

Plaintiffs Fair Fight Action, Inc., Care in Action, Inc., Ebenezer Baptist Church of Atlanta, Georgia, Inc., Baconton Missionary Baptist Church, Inc., Virginia-Highland Church, Inc., and the Sixth Episcopal District, Inc., hereby file this consolidated Memorandum of Law in Opposition to Defendants' Motion in Limine to Exclude Certain Plaintiffs' Witnesses for Inadmissibility and Unreliability, Feb. 25, 2022, ECF No. 728 ("Inadmissibility Motion"), and Defendants' Motion in Limine to Exclude Certain Plaintiffs' Witnesses for Lack of Relevance, Feb. 25, 2022, ECF No. 726 ("Relevance Motion").

## INTRODUCTION

Federal law protects the rights of all eligible voters to register to vote and cast their ballots in a uniform state election system that is free of discrimination and unduly burdensome roadblocks. This case is about whether Defendants have unlawfully undermined those protections. Specifically, following the Court's summary judgment rulings, the parties are trying claims relating to (1) Defendants' discriminatory and unnecessarily burdensome Exact Match policy; (2) Defendants' systematic and extensive mismanagement of the statewide voter registration database; and (3) Defendants' abdication of their duty to train counties to implement uniform and not unduly burdensome processes for cancelling absentee ballots at the polls. Plaintiffs bear the burden at trial to establish the harms these policies and practices impose on voters. An important source of evidence is thus

1

testimony from individuals who witnessed or experienced these harms. In the motions at issue, Defendants ask this Court to prohibit Plaintiffs from presenting such testimony from several witnesses on Plaintiffs' "may call" list. Defendants also seek to prevent Plaintiffs from eliciting testimony from Dr. Nancy Dennard, Ed.D., in support of their Fifteenth Amendment, Voting Rights Act, and Equal Protection claims.

A plaintiff "is entitled to prove its case by evidence of its own choice," and has wide latitude to choose from the universe of admissible evidence. *Old Chief v. United States*, 519 U.S. 172, 186-87 (1997); *accord Johnson v. Jennings*, 772 F. App'x 822, 825 (11th Cir. 2019) (confirming this principle applies in civil cases). Here, Plaintiffs have chosen to prove their case by using lay witness testimony regarding the burdens of the challenged practices on voters, among other evidence. Plaintiffs have also chosen to prove their case in part through lay witness testimony recounting election-related discrimination perpetrated by the State, including the testimony of Dr. Dennard.

The Court should reject out of hand Defendants' accusation that these witnesses' testimony amounts to "precisely the type of unreliable and inflammatory claims that have fueled election conspiracy theories in recent years," Inadmissibility Mot. at 3; *see also* Relevance Mot. at 6. This is a demeaning and unwarranted attack on these witnesses—as well as an inappropriate effort to create

a false equivalence between witnesses' sworn testimony about their personal experiences and the repeatedly disproven challenges to the legitimacy of American elections that those dissatisfied with the 2020 election results have made. The same goes for Defendants' suggestion that their clients' campaign concerns should be relevant to this Court's consideration of the evidence. Relevance Mot. at 6. For the reasons discussed herein, Defendants cannot meet their burden to show why this testimony should be excluded. The Court should deny Defendants' motions.

## BACKGROUND

Over the course of this litigation, Plaintiffs have identified hundreds of potential witnesses who could provide testimony relevant to the claims in Plaintiffs' complaint. *See* Plfs.' Initial Disclosures, Feb. 27, 2019, ECF No. 45; Plfs.' Suppl. Initial Disclosures, Aug. 6, 2019, ECF No. 86; Plfs.' Second Suppl. Initial Disclosures, Nov. 15, 2019, ECF No. 135; Plfs.' Third Suppl. Initial Disclosures, Jan. 14, 2021, ECF No. 603.[1]

---

[1] The parties agreed that Plaintiffs' Third Supplemental Initial Disclosures should not be considered by the Court for purposes of summary judgment. *See* Joint Notice & Withdrawal of Defs.' Mot. for Disc. Sanctions Under Fed. Rule of Civ. P. 37, at 1, Feb. 8, 2021, ECF No. 609. The Court subsequently ordered Plaintiffs to provide Defendants with the "names and contact information for the anticipated twenty-five to forty potential witnesses likely to have discoverable information to support Plaintiffs' claims and defenses and whose testimony relates to post-2018 election events pertaining to Plaintiffs' remaining claims." Order at 2, Nov. 30, 2021, ECF No. 641.

The Court's jurisdictional and merits decisions on summary judgment narrowed the scope of claims to be addressed at trial. Consistent with the Court's rulings and Plaintiffs' commitment to presenting their case efficiently, Plaintiffs narrowed to approximately eighty the potential voter, poll watcher, and poll worker witnesses initially disclosed. *See* Plfs.' Am. Attachment F-1 (Witness List) at 6-11, Feb. 18, 2022, ECF No. 721-3.[2] In the weeks following submission of the Pretrial Order, Plaintiffs have continued to streamline their witness list.

On February 25, 2022, Defendants moved to exclude twenty-four of Plaintiffs' may-call witnesses in their entirety. One motion seeks to exclude fourteen witnesses who served as poll watchers or assisted voters in various capacities, on the grounds that these witnesses' testimony "consists of, or is entirely based on, hearsay, speculation, and unfounded lay opinion," or is irrelevant and inadmissible under Federal Rule of Evidence 403. *See* Inadmissibility Mot. at 3-5, 7. Another motion seeks to exclude twelve witnesses on the grounds that their testimony is not relevant to any of the issues to be proven at trial or is otherwise inadmissible under Rule 403. *See* Relevance Mot. at 1, 3.[3]

---

[2] Plaintiffs' amended may-call witness list also includes three would-be voters burdened by the Exact Match policy. Plaintiffs separately filed a motion for leave to disclose those witnesses, which remains pending. *See* Plfs.' Mem. of Law in Supp. of Mot. for Leave to Disclose Fact Witnesses Pursuant to Rule 26(e) and/or Rule 37(c)(1), Feb. 22, 2022, ECF No. 722-1.

[3] Two witnesses on Plaintiffs' "may call" list were challenged in both motions.

Out of the witnesses challenged in Defendants' motions, Plaintiffs may call only Kelly Dermody, Gary Ratner, Cam Ashling, Robin Boyd, Robert Walker, Jr., and Dr. Dennard. Plaintiffs' opposition therefore addresses only those witnesses.[4]

## LEGAL STANDARD

A trial judge has broad discretion to determine whether to admit evidence, including lay testimony, and such evidentiary rulings are subject to review only for abuse of discretion. *See Montgomery v. U.S. Postal Serv.*, 177 F. App'x 963, 965 (11th Cir. 2006). The party trying to exclude evidence "has the burden of proving that the evidence sought to be excluded is inadmissible," and the Court should "grant a motion in limine to exclude evidence only if the evidence in question is clearly inadmissible." *Wilson v. Pepsi Bottling Grp., Inc.*, 609 F. Supp. 2d 1350, 1359 (N.D. Ga. 2009).

"Unless evidence is clearly inadmissible on all potential grounds evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context." *Ma v. Equifax Info. Servs., LLC*, 288 F. Supp. 3d 1360, 1368 (N.D. Ga. 2017) (quoting *Am. K-9 Detection Servs., Inc. v. Rutherford Int'l, Inc.*, No: 6:14-cv-1988-Orl-37TBS, 2016 WL

---

[4] For the same reasons stated in this Opposition, the other challenged witnesses' testimony would be admissible. But given the streamlining of the witness list and in the interest of judicial economy, the Court need not address these additional witnesses.

7183365, at *3 (M.D. Fla. May 16, 2016) (alterations omitted)). Motions in limine should be denied if the proponent can "lay a sufficient foundation at trial." *Andrews v. Autoliv Japan, Ltd.*, No. 1:14-cv-3432-SCJ, 2021 WL 4094055, at *1 (N.D. Ga. Jan. 20, 2021) (quoting *Serna v. Olde Jackson Vill. Inc.*, 14-cv-49-JD, 2015 WL 4946415, at *3 (D.N.H. Aug. 19, 2015)). Thus, when only portions of a challenged witness's testimony would be inadmissible, it is proper to address objections at trial rather than excluding the witness wholesale. *See, e.g.*, *Just Play, LLC v. FitzMark, Inc.*, No. 20-80663-CIV-CANNON/Reinhart, 2021 WL 4973909, at *2 (S.D. Fla. Sept. 12, 2021) ("Defendant may raise proper hearsay-related objections to [a fact witness's] testimony, but the Court does not agree that he should be excluded wholesale from testifying based on a purported lack of personal knowledge.").

Here, Defendants' objections implicate federal evidence law governing (1) the proper subjects of lay witness testimony, (2) hearsay, (3) relevance, and (4) exclusion of relevant evidence due to certain other considerations, such as unfair prejudice, confusion of the issues, or waste of time under Federal Rule of Evidence 403. These issues are discussed in turn.

### A. Permissible Subjects for Lay Witness Testimony

A witness may testify to any matter within his or her personal knowledge. Fed. R. Evid. 602. "[P]ersonal knowledge can be established by showing that the

witness was in a physical position to see, hear, or otherwise perceive the matters to which the testimony relates." *Johnson v. Scotty's, Inc.*, 119 F. Supp. 2d 1276, 1281 (M.D. Fla. 2000); *see also United States v. Williams*, 643 F. App'x 933, 938 (11th Cir. 2016) (affirming admission of testimony about "observations made and information obtained" during a search); *Coward v. Forestar Realty, Inc.*, No. 4:15-cv-0245-SCJ, 2019 WL 12536138, at *7 (N.D. Ga. June 28, 2019) ("Any person may testify as a lay witness on matters within their personal knowledge, based on their observations and perceptions . . . .").

A witness's knowledge need not "rise to the level of absolute certainty"; rather, evidence "is generally admissible unless the witness 'could not have actually perceived or observed that which he testifies to.'" *United States v. Wrubleski*, No. 12-cr-60297-ZLOCH/HUNT, 2013 WL 12308495, at *2 (S.D. Fla. July 19, 2013) (quoting *M.B.A.F.B. Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 681 F.2d 930,932 (4th Cir. 1982)), *R. & R. adopted*, No. 12-cr-60297-ZLOCH, 2013 WL 12308496 (S.D. Fla. Aug. 12, 2013). While mere speculation is not enough to satisfy the requirement of personal knowledge, matters rooted in the witness's own "sensory perception," "comprehension," and "present recollection" are not speculative. *See KW Plastics v. U.S. Can Co.*, 131 F. Supp. 2d 1265, 1272 (M.D. Ala. 2001); *see also Sabal Trail Transmission, LLC v. 3.921 Acres of Land in Lake Cnty. Fla.*, 947 F.3d 1362, 1369-70 (11th Cir. 2020) (affirming admission of

testimony, over speculation objection, that was based on the witness's "personal experience and knowledge").

For lay witnesses, "testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. The requirement that lay opinion testimony be rationally based on the witness's perception is the same "familiar requirement of first-hand knowledge or observation" as set forth in Rule 602. *United States v. Jayyousi*, 657 F.3d 1085, 1102 (11th Cir. 2011) (quoting Fed. R. Evid. 701 advisory committee's note); *see also KW Plastics*, 131 F. Supp. 2d at 1272 (noting that Rule 701 "incorporates the requirements of Rule 602").

### B.    Hearsay

A lay witness's testimony generally may not be used to introduce hearsay— an out-of-court statement offered to prove the truth of the matter asserted in the statement. *Kirksey v. Wal-Mart Stores E., LP*, No. 2:19-cv-00228-SCJ, 2021 WL 4865283, at *2 (N.D. Ga. Mar. 15, 2021) (citing Fed. R. Evid. 801(c)). "[A] lay opinion properly drawn from eye-witness observations," however, is not hearsay. *United States v. Lee*, No. 4:07-cr-60-RH, 2012 WL 1192163, at *2 (N.D. Fla. Mar. 15, 2012), *R. & R. adopted*, 2012 WL 1192152 (N.D. Fla. Apr. 9, 2012); *see also*

*City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 560-61 (11th Cir. 1998) (holding that a hearsay objection does not apply where the witness is recounting "matters in which [the witness] personally participated or . . . personally observed"). Testimony that a witness heard another individual make a particular statement is admissible to support the fact that the statement was made, even if the out-of-court statement would be hearsay were it to be offered for the truth of its contents. *See Read v. Se. Permanente Med. Grp., Inc.*, No. 1:16-cv-1152-CAP-JKL, 2017 WL 6371195, at *4 n.5 (N.D. Ga. July 20, 2017), *R. & R. adopted*, 2017 WL 6374874 (N.D. Ga. Sept. 13, 2017).

Moreover, under circumstances set forth in Federal Rule of Evidence 803, a party may also offer an out-of-court statement for the truth of its contents. Those circumstances include where the statement was "describing or explaining an event or condition, made while or immediately after the declarant perceived it," Fed. R. Evid. 803(1), as well as when a statement goes to show the declarant's "then-existing state of mind," Fed. R. Evid. 803(3). In addition, a party may recount an out-of-court statement for the truth of its contents where the statement falls within the terms of the "residual exception" to hearsay: that is, where it is "supported by sufficient guarantees of trustworthiness" accounting for "the totality of circumstances under which it was made and evidence, if any, corroborating the statement," and "is more probative on the point for which it is offered than any

other evidence that the proponent can obtain through reasonable efforts." Fed. R. Evid. 807.

### C.     Relevance

Evidence is relevant if it "has any tendency" to make a fact of consequence "more or less probable than it would be without the evidence." Fed. R. Evid. 401. All relevant evidence is admissible unless otherwise provided by law. *Id.* 402. As the Eleventh Circuit has repeatedly acknowledged, "the standard for what constitutes relevant evidence is a low one." *S. Grande View Dev. Co. v. City of Alabaster*, 1 F.4th 1299, 1309 (11th Cir. 2021) (quoting *United States v. Tinoco*, 304 F.3d 1088, 1120 (11th Cir. 2002) (alterations adopted)); *see also, e.g.*, *Lowe v. Atlas Logistics Grp. Retail Servs. (Atlanta), LLC*, No. 1:13-cv-2425-AT, 2015 WL 11202251, at *1 (N.D. Ga. June 16, 2015) ("The relevance bar is quite low."). Determining whether evidence meets this low bar is "well within the broad discretion of the district courts." *Tinoco*, 304 F.3d at 1120 (quotations omitted).

While Federal Rule of Evidence 403 allows the Court to "exclude relevant evidence," it does so only if the "probative value [of the evidence] is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Rule 403 "is an extraordinary remedy which the district court should invoke sparingly, and the balance should be struck in favor of

admissibility." *United States v. Alfaro-Moncada*, 607 F.3d 720, 734 (11th Cir.

2010) (citation omitted). "[E]xcluding relevant evidence on the basis of 'unfair

prejudice' is a useless procedure in a bench trial," as a judge is presumed to

"exclude those improper inferences from his mind in reaching a decision."

*Andrews*, 2020 WL 10965912, at *14 (alteration omitted) (quoting *Gulf States*

*Utils. Co. v. Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. Unit A Jan. 1981)).

## ARGUMENT

### I.   Plaintiffs' witnesses challenged for admissibility and reliability will provide admissible, relevant testimony.

Defendants' Inadmissibility Motion addresses four witnesses Plaintiffs may

call at trial—all of whom would testify to their own personal observations. Such

testimony is plainly admissible under the Federal Rules of Evidence. *See supra* at

6-11.

**Robin Boyd.** Defendants challenge testimony from Robin Boyd, who served

as a poll watcher in Clayton County during the November 2018 election. *See*

Inadmissibility Mot. at 28-29; Decl. of Robin Boyd, Nov. 13, 2018, ECF No. 728-

15 ("Boyd Decl."). Ms. Boyd will testify that she witnessed voters being sent from

her polling location to other polling locations without being offered provisional

ballots, and she witnessed other voters being told that their names were not on the

registration list at all and not being offered provisional ballots. Boyd Decl. ¶¶ 5,

10. She will also testify that when she suggested to voters that they could vote

provisionally, they expressed concerns that their provisional ballots would not count and thus "left to go to the location they were told was their voting place to cast their ballot" or expressed that they would give up trying to vote entirely because they had to go to work. *Id.* ¶ 8.

Defendants argue that because Ms. Boyd has no personal knowledge of the particular situations of the voters whom she observed, any testimony she can offer is inadmissible speculation. *See* Inadmissibility Mot. at 28. But Ms. Boyd's knowledge of voters' individual situations is beside the point. The relevant points are that these voters were told they were not on the rolls or were registered in a different location and that they were then turned away and were not given the opportunity to vote provisionally. Thus, the fact that the voter was told he or she was not on the voter roll is relevant for the fact that it was said, not for the truth of the matter. Ms. Boyd's observations of the voter not being given an opportunity to vote provisionally is thus not hearsay. *See Brown v. Univ. of Ill.*, No. 10-C-06104, 2015 WL 6756266, at *4 n.5 (N.D. Ill. Nov. 5, 2015) (holding that a witness's "testimony at trial about her observations of [two individuals' interactions] would, of course, not be hearsay"); *accord* Order at 38 n.19, Mar. 31, 2021, ECF No. 617. This testimony serves as a rejoinder to Defendants' likely argument that burdens

arising from mismanagement of the database are mitigated by the availability of provisional ballots.[5]

Ms. Boyd can also permissibly testify that when she recommended to some of those voters that they ask to vote provisionally, several expressed concerns that if they voted provisionally, a provisional ballot would not be counted or would further delay them in getting to work. These voter statements are offered, not for their truth—whether the provisional ballot would in fact count—but for the state of mind of the voter under Rule 803(3), which reflects the burden on a voter of being shuffled into the provisional ballot process with no guarantee that their vote will be counted. *See Curling v. Raffensperger*, 397 F. Supp. 3d 1334, 1364-65 (N.D. Ga. 2019); Fed. R. Evid. 803(3).

***Kelly Dermody.*** Defendants seek to exclude all testimony from Kelly Dermody, a lawyer who served as a poll watcher at a Fulton County polling place

---

[5] Although the Court dismissed Plaintiffs' claims relating to the distribution and availability of provisional ballots, *see* Order at 41-42, Mar. 31, 2021, ECF No. 617, the availability of provisional ballots remains relevant to assessing the burden on voters due to the challenged policies, *see, e.g.*, Defs.' Reply Br. in Supp. of Mot. for Summ. J. (Merits) at 5, Aug. 31, 2020, ECF No. 535 (citing provisional ballot availability to argue there was "no disenfranchisement"). Courts evaluating challenges to election laws look to "the combined effect" of various practices, rather than to each practice in a vacuum. *League of Women Voters of N.C. v. North Carolina*, 769 F.3d 224, 242 (4th Cir. 2014) (quoting *Clingman v. Beaver*, 544 U.S. 581, 607-08 (2005) (O'Connor, J., concurring in part and concurring in the judgment)); *Greater Birmingham Ministries v. Sec'y of State for State of Ala.*, 992 F.3d 1299, 1319 (11th Cir. 2021) (analyzing burden in the context of other mitigating policies).

during the November 2018 election. *See* Inadmissibility Mot. at 12-15; Aff. of
Kelly Dermody, Nov. 13, 2018, ECF No. 728-2 ("Dermody Aff.").[6] Ms. Dermody
witnessed a number of voters being told that they were in the wrong precinct.
Dermody Aff. ¶ 9. She further concluded that poll workers were under the
impression that voters were not allowed to cast provisional ballots before a certain
time, and in fact did not give provisional ballots to at least two voters who were
told that they were at the incorrect precinct. *Id.* ¶¶ 9(a), 9(b).

Plaintiffs offer Ms. Dermody's testimony for her non-hearsay observations
that poll workers in that county were not letting voters cast provisional ballots who
were in the wrong location according to the voter registration database. This
testimony will help the Court assess the impact on voters of inaccurate addresses
and polling locations listed in the State's voter registration database. (Plaintiffs will
use different evidence to establish that addresses and polling locations were and
are in fact inaccurate.) It also will help rebut Defendants' argument that the
availability of provisional voting mitigates any systematic harms caused by the
voter registration database. Likewise, Ms. Dermody's observations that the Poll
Manager created a "bottleneck" due to her handling of problems that voters
appeared to be experiencing with their registrations, Dermody Aff. ¶ 6, is a

---

[6] Ms. Dermody will testify by deposition designation at trial, as she is outside the
Court's subpoena power.

permissible lay opinion that supports Plaintiffs' position as to the burden on voters and refutes Defendants' position as to the state interests served by the way the voter registration database is (mis)managed.

*Gary Ratner.* Defendants also seek to exclude testimony from Gary Ratner, who volunteered as a poll watcher in a Dougherty County precinct at Albany State University during the November 2018 General Election. *See* Inadmissibility Mot. 24-25; Decl. of Gary Ratner, Nov. 11, 2018, ECF No. 728-12 ("Ratner Decl."). Mr. Ratner will testify to his personal observations that voters were "turned away and told they did not appear on the rolls." Ratner Decl. ¶ 4. Mr. Ratner will also testify that he spoke with several voters who recounted to him that they were not found on the rolls and their names had hyphens, apostrophes, or non-traditional spelling. Ratner responded by advising those voters to ask a poll worker to search for their first initial and last name. *Id.* ¶¶ 5-7. After Mr. Ratner gave this advice, at least five of these voters told him that they had just been allowed to vote on a voting machine. *Id.* Mr. Ratner's testimony is admissible to show, at a minimum, the burdens voters face when they are told that they are not found on the rolls. Moreover, Mr. Ratner may permissibly recount statements he observed by poll workers regarding not being able to find voters on the rolls, which are admissible for the fact that they were said to the voter (even apart from their truth).

Mr. Ratner may also recount statements from voters immediately after they successfully voted, both as present sense impressions under Rule 803(1) and under the residual exception in Rule 807. Under Rule 803(1), the voters' statements made on the heels of voting are admissible, because "the substantial contemporaneity of the event and the statement negate the likelihood of deliberate or conscious misrepresentation." *United States v. Scrima*, 819 F.2d 996, 1000 (11th Cir. 1987) (internal quotations marks and citations omitted). And under Rule 807, the voters' statements are bolstered by "guarantees of trustworthiness," looking to the totality of the circumstances under which they were made. *F.T.C. v. On Point Glob. LLC*, No. 19-25046-Civ-Scola, 2021 WL 4891334, at *2-3 (Sept. 23, 2021). The speaker was at the polls, had experienced challenges voting, had turned to the witness for advice, and had then returned to the polling place to spend more time and effort resolving the problem. These facts lend clear circumstantial degrees of trustworthiness to the voters' statements, which are also more probative of the fact that these voters were ultimately able to vote than any other evidence Plaintiffs could obtain through reasonable efforts. *See id.*

**Cam Thi Ashling.** Defendants seek to exclude testimony from Cam Thi Ashling, a Georgia voter who assisted a (now deceased) Gwinnett County resident with voting in the November 2018 general election. *See* Inadmissibility Mot. 19-21; Decl. of Cam Thi Ashling, Oct. 9, 2019, ECF No. 728-7 ("Ashling Decl."). Ms.

Ashling will testify at trial that she helped an almost-80-year-old woman, Ngoc Anh Thi Tran, with multiple aspects of the voting process because Ms. Tran spoke limited English and Ms. Ashling was able to communicate with her in Vietnamese. Ashling Decl. ¶ 3. Ms. Ashling will testify that she personally checked Ms. Tran's registration status and saw a notice that Ms. Tran's file was not active and directing her to call the Gwinnett County Board of Elections. *Id.* ¶ 3(d). When Ms. Ashling did so, the Board of Elections informed her that Ms. Tran's naturalization paperwork was required, which took effort to find because Ms. Tran had received it a long time ago. *Id.* ¶ 3(e).

Ms. Ashling will also testify that she drove Ms. Tran to the Gwinnett County Board of Elections, where they both waited in line, and where they were eventually informed that Ms. Tran's voter status was pending because her name was not an "exact match" in the system due to a missing space, and because her gender was listed as male. *Id.* ¶¶ 3(f), 3(g). Ms. Ashling will testify that the Board of Elections staff informed her and Ms. Tran that the issues were corrected and that she was removed from pending status, and that Ms. Tran was then given a ballot and able to vote with Ms. Ashling's translation and assistance. *Id.* ¶ 3(h).

Defendants portray Ms. Ashling's testimony as deriving solely from "hearsay, belief, and/or speculation," because Ms. Ashling was present only to hear statements from other individuals—Ms. Tran and Gwinnett County officials—

about Ms. Tran's citizenship status and how her voter registration was processed. Inadmissibility Mot. at 20. But Ms. Ashling will speak to her personal observations of the fact that the county directed Ms. Tran to take additional steps to address her apparent pending status—*i.e.*, for the impact of the statement on the voter and not for the truth of the assertion—and the burdens on Ms. Tran from needing to cure that apparent status. *See Brown*, 2015 WL 6756266, at *4 n.5. This testimony is directly relevant to how voters are affected by Defendants' Exact Match policy, which Defendants argue imposes limited burdens on voters. This testimony hinges not on the veracity of the out-of-court statements, but rather on Ms. Ashling's personal observations and rational inferences drawn from those observations.[7]

* * *

For all of the reasons discussed above, Plaintiffs' poll watcher and volunteer witnesses will offer admissible evidence of the burdens on voters caused by the policies and practices Plaintiffs challenge. Evidence of those burdens is doubtless relevant to a dispute when as here, the burdens of the challenged practices and procedures are integral to the case. *See, e.g.*, *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (First and Fourteenth Amendment fundamental right to vote); *Greater*

---

[7] While not necessary to the admissibility of Ms. Ashling's testimony, it is worth noting that Defendants produced evidence in this litigation showing that Ms. Tran's voter registration was moved out of pending status on November 1, 2018. *See* Voter Registration Record for Ngoc Anh Thi Tran, produced as State-Defendants-01142393-94 (attached as Exhibit 1).

*Birmingham Ministries*, 992 F.3d at 1328 (Fourteenth and Fifteenth Amendment racial discrimination); *Ne. Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 635 (6th Cir. 2016) (geographic equal protection); *Brnovich v. Dem. Nat'l Comm.*, 141 S. Ct. 2321, 2338 (2021) (Voting Rights Act).

## II. Plaintiffs' additional witness challenged on relevance grounds speaks to claims still at issue in this litigation.

For similar reasons, the testimony Defendants' second motion seeks to exclude for irrelevance would have at least some tendency to make a fact of consequence "more or less probable than it would be without the evidence," and thus is relevant. Fed. R. Evid. 401.

Specifically, Defendants challenge the relevance of testimony from Robert Walker, Jr., a Peach County voter who did not receive his absentee ballot and who, when he went to vote in person on the first day of early voting, was required to wait outside the check-in line for the county to approve the cancellation of his ballot. *See* Decl. of Robert Walker, Jr., Oct. 13, 2020, ECF No. 726-9 ("Walker Decl."). Defendants argue that Mr. Walker's testimony about delays is irrelevant because, to Defendants, it "appears" that Mr. Walker's "real complaint" is about staffing shortages. What testimony implies, however, is to be determined by the trier of fact; it is not a basis for excluding evidence.

Defendants further argue that because the poll workers "followed the letter of [state] law" regarding how absentee ballots should be cancelled when voters do

not have their ballot with them in hand at a polling place, Mr. Walker's testimony is not relevant. Relevance Mot. at 17 (citing O.C.G.A. § 21-2-388(2)). But Defendants entirely ignore that Mr. Walker personally observed multiple other voters' experiences when they attempted to cancel their ballots. Those observations are directly relevant to Plaintiffs' absentee-ballot cancellation claims and easily clear the "low" bar of relevance. *See S. Grande*, 1 F.4th at 1309.

For example, Mr. Walker observed a couple holding absentee ballots and waiting at the polls who "told [Mr. Walker] that they also had to wait for the cancellation to be approved." Walker Decl. ¶ 14; *see also* Walker Dep. 40:25-41:6 (attached as Exhibit 2) (confirming that Mr. Walker saw these individuals holding absentee ballots in their hands).[8] Mr. Walker's testimony on this point indicates that these voters' treatment was in clear violation of Georgia law, which explicitly instructs that a voter may cancel a ballot when the voter is "in possession of the ballot" *without* going through the process of receiving permission from the board of registrars or absentee ballot clerk to allow the voter to vote in person. *See* O.C.G.A. § 21-2-388(1). As the Court has previously acknowledged, incidents like these evince that Defendants' lack of training and supervision of the counties have

---

[8] This is an example of Defendants objecting to testimony on a basis that could be easily cured through clarification or additional testimony at trial. Indeed, because the evidence to which Defendants are objecting is contained in a declaration, Plaintiffs have not been given the opportunity to "cure" Defendants' objection as they would be able to do at trial.

yielded wide-ranging burdens on voters in violation of *federal* law. *See* Order at 16-17, Dec. 27, 2019, ECF No. 188.

### III.   Dr. Nancy Dennard's testimony is relevant to Plaintiffs' Voting Rights Act, Fifteenth Amendment, and Equal Protection claims and other claims.

Defendants fare no better in moving to exclude Dr. Nancy Dennard, Ed.D., on the basis of relevance. Plaintiffs disclosed Dr. Dennard as a person with relevant information before the close of discovery, but Defendants opted not to take her deposition. Defendants' arguments are thus based on speculation and unsubstantiated characterizations of what Dr. Dennard's testimony will be.

Dr. Dennard lives in Brooks County, Georgia, and worked as an educator and speech language-pathologist in the majority-Black Brooks County school system. Her experience suggested that some of the problems with the school system came from an unresponsive majority-white school board, so she decided to run for the School Board. After two unsuccessful attempts, she was elected in a special election in 2009, owing to a campaign that targeted Black residents who had never voted before. The white board member whom Dr. Dennard defeated complained to the Secretary of State, then Karen Handel, about the number of

absentee ballots cast for Dr. Dennard, but the Secretary's office investigated and found no evidence of voter fraud.

The next year, in 2010, Dr. Dennard helped two other Black women win primary elections against white school board members, elections having historic rates of Black voter turnout and absentee ballots. By that time, the Secretary of State was Brian Kemp. When a white school board member complained about the results, Secretary Kemp launched a joint investigation of the election along with the Georgia Bureau of Investigations and the State Election Board. Shortly after the first-ever majority-Black school board was elected in November 2010, Dr. Dennard, her fellow Black board-members elect, and seven other African Americans (plus two more later) were arrested on December 21, 2010. After the regular grand jury would not indict them, a special grand jury was impaneled and, nearly a year after their arrests, indicted them on 120 counts of purported election fraud. After their indictments, the three Black board members were removed from office by the- Governor Sonny Perdue, causing the school board to revert to majority white.

Dr. Dennard was never tried on the charges against her. Instead, the District Attorney pressured Dr. Dennard and her co-defendants to take a series of plea bargains, each of which had one term in common: a single felony count—enough to remove her from the school board. When these efforts failed, the District

22

Attorney, working with the Secretary of State's office, tried a waitress, Lula Smart, three times. Secretary Kemp noted in State Election Board minutes that he sent the Director of Elections to testify. The Court declared a mistrial in the first two trials before the case went to the jury. The third trial, in fall 2014, in which the Secretary of State provided a key witness, resulted in Ms. Smart's acquittal. Criminal charges were dropped against Dr. Dennard and the others by the end of the year. Nonetheless, Secretary Kemp kept the State Election Board's case against Dr. Dennard and the others open until it was quietly dismissed in mid-2016.[9]

Dr. Dennard endured a six-year effort, by the Secretary of State and State Election Board (Defendants here), as well as other Georgia officials, to delegitimize the lawful election of a historic majority-Black school board, to disenfranchise the board's Black members, to undermine the electoral choices of Black citizens, and to intimidate Black absentee voters. Dr. Dennard's testimony about this experience shows that Georgia's "history of official discrimination" is not, as Defendants claim, relegated to the distant past. *See Thornburg v. Gingles*, 478 U.S. 30, 36-37 (1986) (quotation omitted) (discussing the first Senate Factor); *see also Burton v. City of Belle Glade*, 178 F.3d 1175, 1189 (11th Cir. 1999) (observing that "a history of discriminatory official actions" is relevant to the issue

---

[9] Defendants inaccurately claim the events about which Dr. Dennard will testify "occurred long before the facts at issue in this case" and incorrectly portray these events as confined to 2010. Relevance Mot. at 10.

of discriminatory intent with respect to Fifteenth Amendment and Equal Protection claims (quoting *Elston v. Talladega Cnty. Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir. 1993))). This incident, spear-headed by Secretary Kemp, is also relevant to showing discriminatory intent and provides additional context for the Secretary's 2014 and 2018 statements of concern about Black Georgians registering to vote.

As this Court recently noted in another voting rights case, even the passage of "centuries" would not "diminish the importance of those events . . . under [the first] Senate factor, which specifically requires the Court to consider the *history* of official discrimination in Georgia." *Alpha Phi Alpha Fraternity Inc. v. Raffensperger*, -- F. Supp. 3d --, 2022 WL 633312, at *66 (N.D. Ga. Feb. 28, 2022). Nor is the relevance of Dr. Dennard's testimony diminished because her experience of official discrimination concerned election practices distinct from those challenged in this lawsuit. *See, e.g., Thornburg*, 478 U.S. at 38-39 (discussing past election practices distinct from those at issue in relation to North Carolina's history of official discrimination); *see also League of United Latin Am. Citizens v. Perry*, 548 U.S. 399, 439-40 (2006) (indicating that any and all historical devices of voter-related discrimination bear on the first Senate factor).[10]

---

[10] Defendants rely on a footnote in *Greater Birmingham Ministries* to refute this argument. Relevance Mot. at 10 (citing 992 F.3d at 1332 n.44). That footnote, in addition to being dicta, addresses an unrelated Senate Factor (the third, addressing "voting practices or procedures") and has no bearing on whether Dr. Dennard's testimony is relevant to Georgia's history of official discrimination. 992 F.3d at

Defendants therefore fail to show that Dr. Dennard's testimony is inadmissible.[11]

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendant's motions to exclude the testimony of Plaintiffs' witnesses.

This 11th day of March, 2022.

Respectfully submitted,

*/s/ Allegra J. Lawrence*

Allegra J. Lawrence (GA Bar No. 439797)
Leslie J. Bryan (GA Bar No. 091175)
Lovita T. Tandy (GA Bar No. 697242)
Celeste Coco-Ewing (Admitted *pro hac vice*)
Michelle L. McClafferty (GA Bar No. 161970)
Monica R. Owens (GA Bar No. 557502)
Rodney J. Ganske (GA Bar No. 283819)
Maia Cogen (GA Bar No. 832438)
Suzanne Smith Williams (GA Bar No. 526105)
**LAWRENCE & BUNDY LLC**
1180 West Peachtree Street, Suite 1650
Atlanta, GA 30309
Telephone: (404) 400-3350
Fax: (404) 609-2504
allegra.lawrence-hardy@lawrencebundy.com
leslie.bryan@lawrencebundy.com
lovita.tandy@lawrencebundy.com
celeste.coco-ewing@lawrencebundy.com
michelle.mcclafferty@lawrencebundy.com

---

1332 & n.44. And whereas the conduct at issue there involved a non-party state official, *id.*, the conduct at issue here is directly tied to two state Defendants.

[11] In Dr. Dennard's campaigns for election, she witnessed problems with cancellation of absentee ballots and the voter list, about which she will also testify.

monica.owens@lawrencebundy.com
rod.ganske@lawrencebundy.com
maia.cogen@lawrencebundy.com
suzanne.williams@lawrencebundy.com

Thomas R. Bundy (Admitted *pro hac vice*)
**LAWRENCE & BUNDY LLC**
8115 Maple Lawn Boulevard
Suite 350
Fulton, MD 20789
Telephone: (240) 786-4998
Fax: (240) 786-4501
thomas.bundy@lawrencebundy.com

Dara Lindenbaum (GA Bar No. 980780)
**SANDLER REIFF LAMB ROSENSTEIN &
BIRKENSTOCK, P.C.**
1090 Vermont Avenue, NW
Suite 750
Washington, DC 20005
Telephone: (202) 479-1111
Fax: 202-479-1115
lindenbaum@sandlerreiff.com

Elizabeth Tanis (GA Bar No. 697415)
John Chandler (GA Bar No. 120600)
957 Springdale Road, NE
Atlanta, GA 30306
Telephone: (404) 771-2275
beth.tanis@gmail.com
jachandler@gmail.com

Kurt G. Kastorf (GA Bar No. 315315)
**KASTORF LAW, LLC**
1387 Iverson St, Suite 100
Atlanta, GA 30307
Telephone: (404) 900-0330
kurt@kastorflaw.com

Matthew G. Kaiser (Admitted *pro hac vice*)

Sarah R. Fink (Admitted *pro hac vice*)
**KAISERDILLON PLLC**
1099 Fourteenth Street, NW
Eighth Floor West
Washington, DC 20005
Telephone: (202) 640-2850
Fax: (202) 280-1034
mkaiser@kaiserdillon.com
sfink@kaiserdillon.com

Kali Bracey (Admitted *pro hac vice*)
Ishan Bhabha (Admitted *pro hac vice*)
Kathryn Wynbrandt (Admitted *pro hac vice*)
Victoria Hall-Palerm (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Fax: (202) 639-6066
kbracey@jenner.com
ibhabha@jenner.com
kwynbrandt@jenner.com
vhall-palerm@jenner.com

Jeremy M. Creelan (Admitted *pro hac vice*)
Elizabeth A. Edmondson (Admitted *pro hac vice*)
Allison N. Douglis (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
1155 Avenue of the Americas
New York, NY 10036-2711
Telephone: (212) 891-1600
Fax: (212) 891-1699
jcreelan@jenner.com
eedmondson@jenner.com
adouglis@jenner.com

Kelsey L. Stimple (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
353 N. Clark Street

Chicago, IL 60654-3456
Telephone: (312) 222-9350
Fax: (312) 527-0484
kstimple@jenner.com

Von A. DuBose
**DUBOSE MILLER LLC**
75 14th Street N.E., Suite 2110
Atlanta, GA 30309
Telephone: (404) 720-8111
Fax: (404) 921-9557
dubose@dubosemiller.com

Johnathan Diaz (Admitted *pro hac vice*)
Paul M. Smith (Admitted *pro hac vice*)
**CAMPAIGN LEGAL CENTER**
1101 14th St. NW Suite 400
Washington, DC 20005
Telephone: (202)736-2200
jdiaz@campaignlegal.org
psmith@campaignlegal.org

Andrew D. Herman (Admitted *pro hac vice*)
**MILLER & CHEVALIER CHARTERED**
900 Sixteenth Street, NW
Washington, DC 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
aherman@milchev.com

*Counsel for Fair Fight Action, Inc.; Care in
Action, Inc.; Ebenezer Baptist Church of Atlanta,
Georgia, Inc.; Baconton Missionary Baptist
Church, Inc.; Virginia-Highland Church, Inc.; and
The Sixth Episcopal District, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on March 11, 2022, I filed the within and foregoing

**PLAINTIFFS' CONSOLIDATED MEMORANDUM OF LAW IN**

**OPPOSITION TO DEFENDANTS' SEPARATE MOTIONS IN LIMINE TO**

**EXCLUDE CERTAIN PLAINTIFFS' WITNESSES FOR LACK OF**

**RELEVANCE AND FOR INADMISSIBILITY AND UNRELIABILITY** with

the Clerk of Court using the CM/ECF electronic filing system which will

automatically send counsel of record e-mail notification of such filing.

 This, the 11th day of March, 2022.


       */s/ Allegra J. Lawrence*
       Allegra J. Lawrence