# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

FAIR FIGHT ACTION, INC, *et al.*,

       *Plaintiffs*,

v.

BRAD RAFFENSPERGER, *et al.*,

       *Defendants*.

Civ. Action No.

18-cv-5391-SCJ

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION AND BRIEF TO EXCLUDE SUPPLEMENTAL REPORT AND TESTIMONY OF DR. M. ADRIENNE JONES**

## INTRODUCTION

Defendants' attempt to exclude Dr. Adrienne Jones' supplemental report and testimony fails for the same reason that Defendants' *Daubert* motion failed—Dr. Jones' opinion has a reliable basis, and her methodology is sound. *See* Order Denying Defs.' Mot. to Exclude Test. of Dr. M. Adrienne Jones at 12, 16, Dec. 1, 2020, ECF No. 577 ("Jones Order").

Indeed, since Defendants' first failed attempt to exclude Dr. Jones, this Court has found Dr. Jones qualified and credible and relied upon her expert report and testimony in a separate proceeding. The Court found:

> Dr. Adrienne Jones . . . *has expertise in the history of racial discrimination in voting*. The Court has reviewed Dr. Jones' report and listened to her testify during the hearing. *The Court finds her to be credible, and the Court accepts her as qualified to opine as an expert on political science*.

*Alpha Phi Alpha Fraternity Inc., v. Raffensperger*, No. 1:21-cv-5337-SCJ, -- F. Supp. 3d --, 2022 WL 633312, at *69 (N.D. Ga. Feb. 28, 2022) (emphases added).

Furthermore, Dr. Jones' supplemental report is within the scope of this Court's order allowing supplemental reports, is relevant to the issues to be tried, and is helpful to the trier of fact. On November 30, 2021, the Court authorized Dr. Jones to submit a supplemental expert report "focus[ing] on specific post-2018

1

election evidence." Order at 5, Nov. 30, 2021, ECF No. 641. That is what she did. Dr. Jones' supplemental report addresses two "post-2018 election" events: first, the 2020 decision by Judge Sands, in the Middle District of Georgia, approving a new school board map drawn by a Court-appointed expert, *see* Expert Supp. Rep. of Dr. Adrienne Jones (Emended) at 10-11, Feb. 11, 2022, ECF No. 712-1 ("Supplemental Report"); *see also Wright v. Sumter Cnty. Bd. of Elections & Registration* ("*Wright I*"), No. 1:14-cv-42 (WLS), 2020 WL 499615 (M.D. Ga. 2020); and second, the Eleventh Circuit's affirmance that same year, Supplemental Report at 2; *see also Wright v. Sumter Cnty. Bd. of Elections & Registration* ("*Wright II*"), 979 F.3d 1282 (11th Cir. 2020).

In *Wright I*, the Middle District of Georgia found that a new remedial map and judicial oversight were warranted in light of Sumter County's ongoing violations of Section 2 of the Voting Rights Act of 1965 ("Section 2"). 2020 WL 499615, at *5-6, *8. And in *Wright II*, the Eleventh Circuit affirmed both the district court's finding as to Section 2 liability and the court's "remedial order removing the [legislatively created] at-large seats [that Plaintiffs claimed diluted their votes] and drawing a new map with seven, single-member districts instead." 979 F.3d at 1287; *see* Supplemental Report at 10-11. The parties stipulated to Georgia's "long and extensive history of voting discrimination," *id.* at 1294, but that stipulation did not resolve the issue of the continuing need for remedial relief.

To make that determination, both Judge Sands and the Eleventh Circuit chronicled the current-day racial discrimination in Georgia, *id.* at 1304-06.

The State's persistent racial discrimination against voters of color is clearly relevant to Plaintiffs' Section 2 challenge to the Exact Match policy. In discussing *Wright II*, Dr. Jones uses her expertise as a political scientist to provide necessary context about the historical and ongoing discrimination in Sumter County. While this necessarily involves discussing pre-2018 events, the focus of her report remains the 2020 decisions in *Wright I* and *Wright II*—post-2018 election events. The District Court's 2020 decision to impose a new map, as well as the Eleventh Circuit's opinion endorsing Plaintiffs' allegations, constitute highly relevant considerations in this Court's analysis of Georgia's ongoing discrimination.

Defendants argue that Dr. Jones' supplemental report is unhelpful to the finder of fact because Defendants have already conceded that Georgia has a history of racial discrimination, including in voting, and that this Court has taken judicial notice of that fact. Defs.' Mot. & Br. to Exclude Suppl. Report & Test. of Dr. M. Adrienne Jones at 5, Feb. 25, 2022, ECF No. 727 ("Jones Motion"). Defendants, however, neglect to mention that their concession was limited to Georgia having a history of racial discrimination prior to the 1990s, more than thirty years ago. Defendants still deny that racial discrimination is ongoing in Georgia—precisely the denial *Wright I, Wright II,* and Dr. Jones' supplemental report debunk.

Defendants' attacks on Dr. Jones' supplemental report are without merit and Defendants' Motion should be denied.

## LEGAL STANDARD

### I. Motions in Limine

Courts hear motions in limine "pursuant to [their] inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The Court "has wide discretion in determining the relevance of evidence produced at trial." *Boyd v. Ala. Dep't of Corr.*, 296 F. App'x 907, 908 (11th Cir. 2008) (citation omitted).

"The real purpose of a [m]otion in [l]imine is to give the trial judge notice of the movant's position so as to avoid the introduction of damaging evidence which may irretrievably affect the fairness of the trial." *Grimes v. Freshpoint Atlanta, Inc.*, No. 1:18-cv-638-MLB, 2021 WL 2548705, at *2 (N.D. Ga. Apr. 29, 2021) (quoting *Soto v. Geico Indem. Co.*, No. 6:13-cv-181-Orl-40KRS, 2014 WL 3644247, at *1 (M.D. Fla. July 21, 2014)). In a bench trial, "courts are advised to deny motions in limine" because the underlying rationale "does not apply . . . where it is presumed the judge will disregard inadmissible evidence and rely only on competent evidence." *Andrews v. Autoliv Japan, Ltd.*, No. 1:14-cv-3432-SCJ, 2021 WL 4079114, at *1 (N.D. Ga. Jan. 20, 2021) (quoting *Singh v. Caribbean*

*Airlines Ltd.*, No. 13-cv-20639, 2014 WL 4101544, at *1 (S.D. Fla. Jan. 28, 2014)).

Defendants' Motion is simply re-litigation of issues the Court has already resolved, which is not appropriate for a motion in limine.

## ARGUMENT

Defendants' Motion to exclude Dr. Jones' supplemental report and testimony fails for three reasons: First, this Court previously found that Dr. Jones utilized accepted methodology for historical analysis, and Dr. Jones' opinion in her supplemental report similarly has a reliable basis. Second, Dr. Jones' supplemental report is proper in scope. The supplemental report addresses two post-2018 events: Judge Sands's opinion in *Wright I*, and the Eleventh Circuit's opinion in *Wright II*, both of which address recent discriminatory actions by public officials against Black voters. In particular, the Eleventh's Circuit's affirmance of both the liability finding and the necessary remedy in 2020 is undeniably a post-2018 election event. Third, Dr. Jones' supplemental report will help this Court as trier of fact because it illustrates the continued voter suppression efforts in Georgia and provides helpful context for other evidence in the case.

## I.   Dr. Jones' opinion in her supplemental report is supported by reliable principles and methodology.

The trial judge serves as the "gatekeeper" in determining admissibility of expert testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993).

The Eleventh Circuit has adopted a three-part inquiry for admissibility: (1) the expert must be qualified to testify on the matter addressed; (2) the expert's conclusions must be supported by reliable methodologies; and (3) the testimony must assist the trier of fact through the application of scientific, technical, or specialized expertise. *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562-63 (11th Cir. 1998). As this Court has recognized, the trial court must examine "the *foundations* of expert opinions to ensure they meet the standards of admissibility." *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

The admissibility standard, however, is "even more relaxed in a bench trial situation, where the judge is serving as factfinder and we are not concerned about dumping a barrage of questionable scientific evidence on a jury. There is less need for the gatekeeper to keep the gate when the gatekeeper is keeping the gate only for himself." *United States v. Brown*, 415 F.3d 1257, 1268–69 (11th Cir. 2005) (internal quotations and citations omitted).

Defendants do not challenge Dr. Jones' qualifications as an expert on political science. Thus, the only questions remaining are (1) whether Dr. Jones applied reliable methodology in forming her opinion in her supplemental report, and (2) whether her supplemental report is helpful to the trier of fact. The answer to both questions is yes: Dr. Jones applied the same principles and methods in forming her opinion in her supplemental report as she utilized in forming her

opinion in her initial report, and her supplemental report relates directly to

Plaintiffs' Section 2 claim.

### A. Dr. Jones applied the same reliable historical and political science principles and methods in preparing her supplemental report.

Notwithstanding this Court's prior ruling that Dr. Jones applied reliable

principles and methods in forming her opinion in her initial report, Defendants

argue that her supplemental report, which is the result of substantially the same

methodology, "is not the product of reliable principles or methodology." Jones

Mot. at 5. Having failed in their previous challenge to Dr. Jones' methodology,

Defendants now resort to arguing that Dr. Jones is biased, to questioning her

independence, to claiming she did not survey the full array of available sources,[1]

and to construing citation errors as meaning Dr. Jones' research methodology is

flawed.[2] These criticisms are not sufficient bases to exclude Dr. Jones'

supplemental report or her related testimony.

Contrary to Defendants' allegations, Dr. Jones' supplemental report is not

"direct advocacy" or a "counterargument to Defendants' summary judgment

---

[1] It is unclear what additional value would be added by interviewing Sumter citizens who disagree with Judge Sands and the Eleventh Circuit. *Contra* Jones Mot. at 18-19.

[2] Dr. Jones filed an emended supplemental report to correct certain citation errors, including one of the citation errors identified by Defendants. *See* Supplemental Report at 8 n.57 (correcting citation to H.B. 836 (2014)). In any case, typographical errors in citations do not render an expert opinion invalid.

briefing." Jones Mot. at 9. Rather, her supplemental report was prompted by the 2020 district court decision in *Wright I*, which imposed a VRA-compliant election plan for the Sumter County school board election, as well as the Eleventh Circuit's affirmance in *Wright II*. Supplemental Report at 2. Dr. Jones opines that the continuing suppression of Black voters through the present day is exemplified by the actions of the Sumter County school board and the need for the relief imposed and thereafter affirmed in *Wright I* and *Wright II*. *Id.* at 3-4, 8, 10-11.

Defendants make much of the fact that Dr. Jones' supplemental report contains a citation to their summary judgment brief. They argue that this reference shows that "Dr. Jones uses her report to respond directly to Defendants' brief in support of their renewed motion for summary judgment." Jones Mot. at 3.[3] They argue, without providing citation to any legal authority, that "[p]reparing a report for the sole and express purpose of rebuttal argument cannot be considered objective by any reasonable standard." *Id.* at 15. Whether objective or not, however, Eleventh Circuit law makes clear that such supplementation is appropriate—even when the supplement is made "in response to a motion for summary judgment." *Venerus v. Avis Budget Car Rental, LLC*, 6:13-cv-921-Orl-41GJK, 2016 WL 11742054, at *4 (M.D. Fla. Apr. 15, 2016) ("In this circuit …

---

[3] It is of course the norm for experts to raise issues addressed by parties and counsel. They do not work in a vacuum.

courts agree that *parties may supplement an expert report in response to a motion for summary judgment* so long as the supplementation is proper—that is, does not exceed the scope of the expert report." (emphasis added) (citing *Miele v. Certain Underwriters at Lloyd's of London*, 559 F. App'x 858, 861–62 (11th Cir. 2014))).

Further, Dr. Jones' supplemental report is not a direct response to Defendants' summary judgment briefing. Dr. Jones provided facts and opinions contrary to Defendants' argument that discrimination in voting is part of Georgia's "sad and distant" past.  Indeed, her expert opinion demonstrates that the State of Georgia continues through the present day to suppress Black voters.[4] Reference to Defendants' erroneous conclusion does not transform an otherwise relevant expert supplemental report into advocacy, nor does it suggest the expert applied flawed methods.

Defendants also argue that Dr. Jones' report was "reverse-engineered . . . with assistance and direction by Plaintiffs' counsel and personnel." Jones Mot. at 16. They argue that Dr. Jones' report is flawed because Plaintiffs' counsel brought

---

[4] As Dr. Jones stated in her deposition testimony, she "understood that Defendants had made a conclusion [and she] thought it might make sense to integrate the conclusion that was there because [she] was trying to—poor language, but differentiate what [she] was saying from the conclusion made by Defendants." Jones Dep. at Tr. at 23:4-10, Jan. 4, 2022, ECF No. 727-1 ("Jones Dep."). In other words, as a political science expert, her opinion on the status of racial discrimination in Georgia is inconsistent with Defendants' conclusion, which is why she "rebut[ted] or push[ed] back on the assertion by the Defendants." *Id.* at 23:11-13.

a *New York Times* article to Dr. Jones' attention. *Id.* As Dr. Jones stated in her deposition, however, she was not "provided any assumptions as to what [her] report should entail." Jones Dep. at Tr. 10:1-4. Counsel did not color Dr. Jones' analysis, but rather simply mentioned the news coverage in a conversation with Dr. Jones about the history of Georgia.[5]

In any case, Defendants' allegations that Dr. Jones is biased and engaged in "direct advocacy" challenge the credibility of Dr. Jones' conclusions, not the means of reaching those conclusions. These types of challenges "are best resolved through cross-examination and the adversarial process." *Adams v. Lab. Corp. of Am.*, 760 F.3d 1322, 1332, 1334 (11th Cir. 2014) ("Bias in an expert witness's testimony is usually a credibility issue for the jury. . . . The risk of bias would mean, at most, that [the expert's] testimony is to some extent 'shaky,' and shakiness goes to the weight of her testimony, not its admissibility."); *Coggon v. Fry's Elecs., Inc.*, No. 1:17-cv-03189-SCJ, 2019 WL 2137465, at *3 (N.D. Ga. Feb. 6, 2019) ("Issues of accuracy are best resolved through cross-examination and the adversarial process.").

---

[5] Jones Dep. at Tr. 57:6–12 ("Q: And when you became aware of that coverage, did you become aware of that coverage on your own or through communication with counsel or Ms. Holly? A: Definitely not Ms. Holly but with counsel. I mean, we are talking about the history of Georgia and some of the goings on. So yes, we talked about Sumter.").

The only difference in methodology between Dr. Jones' initial and supplemental reports is the use of interviews with individuals who have first-hand knowledge of the events described in her supplemental report. Defendants allege that "Dr. Jones is, at best, merely repeating hearsay obtained from witnesses." Jones Mot. at 19. Leaving aside that interviews account for a very small fraction of the sources cited in Dr. Jones' supplemental report,[6] expert witnesses are permitted to rely on hearsay where, as here, the otherwise inadmissible evidence is "a type reasonably relied upon by experts in the particular field." *Daubert*, 509 U.S. at 595 ("[Federal] Rule [of Evidence] 703 provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are 'of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'"); *see also Emp'rs Ins. of Wausau v. Latex Constr. Co.*, No. 1:1-cv-1909-BBM, 2003 WL 26087498, at *9-10 (N.D. Ga. Sept. 2, 2003) ("Indeed, [e]xpert witness testimony is a widely-recognized exception to the rule against hearsay testimony. It has long been the rule of evidence in the federal courts that an expert witness can express an opinion … even though his opinion is based in part or solely on hearsay sources. The rationale for this exception to the rule against hearsay is that the expert, because of his professional knowledge and

---

[6] Only 3 out of 92 footnotes in Dr. Jones' supplemental report cite to interviews she conducted with individuals having first-hand knowledge of events. *See* Supplemental Report at 5 n.32, 8 n.54, 10 n.81.

ability, is competent to judge for himself the reliability of the records and statements on which he bases his expert opinion." (citation omitted)).

As this Court previously stated, "gathering and analyzing multiple sources to reach conclusions about historical facts is an accepted historical methodology for expert witnesses." Jones Order at 12 (citing *United States v. Kantengwa*, 781 F.3d 545, 562 (1st Cir. 2015)). Here, in preparing her supplemental report, Dr. Jones traveled to Sumter County in the summer of 2021 where she spent a day interviewing numerous individuals with information regarding the school board and the school board elections. Plaintiffs have produced all of Dr. Jones' interview notes, which include notes from her visit to Sumter County and notes from telephone calls she had with individuals prior to and following her visit.[7] After receiving these interview notes, Defendants had an opportunity to, and did, question Dr. Jones about her interviews in a deposition on February 18, 2022.[8]

---

[7] In her deposition, Dr. Jones confirmed that she produced all of her notes from her interviews. Jones Dep. at Tr. 117:12-16 (Q: Okay. Have you produced all of the notes reflecting your interviews that were used in your report? A: Yes. I did a thorough search.").

[8] Defendants claim that "[a]pproximately thirty minutes of the original two hours remained of Dr. Jones's deposition when it was suspended . . . ." Jones Mot. at 4 n.4. This is incorrect. Only eighteen minutes remained. In light of Dr. Jones' emended report, however, Plaintiffs agreed to expand the continued deposition to one hour: this allowed Defendants thirty minutes to question Dr. Jones regarding the interview notes and another thirty minutes to address changes made in her emended report.

Interviews of individuals with first-hand knowledge are an appropriate source for a political scientist to rely upon. In *Kantengwa*, for instance, an expert witness combined his historical expertise and subject-matter knowledge of the Rwandan genocide with first-hand accounts based on informal "conversations with people he knew" as well as "formal interviews." 781 F.3d at 561. This allowed the expert to use his expertise to cut through conflicting accounts and determine the true state of events. *Id.* at 562. Similarly, Dr. Jones' interviews during her in-person visit to Sumter County allowed her to gather additional information about the events related to the Sumter County school board elections at issue in *Wright II*, the subject of her supplemental report.

Ironically, in their first attempt to exclude Dr. Jones, Defendants complained of her supposed overreliance on secondary sources, saying "she provides voluminous citations to secondary sources even where the primary source was readily available." Defs.' Mot. to Exclude Test. of Dr. M. Adrienne Jones at 15, June 23, 2020, ECF. No. 386. Now, when Dr. Jones has directly engaged "readily available" primary sources, Defendants still complain. As this Court held then, over- or under-reliance on secondary sources "goes more to application and the weight of the opinion, and the proper point of attack available to the opponent is cross examination." Jones Order at 13.

13

**B. Dr. Jones' opinions are relevant and helpful to the trier of fact.**

Recent voter suppression in Georgia demonstrates the urgent need for the prospective relief Plaintiffs seek. Dr. Jones' supplemental report provides a contemporary example of discrimination and suppression by the State of Georgia, a factor the Court will consider in assessing Plaintiffs' Section 2 challenge to Exact Match. *See Thornburg v. Gingles*, 478 U.S. 30 (1986); *see also Solomon v. Liberty County*, 899 F.2d 1012, 1015-16 (11th Cir. 1990). Dr. Jones' supplemental report also provides context for other witnesses' testimony, such as Dr. Nancy Dennard.

Defendants argue that "perhaps most obvious, the school board elections of Sumter County are not at issue in this case," and that any discussion thereof is a "waste [of] the time and resources of both the Court and the Parties." Jones Mot. at 20. They argue that because the Secretary of State does not oversee these elections, they are not relevant. *Id.* Defendants are correct that the policies of Sumter County are not the subject of this litigation. Perhaps more obvious, however, is that discrimination by the State of Georgia *anywhere*, by *any* official, is relevant to Plaintiffs' Section 2 claims. Order at 25-26, Nov. 15, 2021, ECF No. 636 (noting that the "relevant factors from *Gingles*" include "(1) the history of official discrimination in Georgia; (2) whether there is racially polarized voting in Georgia; (3) voting practices and procedures in Georgia; [and] (4) discrimination outside the voting context in Georgia").

The *Gingles* Senate Factors do not ask if a specific actor engaged in a certain kind of discrimination. Rather, the question is whether racial discrimination occurs, or has occurred, throughout the State. *See, e.g.*, *Solomon*, 899 F.2d at 1015 (listing the Senate Factors, including "1. The extent of any history of official discrimination *in the state or political subdivision* that touched the right of the members of the minority group to register, to vote or otherwise to participate in the democratic process." (emphasis added)). The recent events in Sumter County, as confirmed by the Eleventh Circuit in *Wright II* and discussed in Dr. Jones' supplemental report, are proof of such discrimination. Thus, discrimination by a political subdivision of the State—namely drawing the election lines to discriminate against Black voters in Sumter County—is directly relevant to this matter, regardless of the Secretary of State's direct involvement.

Defendants next seek to render Dr. Jones' opinion of racial discrimination irrelevant by claiming that "the history of racial discrimination in Georgia is not disputed by Defendants" and that the Court "has already taken judicial notice of that fact." Jones Mot. at 20-21. What Defendants do dispute, however, is that racial discrimination in voting by the State continues into this century. Defs.' Br. in Supp. Summ. J. at 47 n.38, June 29, 2020, ECF No. 450-1 ("Defendants do not contest that *prior to the 1990s*, Georgia had a long and sad history of racist policies in a number of areas including voting." (emphasis added)). Dr. Jones'

15

supplemental report provides evidence that the history of racial discrimination in voting in Georgia did not stop in 1990, but rather endures.

Not only does Dr. Jones' supplemental report relate directly to disputed facts, but it also sets the stage for the testimony of Dr. Nancy Dennard. Dr. Dennard will testify about the backlash she encountered from 2010 through 2016 when she and other Black school board candidates in Brooks County turned the majority-white school board into a majority-Black school board. Then-Secretary of State Brian Kemp, who also served as the State Election Board chair, was instrumental in this backlash.

## II.  Dr. Jones' supplemental report fits within the scope set out by this Court.

Dr. Jones properly supplemented her expert report. Federal Rule of Civil Procedure 26(e) requires a party to supplement an expert report when "(A) the party learns that in some material respect the disclosure or response is incomplete or incorrect . . .; or (B) as ordered by the court." A development in the law that is relevant to an expert's opinion is an appropriate ground for supplementing an expert report. *See Witness Sys., Inc. v. Nice Sys., Inc.*, No. 1:04-cv-2531-CAP, 2007 WL 9698278, at *1-2 (N.D. Ga. Oct. 12, 2007). In *Witness Systems*, the United States Supreme Court rendered a decision—after an expert witness had submitted his initial report—that "provided additional guidance" on analyzing an element of patent invalidity claims. *Id.* at *1. The expert was permitted to

16

supplement his report because it was "in direct response to the [Supreme Court] decision . . . , and [was] narrowly tailored to address the" decision and its impact on the legal analysis. *Id.* While Dr. Jones is not "responding" in the same way as the expert in *Witness Systems*, she is chronicling an important legal development: a case encompassing a significant and noteworthy history that required federal court intervention in 2020 to remedy—just like the case now before the Court.

Dr. Jones' supplemental report centers on the Eleventh Circuit's 2020 decision in *Wright II*, 979 F.3d 1282, affirming Judge Sands' decision in the Middle District of Georgia. The District Court had previously held that "Georgia has a history chocked full of racial discrimination at all levels. This discrimination was ratified into state constitutions, enacted into state statutes, and promulgated in state policy." *Wright v. Sumter Cnty. Bd. of Elections & Registration*, 301 F. Supp. 3d 1297, 1310 (M.D. Ga. 2018), *aff'd*, 979 F.3d 1282; *accord Wright I*, 2020 WL 499615, at *1-2. The Eleventh Circuit affirmed the trial court's finding of a violation of the Voting Rights Act, recognized the "painful history of discrimination against [Sumter County's] black residents," and affirmed the District Court's 2020 remedy imposing a non-discriminatory map. *Wright II*, 979 F.3d at 1306, 1311.

To argue that Dr. Jones' supplement is improper, Defendants rely on the fact that the report includes pre-2018 events. They argue that because the underlying

facts occurred before 2018, Dr. Jones' supplemental report does not focus on "specific post-2018 election evidence." Jones Mot. at 3. This is incorrect. Before the Eleventh Circuit's final decision in 2020, Sumter County contested the claim that its legislatively enacted school board election scheme violates Section 2. The Eleventh Circuit's decision in *Wright II* ended Sumter's argument and held that the County's majority-white school board violates the VRA. The *Wright* decisions also establish ongoing judicial supervision of school board elections, underscoring the continuing need for judicial relief.

Dr. Jones' report focuses on 2020 election events—the Eleventh Circuit's decision in *Wright II*, and the underlying decision in *Wright I* drawing a remedial map to address Sumter County's racial discrimination. Supplemental Report at 2, 10-11. Because Dr. Jones' methodology remains reliable, and her insights remain relevant and helpful to the trier of fact, Defendants' Motion should be denied.

## CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Motion to Exclude the Supplemental Report and Testimony of Dr. M. Adrienne Jones.

This 11th day of March, 2022.

Respectfully submitted,

*/s/ Allegra J. Lawrence*
Allegra J. Lawrence (GA Bar No. 439797)

Leslie J. Bryan (GA Bar No. 091175)
Lovita T. Tandy (GA Bar No. 697242
Celeste Coco-Ewing (Admitted *pro hac vice*)
Michelle L. McClafferty (GA Bar No. 161970)
Monica R. Owens (GA Bar No. 557502)
Rodney J. Ganske (GA Bar No. 283819)
Maia Cogen (GA Bar No. 832438)
Suzanne Smith Williams (GA Bar No. 526105)
**LAWRENCE & BUNDY LLC**
1180 West Peachtree Street, Suite 1650
Atlanta, GA 30309
Telephone: (404) 400-3350
Fax: (404) 609-2504
allegra.lawrence-hardy@lawrencebundy.com
leslie.bryan@lawrencebundy.com
lovita.tandy@lawrencebundy.com
celeste.coco-ewing@lawrencebundy.com
michelle.mcclafferty@lawrencebundy.com
monica.owens@lawrencebundy.com
rod.ganske@lawrencebundy.com
maia.cogen@lawrencebundy.com
suzanne.williams@lawrencebundy.com

Thomas R. Bundy (Admitted *pro hac vice*)
**LAWRENCE & BUNDY LLC**
8115 Maple Lawn Boulevard
Suite 350
Fulton, MD 20789
Telephone: (240) 786-4998
Fax: (240) 786-4501
thomas.bundy@lawrencebundy.com

Dara Lindenbaum (GA Bar No. 980780)
**SANDLER REIFF LAMB ROSENSTEIN &
BIRKENSTOCK, P.C.**
1090 Vermont Avenue, NW
Suite 750
Washington, DC 20005
Telephone: (202) 479-1111
Fax: 202-479-1115

19

lindenbaum@sandlerreiff.com

Elizabeth Tanis (GA Bar No. 697415)
John Chandler (GA Bar No. 120600)
957 Springdale Road, NE
Atlanta, GA 30306
Telephone: (404) 771-2275
beth.tanis@gmail.com
jachandler@gmail.com

Kurt G. Kastorf (GA Bar No. 315315)
**KASTORF LAW, LLC**
1387 Iverson St, Suite 100
Atlanta, GA 30307
Telephone: (404) 900-0330
kurt@kastorflaw.com

Matthew G. Kaiser (Admitted *pro hac vice*)
Sarah R. Fink (Admitted *pro hac vice*)
**KAISERDILLON PLLC**
1099 Fourteenth Street, NW
Eighth Floor West
Washington, DC 20005
Telephone: (202) 640-2850
Fax: (202) 280-1034
mkaiser@kaiserdillon.com
sfink@kaiserdillon.com

Kali Bracey (Admitted *pro hac vice*)
Ishan Bhabha (Admitted *pro hac vice*)
Kathryn Wynbrandt (Admitted *pro hac vice*)
Victoria Hall-Palerm (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Fax: (202) 639-6066
kbracey@jenner.com
ibhabha@jenner.com

20

kwynbrandt@jenner.com
vhall-palerm@jenner.com

Jeremy M. Creelan (Admitted *pro hac vice*)
Elizabeth A. Edmondson (Admitted *pro hac vice*)
Allison N. Douglis (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
1155 Avenue of the Americas
New York, NY 10036-2711
Telephone: (212) 891-1600
Fax: (212) 891-1699
jcreelan@jenner.com
eedmondson@jenner.com
adouglis@jenner.com

Kelsey L. Stimple (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350
Fax: (312) 527-0484
kstimple@jenner.com

Von A. DuBose
**DUBOSE MILLER LLC**
75 14th Street N.E., Suite 2110
Atlanta, GA 30309
Telephone: (404) 720-8111
Fax: (404) 921-9557
dubose@dubosemiller.com

Johnathan Diaz (Admitted *pro hac vice*)
Paul M. Smith (Admitted *pro hac vice*)
**CAMPAIGN LEGAL CENTER**
1101 14th St. NW Suite 400
Washington, DC 20005
Telephone: (202)736-2200
jdiaz@campaignlegal.org
psmith@campaignlegal.org

Andrew D. Herman (Admitted *pro hac vice*)
**MILLER & CHEVALIER CHARTERED**
900 Sixteenth Street, NW
Washington, DC 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
aherman@milchev.com

*Counsel for Fair Fight Action, Inc.; Care in Action, Inc.; Ebenezer Baptist Church of Atlanta, Georgia, Inc.; Baconton Missionary Baptist Church, Inc.; Virginia-Highland Church, Inc.; and The Sixth Episcopal District, Inc.*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing has been prepared with one of the font and point selections approved by the Court pursuant to Local Rules 5.1(C) and 7.1(D), specifically Times New Roman 14

This 11th day of March, 2022.

*/s/ Allegra J. Lawrence*
Allegra J. Lawrence

## CERTIFICATE OF SERVICE

I hereby certify that, on March 11, 2022, I filed the within and foregoing **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION AND BRIEF TO EXCLUDE SUPPLEMENTAL REPORT AND TESTIMONY OF DR. M. ADRIENNE JONES** with the Clerk of Court using the CM/ECF electronic filing system which will automatically send counsel of record e-mail notification of such filing.

This 11th day of March, 2022.

*/s/ Allegra J. Lawrence*
Allegra J. Lawrence