## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

|  |  |
|---|---|
| FAIR FIGHT ACTION, INC, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> BRAD RAFFENSPERGER, *et al.*, <br><br> *Defendants*. | Civil Action No. <br> 1:18-cv-05391-SCJ |

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

i

# **TABLE OF CONTENTS**

INTRODUCTION ............................................................................................1

STATEMENT OF FACTS ..............................................................................5

  I.   In 2018, two federal courts issued injunctions against the date-of-birth requirement. ....................................................................................5

  II.  In 2019, Georgia's law changed so as not to require dates of birth on absentee ballot envelopes. ......................................................................6

  III. SB 202 re-imposed a date-of-birth requirement.............................6

STANDARD OF REVIEW ............................................................................8

ARGUMENT ...................................................................................................9

CONCLUSION ..............................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Clark v. Coats & Clark, Inc.*,
929 F.2d 604 (11th Cir. 1991) .............................................................8

*Democratic Party of Ga. v. Crittenden*,
347 F. Supp. 3d 1324 (N.D. Ga. 2018) (Jones, J.)..................................1, 2, 6, 10

*Fla. State Conf. of NAACP v. Browning*,
522 F.3d 1153 (11th Cir. 2008) ............................................................9

*Ga. State Conf. of the NAACP v. Raffensperger*,
No. 1:21-cv-01259 (N.D. Ga. Dec. 9, 2021) ......................................15

*Jackson v. Humphrey*,
776 F.3d 1232 (11th Cir. 2015) ............................................................8

*Martin v. Crittenden*,
347 F. Supp. 3d 1302 ................................................................*passim*

*New Ga. Project v. Raffensperger*,
No. 1:21-cv-01229 (N.G. Ga. Dec. 9, 2021) ......................................14

*Schwier v. Cox*,
340 F.3d 1284 (11th Cir. 2003) ............................................................9

*Sixth Dist. of the African Methodist Episcopal Church v. Kemp*,
No. 1:21-cv-01284 (N.D. Ga. Dec. 9, 2021) ......................................14

*Wood v. Raffensperger*,
No. 1:20-cv-4651 (N.D. Ga. Nov. 19, 2020).........................................6

**Statutes**

52 U.S.C. § 10101 ....................................................................*passim*

Civil Rights Act ......................................................................13, 15

2021 Ga. Laws, Act 9, § 25 ...............................................................7

2021 Ga. Laws, Act 9, §§ 27, 29 ......................................................7

O.C.G.A. § 21-2-33.1(a) ..................................................................16

O.C.G.A. § 21-2-50(a)(5) ................................................................15

O.C.G.A. § 21-2-216 (2019) ............................................................10

O.C.G.A. § 21-2-381 (2021) ...................................................2, 7, 8, 11

O.C.G.A. § 21-2-384 (2021) ..............................................................2

O.C.G.A. § 21-2-384 (2019) ..............................................................6

O.C.G.A. § 21-2-386 (2021) ..........................................................2, 8

O.C.G.A. § 21-2-499 ........................................................................15

Plaintiffs Fair Fight Action, Inc. and Baconton Missionary Baptist Church, Inc., (collectively, "Moving Plaintiffs")[1] submit this Memorandum of Law in Support of their Motion for a Partial Summary Judgment. Moving Plaintiffs, in connection with the accompanying Motion for Leave to File a Supplemental Complaint and proposed Supplemental Complaint, seek summary judgment on the narrow and exclusively legal question raised by Count VI of the proposed Supplemental Complaint.[2]

## INTRODUCTION

Shortly after the 2018 General Election, this Court held that "a voter's ability to correctly recite his or her year of birth on [an] absentee ballot envelope is not material [under 52 U.S.C. § 10101(a)(2)(B)] to determining said voter's qualifications under Georgia law." *Democratic Party of Ga. v. Crittenden*, 347 F. Supp. 3d 1324, 1340 (N.D. Ga. 2018) (Jones, J.) (quoting *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308-09)). This Court thus enjoined the Secretary of State from certifying the election results until the Secretary received confirmation from each county that no absentee ballot was rejected because of an omitted or incorrect

---

[1] Care in Action, Inc., Ebenezer Baptist Church of Atlanta, Georgia, Inc., Virginia Highland Church, Inc., and Sixth Episcopal District, Inc. are Plaintiffs in this litigation but do not bring this motion.

[2] Moving Plaintiffs respectfully submit to the Court that this narrow issue can be decided on briefing, without the need for additional fact discovery, and have accordingly submitted a proposed Scheduling Order.

date of birth. *Id.* at 1347.

In their Complaint (Nov. 27, 2018, ECF No. 1) in this case, Plaintiffs asserted claims based on the date-of-birth issues that arose in the 2018 General Election. In 2019, the Georgia General Assembly passed House Bill 316 ("HB 316), which removed the date-of-birth requirement. Therefore, in its February 16, 2021, Order on Defendants' Motion for Summary Judgment on Jurisdiction, this Court ruled Plaintiffs' date-of-birth based claims were moot. Order, Defs.' Mot. Summ. J. (Jurisdiction), ECF No. 612, at 62–64. In so holding, the Court wrote "the totality of the circumstances persuades this Court that there is no reasonable expectation that the State of Georgia will reenact the challenged legislation or otherwise return to its old law." *Id.* at 64.

The State of Georgia, however, defied this Court's reasonable expectations. On March 25, 2021, the General Assembly passed, and the Governor signed into law, Senate Bill 202 ("SB 202"). In relevant part, SB 202 amended O.C.G.A. §§ 21-2-381 (2021), 21-2-384 (2021), and 21-2-386 (2021) to: (a) for the first time require voters to provide their date of birth on both an application for an absentee ballot and then once more to provide a date of birth on the absentee ballot oath envelope itself; (b) require local election officials to send provisional absentee ballots to absentee ballot applicants whose applications had a missing date of birth or a date of birth that does not match the information in the voter's file; (c) require

local election officials to reject absentee ballots if the required date of birth information on the absentee ballot envelope is missing or does not match the voter roll information for that voter; and (d) require voters whose absentee ballots are rejected in light of missing or non-matching information on the absentee ballot envelope, or who were sent provisional absentee ballots based on mismatched information on their applications, to "cure" the issue with their absentee ballot through submitting an affidavit and additional forms of identification.

In short, and as most relevant here, the General Assembly now requires a date of birth when a voter applies for an absentee ballot notwithstanding that to request an absentee ballot a voter must have *already* registered to vote and thus demonstrated that they are over 18 years of age. And, the General Assembly has reinstated the absentee ballot envelope date-of-birth requirement even though two courts—including this Court—previously concluded that requiring a date of birth on absentee ballot envelopes violates the Civil Rights Act of 1964. Voters will be affected by these new provisions—some will likely be disenfranchised, and others at a minimum will need to go through the burden of "curing" their ballots.

On April 20, 2022, in the middle of this trial, Secretary of State General Counsel Ryan Germany told the Court that his office "worked with the Legislature" on SB 202 and knew that the bill reinstated the date-of-birth requirement on the absentee ballot envelope. Trial Tr. at 1560:25–1561:9, Ex. A.

3

He told the Court he could not recall whether his office ever alerted the General Assembly to the contradiction between SB 202 and the rulings of two prior federal courts. *Id.* at 1566:21–25. He further said that he was "not sure" he agreed that the new law contradicts the prior order, given the statute now provides a "cure" provision for those whose absentee ballots are rejected for a mismatch of identifying information, including dates of birth. *Id.* at 1567:6–1568:1. As the Court noted, its decision in *Democratic Party of Ga.* "does not indicate" that the appropriate remedy for requiring date of births on absentee ballot envelopes is "to give a time to cure the matter." *Id.* at 1568:16-23. To the contrary, "[t]he order says it's not required." *Id.* at 1568: 22-23.

Whether the date-of-birth requirements violate 52 U.S.C. § 10101 is a pure question of law—just as it was when Judge May and this Court decided the issue in 2018. And the answer is straightforward: The challenged date-of-birth provisions are unlawful. Just as in 2018, the date-of-birth requirements violate 52 U.S.C. § 10101's prohibition against requiring immaterial information to determine a voter's qualifications to vote. A voter's date of birth, provided on an absentee ballot application or absentee ballot envelope, is not material to the eligibility criteria for voting in Georgia. Despite the glaring contradiction with this Court's prior findings on this precise issue, the Secretary "worked with the Legislature" to craft this new legislation and reimpose this unlawful burden on Georgia voters.

4

Trial Tr. at 1560:25-1561:4, Ex. A.

This Court's intervention is needed once more and summary judgment
should be granted for Plaintiffs on this purely legal question.

## STATEMENT OF FACTS

### I.     In 2018, two federal courts issued injunctions against the date-of-birth requirement.

In *Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1308–09 (N.D. Ga. 2018),
plaintiffs challenged the requirement, which existed under Georgia law from 2007
to 2017, that a voter returning an absentee ballot write his or her date-of-birth on
the absentee ballot envelope for the ballot to be counted. The plaintiffs asserted the
date-of-birth requirement for absentee ballots violated 52 U.S.C. § 10101(a)(2)(B),
which "forbids the practice of disqualifying voters 'because of an error or omission
on any record or paper relating to any application, registration, or other act
requisite to voting.'" 347 F. Supp. 3d at 1308. On November 13, 2018, Judge May
found the plaintiffs had established a substantial likelihood of success on their
claim. In so ruling, Judge May recited Georgia's qualifications for voting—the
same criteria that exist today—and concluded date of birth was immaterial to
demonstrating qualifications. *See Martin*, 347 F. Supp. 3d at 1308–09 (citing
*Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003) and *Fla. State Conf. of
NAACP v. Browning*, 522 F.3d 1153, 1173 (11th Cir. 2008); O.C.G.A. § 21-2-216
(2019)). Judge May therefore enjoined Gwinnett County from rejecting absentee

ballots because of omitted or incorrect dates of birth. *Id.* at 1311.

One day after Judge May's decision, this Court agreed with the reasoning in *Martin* and issued a statewide injunction enjoining the Secretary of State from certifying election results without confirming that counties had accepted all absentee ballots with missing or incorrect dates of birth. *See Democratic Party of Ga.*, 347 F. Supp. 3d at 1340–41, 1347.

## II.      In 2019, Georgia's law changed so as not to require dates of birth on absentee ballot envelopes.

In April 2019, the Georgia Legislature enacted HB 316, which implemented various reforms to Georgia's election processes, including revising the absentee ballot oath envelope to no longer request date or year of birth. *See* O.C.G.A. § 21-2-384 (2019). In discussing this change, Defendants recognized that removing the date-of-birth requirement "resulted in a significant decrease in the percentage of absentee ballots that were rejected at the outset" in the 2020 General Election as compared to the 2018 General Election, and that "[t]here were quite a number in 2018 that were rejected for that missing information." Oral Arg. Tr. at 51:12–15, *Wood v. Raffensperger*, No. 1:20-cv-4651 (N.D. Ga. Nov. 19, 2020) ("*Wood* Tr."), Ex. B.

## III.      SB 202 re-imposed a date-of-birth requirement.

Two years later, the Georgia legislature did an about-face. As evidenced by Defendants' April 25 Letter to the Court, the elements of the General Assembly's

new law are not in dispute. *See* B. Tyson Letter to Hon. Steve C. Jones (April 25, 2022), Ex. C (hereinafter "April 25 Letter"). SB 202—passed and signed into law on March 25, 2021—reinstated the date-of-birth requirement for absentee ballot envelopes. *See* 2021 Ga. Laws, Act 9, §§ 27, 29, eff. July 1, 2021; April 25 Letter at 2 ("Local election officials must provide voters with envelopes containing space to place . . . date of birth"). SB 202 also imposed a new date-of-birth requirement on absentee ballot applications. *See* 2021 Ga. Laws, Act 9, § 25; April 25 Letter at 2 ("SB 202 . . . created a mandatory statewide application form that included . . . date of birth"). The General Assembly, working with Secretary of State, adopted these date-of-birth provisions despite two federal court rulings enjoining application of the date-of-birth requirement under 52 U.S.C. § 10101.

Under SB 202, if the "identifying" information (which includes date of birth) on an absentee ballot application does not match the voter's information on record, the voter must be sent a provisional absentee ballot. *See* O.C.G.A. § 21-2-381(b)(3) (2021); April 25 Letter at 2 (where an absentee ballot application has "mismatched identifying information . . . registrars must send those individuals a provisional ballot"). The provisional ballot will not be counted unless the voter provides an affidavit and identification, either in person or through providing a photocopy of the identification when returning the provisional ballot. *See* O.C.G.A. § 21-2-381(b)(3) (2021).

Similarly, a voter who applies for an absentee ballot with his or her date of birth but then neglects to include the date of birth on the absentee ballot envelope will not have their vote counted. *See* O.C.G.A. § 21-2-381(b)(3) (2021); April 25 Letter at 2 (noting the registrar "rejects the [voted absentee] ballots if the 'identifying information entered' on the envelope does not match"). Instead, the voter will be mailed a "cure affidavit form" in which the voter must affirm that they are registered and qualified to vote in the election and submit one of a number of forms of acceptable ID within three days of the election. *See* O.C.G.A. § 21-2-386(a)(1)(C) (2021); April 25 Letter at 2 (for voters with rejected absentee ballots, "the registrar is further required to 'promptly notify' the elector and the elector is then permitted to cure the issue").

## STANDARD OF REVIEW

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A court shall construe factual inferences in favor of the non-moving party and then answer all "legal question[s] . . . under that version of the facts." *Jackson v. Humphrey*, 776 F.3d 1232, 1238 (11th Cir. 2015). After the movant satisfies their initial burden to show there are no genuine disputes of material fact the burden "shift[s] to the non-moving party to demonstrate there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats*

*& Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). There are no disputed facts on the narrow legal issue Moving Plaintiffs raise in this motion.

## ARGUMENT

The requirement that voters write their date of birth on the outside of an absentee ballot envelope to have their vote counted violates Section 10101(a)(2)(B) of the Civil Rights Act just as much today as it did when the Court so ruled in 2018. And SB 202's new requirement—that *already registered voters* include their date of birth on their absentee ballot application form—violates Section 10101(a)(2)(B)'s prohibition for exactly the same reason. These reinstated and new requirements are but one more attempt to achieve precisely what Section 10101(a)(2)(B) was designed to prevent: "the practice of requiring unnecessary information for voter registration with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify potential voters." *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003).

The touchstone of Section 10101(a) is whether a requirement is material to determining the eligibility of the applicant. The Eleventh Circuit has defined "materiality" as "whether, accepting [an] error as *true and correct*, the information contained in the error is material to determining the eligibility of the applicant." *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1175 (11th Cir. 2008)

(emphasis in original). Applying this standard, *Martin* determined that reviewing an elector's year of birth on a returned absentee ballot was "not material to determining the eligibility of an absentee voter," because "the only *qualifications* for voting in Georgia are U.S. Citizenship, Georgia residency, being at least eighteen years of age, not having been adjudged incompetent, and not having been convicted of a felony." *Martin*, 347 F. Supp. 3d at 1308 (quoting *Schwier I*, 340 F.3d at 1297, and citing O.C.G.A. § 21-2-216 (1998)) (emphasis in original).[3] Conversely, "a voter's ability to correctly recite his or her year of birth on the absentee ballot envelope is not material to determining said voter's qualifications under Georgia law." *Id.* at 1308–09. Indeed, once a voter's absentee ballot application is approved, county officials must by necessity have already determined that the applicant is eligible to vote. *Id.* at 1309. As such, *Martin* determined an incorrect or missing date of birth on the outside of an absentee ballot envelope was immaterial. *Id.* This Court agreed. *See Democratic Party of Georgia*, 347 F. Supp. 3d at 1341. Under this well-established caselaw, neither of SB 202's date-of-birth requirements are permissible.

---

[3] Although Section 21-2-216 was amended following *Martin*, the only change was to clarify that a person must be "[a]t least 18 years of age on or before the date of the primary or election in which such person seeks to vote." *See* O.C.G.A. § 21-2-216(a)(3) (2019).

*First*, the new requirement that a voter must provide his or her date of birth on an absentee ballot application form is "not material to determining the eligibility of an absentee voter." *Martin*, 347 F. Supp. 3d at 1308. The reason for this is simple: in order for a voter to request an absentee ballot they must *already* be registered and thus must already have demonstrated to the State that they are over 18 years old. *See id.* at 1309 ("[T]he qualifications of absentee voters are not at issue because Gwinnett County elections officials have already confirmed such voters' eligibility through the absentee ballot application process."). Furthermore, requiring a date of birth provides no added verification of a voter's identity given the other information Georgia now requires voters to provide in applying for and submitting absentee ballots. To apply for an absentee ballot, a voter must provide their name, address of registration, and either a driver's license number, state identification number, or (if the elector has neither) a copy of another form of identification prescribed by statute. O.C.G.A. § 21-2-381(a)(1)(C)(i). Election officials therefore necessarily have other (*less* publicly accessible) identifying information with which to verify the identity of the voter, and Defendants cannot seriously contend the date of birth is material to assessing the qualifications of the absentee voter.[4]

---

[4] Moving Plaintiffs are aware that lawsuits involving other plaintiffs are challenging the materiality of other aspects of the absentee ballot application and

*Second*, the reinstated requirement in SB 202 that a voter provide his or her date of birth on the absentee ballot envelope when mailing in their ballot is as invalid now as it was in 2018. *See Dem. Party of Georgia*, 347. F. Supp. 3d at 1340-41; *Martin*, 347 F. Supp. 3d at 1309. Indeed, as Judge May noted, the "conclusion that year of birth information is immaterial is only strengthened by the Georgia Supreme Court's explicit recognition that Georgia law 'does not mandate the automatic rejection of any absentee ballot lacking the elector's place and/or date of birth.'" *Martin*, 347 F. Supp. 3d at 1309 (citing *Jones v. Jessup*, 279 Ga. 531, 533 n.5 (2005)).[5] Moreover, in submitting their absentee ballots, voters must provide on the absentee ballot envelope their name as well as their driver's license number, state identification number, or (if the elector has neither) the last four digits of their social security number. *Id.* § 21-2-384(b). This shows, once more, all the other sources of information the state has regarding a voters' identity.[6] Given this Court's and Judge May's prior rulings, and undisturbed Georgia Supreme Court precedent, little more need be said about that provision.

That SB 202 offers a "cure" provision to voters whose absentee ballot

---

take no position in this filing as to whether those requirements are valid or not under Section 10101 or other statutory and constitutional provisions.

[5] As Defendants note, "the Georgia Supreme Court has not limited, overturned, or otherwise abrogated its holding in *Jones v. Jessup*." April 25 Letter at 3.

[6] Again, by referencing these other sources Plaintiffs do not take a position on whether some or all of them are invalid as matter of law.  *See supra* at n.4.

applications or absentee ballot itself are rejected because of the failure to provide a date of birth is—as this Court noted during Mr. Germany's testimony—of no moment. By its plain text, Section 10101 does not hinge on the availability of a "cure" mechanism to mitigate an unlawful requirement for immaterial information: Section 10101 prohibits requiring immaterial information *in the first place*. *See* 52 U.S.C. § 10101(a)(2)(B) (forbidding the practice of "deny[ing] the right of any individual to vote in any election *because of* an error or omission . . . [that is] not material in determining whether such individual is qualified" to vote (emphasis added)). This alone renders a "cure"—whether illusory or not—irrelevant.

Even leaving plain text aside, there is a good reason why the "cure" cannot save SB 202's immaterial date-of-birth provision. As Judge May noted, Section 10101 was "intended to address the practice of requiring unnecessary information for voter registration with the intent that such requirements would increase the number of errors or omissions on the application forms, thus providing an excuse to disqualify voters." *Martin*, 347 F. Supp. 3d at 1308 (citing *Schwier I,* 340 F.3d at 1294, and *Browning,* 522 F.3d at 1173). But requiring—as SB 202 does—immaterial information and then providing a "cure" that should not have been triggered in the first place, results in exactly the evil that the Civil Rights Act sought to prohibit. Indeed, accepting Defendants' argument would open a substantial loophole in Section 10101's protections. For example, Defendants

could require absentee voters provide the precise number of days they have been a Georgia resident on their absentee ballots provided that anyone who failed the test completed a potentially arduous cure process within a short period of time before an election ended. With good reason, the law does not permit such cynical attempts to disenfranchise voters.

Furthermore, just as the availability of in-person voting (without immaterial information requirements) does not mean Defendants can require immaterial information from those who choose instead to vote via absentee ballot, the availability of a "cure" period after a voter's absentee ballot has been rejected does not fix the unlawful rejection in the first instance.[7] Indeed, the court adjudicating challenges to SB 202 has already rejected Defendants' motions to dismiss on this exact basis. *See* Order, *New Ga. Project v. Raffensperger*, No. 1:21-cv-01229 at 40 (N.G. Ga. Dec. 9, 2021) ("State Defendants have not provided any support for their argument that the opportunity to cure an error rehabilitates any potential violation of § 10101(a)(2)(B), and the statute is silent on this point."); Order, *Sixth Dist. of*

---

[7] Defendants' burdensome cure process, however, does underscore the need for relief. Voters do not always receive notice that a cure is necessary in the first place; even if they do receive notice, they sometimes cannot cure within the specific time period provided. Even those who do cure their ballots are forced to bring identification to a county office or required to photocopy their identification and send it to the county in time to have their ballots counted. Given the inaccuracies in the voter rolls resulting in inaccurate birth dates, as Plaintiffs have and will continue to describe at trial, it remains possible that some voters will be further burdened if their identification is found not to match the birth date on record.

*the African Methodist Episcopal Church v. Kemp*, No. 1:21-cv-01284 at 37 (N.D. Ga. Dec. 9, 2021) (same); Order, *Ga. State Conf. of the NAACP v. Raffensperger*, No. 1:21-cv-01259 at 35 (N.D. Ga. Dec. 9, 2021).

This Court has ruled once already that a date-of-birth requirement constituted a likely violation of the Civil Rights Act. The Legislature has now reinstated the requirement and, worse, added another immaterial date of birth requirement. Moving Plaintiffs should prevail on the merits of their claim.

## CONCLUSION

For the foregoing reasons, Moving Plaintiffs respectfully request that the Court grant Moving Plaintiffs' Motion for Partial Summary Judgment and enter an Order:

     i.   enjoining the Secretary of State from requiring date of birth on any absentee ballot application forms or absentee ballot oath envelopes generated by the Secretary of State, *see* O.C.G.A. § 21-2-50(a)(5);

    ii.   enjoining the Secretary of State from certifying election results under O.C.G.A. § 21-2-499 until county election officials have confirmed that they have not rejected any absentee ballots solely for missing or inaccurate dates of birth;

    iii.   enjoining the Secretary of State to issue an Official Election Bulletin to all counties instructing them that in compliance with

federal law, they must accept absentee ballot applications and ballots with missing or inaccurate dates of birth as long as the voter's identity and eligibility can otherwise be verified; and

iv.   enjoining the State Election Board from enforcing the challenged provisions of SB 202 where counties accept absentee applications or ballots with a missing or inaccurate date of birth, including through (a) the State Election Board's power to undertake "appropriate proceedings" to impose penalties to "prohibit[] the actual or threatened commission of any conduct constituting a violation of state election law," O.C.G.A. § 21-2-33.1(a), including through issuing cease and desist orders, *id.* § 21-2-33.1(a)(1); (b) the State Election Board's authority to authorize an Attorney General Action in the name of the State Election Board, *id.* § 21-2-33.1(c); or (c) the State Election Board's authority to suspend county or municipal superintendents and appoint a replacement, *id.* § 21-2-33.1(f).

## **CERTIFICATION**

I hereby certify that the foregoing has been prepared with a font size and point selection (Times New Roman, 14 pt.), which is approved by the Court pursuant to Local Rules 5.1(C) and 7.1(D).

16

Respectfully submitted this, the 26th day of April, 2022.

/s/ Allegra J. Lawrence
Allegra J. Lawrence (GA Bar No. 439797)
Leslie J. Bryan (GA Bar No. 091175)
Lovita T. Tandy (GA Bar No. 697242)
Celeste Coco-Ewing (Admitted *pro hac vice*)
Michelle L. McClafferty (GA Bar No. 161970)
Monica R. Owens (GA Bar No. 557502)
Rodney J. Ganske (GA Bar No. 283819)
Maia Cogen (GA Bar No. 832438)
Suzanne Smith Williams (GA Bar No. 526105)
Bria Stephens (GA Bar No. 925038)
**LAWRENCE & BUNDY LLC**
1180 West Peachtree Street, Suite 1650
Atlanta, GA 30309
Telephone: (404) 400-3350
Fax: (404) 609-2504
allegra.lawrence-hardy@lawrencebundy.com
leslie.bryan@lawrencebundy.com
lovita.tandy@lawrencebundy.com
celeste.coco-ewing@lawrencebundy.com
michelle.mcclafferty@lawrencebundy.com
monica.owens@lawrencebundy.com
rod.ganske@lawrencebundy.com
maia.cogen@lawrencebundy.com
suzanne.williams@lawrencebundy.com
bria.stephens@lawrencebundy.com

Thomas R. Bundy (Admitted *pro hac vice*)
**LAWRENCE & BUNDY LLC**
8115 Maple Lawn Boulevard
Suite 350
Fulton, MD 20789
Telephone: (240) 786-4998
Fax: (240) 786-4501
thomas.bundy@lawrencebundy.com

17

Dara Lindenbaum (GA Bar No. 980780)
**SANDLER REIFF LAMB ROSENSTEIN &
BIRKENSTOCK, P.C.**
1090 Vermont Avenue, NW
Suite 750
Washington, DC 20005
Telephone: (202) 479-1111
Fax: (202) 479-1115
lindenbaum@sandlerreiff.com

Elizabeth Tanis (GA Bar No. 697415)
John Chandler (GA Bar No. 120600)
957 Springdale Road, NE
Atlanta, GA 30306
Telephone: (404) 771-2275
beth.tanis@gmail.com
jachandler@gmail.com

Kurt G. Kastorf (GA Bar No. 315315)
**KASTORF LAW, LLC**
1387 Iverson St, Suite 100
Atlanta, GA 30307
Telephone: (404) 900-0330
kurt@kastorflaw.com

Matthew G. Kaiser (Admitted *pro hac vice*)
Sarah R. Fink (Admitted *pro hac vice*)
**KAISERDILLON PLLC**
1099 Fourteenth Street, NW
Eighth Floor West
Washington, DC 20005
Telephone: (202) 640-2850
Fax: (202) 280-1034
mkaiser@kaiserdillon.com
sfink@kaiserdillon.com

Kali Bracey (Admitted *pro hac vice*)
Ishan Bhabha (Admitted *pro hac vice*)
Victoria Hall-Palerm (Admitted *pro hac vice*)
Kathryn L. Wynbrandt (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Telephone: (202) 639-6000
Fax: (202) 639-6066
kbracey@jenner.com
ibhabha@jenner.com
vhall-palerm@jenner.com
kwynbrandt@jenner.com

Jeremy M. Creelan (Admitted *pro hac vice*)
Elizabeth A. Edmondson (Admitted *pro hac vice*)
Allison N. Douglis (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
919 Third Avenue
New York, NY 10022
Telephone: (212) 891-1600
Fax: (212) 891-1699
jcreelan@jenner.com
eedmondson@jenner.com
adouglis@jenner.com

Keri L. Holleb Hotaling (Admitted *pro hac vice*)
Kelsey Stimple (Admitted *pro hac vice*)
**JENNER & BLOCK LLP**
353 North Clark Street
Chicago, Illinois 60654
Telephone: (312) 222-9350
khotaling@jenner.com
kstimple@jenner.com

Von A. DuBose
**DUBOSE MILLER LLC**
75 14th Street N.E., Suite 2110
Atlanta, GA 30309
Telephone: (404) 720-8111
Fax: (404) 921-9557
dubose@dubosemiller.com

Johnathan Diaz (Admitted *pro hac vice*)
Paul M. Smith (Admitted *pro hac vice*)
**CAMPAIGN LEGAL CENTER**
1101 14th St. NW**,** Suite 400
Washington, DC 20005
Telephone: (202)736-2200
jdiaz@campaignlegal.org
psmith@campaignlegal.org

Andrew D. Herman (Admitted *pro hac vice*)
**MILLER & CHEVALIER CHARTERED**
900 Sixteenth Street, NW
Washington, DC 20006
Telephone: (202) 626-5800
Fax: (202) 626-5801
aherman@milchev.com

*Counsel for Fair Fight Action, Inc.; Care in Action, Inc.; Ebenezer Baptist Church of Atlanta, Georgia, Inc.; Baconton Missionary Baptist Church, Inc.; Virginia-Highland Church, Inc.; and The Sixth Episcopal District, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on April 26, 2022, the foregoing **PLAINTIFFS'**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR PARTIAL**

**SUMMARY JUDGMENT** was filed with the Court using the ECF system, which

will serve all counsel of record.

This, the 26th day of April, 2022.

*/s/ Allegra J. Lawrence*
Allegra J. Lawrence

147438.v3