# EXHIBIT C

taylor | english

Taylor English Duma LLP 1600 Parkwood Circle, Suite 200, Atlanta, Georgia 30339
Main: 770.434.6868 Fax: 770.434.7376 taylorenglish.com

Bryan P. Tyson
Direct Dial: (678) 336-7249
Email: btyson@taylorenglish.com

April 25, 2022

*Via Hand Delivery*
The Honorable Steve C. Jones
United States District Judge
1967 Richard B. Russell Federal Building
75 Ted Turner Drive, SW
Atlanta, GA 30303-3309

      Re:    *Fair Fight Action, Inc., et al. v. Raffensperger, et al.,*
              Civil Action No. 1:18-cv-5391-SCJ (N.D. Ga.)

Dear Judge Jones:

      This letter responds to the Court's concerns regarding the provisions of Senate Bill 202 that added a date of birth provision back to Georgia's absentee ballot envelope as a part of reforming Georgia's absentee-ballot-verification process.

## I.    The 2020 election and the adoption of SB 202.

      During the runup to and aftermath of the 2020 general election in Georgia, the Georgia election system was under attack by groups affiliated with both political parties. The legislature specifically determined that "[f]ollowing the 2018 and 2020 elections, there was a significant lack of confidence in Georgia election systems, with many electors concerned about allegations of rampant voter suppression and many electors concerned about allegations of rampant voter fraud." SB 202, § 2(1). In the area of absentee ballots, Democratic and Republican groups both challenged the state's signature-matching process for verifying absentee ballots. *See* SB 202, § 2(2); *Dem. Party of Ga. v. Raffensperger*, Case No. 1:19-cv-05028-WMR (N.D. Ga.) Doc. 1 (Nov. 6, 2019), ¶¶ 56-57; *Twelfth Congressional Dist. Repub. Comm. v. Raffensperger*, Case No. 1:20-cv-00180-JRH-BKE (S.D. Ga.) Doc. 1 (Dec. 9, 2020), ¶¶ 13, 55-61. As a result of these challenges, the General Assembly took action to "update existing processes to reduce the burden on election officials and boost voter confidence." SB 202, § 2(3).[1]

---

[1] SB 202 also explained the role of local and state election officials, with the General Assembly making a finding that "[e]lections in Georgia are administered by counties, but that can lead to problems for voters in counties with dysfunctional election systems. Counties with long-term problems of lines, problems with processing of

A number of the changes in SB 202 involved processes for absentee ballots. For example, SB 202 updated the process for absentee ballot applications. The changes created a mandatory statewide application form that included name, Georgia driver's license number, date of birth, and address of the voter, along with processes for voters who do not have driver's licenses. O.C.G.A. § 21-2-381(a)(1)(C)(i). The county registrar is then charged with verifying the identity of the voter from the information on the application. O.C.G.A. § 21-2-381(b)(1). But SB 202 also prohibited county registrars from rejecting an absentee ballot application based "solely" on mismatched identifying information. O.C.G.A. § 21-2-381(b)(3). Instead, registrars must send those individuals a provisional ballot. *Id.*

For voters who receive an absentee ballot, the absentee ballot envelope was also significantly revised. Local election officials must provide voters with envelopes containing spaces to place their name, signature, driver's license number, mark or affirm whether they do not have a driver's license number, date of birth, and last four digits of their Social Security Number. O.C.G.A. § 21-2-384(b). Some of this information is required to be hidden when the envelope is properly sealed, including, the voter's date of birth. *Id.* For their part, absentee voters are required to print their driver's license number and date of birth, or, if they do not have a driver's license number, the last four digits of their Social Security Number and their date of birth. O.C.G.A. § 21-2-385(a).

Now we move to the role of the registrar when he or she receives an absentee ballot. The county registrar compares the driver's license number and date of birth or the last four digits of the Social Security Number and date of birth with the information on file. O.C.G.A. § 21-2-386(a)(1)(B). The registrar only rejects the ballots if the "identifying information entered" on the envelope does not match. O.C.G.A. § 21-2-386(a)(1)(C). In such an instance, the registrar is further required to "promptly notify" the elector and the elector is then permitted to cure the issue during the time provided for similarly curing provisional ballots. *Id.*

All of these provisions further operate within the same electoral framework which existed at the time of this Court's summary judgment orders—a framework which places primary (and in many cases exclusive) authority on administration of

---

absentee ballots, and other challenges in administration need accountability, but state officials are limited in what they are able to do to address those problems. Ensuring there is a mechanism to address local election problems will promote voter confidence and meet the goal of uniformity." SB 202, § 2(7).

polling places, registration, and absentee ballots with county election officials. Likewise, the backdrop of existing state law remains the same. Specifically, the Georgia Supreme Court has not limited, overturned, or otherwise abrogated its holding in *Jones v. Jessup*, 279 Ga. 531 (2005), on which this Court relied in entering its 2018 Order concerning omitted or erroneous birth dates. *Democratic Party of Ga., Inc. v. Crittenden*, 347 F. Supp. 3d 1324, 1339–41 (N.D. Ga. 2018). And the observed application of SB 202's provisions against this backdrop shows no material change either. *See* Mark Niesse, *Unlike Texas, new voter ID rules in Georgia didn't cause surge in rejections*, Atlanta-Journal Constitution (Feb. 26, 2022), https://www.ajc.com/politics/unlike-texas-new-voter-id-rules-in-georgia-didnt-cause-surge-in-rejections/D5BHR5WRNRATHGOGO4TJOXOBHA/ (indicating that only 0.6% of all absentee ballots returned in 2021 municipal elections throughout Georgia were rejected due to "incorrect or missing ID information or signatures").

Viewed holistically, the General Assembly's material revisions to the entirety of the absentee ballot application and absentee ballot process is not the state "revers[ing] course and reenact[ing] the allegedly offensive portion of its Code." *Flanigan's Enters. v. City of Sandy Springs*, 868 F.3d 1248, 1256 (11th Cir. 2017). The revisions in SB 202 are significant—they are not minor changes that "differ[] only in some insignificant respect." *Ne. Fla. Chapter of Associated Gen. Contractors of Am. v. City of Jacksonville*, 508 U.S. 656, 662 (1993). In doing so, the General Assembly did not disturb the legal framework of Georgia's county-administered election laws, but it did significantly and comprehensively revise the process those local election officials are charged with administering. Consequently, the General Assembly did not simply endeavor to repeat the challenged conduct—it instead responded to the administrative challenges of the 2020 election by creating an entirely new process for dealing with absentee ballots that happened to include date of birth information. *See* SB 202, § 2(2).

## II.    Plaintiffs' claims about absentee-ballot rejections.

We next turn to Plaintiffs' claims in this case. Plaintiffs' Second Amended Complaint only made claims about rejections for missing or incorrect birth years on absentee ballots in the context of a failure to "oversee, train, and advise counties about the proper handling of absentee ballots." Doc. No. [582], ¶¶ 133, 137, 141. Plaintiffs also referenced the decisions of this Court in 2018 regarding birth-year rejections, but those claims involved the Civil Rights Act, not a failure-to-train or fundamental-right-to-vote claim. *Id.* at ¶ 139. The Civil Rights Act prohibits denying the right to vote because of an "error or omission on any record or paper relating to any application, registration, or other act requisite to voting," if that error or omission is not material

to determining a voter's qualifications. 52 U.S.C. § 10101(a)(2)(B). Plaintiffs never raised a Civil Rights Act claim in this case.[2] *Id.* at ¶ 136. Plaintiffs only sought relief about absentee-ballot rejections under a failure-to-train theory. *Id.* at ¶ 147.

This Court's order from 2018 addressing the date of birth issue recognized that Georgia law "does not mandate the automatic rejection of any absentee ballot lacking the elector's place and/or date of birth." *Democratic Party of Ga.*, 347 F. Supp. 3d at 1340 (quoting *Jessup*, 279 Ga. at 533 n.5). That order also referenced the Official Election Bulletin (OEB) issued by then-Secretary Crittenden, advising counties of Georgia law on this topic. *Id.*

Further, this Court expressly recognized that some of the information on the absentee ballot envelope may be material to identifying a voter. *Id.* at n.4. Ultimately, the relief ordered in Democratic Party was to ensure "the sake of statewide uniformity and assurance that all absentee mail-in ballots are equally treated." *Id.* at 1341.

### III. Summary judgment motions and orders.

Following the adoption of HB 316, and in the summer of 2020, Defendants moved for summary judgment in this case on a variety of grounds, including that any claims about voter birth date rejections had been mooted by that statute's elimination of the birth year on the absentee ballot envelope. Doc. No. [441-1], p. 28. Plaintiffs' only response on this jurisdictional claim was that dates of birth were still used in some local election materials. Doc. No. [489], p. 25.

---

[2] The cases Plaintiffs cited in the Second Amended Complaint and in trial testimony resulted in relief under the Civil Rights Act, not some other theory. *See Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1304 (N.D. Ga. 2018) (sole issue was "[d]oes Gwinnett County's process of rejecting absentee ballots solely on the basis of an omitted or incorrect birth year violate the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B)?") and *Democratic Party of Ga.*, 347 F. Supp. 3d at 1340 (deciding absentee-ballot-rejection issue solely on basis of Civil Rights Act and noting that other errors on envelopes are not immaterial). Indeed, Plaintiffs' Second Amended Complaint cites several statutes, but only mentions the Civil Rights Act in passing and cannot reasonably be construed to be seeking relief under that statute. *See generally* Doc. No. [582]. For that matter, Plaintiffs' briefs on summary judgment do not cite to the Civil Rights Act either. *See* Doc. Nos. [489, 490].

But at the same time as Defendants moved for summary judgment on jurisdictional and mootness grounds, they also moved for summary judgment on the entirety of the merits of Plaintiffs' training claims in their entirety, including the rejection of absentee ballots. Doc. No. [450-1], pp. 26-27. At the time the briefs were filed, the General Assembly was not in session, the 2020 general election was months away, and no one had introduced or pre-filed SB 202 or anything like it. Further, Plaintiffs' focus on absentee-ballot rejections was not regarding birth years, but the alleged racial and geographic disparities in those rejections. Doc. No. [490], pp. 52-53, 66.

### A. The Order on the jurisdictional motion was correct and remains so.

This Court decided both motions in early 2021 during the waning days (and for the decision on the merits, on the last day) of the legislative session. On jurisdiction, this Court determined that the training claims about absentee-ballot rejections were not mooted by the change in law. Doc. No. [612], p. 63. The Court also found that, standing alone, the claims about date of birth rejections based on the requirement for voters to provide the birth date on the envelope were moot due to the changes in HB 316 and the lack of likelihood the state would "reenact the challenged legislation or otherwise return to its old law." Doc. No. [612], p. 64. The Court did so in part because reenactment of the challenged statute "could not reasonably be expected to recur." *Flanigan's Enters.*, 868 F.3d at 1256.

Nothing about the *Flanigan* factors indicates that the Court wrongly decided the mootness question. First, the changes in HB 316 resulted from "substantial deliberation" and was not merely an attempt to manipulate jurisdiction. *Id.* at 1257. Second, the repeal was unambiguous because it was the result of passage by the General Assembly and action of the Governor—as complete and final as any statutory adoption in the State of Georgia can be. *Id.* Third, Georgia administered the 2020 elections using HB 316, making it a consistent commitment, especially given the challenges involved with conducting the 2020 elections in a pandemic. *Id.*

Further, the Court specifically did not rule on Defendants' arguments that the remaining absentee ballot processing claims (including birth year rejections) were barred by the Eleventh Amendment because they involve claims Defendants were not following state law. Doc. No. [612], p. 63 n.29. Since the time of this Court's ruling, the Eleventh Circuit has confirmed that Defendants have no role in the processing of absentee ballots, further illustrating how Plaintiffs' claims are barred as a matter of law. *See Ga. Republican Party, Inc. v. Sec'y of State for Ga.*, No. 20-14741-RR, 2020 WL

7488181 at *2 (11th Cir. Dec. 20, 2020) (applying *Jacobson v. Fla. Sec'y of State*, 974 F.3d 1236 (11th Cir. 2020), and finding that "the absentee ballot statute places the duty to 'compare the signature' and accept or reject a ballot on the 'registrar or clerk'—not the Secretary of State").

### B. The Order on the merits provided an alternative basis for dismissal.

More importantly, the outcome of this trial is not impacted by the passage of SB 202 and its inclusion of a birthdate requirement as part of a different statutory scheme. Specifically, in this Court's summary judgment order on the merits, this Court held "that Plaintiffs have failed to connect their allegations related to mailing and rejection of absentee ballots to training" and that Plaintiffs did not "connect their facts regarding absentee ballot rejection rates to training in any way." Doc. No. [617], p. 24. And this conclusion remains correct, notwithstanding any provision of SB 202, particularly in light of intervening determinations of the Eleventh Circuit and other district courts concerning the role of county officials with respect to the processing of absentee ballots. *See, e.g.*, *Ga. Repub. Party*, 2020 WL 7488181 at *2; *Trump v. Kemp*, 511 F. Supp. 3d 1325, 1333–34 (N.D. Ga. 2021) (holding that "Under Georgia election law, county election officials are solely responsible for processing, validating, and tabulating both absentee and in-person ballots"); *Wood v. Raffensperger*, No. 1:20-cv-5155-TCB, 2020 WL 7706833 at *6, n.6 (N.D. Ga. Dec. 28, 2020) (citing *Ga. Republican Party*). In other words, even if the Court ruled *against* the State on the mootness of the birthdate requirement, summary judgment would still have been granted to Defendants on Plaintiffs' claim involving absentee-ballot rejections because Plaintiffs could not demonstrate a dispute of material fact on causation and traceability. Thus, considering all of the circumstances, arguments, and judicial orders on summary judgment, there is neither prejudice to the Plaintiffs nor any reason to reconsider the Court's decision and its alternative bases for dismissing the absentee-ballot-rejection claims that have nothing to do with mootness.

### IV. Plaintiffs have been on notice of this change, filed a separate lawsuit raising the issue, and never alerted the Court of any objections.

Finally, this Court should not revisit this issue because of Plaintiffs' delay in bringing this SB 202 issue to the Court's attention. Plaintiffs have been on notice of the changes to the absentee ballot process in SB 202 for more than a year. And one of the Plaintiffs in this case has already brought a separate Civil Rights Act claim against Defendants regarding this exact issue.

The Governor signed SB 202 on March 25, 2021. Within the next few days, the Sixth District AME, along with other plaintiffs and allied groups, sued on the provisions of SB 202, including those asserting materiality claims about absentee ballots under the Civil Rights Act—unlike Plaintiffs in this case. *See Sixth District AME v. Kemp*, Case No. 1:21-cv-01284-JPB (N.D. Ga.) Doc. 83 (May 24, 2021), ¶¶ 372-376 (Civil Rights Act claim based on date of birth); *New Georgia Project v. Raffensperger*, Case No. 1:21-cv-01229-JPB (N.D. Ga.) Doc. 39 (May 17, 2021), ¶¶ 190-197 (same).

Fair Fight Action was also well aware of the legislation. In fact, it worked against SB 202 in the General Assembly and was aware of its provisions after its passage—putting out dozens of press statements, including on the same day that Governor Kemp signed the legislation. *See, e.g., Stacey Abrams' Statement on Signing of Anti-Voter Power Grab SB 202*, https://fairfight.com/stacey-abrams-statement-on-signing-of-anti-voter-power-grab-sb-202/ (March 25, 2021); *Kemp Signs Anti-Voter Power Grab SB 202 After Georgia Republicans Force Through Bill on Party-Line Vote*, https://fairfight.com/kemp-signs-anti-voter-power-grab-sb-202-after-georgia-republicans-force-through-bill-on-party-line-vote/ (March 25, 2021); *BREAKING: Georgia Republicans Force Voter Suppression and Elections Power Grab Bill SB 202 Through Committee on Party-Line Vote*, https://fairfight.com/breaking-georgia-republicans-force-voter-suppression-and-elections-power-grab-bill-sb-202-through-committee-on-party-line-vote/ (March 22, 2021); *Fair Fight Action and Voting Rights Groups Slam Rep. Fleming's Latest Last-Minute Voter Suppression Bill in Virtual Press Conference*, https://fairfight.com/fair-fight-action-and-voting-rights-groups-slam-rep-flemings-latest-last-minute-voter-suppression-bill-in-virtual-press-conference/ (March 18, 2021).

Fair Fight Action trumpeted its efforts, broadcasting in a tweet that "we sounded the alarm when SB 202 first reared its ugly head." Tweet from @fairfightaction, Nov. 9, 2021 6:36PM, https://twitter.com/fairfightaction/status/1458216834100961287 It also released advertisements about the legislation. *NEW AD: Fair Fight Action Explains Why Georgia Republicans' Massive Power Grab Is Bad for Georgia's Economy*, https://fairfight.com/new-ad-fair-fight-action-explains-why-georgia-republicans-massive-power-grab-is-bad-for-georgias-economy/ (March 22, 2021).

But perhaps most damning is Fair Fight Action's detailed analysis of SB 202, released just under a year ago, on April 28, 2021, which specifically identified one of the "50 reasons SB 202 harms voters" as:

**42. DOB Requirement:** Adds DOB requirement back to VBM envelope after removed in 2019. This requirement led to Date vs. DOB voter confusion and two federal courts have ruled in GA cases that counties must count ballots with DOB issues (which is why it was removed). (lines 1459-1460)

Document posted at https://fairfight.com/wp-content/uploads/2021/04/TOP-50-Reasons-Why-SB202-Is-Harmful-to-Voters.pdf; Tweet from @fairfightaction, Apr. 28, 2021, 3:05PM, https://twitter.com/fairfightaction/status/1387483208019701760

Thus, at the very least, Sixth District AME and Fair Fight Action knew of this exact provision and waited a year before ever raising it to the Court. This is not a situation where Plaintiffs learned about this issue during this trial. They knew. And they waited to raise the issue until now to create confusion and delay the resolution of this case.

Consequently, "(1) there was a delay in asserting a right or a claim, (2) the delay was not excusable, and (3) the delay caused . . . undue prejudice," and—in addition to the lack of causation the Court has already decided—laches should preclude Plaintiffs' late effort to expand this case into areas unrelated to their actual claims. *United States v. Barfield*, 396 F.3d 1144, 1150 (11th Cir. 2005) (*citing AmBrit, Inc. v. Kraft, Inc.*, 812 F.2d 1531, 1545 (11th Cir. 1986)).

Further, pretrial "orders [should] be firmly (but fairly) enforced." *Morro v. City of Birmingham*, 117 F.3d 508, 515 (11th Cir. 1997). While this Court has broad discretion in enforcing the limits of pretrial orders, *Caradigm USA LLC v. PruittHealth, Inc.*, 964 F.3d 1259, 1278 (11th Cir. 2020), Plaintiffs should not be allowed to expand this case to topics beyond the pretrial order, especially when they were on notice of the exact issue well in advance of the entry of that order.

## V. Conclusion.

In summary, this Court correctly decided that Plaintiffs' claims about training on birth years were moot and ruled in Defendants' favor on the remaining failure-to-train claims on alternative grounds that would have included the birth-year claims. The General Assembly's later wholesale revision of the absentee process did not change that fact or provide a basis to revive Plaintiffs' claims. And Plaintiffs have been on notice of the exact issue they first raised in this case on April 20, 2022 for more than

a year, said nothing, and in fact sued over this exact provision in a separate case. This case should proceed to its final resolution without further delay.

Sincerely,

*Bryan P. Tyson*

Bryan P. Tyson

Counsel for Defendants in *Fair Fight Action*

Counsel for State Defendants in *In re Georgia Senate Bill 202*, Case No. 1:21-mi-55555-JPB

cc: Allegra Lawrence-Hardy, Esq.
Josh Belinfante, Esq.