# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| FAIR FIGHT ACTION, INC., *et al.*,<br><br>    *Plaintiffs,*<br><br>v.<br><br>BRAD RAFFENSPERGER, in his official capacity as Secretary of State of Georgia; *et al.*,<br><br>    *Defendants.* | Civil Action File<br><br>No. 1:18-cv-05391-SCJ |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL COMPLAINT

# **Table of Contents**

Introduction ........................................................................................................ 1

Background ......................................................................................................... 3

Legal Standard ................................................................................................. 10

Argument .......................................................................................................... 12

   I.   Plaintiffs' eleventh-hour motion cannot satisfy Rule 16(e)'s "manifest injustice" nor Rule 16(b)'s "good cause" standards. ............................................ 12

   II.  Alternatively, Plaintiffs fail to satisfy the inapposite standard for Rule 15's amendment. ........................................................................................................ 17

     A. Plaintiffs' Motion will unduly delay this case. ............................................. 17

     B. Plaintiffs' Motion represents bad faith. ......................................................... 19

     C. Granting Plaintiffs' Motion would unduly prejudice Defendants. ........... 21

     D. Plaintiffs' Motion is futile. ............................................................................ 22

Conclusion ........................................................................................................ 23

**INTRODUCTION**

It has been 1,254 days since Plaintiff Fair Fight Action ("Fair Fight") filed the complaint in this lawsuit. Doc. No. [1].[1] 405 days have passed since Governor Kemp signed Senate Bill 202 into law. There have been 229 days since the Plaintiffs asked to expand the case beyond the discovery limitations imposed. Doc. No. [631]. 140 days have elapsed since the parties filed their *first* pretrial order, Doc. No. [651], and 75 days since the parties submitted the amended trial order. Doc. No. [721]. And, 40 days have passed since the Court entered the Amended Final Consolidated Pretrial Order. Doc. No. [753].

Despite this length of time, the examination of more than 25 witnesses at trial or by videotaped deposition, and the Court's recently entered scheduling order, Doc. No. [813], Plaintiffs now seek to expand this case yet again by adding a new claim (the Civil Rights Act) and a new challenged practice (SB 202's modification of the information on absentee-ballot envelopes). To these ends, Plaintiffs' Motion for Leave to File a Supplemental Complaint ("Motion") purports to seek a supplement to the Second Amended Complaint ("SAC") and

---

[1] The dates for Plaintiff Baconton Missionary Baptist Church ("Baconton") are not materially different.

conspicuously ignores the existence of this Court's amended pretrial order. The error is fatal.

The SAC became legally inoperative the moment the Court filed the pretrial order.[2] Thus, Plaintiffs' Motion is procedurally improper; it can, and should, be denied on this basis alone.  This Court should not reward Plaintiffs' inexplicable delay and eleventh-hour attempt to push finality in this case out for months.

But even if this Court were to consider the substance of Plaintiffs' Motion, it should further be denied because it involves: (1) unreasonable delay by Plaintiffs in challenging a law that was enacted over a year earlier; (2) theories that remain pending in another court in this district (brought by one of the other Plaintiffs in this lawsuit); (3) the likely need for even more discovery after almost three years of active pretrial litigation. And as to this third point, there is no question that proceeding without discovery would cause undue prejudice to Defendants. Despite Plaintiffs' claims otherwise, Defendants are not required to

---

[2] Whether this Court considers the December 21, 2021 Corrected Consolidated Pretrial Order, Doc. No. [670], or the March 25, 2022 Amended Pretrial Order, Doc. No. [753], the result is the same.

blindly defend themselves against Plaintiffs' novel claim (and proffered summary judgment motion) without discovery.

This conclusion is supported by the Federal Rules of Civil Procedure and the cases that apply them. Indeed, this is not the first time Plaintiffs have sought to inject new issues and delay into this nearly four-year-old lawsuit. When faced with similar requests, this Court has denied Plaintiffs' continuing efforts to expand this case and, respectfully, it should do so again.

## BACKGROUND

Plaintiffs' SAC challenged the then-applicable law that required voters to write their birthdate on the outside of an absentee ballot return envelope. The claim was based on an alleged failure to "oversee, train, and advise counties about the proper handling of absentee ballots." Doc. No. [582], ¶¶ 133, 137, 141. Plaintiffs did not raise a claim under the Civil Rights Act, despite their reliance on two decisions that did.[3] Id. at ¶ 139; see Democratic Party of Georgia, Inc. v. Crittenden, 347 F. Supp. 3d 1324, 1331 (N.D. Ga. 2018) (Jones, J.) ("DPG"); Martin v. Kemp, 1:18-CV-4776-LMM, 2018 WL 10509489, at *1 (N.D. Ga. Nov. 2, 2018)

---

[3] The Civil Rights Act prohibits denying the right to vote because of an "error or omission on any record or paper relating to any application, registration, or other act requisite to voting," if that error or omission is not material to determining a voter's qualifications. 52 U.S.C. § 10101(a)(2)(B).

(May, J.). The omission substantively distinguishes the claims and this lawsuit from Martin and DPG, which were also decided on limited records, an old statute, and on an expedited basis of a preliminary injunction.

Given that the absentee ballot birthdate issue in this case only arose within Plaintiffs' failure-to-train claim, discovery did not focus on the alleged materiality or non-materiality of the birthdate requirement itself as it would in a Civil Rights Act case. Discovery investigated questions about training, which public officials are responsible for training others, and expert testimony. It was also lengthy: it included over 100 depositions and the production of millions of pages of documents. In 2020, discovery closed over Plaintiffs' objections and Defendants moved for summary judgment. In two briefs, Defendants attacked Plaintiffs' absentee-ballot claims for lacking evidence of causation, Doc. No. [450-1], and for lacking jurisdiction due to HB 316's removal of the birthdate requirement mooting the claim altogether. Doc. No. [441-1].[4]

Oral arguments on summary judgment and the cross-Daubert motions were held in the fall of 2020 and January 2021. As the Court began its

_____

[4] At the time the briefs were filed, the General Assembly was not in session, the 2020 general election was still months away, and no one had introduced or pre-filed SB 202 or anything like it.

– 4 –

deliberations, the General Assembly reconvened on Monday, January 11, 2021. In

the wake of the 2020 elections, legislators considered election reform. See SB 202,

§ 2. Fair Fight intimately understood and vigorously opposed those efforts,

including legislators' decision to reinstate the birthdate requirement on the

absentee ballot return envelope: "Fair Fight Action dedicated resources to

research and advocating against inclusion of a date-of-birth requirement for

absentee ballots."[5] Doc. No. [804-2], ¶ 13. As Fair Fight admits in its proposed

Supplemental Complaint, "[a]fter SB 202 passed, Fair Fight Action turned its

---

[5] Fair Fight put out dozens of press statements on SB 202, including on the same day that Governor Kemp signed the legislation. See, e.g., *Stacey Abrams' Statement on Signing of Anti-Voter Power Grab SB 202*, https://fairfight.com/stacey-abrams-statement-on-signing-of-anti-voter-power-grab-sb-202/ (March 25, 2021); *Kemp Signs Anti-Voter Power Grab SB 202 After Georgia Republicans Force Through Bill on Party-Line Vote*, https://fairfight.com/kemp-signs-anti-voter-power-grab-sb-202-after-georgia-republicans-force-through-bill-on-party-line-vote/ (March 25, 2021); *BREAKING: Georgia Republicans Force Voter Suppression and Elections Power Grab Bill SB 202 Through Committee on Party-Line Vote*, https://fairfight.com/breaking-georgia-republicans-force-voter-suppression-and-elections-power-grab-bill-sb-202-through-committee-on-party-line-vote/ (March 22, 2021); *Fair Fight Action and Voting Rights Groups Slam Rep. Fleming's Latest Last-Minute Voter Suppression Bill in Virtual Press Conference*, https://fairfight.com/fair-fight-action-and-voting-rights-groups-slam-rep-flemings-latest-last-minute-voter-suppression-bill-in-virtual-press-conference/ (March 18, 2021).

research and advocacy material into voter education materials to ensure voters were aware of the date-of-birth requirement's return into law." Id.[6]

While Fair Fight was debating election legislation at the State Capitol, this Court was preparing its summary-judgment orders. They issued just before and on the last night of the legislative session (the day Governor Kemp signed SB 202). Plaintiffs' absentee-ballot claims were dismissed for lack of both jurisdiction and causation. Doc. No. [612] at 64 (mootness); Doc. No. [617] at 24 (causation/merits).[7]

---

[6] In sharp contrast to Fair Fight's advocacy, Baconton does not allege it did anything about SB 202 until this filing.  Instead, it alleges only that one of the issues it plans to focus on addressing in "the 2022 election cycle is the date-of-birth requirement," apparently for the very absentee ballots that Rev. Scott has concerns about using. Doc. No. [804-2], ¶ 28.

[7] Other developments continue to support the Court's summary-judgment decisions. For example, the Eleventh Circuit has since issued panel opinions holding that county officials—not Defendants—process absentee ballots, which deprives Plaintiffs of any ongoing traceability. See, e.g., Ga. Republican Party, Inc. v. Sec'y of State for Ga., No. 20-14741-RR, 2020 WL 7488181 at *2 (11th Cir. Dec. 20, 2020) (applying Jacobson v. Fla. Sec'y of State, 974 F.3d 1236 (11th Cir. 2020); Trump v. Kemp, 511 F. Supp. 3d 1325, 1333–34 (N.D. Ga. 2021) (holding that "[u]nder Georgia election law, county election officials are solely responsible for processing, validating, and tabulating both absentee and in-person ballots"); Wood v. Raffensperger, No. 1:20-cv-5155-TCB, 2020 WL 7706833 at *6, n.6 (N.D. Ga. Dec. 28, 2020) (citing Ga. Republican Party, 2020 WL 7488181 at *2). Further, Plaintiffs' Motion presents no evidence of a voter actually injured by the birthdate requirement. Unlike the decisions in Martin and DPG, which were

About 405 days have passed since then, and until last week, Fair Fight has worked against SB 202 almost everywhere but the courts. For its part, Baconton appears to have done nothing. For example, more than a year ago, Fair Fight crafted an "explainer" for their members and the general public alerting them to the change in absentee-ballot procedures related to birthdate, among other provisions of SB 202 with which they took issue. *Fifty Reasons Why SB202 is a Bad Bill*, FAIRFIGHT.COM, https://fairfight.com/wp-content/uploads/2021/04/TOP-50-Reasons-Why-SB202-Is-Harmful-to-Voters.pdf (last visited April 28, 2022). The "explainer" even made indirect mention of the Martin and DPG cases. Id.

Fair Fight also lobbied the United States Congress about SB 202. On April 20, 2021, 370 days before filing Plaintiffs' Motion, Fair Fight, through counsel that represent Plaintiffs[8] in this very case, authored a comprehensive report on election topics in Georgia for the United States Senate Judiciary Committee. The materials raised the issue of SB 202's absentee ballot/birth date requirement. *Georgia's Enduring Racial Discrimination in Voting and the Urgent*

---

decided on a very limited record at the preliminary-injunction stage, Plaintiffs now carry the burden of establishing injury from the evidence that has been compiled during discovery.

[8] See "Acknowledgements" on p. 2 of the Report.

*Need to Modernize the Voting Rights Act, Fair Fight Action Report to the Judiciary Committee United States Senate,* April 20, 2021, attached as Ex. A at pp. 42, 129.

During the course of this advocacy, neither Fair Fight nor Baconton sought any kind of relief from the judicial branch, including a motion to reconsider the Court's order on mootness. Plaintiff Sixth District African Methodist Episcopal church ("Sixth District") did, however, and filed a new lawsuit asserting the same Civil Rights Act claim against SB 202's birthdate requirement that Plaintiffs now seek to raise in this lawsuit during trial. <u>Sixth Dist. of Afr. Methodist Episcopal Church v. Kemp</u>, No. 1:21-CV-01284-JPB, 2021 WL 6495911 (N.D. Ga.). No Plaintiff in this lawsuit sought to intervene in that case, nor did Sixth District contend it was a related case. That lawsuit remains pending with discovery underway.

Despite these very public acts in opposition to the very provision of the law Plaintiffs' Motion seeks to inject into this four-year-old dispute, Plaintiffs claim that Mr. Germany's testimony forced their hand. This contention fails for several reasons. First, the Secretary's involvement (whatever it was) is not an operative fact in a Civil Rights Act analysis, which focuses on materiality, not intent. 52 U.S.C. § 10101. Put differently, whether the Secretary wrote the bill or just provided input is wholly irrelevant to Plaintiffs' proposed claim.

Second, Plaintiffs' Motion should be viewed in the context and history of its other attempts to alter the scope and duration of this case. See, e.g., Doc. Nos. [631, 637, 734]. In fact, during the preliminary pretrial conference—**six months after the passage of SB 202**—Plaintiffs requested more discovery "to talk about current day." (Tr. Nov. 29, 2021 at 29:2.) At no time, however, did Plaintiffs move to amend, supplement, or otherwise alter their case until **after** the entry of **two** pre-trial orders and trial examination of more than 25 witnesses.

This Court has also considered SB 202 in the context of this lawsuit and said that the legislation "is not being litigated in the case *sub judice*." Doc. No. [641] at 1-2 n.1. Even then, Plaintiffs did not raise an issue. The same is true during the April 1, 2022 pretrial conference after the Court said that it did not want a bifurcated trial (on merits and remedy), because it wanted everything to end at once. (Tr. Apr. 1, 2022 at 15:20-16:17). Thus, despite all these opportunities, occurring well after SB 202 became law and the Sixth District filed its lawsuit challenging the birth date requirement, Plaintiffs remained silent.

Now, as the Court prepares to enter Day 14 of trial, the Court and the State are faced with another attempt to unnecessarily delay the final resolution of this

2018 lawsuit.[9] There is no justification for expanding the case now; the Federal Rules of Civil Procedure do not support it and neither does binding precedent. For any of these reasons, the Court should deny Plaintiffs' Motion so the Parties and the public can obtain a long-awaited resolution.

## LEGAL STANDARD

Because the Court has entered a pretrial order, Plaintiffs' reliance on Rule 15 is misplaced. Rather, two provisions of Rule 16 govern Plaintiffs' Motion. The most specific and applicable rule is Rule 16(e) which provides, in part, that amendments to pretrial orders "issued after a final pretrial conference [are] only to prevent **manifest injustice**."  Fed. R. Civ. P. 16(e) (emphasis added). See also L.R. 16.4(B) (same). The pretrial order says the same. See Doc. No. [753] Am.-Final Consol. Pretrial Order ¶ 29 (pretrial order "supersedes the pleadings" and "shall not be amended except by Order of the court to prevent manifest injustice"). The burden of showing manifest injustice falls squarely on Plaintiffs as the moving party. In re Georgia Steel, Inc., 71 B.R. 903, 905 (Bankr. M.D. Ga.

---

[9] At the April 1 pretrial conference, Plaintiffs suggested that their trial time would be less than 15 days: "THE COURT: My understanding is that the plaintiffs still think you're going to need 15 days. At one point y'all had had 52 witnesses. I understand that might be a shorter list of witnesses right now. MS. BRYAN: I'm afraid it's not much shorter."  Tr. Apr. 1 at 9:2-6.

1987) (emphasis added) (citing <u>Smith v. Ford Motor Co.</u>, 626 F.2d 784, 795 (10th Cir. 1980).

Plaintiffs never cited Rule 16(e), nor have they raised an argument to satisfy it. <u>See</u> Doc. No. [804-1] at 11, quoting <u>WSB-TV v. Lee</u>, 125 F.R.D. 191, 193 (N.D. Ga. 1988) (citing Rule 15).[10] Instead, Plaintiffs cite to Rule 16(b)'s more permissive standard. This is wrong, but it does not lead to a different outcome. Rule 16(b)(4) provides that a scheduling order can be changed only for "good cause" and courts have said that good cause requires the exercise of diligence. <u>Gallien v. Binkley</u>, CV408-037, 2008 WL 4916394, at *2 (S.D. Ga. Nov. 14, 2008) (citing <u>John Morrell & Co. v. Royal Caribbean Cruises Ltd.</u>, 243 F.R.D. 699, 701 (S.D.Fla.2007); <u>Bowers v. Am. Heart Ass'n.</u>, 513 F.Supp.2d 1364, 1367–68 (N.D.Ga.2007); <u>Pushko v. Kelebener</u>, 2007 WL 2671263, at *1 (M.D.Fla. Sept.7, 2007)). As discussed below, Plaintiffs have not done so here.

Moreover, Plaintiffs' real reliance is on Rule 15, including most of their cited authority. <u>See</u> Doc. No. [804-1] at 17; <u>Keith v. Volpe,</u> 858 F. 2d 467 (9th Cir.

---

[10] Plaintiffs also cite to <u>Lussier v. Dugger,</u> 904 F. 2d 661, 670 (11th Cir. 1990) in support of their position. But <u>Lussier</u> stands for the proposition that "a supplemental pleading is an appropriate vehicle by which to 'set forth new facts in order to update the earlier **pleading**.'" <u>Id.</u> (emphasis added). It says nothing about updating or amending a pretrial order or the standard for adding a new claim altogether in such circumstances.

1988); <u>Halliburton & Assocs., Inc. v. Dobbs,</u> 774 F. 2d 441 (11th Cir. 1985); <u>W. Ala. Women's Ctr. v. Miller,</u> 318 F.R.D. 143 (M.D. Ala. 2016)). The entry of the pretrial order renders those cases largely irrelevant to the question presented by Plaintiffs' Motion. When a motion to supplement "is filed after the scheduling order's deadline, a party must first demonstrate good cause under Rule 16(b)." <u>Aguayo v. Morehouse Sch. Of Med., Inc</u>. No. 1:06-cv-1095-JOF, 2007 WL 9710273 at *3 (N.D. Ga. Dec. 10, 2007). Again, Plaintiffs have not met, and have made no attempt to meet, this standard.

Even under the tendered but inapplicable Rule 15, courts are free to reject proffered amendments where **any** of the following exist: "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." <u>Bryant v. Dupree</u>, 252 F.3d 1161, 1163 (11th Cir. 2001).

## ARGUMENT

I.    **Plaintiffs' eleventh-hour motion cannot satisfy Rule 16(e)'s "manifest injustice" nor Rule 16(b)'s "good cause" standards.**

Plaintiffs' Motion should first be denied because they cannot meet the high standard required to amend this Court's pretrial order pursuant to Rule 16(e), which their brief does not even address. But there should be no doubt that the

"manifest injustice" standard controls in the Eleventh Circuit: once pretrial

orders are "freely and fairly entered into, [they] are not to be set aside except to

avoid manifest injustice." <u>United States v. Varner</u>, 13 F.3d 1503, 1508 (11th Cir.

1994). As the Ninth Circuit explained, pretrial orders are critical to

> implementing the purposes of the Federal Rules of Civil Procedure
> "to secure the just, speedy, and inexpensive determination of every
> action." F. R. Civ. P. 1. Unless pretrial orders are honored and
> enforced, the objectives of the pretrial conference to simplify issues
> and avoid unnecessary proof by obtaining admissions of fact will be
> jeopardized if not entirely nullified … Disregard of these principles
> would bring back the days of trial by ambush and discourage timely
> preparation by the parties for trial.

<u>United States v. First Nat'l Bank</u>, 652 F.2d 882, 886 (9th Cir. 1981). Thus,

amendments to pretrial orders should be granted only where "no substantial

injury will be occasioned to the opposing party, the refusal to allow the

amendment might result in injustice to the movant, and the inconvenience to the

court is slight." <u>Varner</u>, 13 F.3d at 1507. Plaintiffs can show none of these factors.

First, expanding the case now severely prejudices and injures Defendants.

Taxpayers have already invested tremendous resources in this litigation, and the

same taxpayers are defending SB 202—including the birthdate issue—before

Judge Boulee. Duplicating such efforts before this Court, **in the middle of trial**

**and on the eve of what Plaintiffs once described as their penultimate trial date**,

– 13 –

would needlessly expand costs, efforts, and burden on Defendants. Other courts

in this Circuit have denied relief to similar motions even made **before** trial:

> Defendant asserts that permitting Plaintiff to add claims now "will
> greatly prejudice [Defendant's] ability to obtain finality and defend
> itself, not to mention result in substantial additional costs and
> attorney's fees." Resp. at 4. Defendant notes, "Far too much time has
> passed and [Plaintiff's] motion is far too late to contemplate allowing
> Plaintiff to re-plead his complaint yet again .... This case is on the eve
> of trial—the joint pretrial stipulation is due in a week—and Plaintiff
> seeks to start from scratch." Id. As Defendant writes, "It is too late to
> start over." Id. Therefore, the Motion will be denied due to Plaintiff's
> failure to show good cause to extend the deadline to amend pleadings
> and because of the prejudice that Defendant would suffer if Plaintiff
> were permitted to add his claims at this late stage in the litigation.

Castilla v. Nat'l Union Fire Ins. Co. of Pa., 11-62086-CIV, 2012 WL 2344518, at *2

(S.D. Fla. June 20, 2012).

Second, this injury and prejudice would be compounded by Defendants'

likely need for additional discovery. Plaintiffs seek to avoid this by claiming that

there are no issues of fact in dispute. This is a bridge too far and, respectfully, not

a decision Plaintiffs can make for Defendants. More importantly, an examination

of Plaintiffs' proposed supplemental complaint belies their assertion. Doc. No.

[804-1] at 18. For example, Plaintiffs freely admit that their "supplemental

allegations also update their SAC to allege that certain Plaintiffs anticipate

engaging in activities to counteract these SB 202 date-of-birth provisions…" Id. at

13. Defendants are not required to accept these assertions at face value, and **how and when** Plaintiffs purportedly plan to counteract SB 202's birth date requirement is as important as **what** they may be planning.[11] Ultimately, Defendants are entitled to explore and challenge these allegations through discovery and to determine whether such allegations, if true, rise to a level sufficient to accord Plaintiffs standing on their new claim.[12] If the Court were to deny Defendants this opportunity, they would be severely prejudiced—even more so because the 30(b)(6) designees of Fair Fight and Baconton have already

_____

[11] Notably, Baconton recently conceded during cross-examination that it doesn't presently know what it plans to do regarding voting issues in the 2022 election cycle. Trial Tr. 2652:17-21.

[12] Despite Fair Fight's past acts, it is unknown what the organization plans to do during the election. Similarly, Baconton has not offered anything but additional sermon time, but as shown through testimony, Baconton's commitment to the principles of Matthew 25 compel it to remain engaged in voting rights issues, regardless of any specific practice. Trial Tr. 2608:19-2611:4. Additional topics of discovery that may also be required include the practices of county election officials in considering the new absentee-ballot envelopes, the materiality of each piece of information on the new envelope to its processing, and—apparently—any training materials on the new application and envelope. In addition, while the defense of laches would seem to apply here on the face of the proposed Supplemental Complaint, Defendants are aware that this Court has previously described it as "fact-dependent," and Defendants would likely require discovery to test the defense in the light of the Court's prior decision on a preliminary-injunction motion. DPG, 347 F. Supp. 3d at 1339.

testified at trial, precluding any testing of these new allegations in any context.[13] Obviously, such discovery will come at significant expense.

Third, Plaintiffs' delay creates precisely the kind of "trial by ambush" that pretrial orders are to prevent. Plaintiffs knew of SB 202's absentee ballot changes for over a year.[14] At least Fair Fight engaged in federal and state advocacy against them. While seeking help from the legislative branches of the state and federal governments, however, Plaintiffs never sought assistance from this Court until well into trial. There is no just cause for this—and forcing Defendants to litigate a new claim in this 2018 litigation when other similar lawsuits are challenging SB 202 is manifestly unjust and a waste of public resources.

Fourth, Plaintiffs are not seeking limited relief. Instead, Plaintiffs hope to inject an entirely new cause of action—arising under the Civil Rights Act—into this case where that type of claim has never been at issue. Doc. No. [582]. In other words, this is not a situation where Plaintiffs moved on a particular statute, lost at summary judgment on that claim, and are seeking to revive it based on new

---

[13] Defendants recognize that Plaintiffs could be granted leave to re-call these witnesses.

[14] Plaintiffs' strategic use of only two of the various Plaintiffs to move for relief under this new claim is apparently calculated to avoid the reality that the Sixth District AME has already sued the same defendants on the identical issue in another case.

evidence. Here, Plaintiffs raise a federal statute that has never been a part of this lawsuit to challenge a well-known and year-old state law. Under these circumstances, Plaintiffs cannot demonstrate granting the Motion is necessary to avoid manifest injustice or that good cause (and diligence on Plaintiffs' part) exists to do so.

Plaintiffs cannot satisfy Rule 16's standard to amend a pretrial order and this should end the Court's inquiry. Indeed, even the "good cause" standard is not satisfied given Plaintiffs' lack of diligence. Plaintiffs' Motion wrongly depends on convenience and efficiency (including summary judgment before discovery), which are Rule 15 factors that do not arise under Rule 16.

## II.   Alternatively, Plaintiffs fail to satisfy the inapposite standard for Rule 15's amendment.

Under Rule 15(d), a motion for leave to supplement a pleading may be denied if there is substantial reason to do so, including on the basis of undue delay, bad faith, dilatory motive, undue prejudice, or futility, among other reasons. <u>Amick v. BM & KM, Inc.,</u> 275 F. Supp. 2d 1378, 1381 (N.D. Ga. 2003). Each consideration weighs against Plaintiffs.

### A.   Plaintiffs' Motion will unduly delay this case.

As discussed above, granting Plaintiffs' Motion will doubtlessly prevent

resolution anytime soon.[15] This is for several reasons, including that Defendants are entitled to, and would be prejudiced without, conducting discovery to test the allegations in the Supplemental Amended Complaint.  Plaintiffs attempt to pre-counter this elemental principle by incorrectly claiming that discovery is unnecessary because there are no facts in dispute. See Doc. No. [804-1] at 18. In addition to the reasons discussed above, this option may be *convenient* for Plaintiffs, but it is legally and factually detached from reality.

On the law, Plaintiffs' contention that Martin and DPG control is flawed. Those cases had different records, different legislation, different procedural postures, different parties, and different standards of review. This is not a close call. Eleventh Circuit precedent removes any doubt: "a clear change in the law by Congress could also justify a panel of this Court in not following an earlier panel's decision, where the prior panel's decision was based on legislation that had been changed or repealed." United States v. Romeo, 122 F.3d 941, 942 n.1 (11th Cir. 1997).

Finally, all of this is occurring during a trial that is taking longer than anyone expected. Plaintiffs said they needed 15 days to put on their case, but that

---

[15] See supra Section I.

appears to have been quite aspirational. This Court hoped the case would be a "week, since it's a bench trial," but that too has not materialized. (Tr. Hr'g Nov. 29, 2021 at 5). After 13 days of trial, Plaintiffs still have about half of their case to present before Defendants' case commences. Given this, a new claim will cause significant delay—including additional (even expedited) discovery, a likely motion to dismiss, summary judgment briefing, another potential directed verdict, and testimony—that would assuredly prevent this Court from reaching resolution under the existing trial calendar and perhaps even this calendar year. Given the proceedings in Judge Boulee's courtroom, this result is unwarranted and weighs strongly against Plaintiffs' Motion.

## B. Plaintiffs' Motion represents bad faith.

Pretrial orders serve to "secure the just, speedy, and inexpensive determination of every action." Fed. R. Civ. P. 1. Plaintiffs' counsel acknowledged this in the pretrial conference: "[T]he pretrial order date is gonna halt [discovery]… Because that's where it does draw the line in the sand for both sides." Doc. No. [717], 9:13-17. Apparently not. Instead, and after inexcusable delay, Plaintiffs bring this Motion to subvert the very purpose of pretrial orders and the Federal Rules. Making matters worse, Plaintiffs cannot claim that SB 202

took them by surprise. This makes the lack of reasonable explanation for their undue delay particularly concerning given the political nature of this trial.[16]

Plaintiffs make no attempt to even address the yawning gulf of time between their knowledge of their potential claim, and the time they actually chose to level. And their silence is deafening.[17] What is not, however, is how Plaintiffs have used the litigation in press conferences, solicitations, and other means of engendering political support for their efforts in the courtroom. See, e.g., Trial Tr. at 51:2-5; 1441:7-9. This is no reason to needlessly prolong this dispute and delay resolution of the properly presented legal issues when it is becoming increasingly clear that Plaintiffs want to do everything within the arguable bounds of non-sanctionable conduct to avoid a final resolution of their claims.

---

[16] If there were any doubt of the ongoing use of the litigation to further Fair Fight's political aims, the organization held a press conference after opening statements.  https://fairfight.com/mon-4-11-530pm-et-fair-fight-action-inc-v-raffensperger-opening-press-conference/  It has also used the litigation to find additional political supporters.  See Defendants' Trial Ex. 756; Trial Tr. 1442:9-1445:3.

[17] As discussed above, Mr. Germany's testimony about the Secretary's discussion of election legislation is wholly irrelevant to the question of liability under the Civil Rights Act—which is not an intent-based claim—and thus cannot form the basis of Plaintiffs' bringing this issue to the Court. 52 U.S.C. § 10101.

**C.      Granting Plaintiffs' Motion would unduly prejudice Defendants.**

Defendants have already shown how expanding the case will prejudice them and Georgia taxpayers. Each are entitled to a full and fair conclusion of the issues brought by Plaintiffs in this case without additional delay to accommodate another claim that could have, and should have, been brought over 400 days ago after the Governor first signed SB 202. Injecting new theories and new claims at this point prevents Defendants from obtaining that resolution, and it risks inconsistent rulings between this Court's order(s) and ones from Judge Boulee on the same issue.[18]

Other courts in this district have denied similar motions even under less compelling circumstances. See Nance v. Ricoh Elecs., Inc., No. 1:06-cv-2396-RWS, 2008 WL 926662, at *7 (N.D. Ga. Apr. 4, 2008), aff'd, 381 F. App'x 919 (11th Cir. 2010). In Nance, Judge Story denied a motion filed under Rule 15, as it would "have the effect of beginning this case anew on entirely different footing, and in effect, form an entirely distinct action." Id. at *20. The same reasoning applies here and warrants denying Plaintiffs' Motion.

---

[18] Plaintiffs are free to intervene in, provide amici support, or otherwise make their views known in the cases actually reviewing these issues where discovery is ongoing before Judge Boulee.

### D.     Plaintiffs' Motion is futile.

"In the Eleventh Circuit, a proposed amendment is futile when the allegations of the proffered complaint would be unable to withstand a motion to dismiss." Amick, 275 F. Supp. 2d at 1381 (citation omitted). Plaintiffs ask this Court and Defendants to presume their supplemental allegations easily would survive a motion to dismiss based on a preliminary injunction entered on a different statute with different facts. Doc. No. [804-1] at 20, citing DPG, 347 F. Supp. 3d at 1340-41. But, as discussed, preliminary injunctions were issued in DPG and Martin well before Jacobson, which limits the ability of the federal courts to order county-level relief against state level officials in election cases. 974 F.3d at 1236. Other cases reinforced that ruling as to absentee ballots. See, e.g., Ga. Republican Party, 2020 WL 7488181 at *2.

Plaintiffs attempt to sidestep this clear directive from the Eleventh Circuit by highlighting a recent order in two consolidated SB 202 cases. See Doc. No. [804-1] at 21 citing Sixth Dist. Of African Episcopal Methodist Church v. Kemp, No. 1:21-cv-01284-JPB, 2021 WL 6495360 (N.D. Ga. Dec. 9, 2021) ("Sixth Dist. AME"). But Plaintiffs miss several important points. First, Sixth Dist. AME involves plaintiffs who sued several county defendants in addition to state officials. Second, in Sixth Dist. AME, the court did not specify whether the

– 22 –

discrete absentee ballot claims in the consolidated cases were sufficient to survive the defendants' motion to dismiss standing alone. Instead, the court held more broadly that, "to satisfy redressability requirements for standing purposes, Plaintiffs need to show only that an injunction **against County Defendants** would address **at least some of the alleged injuries in this case**." <u>Sixth Dist. AME</u> at *18. Plaintiffs here chose not to sue county officials. They cannot now sidestep binding precedent from the Eleventh Circuit through their proposed supplemental complaint.

## CONCLUSION

For the reasons stated above, Defendants respectfully ask that the Court deny Plaintiffs' Motion for Leave to File a Supplemental Complaint. This Court should conclude that no briefing is necessary on Plaintiffs' Motion for Partial Summary Judgment on this new claim because it is not part of this case.

Respectfully submitted this 4th day of May, 2022.

Christopher M. Carr
Attorney General
GA Bar No. 112505
Bryan K. Webb
Deputy Attorney General
GA Bar No. 743580
Russell D. Willard
Senior Assistant Attorney General
GA Bar No. 760280

**State Law Department**
40 Capitol Square, S.W.
Atlanta, Georgia 30334

*/s/ Josh Belinfante*
Josh Belinfante
Georgia Bar No. 047399
jbelinfante@robbinsfirm.com
Vincent R. Russo
Georgia Bar No. 242628
vrusso@robbinsfirm.com
Carey A. Miller
Georgia Bar No. 976240
cmiller@robbinsfirm.com
Brian E. Lake
Georgia Bar No. 575966
blake@robbinsfirm.com
Alexander Denton
Georgia Bar No. 660632
adenton@robbinsfirm.com
Melanie L. Johnson
Georgia Bar No. 466756
mjohnson@robbinsfirm.com
Edward A. Bedard
Georgia Bar No. 926148
Danielle M. Hernandez
Georgia Bar No. 736830
dhernandez@robbinsfirm.com
**Robbins Alloy Belinfante Littlefield LLC**
500 14th Street N.W.
Atlanta, Georgia 30318
Telephone: (678) 701-9381
Facsimile: (404) 856-3255

Bryan P. Tyson
Georgia Bar No. 515411
btyson@taylorenglish.com
Bryan F. Jacoutot

Georgia Bar No. 668272
bjacoutot@taylorenglish.com
Diane Festin LaRoss
Georgia Bar No. 430830
dlaross@taylorenglish.com
Loree Anne Paradise
Georgia Bar No. 382202
lparadise@taylorenglish.com
**Taylor English Duma LLP**
1600 Parkwood Circle
Suite 200
Atlanta, Georgia 30339
Telephone: (678) 336-7249

*Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1(D), I hereby certify that the foregoing brief was prepared double-spaced in 13-point Book Antiqua font, approved by the Court in Local Rule 5.1(C).


<u>*/s/Josh Belinfante*</u>
Josh Belinfante